AMBIKA KUMAR (*pro hac vice*)
   ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
   adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

ROBERT CORN-REVERE (*pro hac vice*)
   bobcornrevere@dwt.com
DAVID M. GOSSETT (*pro hac vice*)
   davidgossett@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
meenakshikrishnan@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200

Attorneys for Plaintiff
NETCHOICE, LLC d/b/a NetChoice

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice,<br><br>                Plaintiff,<br><br>        v.<br><br>ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity,<br><br>                Defendant. | Case No. 5:22-cv-08861-BLF<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        June 22, 2023<br>Time:        9:00 AM<br>Dept.:       Courtroom 3 – 5th Floor<br><br>Action Filed: December 14, 2022 |

1

**TO THE COURT, THE PARTIES AND ALL ATTORNEYS OF RECORD:**

2

      PLAINTIFF NETCHOICE, LLC d/b/a NetChoice moves for a preliminary injunction

3

under Fed. R. Civ. P. 65 before the Honorable Beth Labson Freeman sitting in Courtroom 3 of the

4

United States District Court for the Northern District of California located at San Jose, California,

5

at the date and time stated above, or as soon as the matter may be heard.

6

7

 DATED: February 17, 2023              DAVIS WRIGHT TREMAINE LLP

8

9

                                By: */s/ Ambika Kumar*
                                      Ambika Kumar

10

                            Attorneys for Plaintiff
                            NetChoice LLC, d/b/a NetChoice

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 1

    A.      The Internet Today Is A Vibrant Forum For Speech. ............................... 1

    B.      California Internet Users, Including Children, Are Protected By Pre-
        existing Federal And State Privacy Laws. ............................................... 3

    C.      AB 2273 Attempts To Censor The Internet Under The Guise Of Privacy. ............ 4

III.    LEGAL STANDARD ........................................................................................... 7

IV.     NETCHOICE IS LIKELY TO PREVAIL ON THE MERITS .............................. 7

    A.      AB 2273 Violates The First Amendment. ................................................. 7

        1.      AB 2273 establishes a system of prior restraint. ............................ 8

            a.      The DPIA requirements effect a prior restraint. ................... 9

            b.      The content policy enforcement rule effects a prior restraint. ...... 10

            c.      The age verification rule effects a prior restraint. ...................... 12

        2.      AB 2273 is overbroad. .................................................................... 14

        3.      AB 2273 is void for vagueness. ...................................................... 16

        4.      AB 2273 regulates speech based on content and fails strict scrutiny. ......... 19

            a.      AB 2273 regulates speech based on content. ................................. 19

            b.      AB 2273 fails strict scrutiny. ........................................................ 21

    B.      AB 2273 Violates The Commerce Clause. ............................................. 22

        1.      AB 2273 unlawfully regulates extraterritorially. ........................... 22

        2.      AB 2273 unduly burdens interstate commerce. .............................. 23

    C.      COPPA Preempts AB 2273. .................................................................... 25

    D.      Section 230 Preempts AB 2273's Regulation Of Third-Party Speech. ............ 27

V.      NETCHOICE AND ITS MEMBERS WILL SUFFER IRREPARABLE HARM. .......... 29

VI.     EQUITY AND THE PUBLIC INTEREST SUPPORT AN INJUNCTION. ................... 30

VII.    CONCLUSION ................................................................................................... 30

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

**Cases**

3

4

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999)...............................................................22, 24, 25

5

6

*ACLU v. Johnson*,
   4 F. Supp. 2d 1029 (D.N.M. 1998), *aff'd*, 194 F.3d 1149 (10th Cir. 1999)...........13

7

*ACLU v. Mukasey*,
   534 F.3d 181 (3d Cir. 2008)...............................................................*passim*

8

9

*Airbnb, Inc. v. City of Boston*,
   386 F. Supp. 3d 113 (D. Mass. 2019) ...............................................28

10

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003)...............................................................22

11

12

*Am. Comm'cns Ass'n v. Douds*,
   339 U.S. 382 (1950) ...............................................................11

13

14

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997)...............................................25

15

*Am. Trucking Ass'n v. City of L.A.*,
   559 F.3d 1046 (9th Cir. 2009)...............................................30

16

17

*Anderson v. City of Hermosa Beach*,
   621 F.3d 1051 (9th Cir. 2010)...............................................7

18

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004) ...............................................................14, 19, 22

19

20

*Ashcroft v. Free Speech Coal.*,
   535 U.S. 234 (2002) ...............................................................14

21

*Backpage.com, LLC v. Cooper*,
   939 F. Supp. 2d 805 (M.D. Tenn. 2013) ...............................23

22

23

*Backpage.com, LLC v. Hoffman*,
   2013 WL 4502097 (D.N.J. Aug. 20, 2013)...............................23

24

*Backpage.com, LLC v. McKenna*,
   881 F. Supp. 2d 1262 (W.D. Wash. 2012)...............................23, 24, 25, 28

25

26

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ...............................................................8, 9, 10

27

28

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009)................................................................28, 29

*Bates v. City of Little Rock*,
   361 U.S. 516 (1960) .................................................................................11

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003)........................................................................28

*Brown v. Cal. Dep't of Transp.*,
   321 F.3d 1217 (9th Cir. 2003)........................................................................30

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011) .............................................................13, 16, 19, 21

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
   476 U.S. 573 (1986) .............................................................................22, 24

*Bursey v. United States*,
   466 F.2d 1059 (9th Cir. 1972)........................................................................19

*Butcher v. Knudsen*,
   38 F.4th 1163 (9th Cir. 2022)........................................................................17

*Butler v. Michigan*,
   352 U.S. 380 (1957) .........................................................................13, 14

*Cal. Hosp. Ass'n v. Maxwell-Jolly*,
   776 F. Supp. 2d 1129 (E.D. Cal. 2011) ........................................................30

*Cal. Redevelopment Assn. v. Matosantos*,
   53 Cal. 4th 231 (2011).....................................................................................27

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001)........................................................................16

*Camps Newfound I Owatonna, Inc. v. Town of Harrison*,
   520 U.S. 564 (1997) .......................................................................................24

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003)........................................................................29

*Cohen v. Apple Inc.*,
   46 F.4th 1012 (9th Cir. 2022)........................................................................29

*County of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ..........................................................30

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987) ...........................................................................................24

iii

*Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019) ................................................................................................ 29

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) ........................................................................................................... 11

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) .............................................................................................. 29

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ............................................................................................ 27

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................................................... 29

*Engdahl v. City of Kenosha*,
    317 F. Supp. 1133 (E.D. Wis. 1970) .................................................................................. 11

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................... 28, 29

*FEC v. Cruz*,
    142 S. Ct. 1638 (2022) ....................................................................................................... 21

*Free Speech Coal. v. Reno*,
    198 F.3d 1083 (9th Cir. 1999),
    *aff'd sub nom. Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ..................................... 19

*Garcia v. City of Los Angeles*,
    11 F.4th 1113 (9th Cir. 2021) ............................................................................................. 27

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016) ........................................................................................................... 26

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ........................................................................................................... 19

*Green v. Miss U.S. of Am., LLC*,
    52 F.4th 773 (9th Cir. 2022) ................................................................................................. 7

*H.K. through Farwell v. Google LLC*,
    595 F. Supp. 3d 702 (C.D. Ill. 2022) .................................................................................. 26

*H.P. Hood & Sons, Inc. v. DuMond*,
    336 U.S. 525 (1949) ........................................................................................................... 24

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ..................................................................................................... 22, 23

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ............................................................................................................... 17

iv

*Hunt v. City of Los Angeles*,
    601 F. Supp. 2d 1158 (C.D. Cal. 2009), *aff'd*, 638 F.3d 703 (9th Cir. 2011) ........................ 18

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ........................................................................................................ 16

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ...................................................................................... 16

*IMDb.com, Inc. v. Becerra*,
    257 F. Supp. 3d 1099 (N.D. Cal. 2017), *aff'd*, 962 F.3d 1111 (9th Cir. 2020)..................... 21

*In re Alphabet Deriv. Litig.*,
    2022 WL 1045642 (N.D. Cal. Apr. 7, 2022) ................................................................... 27

*Interstate Circuit v. City of Dallas*,
    390 U.S. 676 (1968) ............................................................................................... 8, 9, 10

*Iowa Pork Producers Ass'n v. Bonta*,
    2022 WL 1042561 (C.D. Cal. Feb. 28, 2022) ................................................................ 30

*Jones v. Google LLC*,
    56 F.4th 735 (9th Cir. 2022).................................................................................... 26, 27

*Klein v. City of Laguna Beach*,
    381 F. App'x 723 (9th Cir. 2010)................................................................................... 30

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009)....................................................................................... 30

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ...................................................................................................... 19

*Mahanoy Area Sch. Dist. v. B. L.*,
    141 S. Ct. 2038 (2021) .................................................................................................. 16

*McCormack v. Herzog*,
    788 F.3d 1017 (9th Cir. 2015)....................................................................................... 18

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ...................................................................................................... 21

*Midwest Video Corp. v. FCC*,
    571 F.2d 1025 (8th Cir. 1978)....................................................................................... 11

*MPAA v. Specter*,
    315 F. Supp. 824 (E.D. Pa. 1970) ................................................................................. 11

*NAACP v. Button*,
    371 U.S. 415 (1963) .................................................................................................. 7, 17

*Near v. Minnesota*,
   283 U.S. 697 (1931) .......................................................................................................... 7

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976) .......................................................................................................... 8

*NetChoice, LLC v. Att'y Gen.*,
   34 F.4th 1196 (11th Cir. 2022) ........................................................................................ 20

*New Mexico ex rel. Balderas v. Tiny Lab Productions*,
   457 F. Supp. 3d 1103 (D.N.M. 2020) .............................................................................. 26

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ........................................................................... 20

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2017) ............................................................................................... 2, 7, 8

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ............................................................................................. 22, 23, 25

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ............................................................................... 13, 23, 25

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017) ....................................................................... 23, 30

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................................................................ 19

*Reno v. ACLU*,
   521 U.S. 844 (1997) ................................................................................................ 1, 8, 14

*Riley v. Nat'l Fed. of the Blind*,
   487 U.S. 781 (1988) ........................................................................................................ 20

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ................................................................................... 22, 23

*Sanders Cnty. Republican Cent. Comm. v. Bullock*,
   698 F.3d 741 (9th Cir. 2012) .......................................................................................... 30

*Se. Booksellers Ass'n v. McMaster*,
   371 F. Supp. 2d 773 (D.S.C. 2005) ................................................................................. 13

*Se. Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ...................................................................................................... 8, 9

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ........................................................................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) .................................................................................. 20

*Swope v. Lubbers*,
  560 F. Supp. 1328 (W.D. Mich. 1983) ..................................................... 11

*United States v. Hall*,
  912 F.3d 1224 (9th Cir. 2019) .................................................................. 18

*United States v. Playboy Ent. Grp.*,
  529 U.S. 803 (2000) ............................................................... 11, 14, 21, 22

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................... 10, 14, 16

*United States v. Williams*,
  553 U.S. 285 (2008) .................................................................................. 17

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*,
  356 F. App'x 89 (9th Cir. 2009) ............................................................... 30

*Volokh v. James*,
  2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ..................................... 20, 24

*Wash. Post v. McManus*,
  944 F.3d 506 (4th Cir. 2019) .................................................................... 11

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
  32 F.4th 852 (9th Cir. 2022) ....................................................................... 7

*Zepeda v. U.S. I.N.S.*,
  753 F.2d 719 (9th Cir. 1983) .................................................................... 30

**Constitutional Provisions**

United States Constitution,
  First Amendment ............................................................................... *passim*

**Statutes**

15 U.S.C.
  § 6501 ........................................................................................... 1, 3, 21
  § 6502 .................................................................................................... 3
  § 6502(a)(1) .......................................................................................... 26
  § 6502(d) ......................................................................................... 3, 26

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

47 U.S.C.
§ 230 ................................................................................................................ 1, 27, 28
§ 230(a)(1) .................................................................................................................... 2
§ 230(a)(4) .................................................................................................................... 2
§ 230(c)(1) ...................................................................................................... 27, 28, 29
§ 230(c)(2) ...................................................................................................... 10, 27, 28
§ 230(e)(3) ................................................................................................................... 28

California Civil Code
§ 1798.99.29(a)-(b) ....................................................................................................... 9
§ 1798.99.29(b) ............................................................................................................. 8
§ 1798.99.30(5) ............................................................................................................. 5
§ 1798.99.30(a) ...................................................................................................... 20, 23
§ 1798.99.30(a)(4) ....................................................................................................... 15
§ 1798.99.30(b)(1) ......................................................................................................... 5
§ 1798.99.30(b)(4) ................................................................................................. 17, 27
§ 1798.99.31 ................................................................................................................ 17
§ 1798.99.31(a) ............................................................................................................. 5
§ 1798.99.31(a)(1)-(4) ................................................................................................... 9
§ 1798.99.31(a)(1)(A)-(B) ............................................................................................. 8
§ 1798.99.31(a)(1)(b) .................................................................................................. 15
§ 1798.99.31(a)(1)(B)(i) .......................................................................................... 9, 21
§ 1798.99.31(a)(1)(B)(i)-(vii) ....................................................................................... 5
§ 1798.99.31(a)(2) ..................................................................................................... 5, 8
§ 1798.99.31(a)(3)-(4) ................................................................................................. 15
§ 1798.99.31(a)(5) ................................................................................................. passim
§ 1798.99.31(a)(5)-(6) ................................................................................................. 15
§ 1798.99.31(a)(6) .................................................................................................. 20, 21
§ 1798.99.31(a)(7) ....................................................................................................... 15
§ 1798.99.31(a)(9) ................................................................................................. passim
§ 1798.99.31(b) ............................................................................................................. 5
§ 1798.99.31(b)(1) ................................................................................... 6, 15, 20, 29
§ 1798.99.31(b)(2)-(4) ................................................................................................... 6
§ 1798.99.31(b)(2)-(4) ................................................................................................. 20
§ 1798.99.31(b)(2)(B)(ii) ............................................................................................ 21
§ 1798.99.31(b)(3) .................................................................................................. 6, 29
§ 1798.99.31(b)(3)-(4) ................................................................................................. 21
§ 1798.99.31(b)(4) ....................................................................................................... 29
§ 1798.99.31(b)(7) ................................................................................... 6, 18, 20, 29
§ 1798.99.31(b)(8) ....................................................................................................... 20
§ 1798.99.33 .................................................................................................................. 6
§ 1798.99.35(a) ............................................................................................................. 6
§ 1798.99.40 .................................................................................................................. 5
§ 1798.100 ..................................................................................................................... 4
§ 1798.100(a)(2) ............................................................................................................ 4
§ 1798.100(b) ................................................................................................................ 4
§ 1798.100 et seq. .......................................................................................................... 4
§ 1798.120(b) ................................................................................................................ 4
§ 1798.120(c) ................................................................................................................ 4

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

§ 1798.120(d) ................................................................................................................ 4
§ 1798.135 .................................................................................................................... 4
§ 1798.140(i) ............................................................................................................... 23
§ 1798.140(v) ................................................................................................................ 4
§ 1798.140(d) ................................................................................................................ 5
§ 1798.140(d) ......................................................................................................... 5, 23
§ 1798.140(l) ......................................................................................................... 6, 18
§ 1798.140(n)(1) ........................................................................................................ 20

**Other Authorities**

16 C.F.R.
§ 312.2 ................................................................................................................. 26, 27
§ 312.3(a)-(d) ........................................................................................................ 3, 14

144 Cong. Rec. S11657
(Oct. 7, 1998) ............................................................................................................... 3

Seth F. Kreimer, *Censorship by Proxy: The First Amendment, Internet Intermediaries,
and the Problem of the Weakest Link*, 155 U. PA. L. REV. 11 (2006) .................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ix

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.     INTRODUCTION

Imagine a law that required bookstores, before offering books and services to the public, to assess whether those books and services could "potentially harm" their youngest patrons; develop plans to "mitigate or eliminate" any such risks; and provide those assessments to the state on demand.  Under this law, bookstores could only carry books the state deemed "appropriate" for young children unless they verified the age of each patron at the door.  Absent such age verification, employees could not ask customers about the types of books they preferred or whether they had enjoyed specific titles—let alone recommend a book based on customers' expressed interests—without a "compelling" reason that doing so was in the "best interests" of children.  And the law would require bookstores to enforce their store rules and content standards to the state's satisfaction, eliminating the bookstores' discretion as to how those rules should be applied.  Penalties for violations could easily bankrupt even large bookstores.  Such a scheme would plainly violate fundamental constitutional protections.

California has enacted just such a measure:  The California Age Appropriate Design Code Act (AB 2273).  Although billed as a "data protection" regulation to protect minors, AB 2273 is the most extensive attempt by any state to censor speech since the birth of the internet.  It does this even though the State has conceded that an open, vibrant internet is indispensable to American life.  AB 2273 enacts a system of prior restraint over protected speech using undefined, vague terms, and creates a regime of proxy censorship, forcing online services to restrict speech in ways the State could never do directly.  The law violates the First Amendment and the Commerce Clause, and is preempted by the Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501 *et seq*., and Section 230 of the Communications Decency Act, 47 U.S.C. § 230.  Because AB 2273 forces online providers to act now to redesign services, irrespective of its formal effective date, it will cause imminent irreparable harm.  The Court should enjoin the statute.

## II.     BACKGROUND

### A.     The Internet Today Is A Vibrant Forum For Speech.

The internet is a medium "as diverse as human thought," *Reno v. ACLU*, 521 U.S. 844, 870, (1997) (citation omitted), which in the brief span of a generation has become indispensable

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to the exchange of information.  "[W]ebsites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard," as well as connect citizens with "principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).  Online services "publish diverse material on countless websites that inform, entertain, and connect society in vital ways."  Compl. ¶ 1, *United States v. Google LLC*, No. 23-108 (E.D. Va. Jan. 24, 2023), Dkt. No. 1 (Google Compl.) (California is a named plaintiff).  This "extraordinary advance in the availability of educational and informational resources" has "flourished, to the benefit of all Americans, with a minimum of government regulation."  47 U.S.C. § 230(a)(1), (4).  And it has been made possible by an internet structure that is open and accessible to all.

Online providers interact with users in different ways.  Most have areas where all users can view content, preview services, and read reviews without creating an account.  *See, e.g.*, Cairella Decl. ¶ 7; Masnick Decl. ¶ 5; Roin Decl. ¶ 7-9.  Many have features available only to users who create an account.  *See, e.g.*, Cairella Decl. ¶ 8; Masnick Decl. ¶ 6; Roin Decl. ¶¶ 7-9; Paolucci Decl. ¶ 5.  Some provide services and content without charge.  *See, e.g.*, Cairella Decl. ¶¶ 4, 7; Masnick Decl. ¶ 5; Roin Decl. ¶¶ 7, 9.  Others require users to pay subscription fees for extra services.  *See, e.g.*, Cairella Decl. ¶ 4; Paolucci Decl. ¶ 5.  Regardless, many online providers rely on advertisements to earn a significant share of—or all of—the revenue that supports the content and services they provide.  *See, e.g.*, Roin Decl. ¶ 10; Cairella Decl. ¶¶ 4, 21.  "[T]oday's internet would not exist without the digital advertising revenue that, as a practical matter, funds its creation and expansion."  Google Compl. ¶ 1.

Online ads are typically selected partly based on interests expressed by the user through the service—sometimes called "interest-based" advertising.  Interest-based advertising makes possible a wide range of constitutionally protected editorial content.  Advertisers pay a premium to reach a more specific audience; users benefit from subsidized access to more relevant content; and online services—ranging from major corporations to niche bloggers and individual "influencers" who use larger services—earn a living by monetizing their talents for creating,

2

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

curating, and publishing content.  *See* Kumar Decl. Exs. 17-19. "Internet advertisers include businesses, agencies of federal and state governments, charitable organizations, political candidates, public interest groups, and more."   Google Compl. ¶ 3 n.1.  "The money these advertisers spend on digital advertising creates an important stream of revenue for websites to use in creating, developing and publishing website content." *Id.*

Even aside from interest-based advertising, a hallmark of online services is their ability to tailor content to individual users.  Suggesting a book or film based on a user's browsing, reading, or listening, for example, creates value by personalizing the service to the user's interests, and connects content creators with an audience.  *See, e.g.*, Roin Decl. ¶¶ 2-6; Cairella Decl. ¶¶ 8, 20; Szabo Decl. ¶ 13.  This is true across online media—including music, video, and social networks.

The vast majority of online providers have adopted policies and guidelines governing use of their services, such as community standards and terms of use.  These policies and guidelines can serve many purposes—including fostering a particular type of community, encouraging debate, setting the tenor of discussion, maintaining a welcoming and respectful environment, and notifying users of the types of conduct that might result in a loss of access.  *See* Kumar Decl. Exs. 3-6 (sample privacy policies and terms of service); Szabo Decl. ¶¶ 8-12.

### B.    California Internet Users, Including Children, Are Protected By Pre-existing Federal And State Privacy Laws.

Federal child privacy law, codified in COPPA and its regulations, has long "limit[ed] the collection of personal information from children without parental consent."   144 Cong. Rec. S11657 (Oct. 7, 1998).  COPPA defines a child as anyone under 13 and applies to websites that are "directed to children" or have ""actual knowledge" that they are collecting personal information from a child.  15 U.S.C. §§ 6501(1), 6502.  These websites must "provide notice" of information collection, use, and disclosure practices; obtain parental consent before collecting, using, or disclosing a child's personal information; provide parents "reasonable means" to review and refuse consent to the use of a child's personal information; and not condition a child's participation in certain activities on excessive disclosure of personal information.   16 C.F.R. § 312.3(a)-(d).   COPPA expressly preempts inconsistent child-focused state privacy rules. 15 U.S.C. § 6502(d).

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

Davis Wright Tremaine LLP
865 S. Figueroa St, Suite 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Californians are also protected by a comprehensive data privacy regime enacted shortly before AB 2273.  Under the 2018 California Consumer Privacy Act (CCPA), as amended by the 2020 California Privacy Rights Act (CPRA), users have extensive rights to control the data collected about them.  *See* Cal. Civ. Code §§ 1798.100 *et seq.*  Online services must "inform consumers as to the categories of" and "purposes for which" personal information is being collected, *id*. § 1798.100(b); not collect more information absent notice, *id*. § 1798.100(a)(2); provide notice of any sale or sharing of personal information, *id.* §1798.120(b); honor requests not to do so, *id.* § 1798.120(d); and not sell or share the personal information of a consumer the service knows is younger than 16, absent authorization from that user (or if the user is under 13, their parent or guardian), *id.* § 1798.120(c).  Online services have spent significant resources to comply with these requirements.  Indeed, a report commissioned by the California Attorney General estimated that initial compliance with the 2018 CCPA would cost $55 billion, with ongoing costs thereafter.  *See* Kumar Decl. Ex. 1 at 11.

The CCPA's definition of "personal information" (also applicable to AB 2273) is one of the broadest in existence and includes any information that "relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly *or indirectly*, with a particular consumer or household."  Cal. Civ. Code § 1798.140(v) (emphasis added).  This definition is not limited to discrete information like birthdates, driver's licenses, or social security numbers, but instead encompasses a range of data that could not easily be connected to a particular user, such as IP addresses and general information about how users interact with a website.

COPPA and the CCPA create stringent privacy requirements for online services and empower users—or, in the case of children, their parents or guardians—to make decisions about their personal information online.  Those who prefer to opt out of or limit services that use their personal information can do so, Cal. Civ. Code § 1798.135, and those who prefer to opt in maintain that autonomy.  For their part, online services are subject to strict notice requirements that allow users to make these decisions in an educated fashion.  *Id.* § 1798.100.

**C.     AB 2273 Attempts To Censor The Internet Under The Guise Of Privacy.**

On the heels of the recent CCPA amendments, California enacted AB 2273.  Unlike

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

COPPA, AB 2273 applies to any "business" that "provides an online service, product, or feature likely to be accessed by children," *id.* § 1798.99.31(a), (b), and defines a "child" as anyone "under 18 years of age." *Id.* § 1798.99.30(b)(1).  A "[b]usiness" is any for-profit entity that meets one of the following criteria:  (i) earns more than $25M in gross annual revenue; (ii) buys, sells, or shares information of at least 100,000 consumers annually; or (iii) obtains more than half its revenue from data monetization.  Cal. Civ. Code § 1798.140(d).  Non-profits and government entities are exempt, as are "broadband internet access" services, "telecommunications services," the "delivery or use of a physical product," and certain healthcare entities.  *See id.* §§ 1798.99.30(5), 1798.99.40, 1798.140(d).

Rather than empower parents to supervise children's privacy online, AB 2273 requires services to redesign their offerings to be "appropriate for children" as the State defines it.  AB 2273 Findings and Declarations § 1(a)(7).  Among other things, online providers must:

***Identify to the State and create plans to mitigate or eliminate "potentially harmful" content.***  Before offering any online service, product, or feature "likely to be accessed by" anyone under 18, the provider must prepare a Data Protection Impact Assessment (DPIA) that addresses whether the feature's design "could harm" minors by exposing them to "potentially harmful" content, contacts, or communications; permitting them to "witness" any "potentially harmful, conduct"; or using "algorithms" or other method to deliver "targeted" content and ads that "could harm" them.  Cal. Civ. Code § 1798.99.31(a)(1)(B)(i)-(vii).  The provider must "[d]ocument any risk of material detriment to" minors arising from each service, product, or feature, and "create a timed plan to mitigate or eliminate" those risks "before" the online service, product, or feature is accessed by minors.  *Id.* § 1798.99.31(a)(2).  "Harm" and "material detriment" are undefined.

***Enforce content policies and community standards.***  Online services must disclose *and enforce* all "published terms, policies, and community standards … including, but not limited to, privacy policies and those concerning children." *Id.* § 1798.99.31(a)(9).  Thus, the government may oversee whether a provider has adequately enforced its own rules, policies, and standards, including discretionary decisions about what speech to permit and whether content is inflammatory, threatening, or otherwise contrary to a provider's values.

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

***Reduce or eliminate use of algorithms and content personalization.***  AB 2273 prohibits providers from using algorithms or "personal information"—including basic information about a user's prior activity on a service—unless "necessary to provide an online service, product, or feature with which a [minor] is actively and knowingly engaged" or the provider demonstrates a "compelling reason" that such use "is in the best interests of children."  Cal. Civ. Code § 1798.99.31(b)(2)-(4).  Thus, even with a parent's consent, a provider cannot use collected information or algorithms to serve content to a minor unless such use is "necessary" to what the minor is already engaged in or "is in the best interests of children."  *Id*. § 1798.99.31(b)(3).  Similarly, the law prohibits design interfaces (which it calls "dark patterns") that "lead or encourage" minors to provide more data or "take any action" that the provider "has reason to know is materially detrimental to the [minor's] physical health, mental health, or well-being."  *Id*. §§ 1798.99.31(b)(7), 1798.140(l); *see also id*. § 1798.99.31(b)(1) (similar).  Although ominous-sounding, the term "dark patterns" has been construed by scholars to reach commonplace features that simplify and improve user experience, such as standard "autoplay" and "newsfeed" functions that recommend personalized content.  *See, e.g.*, Katharine Miller, *Can't Unsubscribe? Blame Dark Patterns*, Stanford University Institute for Human-Centered Artificial Intelligence (Dec. 13, 2021) (Kumar Decl. Ex. 2).

***Verify users' ages.***  Services must estimate the age of their users with "a reasonable level of certainty appropriate to the risks that arise from the data management practices of the business or apply the privacy and data protections afforded to children to all consumers."  Cal. Civ. Code § 1798.99.31(a)(5).  In other words, covered providers must either verify the age of each user or make all of their services child-friendly (however that is defined by the State).  The level of age-certainty required hinges on how "risk[y]" a service is deemed to be, but is otherwise undefined.  Parents have no opportunity to opt their children or teens out of these restrictions.  *Id.*

***Penalties for violations.***  AB 2273 authorizes the California Attorney General to obtain penalties of up to $7,500 per "affected child," as well as injunctive relief for any "violation[s]."  *Id.* § 1798.99.35(a).  Regulated services must comply by July 1, 2024, when enforcement can begin.  *Id.* § 1798.99.33.

## III.   LEGAL STANDARD

"[P]laintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). These factors are balanced on a sliding scale.  When the balance of hardships tips "sharply" in favor of the plaintiff, there is a likelihood of irreparable injury, and the injunction is in the public interest, the plaintiff need only show 'serious questions' on the merits." *Id.* (citation omitted).   An injunction is warranted here.

## IV.   NETCHOICE IS LIKELY TO PREVAIL ON THE MERITS

### A.   AB 2273 Violates The First Amendment.

AB 2273 will subject a global medium to state supervision and hobble a free and open resource that has become indispensable to "how we think, express ourselves, and define who we want to be." *Packingham*, 137 S. Ct. at 1736.  The law is subject to the highest level of scrutiny and is presumptively invalid under the First Amendment because it (1) creates a system of unlawful prior restraint, (2) suppresses and chills swaths of internet speech, (3) applies vague, subjective, and undefined terms, and (4) regulates speech on a content and speaker basis. AB 2273 cannot overcome that presumption and must be held invalid.

Although the State touts AB 2273 as a "privacy" regulation governing "data management practices" of "online products, services, and features," the law creates an extensive and open-ended regime to regulate internet speech.  The Supreme Court has long stressed that it does not matter what "labels" are used to describe regulations that "foreclose the exercise" of First Amendment rights.  *NAACP v. Button*, 371 U.S. 415, 429 (1963).  Characterizing a speaker "as a business," and the speaker's content as a product or service, "does not permit an invasion of the constitutional immunity against [prior] restraint."  *Near v. Minnesota*, 283 U.S. 697, 720 (1931).  "Calling it something other than speech does not make it so."*Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 780 (9th Cir. 2022) (citation omitted); *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062-63 (9th Cir. 2010).  These principles apply to the internet and to this case.  There is "no basis

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

for qualifying the level of First Amendment scrutiny that should be applied to" the internet, *Reno*, 521 U.S. at 870, so this Court must exercise "extreme caution" before approving AB 2273's wide-ranging restrictions, *Packingham*, 137 S. Ct. at 1736.

### 1.   AB 2273 establishes a system of prior restraint.

A prior restraint on expression is "the most serious and least tolerable infringement on First Amendment rights," and faces a "heavy presumption against its constitutional validity." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976) (citation omitted).  Prior restraints are state-endorsed schemes that empower the government to prevent or deter publication of speech deemed "objectionable" without first securing a judicial determination "that such publications may lawfully be banned." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70-71 (1963).  A regulation may qualify as a prior restraint even if does not ban or restrict speech outright.  Courts must "look through forms to the substance and recognize that informal censorship may sufficiently inhibit" speech and "warrant injunctive relief." *Id.* at 67.  A "system" of pre-publication content "classification" thus "create[s] a prior restraint" because "warning" that speech could be penalized if it falls into a proscribed class is intended to result in self-censorship.  *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 n.8 (1975) (discussing *Interstate Circuit v. City of Dallas*, 390 U.S. 676, 678-88 (1968)).  Other "informal" methods "of coercion, persuasion, and intimidation" also amount to prior restraints if they achieve through self-censorship "the suppression of publications" the government "deem[s] objectionable." *Bantam Books*, 372 U.S. at 67.

AB 2273 establishes a prior restraint on speech in three ways.  *First*, it requires online providers, "[b]efore" presenting speech "to the public," to identify for the government and develop plans to "mitigate or eliminate" speech that is "harmful, or potentially harmful" to users under 18, and to "prioritize" speech that promotes such users' "well-being" and "best interests," as decided by the State.  Cal. Civil Code §§ 1798.99.29(b), 1798.99.31(a)(1)(A)-(B), (2).  *Second*, it requires providers to enforce their content moderation policies—i.e., block user-generated content—to the State's satisfaction, using content-based standards the State could not impose directly.  *Id.* § 1798.99.31(a)(9).  *Third*, it restrains providers from serving content to users unless the provider has verified the age of each user or tailored that content to an age "appropriate" level.  *Id.*

1  § 1798.99.31(a)(1)(B)(i), (a)(5).

2            **a.**      **The DPIA requirements effect a prior restraint.**

3         The DPIA requirements create a precondition to publication unprecedented in this country:

4  "Before" deciding what to publish, providers must prepare reports identifying state-specified ways

5  their speech might be deemed "harmful, or potentially harmful" to youth, propose "timed plan[s]"

6  to "mitigate or eliminate" any "potentially harmful" effects, and make these self-indictments

7  available to the State's chief law enforcement officer.  Cal. Civil Code § 1798.99.31(a)(1)-(4).

8         But the government cannot compel self-censorship by requiring speakers to author their

9  own indictments.  The Supreme Court's decision in *Interstate Circuit* is dispositive.  There, the

10  Court held invalid an ordinance requiring that, "before any initial showing of a film," exhibitors

11  provide the government "a proposed classification" assessing whether the film was "suitable for

12  young persons" under 16.  390 U.S. at 678.  Although proposing a "not suitable" classification did

13  not prevent showing the film, *id.* at 678-79, the Supreme Court held that the scheme still violated

14  the First Amendment because it pressured content creators to "choose nothing but … innocuous"

15  subject matter to exhibit.  *Id.* at 683-84; *see also Bantam Books*, 372 U.S. at 58-67, 71 & n.5

16  (invalidating "system of informal censorship" through which bookstores were urged not to

17  circulate books considered "objectionable" by youth morality commission that lacked enforcement

18  authority); *Se. Promotions*, 420 U.S. at 556 n.8 (system that required review and classification of

19  whether expressive works were "in the 'best interest' of the public" violated First Amendment).

20         AB 2273's reporting mechanisms are similarly unconstitutional.  By subjecting online

21  services to drastic penalties for failing to sufficiently review, identify, and "mitigate or eliminate"

22  "harmful" speech, AB 2273 coerces these services to err on the side of censorship.  *See, e.g.*,

23  Masnick Decl. ¶¶ 14-15, 18; Paolucci Decl. ¶ 18; Szabo Decl. ¶ 7.  Content creators too will be

24  pushed to create "innocuous" material rather "than run th[e] risk," *Interstate Circuit*, 390 U.S. at

25  683-84, that providers will deem their content "potentially harmful."  Such self-censorship is AB

26  2273's self-professed aim: It expressly declares that providers should tailor their online expression

27  to "the best interests" and "well-being of children."Cal. Civ. Code § 1798.99.29(a)-(b).

28  But "potentially harmful" speech is not among the categories of speech the government may

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

1  regulate.  And even laws that regulate unprotected categories of speech can be prior restraints—as

2  the Supreme Court found with respect to obscenity statutes in *Interstate Circuit* and

3  *Bantam Books*.  As the Court has held repeatedly, the government lacks "freewheeling authority

4  to declare new categories of speech outside the scope of the First Amendment."  *E.g.*, *United States*

5  *v. Stevens*, 559 U.S. 460, 472 (2010); *see also infra* § IV.A.2 (discussing how this also renders AB

6  2273 unconstitutionally overbroad).

7             **b.**      **The content policy enforcement rule effects a prior restraint.**

8        For similar reasons, AB 2273's requirements that providers block or remove all content

9  that violates their private house rules also constitutes a prior restraint.

10        Most online providers have adopted terms of service, content policies, and guidelines

11  governing use of their services.  These policies can vary significantly.  *See, e.g.*, Roin Decl. ¶¶ 11-

12  17; Cairella Decl. ¶¶ 15-17; Szabo Decl. ¶¶ 8-12 Rumenap Decl. ¶ 6.  For example, Reddit's

13  Content Policy states that Reddit "is a place for creating community and belonging, not for

14  attacking marginalized or vulnerable groups of people" and so users who "promote hate based on

15  identity of vulnerability will be banned."  Kumar Decl. Ex. 3.  Truth Social, in contrast, allows

16  users to report certain types of content—such as "content that depicts violence or threat of

17  violence"—but expresses a "preference" that "the removal of users or user-provided content be

18  kept to the absolute minimum."  *Id.* Ex. 4.  The New York Times requires the "use [of] respectful

19  language" and tells users (among other things) to "debate, but don't attack."  *Id.* Ex. 5.  The

20  Washington Post prohibits content that is "hateful," "contains advertising," is "in poor taste," or

21  "is otherwise objectionable."  *Id.* Ex. 6.  Such private house rules enable providers to build

22  communities and control their services through the exercise of discretion—and critically, virtually

23  all extend far beyond permissible government regulation.  As Congress recognized, online services

24  have discretion to restrict "material" that the provider "considers to be … objectionable, *whether*

25  *or not [the] material is constitutionally protected*."  47 U.S.C. § 230(c)(2) (emphasis added).

26        AB 2273's requirement that online services enforce their policies and community

27  guidelines is a form of proxy censorship and prior restraint because it empowers the government

28  to block third-party speech it cannot regulate directly.  That it does so by piggybacking on online

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

services' own content policies—which are unrestrained by the First Amendment—only underscores that the State seeks to impose extra-constitutional restraints. Courts have consistently rejected analogous attempts to disguise state censorship using laws that mandate enforcement of private rules.  In *Engdahl v. City of Kenosha*, 317 F. Supp. 1133 (E.D. Wis. 1970) for example, the court held that an ordinance incorporating film ratings into the city code was a prior restraint because "the judgment as to what [was] protected or unprotected" was entrusted to private entities "using standards and procedures, if any, known only to them."  *Id.* at 1136; *see also, e.g.*, *Swope v. Lubbers*, 560 F. Supp. 1328, 1334 (W.D. Mich. 1983) (similar); *MPAA v. Specter*, 315 F. Supp. 824, 825-26 (E.D. Pa. 1970) (invalidating law requiring film exhibitors to show films in accordance with movie industry standards).

AB 2273's enforcement requirement also creates a prior restraint because it forces services to err on the side of caution by blocking content that some (but not others) might consider problematic—such as by enforcing prohibitions on categories like "hateful," "objectionable," or "respectful" content.  "[I]ndirect discouragements" to intermediaries still create unconstitutional proxy censorship. *Am. Comm'cns Ass'n v. Douds*, 339 U.S. 382, 402 (1950); *see also* Seth F. Kreimer, *Censorship by Proxy: The First Amendment, Internet Intermediaries, and the Problem of the Weakest Link*, 155 U. PA. L. REV. 11, 48-50 (2006).  The government may not use such "subtle … interference" to accomplish a restriction of expression that it could not achieve through "heavy-handed frontal attack."  *Bates v. City of Little Rock*, 361 U.S. 516, 523-24 (1960); *accord Wash. Post v. McManus*, 944 F.3d 506, 517 (4th Cir. 2019).  The Supreme Court has applied this principle to reject similar attempts to press private parties into service as government censors.  *See Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 732, 753-60 (1996) (invalidating regulations requiring cable operators to restrict "patently offensive" programming); *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 806 (2000) (invalidating law deputizing cable operators to restrict channels "primarily dedicated to sexually[]oriented programming").  AB 2273 thus violates the First Amendment by converting online providers into "a corps of involuntary government surrogates" charged to "suppress[] speech" deemed harmful to minors.  *Midwest Video Corp. v. FCC*, 571 F.2d 1025, 1056 (8th Cir. 1978).

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### c.      The age verification rule effects a prior restraint.

AB 2273's age verification rule establishes a different, but equally unconstitutional, prior restraint on speech.   This rule subjects online services to a Hobson's Choice: they must (a) "[e]stimate" the age of minor users to a "reasonable level of certainty"—a task that would significantly impair users' ability to access online expression, *see* Roin Decl. ¶¶ 18-21; Cairella Decl. ¶¶ 12-14; Masnick Decl. ¶¶ 11-13; Paolucci Decl. ¶¶ 12-15; Szabo Decl. ¶ 15; or (b) subject "all" users to child-appropriate experiences (as the State choose to define them).   Cal. Civil Code § 1798.99.31(a)(5).   Both options restrain access to vast amounts of protected speech.

Providers that choose to verify their users' ages must impede access to constitutionally protected speech.   In view of AB 2273's vague standards for the level of age "certainty" required and significant penalties for misreading that standard, providers are likely to err on the side of robust age verification systems.   Szabo Decl. ¶ 15.   Such systems require collecting sensitive personal details—such as biometric information or legal identification, *see* Rumenap Decl. ¶¶ 7-8—that many users prefer not to share due to both privacy and security concerns.   *See* Utah State University Center for Growth and Opportunity, *Poll: Americans Don't Want To Share Their Photo ID To Tweet* (Feb. 1, 2023) (Kumar Decl. Ex. 7); Mike Masnick, *Age Verification Providers Say Don't Worry About California Design Code; You'll Just Have To Scan Your Face For Every Website You Visit*, Techdirt (Aug. 29, 2022) (Kumar Decl. Ex. 8); Jackie Snow, *Why Age Verification Is So Difficult for Websites*, Wall St. J. (Feb. 27, 2022) (Kumar Decl. Ex. 9).   Such systems also risk discriminating against users that lack official forms of identification and marginalized populations that desire greater privacy.   *See* UK Information Commissioner's Op. for Age Assurance for the Children's Code at 15 (Oct. 14, 2021) (Kumar Decl. Ex. 10) ("Age assurance may produce discriminatory outcomes" because it "usually depends on the user having ready access to official documentation" or "carries risks from algorithmic bias"); CNIL, *Online Age Verification: Balancing Privacy and the Protection of Minors*, (Sept. 22, 2022) (Kumar Decl. Ex. 11) ("[T]here is currently no solution [for online age verification] that satisfactorily meets [the] three requirements" of "sufficiently reliable verification, complete coverage of the population and respect for the protection of individuals' data and privacy and their security.").These systems are

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

also expensive, costing a dollar or more per verification, *e.g.*, Roin Decl. ¶ 24, which online providers may be unable to afford.  Moreover, the mere requirement that users log into an age-verified account makes it harder for them to access speech.

State-imposed barriers to accessing speech are a form of prior restraint.  The Third Circuit held as much in evaluating a similar regime in *ACLU v. Mukasey*, 534 F.3d 181, 196-97 (3d Cir. 2008). There, the court held invalid the Child Online Protection Act (COPA), which prohibited transmission of "harmful" speech to minors but allowed websites an affirmative defense if they deployed age verification measures.  *Id.*  The Third Circuit explained that the law, by pressuring services to age-verify users, would "deter[]" "many users who are not willing to access information non-anonymously" "from accessing the desired information," and would cause "[w]ebsite owners" to "be deprived of the ability to provide this information to those users." *Id.* (citation omitted). AB 2273's age verification rule suffers the same flaw.  *See also PSINet, Inc. v. Chapman*, 362 F.3d 227, 236-37 (4th Cir. 2004) (identification rules "may deter adults" from accessing speech); *ACLU v. Johnson*, 4 F. Supp. 2d 1029, 1033 (D.N.M. 1998), *aff'd*, 194 F.3d 1149 (10th Cir. 1999) (same); *Se. Booksellers Ass'n v. McMaster*, 371 F. Supp. 2d 773, 782-84 (D.S.C. 2005) (same).

But the law effects a prior restraint even if providers choose not to verify users' ages and instead apply the "protections afforded to children to all consumers."  Cal. Civ. Code § 1798.99.31(a)(5).  For those providers, the law restrains speech that both minors *and adults* are constitutionally entitled to receive.  The government cannot "reduce the adult population … to reading only what is fit for children" to protect children from ostensibly inappropriate speech. *Butler v. Michigan*, 352 U.S. 380, 381, 383 (1957).  "Minors [too] are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011). "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Id.* (citation omitted). And so requiring providers to censor information constitutes a prior restraint regardless whether the recipient is "an infant, a five-year old, or a person just shy of age seventeen," *Mukasey*, 534

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

F.3d at 191 (citation omitted), or even an adult. *See id.* (holding COPA invalid on similar grounds).

### 2.    AB 2273 is overbroad.

AB 2273 separately violates the First Amendment because it is overbroad.    The Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).  A law is "overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."*Stevens*, 559 U.S. at 473 (citation omitted). The "special attributes of Internet communication" require a particularly robust application of the doctrine, *Reno*, 521 U.S. at 863 (citation omitted), which AB 2273 fails on multiple levels.

First, AB 2273 is categorically overbroad because its very premise is that the internet as a whole must be "design[ed]" to "account [for] the unique needs" of children.  AB 2273 Findings and Declarations § 1(a)(2), (5).  This approach places the burden on all online providers to configure their services in a child-friendly way, rather than empower specific households with the controls and information they need to make content and privacy decisions for their children.  *E.g.*, Rumenap Decl. ¶ 11.  Such a medium-focused approach is inherently overbroad, particularly given that there are no minors in nearly two-thirds of California households.  *See* U.S. Census Bureau, *2020 ACS Survey: California: Families and Household Characteristics* (2020) (Kumar Decl. Ex. 12); *compare* 16 C.F.R. § 312.3(a)-(d) (COPPA Rule establishing a framework that empowers households, not providers, to make content and privacy decisions for children).  The government cannot "torch a large segment of the Internet" to protect children.  *Reno*, 521 U.S. at 882.  Doing so "burn[s] the house to roast the pig," *Butler*, 352 U.S. at 383, and the Supreme Court has repeatedly struck down internet regulations bearing this defect.  *See Reno*, 521 U.S. at 883; *Ashcroft v. ACLU*, 542 U.S. 656, 666-70 (2004) ("universal restrictions" on users to protect minors from obscenity was overbroad); *see also Butler*, 352 U.S. at 383-84 (invalidating ban on material "tending to the corruption of the morals of youth"); *Playboy*, 529 U.S. at 812 (invalidating regulation of cable TV because it applied "regardless of the presence or likely presence of children"); *Mukasey*, 534 F.3d at 207 (law that "effectively suppresses a large amount of speech that adults have a constitutional right to receive and to address to one another" was overbroad)

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(citation omitted).  AB 2273 fails for the same reason.

AB 2273 is also overbroad in numerous specific aspects.  Its application to any online feature "[l]ikely" to be accessed by anyone under 18, *see* Cal. Civil Code § 1798.99.30(a)(4), and its presumption that users are minors unless proven otherwise, *id.* § 1798.99.31(a)(5), mean that virtually all content—including blogs, book groups, and encyclopedias used mostly by and intended for adults—is subject to the law.  *See* Roin Decl. ¶¶ 11-16; Cairella Decl. ¶¶ 2, 6, 11; Masnick Decl. ¶¶ 2, 8, 15; Paolucci Decl. ¶ 6 (describing content likely to be subject to state supervision).  Further, AB 2273 applies the same restrictions to services accessed by 17-year-olds as to those accessed by 3-year-olds, *see* Cal. Civil Code § 1798.99.31(a)(5)-(6), and does not permit parents to opt out of the law's restrictions.  Yet the legislature admits "it is clear that the same data protection regime may not be appropriate for children of all ages[.]" AB 2273 Findings and Declarations § 1(a)(7).

AB 2273 also adopts a boundless conception of *what* speech must be restricted, including speech that cannot constitutionally be restricted even for minors.  The requirement that services enforce their own policies, *id.* § 1798.99.31(a)(9), will lead them to suppress swaths of protected speech that the State could not restrict directly.  *See supra* § IV.A.1.b.  The bar on using algorithms and user information to recommend or promote content will restrict a provider's ability to transmit protected speech based on the user's expressed interests.  And the law's restrictions on content that might be "detrimental" or "harmful" to a child's "well-being," *id.* § 1798.99.31(a)(1)(b), (b)(1), (3)-(4), (7), could restrict expression on any topic that happens to distress *any* child or teen.  This would include a range of important information children are constitutionally entitled to receive, such as commentary or news about the war in Ukraine, the January 6, 2021 insurrection at the United States Capitol, the 2017 "Unite the Right" rally in Charlottesville, school shootings, and countless other controversial, significant events.

More fundamentally, the "harm" the law seeks to address—that content might damage someone's "well-being"—is a function of human communication itself.  AB 2273 applies to, among other things, communications by teenagers on social media, who may say unkind things, insufficiently "like" another's posts, or complain harshly about events at school; the use of

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

language acceptable to some but not others; the omission of a "trigger warning"; and any other manner of discourse online. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B. L.*, 141 S. Ct. 2038 (2021) (Snapchat post "fuck cheer" made high school students "visibly upset"); *see also, e.g.*, Matt Ford, *President Obama on Political Correctness,* The Atlantic (Sept. 14, 2015) (Kumar Decl. Ex. 13).

But "speech cannot be restricted simply because it is upsetting" or "outrageous," even if it results in some harm. *See Snyder v. Phelps*, 562 U.S. 443, 450, 458 (2011) (protecting speech that "resulted in severe depression and had exacerbated pre-existing health conditions"). The First Amendment "shield[s]" speech "that in someone's eyes" could be "hurtful" because "we must tolerate" such speech to "provide adequate breathing space to the freedoms protected by the First Amendment." *Id.* at 458 (citations omitted); *e.g.*, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988) (First Amendment protects "outrageous" parody despite "adverse emotional impact"). Virtually *all* of the speech suppressed by AB 2273—not just a "substantial" amount—will exceed the law's "legitimate sweep," *Stevens*, 559 U.S. at 473 (citation omitted).

California has been here before. In *Brown*, the Supreme Court rejected the State's attempt to regulate violent video games, which sought to "create a wholly new category of content-based regulation … permissible only for speech directed at children" that allegedly caused psychological harm. 564 U.S. at 794. But "new categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated." *Id.* at 791. California did not have the "free-floating power to restrict the ideas to which children may be exposed" then, *id.* at 794, and it has no such power now. *See also IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020) (rejecting another attempt by California to exercise "freewheeling authority to declare new categories of speech outside the scope of the First Amendment") (citation omitted). AB 2273's effort to sanitize all online speech is equally overbroad and unconstitutional.

### 3.    AB 2273 is void for vagueness.

AB 2273 is also invalid because it rests on standards and phrases that are impermissibly vague. Vague laws "trap the innocent by not providing fair warning" of proscribed conduct, and invite "arbitrary and discriminatory application" by placing compliance at the whim of "ad hoc and subjective" regulators. *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th

Cir. 2001) (citations omitted).  A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).  Laws regulating expression face an even "more stringent" test, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (citation omitted), because they cause speakers "to steer far wider of the unlawful zone," *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022) (citation omitted).  Such laws must be drawn with "[p]recision," *Button*, 371 U.S. at 433, 438, and courts should "not hesitate[]" to invalidate them if they are not.  *Butcher*, 38 F.4th at 1169.

To begin, AB 2273's "likely to be accessed by [minors]" standard fails to provide sufficient notice of which specific services and features are subject to the law.  This is because several of the "indicators" that define the standard are vague, subjective, and undefined.  A service falls under the law, for example, if it is "determined, based on competent and reliable evidence regarding audience composition, to be routinely accessed by a significant number" of minors, Cal. Civil Code § 1798.99.30(b)(4).  But the law fails to define how many minors is "significant" and whether that number should be assessed in absolute terms or relative to the provider's user base. Nor is it clear how frequent access must be—and over what time period—to be "routine[]." *Id.*

The law's substantive standards suffer the same problem.  Again, the phrases "material detriment," "potentially harmful," "best interests of" minors, and "physical health, mental health, and well-being" are open-ended and subjective. *Id.* § 1798.99.31.  A child whose relative died of COVID-19 may find news about the pandemic profoundly upsetting and be "potentially harmed," whereas another child would not.  So, too, might a refugee who immigrated to California and sees photographs of the Ukraine war or crowds at the Mexico-U.S. border, or a teen who is trying to exercise more and sees a suggested TV episode to watch instead.  AB 2273 provides no notice whether such instances generate actionable "harm" or "material detriment."  Roin Decl. ¶¶ 11-17; Cairella Decl. ¶¶ 18-19; Masnick Decl. ¶ 15; Paolucci Decl. ¶¶ 16-19; Szabo Decl. ¶¶ 6-7. *Cf. Mukasey*, 534 F.3d at 205 (holding COPA unconstitutionally vague in part because it failed to incorporate existing constitutional limits on what might be considered "harmful to minors" so that "a Web publisher will be forced to guess" at the statute's meaning) (citation omitted).

This same uncertainty extends to AB 2273's requirement that providers estimate the age of minors to a "reasonable level of certainty appropriate to the risks that arise from the data management practices of the business," and to the law's prohibitions on "dark patterns."  Cal. Civ. Code § 1798.99.31(a)(5), (b)(7).  What "risks" arising from the provider's "data management practices" are relevant?  And what is a "reasonable" level of certainty "appropriate" to those risks? Providers cannot know.  *E.g.*, Cairella Decl. ¶ 12.  Nor can they discern when aspects of their user interfaces will be deemed to have had the "substantial effect of subverting or impairing [a minor's] autonomy, decision making, or choice" so as to qualify as a "dark pattern," Cal Civil Code § 1798.140(l), or when such an interface will be deemed to have led minors to provide information "beyond what is reasonably expected" or to take action "materially detrimental" to the minor's "physical health, mental health, or well-being."  Cal. Civ. Code § 1798.99.31(b)(7).

The First Amendment does not permit laws so "necessarily subjective."  *Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158, 1172 (C.D. Cal. 2009), *aff'd*, 638 F.3d 703 (9th Cir. 2011). Like the phrase "normal familial relations" in *United States v. Hall*, 912 F.3d 1224 (9th Cir. 2019), AB 2273's terms are "susceptible to many different interpretations" and "raise[] questions with no clear answers."  *Id.* at 1227; *see, e.g.*, *McCormack v. Herzog*, 788 F.3d 1017, 1031 (9th Cir. 2015) (law invalid because "the terms 'properly' and 'satisfactory' … lack precise definition"); *Hunt*, 601 F. Supp. 2d at 1171 (term "inextricably intertwined" void for vagueness where ordinance "neither attempt[ed] to define" it "nor provide[d] guidance by way of example").

Finally, AB 2273's application of a "harm" standard to *everyone* under 18 is vague because the meaning of "harm" will vary based on the age of particular users.  Content that might be considered harmful to an 8-year old might not be considered harmful to a 17-year old.  Yet AB 2273 requires providers to make this nuanced assessment among age groups without any guidance. In this respect, the law is again similar to COPA, which prohibited transmission of certain material deemed "harmful to minors," defined as anyone "under 17."  That approach was unconstitutionally vague in part because "materials that could have 'serious literary, artistic, political, or scientific value' for a 16-year-old would not necessarily have the same value for a three-year-old."  *Mukasey*, 534 F.3d at 205 (citation omitted). This vague "definition of 'materially harmful to minors'

impermissibly place[d] at risk a wide spectrum of speech that is constitutionally protected." *Id.* at 206 (citation omitted); *see also Brown*, 564 U.S. at 794 (state may restrict speech to minors only in "narrow and well-defined circumstances").  The same is true here.

AB 2273's panoply of vague terms leaves regulators boundless discretion to discriminate among services and to review and evaluate each service's practices without any disclosed criteria. Given the "absence of definitions" for "key phrases" in AB 2273, the State will be able to exercise its "discretion, subjectively," about any number of issues.  *Free Speech Coal. v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999) (child protection speech regulation void for vagueness on this basis), *aff'd sub nom. Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (legislature must "establish minimal guidelines to govern law enforcement") (citation omitted).  Such vague mandates "inevitably cause speakers "to steer far wider of the unlawful zone."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (cleaned up).

### 4.   AB 2273 regulates speech based on content and fails strict scrutiny.

In addition to these defects, AB 2273 is also an unconstitutional content-based regulation. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  Laws are content-based if they target the "message" of "particular subject matter," regulate speech "by its function or purpose," or "discriminate among viewpoints."  *Id.* at 163-64, 168-69. So are facially neutral laws "that cannot be justified without reference to the content of the regulated speech."  *Id.* at 164 (citation omitted).  And injecting the state into decisions about "what" content "should be published," or "the placement" of that content, is inherently content-based.  *Bursey v. United States*, 466 F.2d 1059, 1087 (9th Cir. 1972).

### a.   AB 2273 regulates speech based on content.

AB 2273 is content-based in many obvious respects.  The law's very premise—that providers must prioritize content that promotes the "well-being" of minors and take other actions to protect minors from "harmful" content—is content-based.  *See Ashcroft*, 542 U.S. at 670 (laws "designed to protect minors from viewing harmful materials" are inherently "content-based").

Individual provisions of AB 2273 are content-based as well.  The DPIA requirement

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"[m]andate[s] speech that a speaker would not otherwise make" and thus is "necessarily" content-based by "alter[ing] the content of the speech." *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 795 (1988); *e.g.*, *Volokh v. James*, 2023 WL 1991435, at *2, 4-5 (S.D.N.Y. Feb. 14, 2023) (enjoining law requiring internet services to implement and disclose policies related to "hateful conduct"). The mandate also requires content-based assessments about speech, such as whether content would be "materially detrimental" to the "health" or "well-being of a child," *id.* § 1798.99.31(b)(1), (7), or "in the best interests of children," *id.* § (b)(3), (4).  *See also Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 563-65, 568 (2011) (use of information restraints are speaker- and content-based).

The requirement that online services enforce their content policies, Cal. Civil Code § 1798.99.31(a)(9), also is content-based.  The State cannot determine whether providers have complied with this provision—for example, whether a provider has enforced against content "promot[ing] hate" or "in poor taste," *see* Kumar Decl. Ex.6—without referring to the content of speech.  This provision also usurps—on a content basis—a provider's own First Amendment right to decide how best to interpret and enforce its content policies.  *See O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-87 (N.D. Cal. 2022) ("decisions about what content to include, exclude, moderate, filter, label, restrict, or promote" are content-based and "protected by the First Amendment"); *accord NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196, 1210, 1213 (11th Cir. 2022).

Other parts of AB 2273 are also content-based.  Prohibitions on serving "materially detrimental" content, Cal. Civ. Code § 1798.99.31(b)(1), (7), and those that regulate based on whether content is "in the best interests of" minors, *see id.* § (a)(6), (b)(2)-(4), are content-based. Even the age verification provisions impose a sliding scale of age certainty based on the degree to which content is "risk[y]."  *See id.* § (a)(5), (b)(8).  Finally, the law carves out entire categories of speakers, including government and non-profit entities, based on an apparent preference for their speech.  *See* Cal Civil Code §§ 1798.99.30(a), 1798.140(d); *Sorrell*, 564 U.S. at 563-64 ("speaker-based" exemptions required application of strict scrutiny).

These provisions reflect the law's content-based purpose to "create a safer online space for children" by "disabling features" that "offer detrimental material."  AB 2273 Findings and Declarations § 1(a)(3), (8).  If the State were not interested in regulating speech based on content,

20

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

there would be no need to target "harmful, or potentially harmful, content," *id.* § 1798.99.31(a)(1)(B)(i); require enforcement of "community standards," *id.* § (a)(9); or exempt content decisions based on "the bests interests" of minors, *id.* § (a)(6), (b)(2)(B)(ii), (b)(3)-(4).

### b.   AB 2273 fails strict scrutiny.

"It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown*, 564 U.S. at 799 (citation omitted).  The State must show that AB 2273 is necessary to serve a compelling state interest and provides "the least restrictive means" of achieving that interest. *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).  The government bears the burden of proof, and "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy*, 529 U.S. at 813 (citation omitted).

The State has failed to show that AB 2273 is necessary to serve a compelling interest. While the well-being of children is a compelling interest in the abstract, the State must produce more than "mere conjecture" that the law is necessary to achieve that interest. *FEC v. Cruz*, 142 S. Ct. 1638, 1652-53 (2022) (citation omitted).  AB 2273 rests on the naked assertion that "the impact" of online speech "on children's well-being has become a focus of significant concern." AB 2273 Findings and Declarations § 1(a)(2).  The legislature failed to identify in this conclusory statement even a single harm or risk to children that the law is necessary to address.  Nor may the State "go fishing for a justification" by forcing online services to self-report some possible concern to the government.  *IMDb.com, Inc. v. Becerra*, 257 F. Supp. 3d 1099, 1102 (N.D. Cal. 2017), *aff'd*, 962 F.3d 1111 (9th Cir. 2020).  The State must "prove the existence of a problem" *before* burdening speech and provide "a more careful assessment and characterization of an evil" it seeks to avert "to justify" its "sweeping" regulation. *Playboy*, 529 U.S. at  820-21.

The State also cannot show that the law is the least restrictive means to achieve its purpose. COPPA, for example, is a less restrictive alternative to protecting children's privacy—tailoring protections to children under 13, regulating only those sites directed to children, and permitting parents to make decisions about their children's personal information.  15 U.S.C. §§ 6501 *et seq*. California has failed to identify why COPPA (or the CCPA) are inadequate.  *See, e.g.*, *Playboy*, 529 U.S. at 816 (allowing parent to "request" to block certain content was "less restrictive

---

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

alternative" to protect children from harmful speech); *Ashcroft*, 542 U.S. at 669 ("parental cooperation" was "less restrictive alternative" to do same). "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Playboy*, 529 U.S. at 816. The State's failure to consider the application or extension of existing, effective, and less-restrictive regulations is dispositive. *Id.* at 825-26; *see also Ashcroft*, 542 U.S. at 666-70 (upholding injunction where the government did not even try to satisfy least restrictive means test).

### B.   AB 2273 Violates The Commerce Clause.

AB 2273 also violates the "dormant" Commerce Clause, which limits the power of states to "directly control[]" or "unduly burden interstate commerce." *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc) (citations omitted). "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority … regardless of whether the statute's extraterritorial reach was intended by the legislature" or "whether or not the commerce has effects within the State." *Id.* (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)).  Even state laws that regulate only intrastate activities are impermissible when they "multipl[y] the likelihood" for "inconsistent obligations" across states, *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 583 (1986), and the resultant burden "is clearly excessive in relation to the putative local benefits" the regulations provide, *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

### 1.   AB 2273 unlawfully regulates extraterritorially.

The Commerce Clause prohibits a state from regulating when the "practical effect" is to "control conduct" "wholly outside" that state. *Healy*, 491 U.S. at 336.  AB 2273 does just that.

As the Second Circuit explained in *American Booksellers Foundation v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003), it is "difficult, if not impossible, for a state to regulate internet activities without projecting its legislation into other States."  The *Dean* court thus enjoined a law banning online speech "harmful to minors" because even if "Vermont aims to protect only Vermont minors," "the rest of the nation is forced to comply with its regulation." *Id.* at 103-104.  *Dean* followed *ACLU v. Johnson*, 194 F.3d 1149, 1160-61 (10th Cir. 1999), which enjoined a similar

law because "Internet speech is available everywhere" and the law contained "no express limitation confining" its reach "to communications … wholly within [the state's] borders." *See also PSINet*, 362 F.3d at 239-40 ("blanket regulation of Internet material" intended to "protect[] the physical and psychological well-being of minors" invalid because "[o]ne state simply cannot block [content] from … its own citizens without … affecting … citizens of other states").

Applying these authorities, district courts in the Ninth Circuit have enjoined internet regulations on this basis.  In *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1023 (E.D. Cal. 2017), the court blocked a California law requiring providers "anywhere in the country" to remove certain content on demand because the law neither "limit[ed] its application to California" nor "require[d] that websites" block content "only" for California users.  A Washington federal court likewise enjoined a law criminalizing certain online advertisements, even those "entirely outside of the state." *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1285-86 (W.D. Wash. 2012); *see also, e.g.*, *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 842 (M.D. Tenn. 2013) (same); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *11 (D.N.J. Aug. 20, 2013) (same).

AB 2273 violates the Commerce Clause because it has the same "practical effect." *Healy*, 491 U.S. at 336.  The law applies to *all* operations of a provider that does business in California, including operations wholly outside the State if any aspect of those operations could also reach a California user.  *See* Cal. Civ. Code §§ 1798.99.30(a), 1798.140(d), (i).  Under AB 2273, a video streaming website operated in Oregon by an Iowa-based business must alter its livestream to Illinoisans if it also streams content to Californians. AB 2273's authors make no secret of their goal to create "a global standard for the protection of youth online." *See* Press Release, Office of the Governor, *Governor Newsom Signs First-in-Nation Bill Protecting Children's Online Data and Privacy*, (Sept. 15, 2022) (Kumar Decl. Ex. 14).  But California cannot establish a global standard for online communication, and AB 2273's express "regulation of out-of-state" services "runs afoul" of this "simple, well-established constitutional rule." *Christies*, 784 F.3d at 1325.

### 2.   AB 2273 unduly burdens interstate commerce.

Even if AB 2273 were construed to not apply extraterritorially, the law would still be unconstitutional under the balancing test set forth in *Pike*, 397 U.S. at 142.

AB 2273 poses a substantial obstacle to interstate commerce because it "regulat[es] subjects that are in their nature national, or admit only of one uniform system, or plan of regulation." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88-89 (1987) (citation omitted). The internet is precisely such a subject. *See Johnson*, 194 F.3d at 1162 (internet "require[s] national regulation"); *McKenna*, 881 F. Supp. 2d at 1286 (same). Laws that threaten a patchwork of overlapping "inconsistent" internet speech regulations, like AB 2273, deter the free flow of information across state lines, *Brown-Forman*, 476 U.S. at 583, diminish the quality and quantity of online services (and the speech they host) through the suppression of "free competition" between rival providers, *H.P. Hood & Sons, Inc. v. DuMond*, 336 U.S. 525, 539 (1949), and invite the "economic Balkanization" the Commerce Clause seeks to prevent, *Camps Newfound I Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 577 (1997).

This is already happening. California enacted AB 2273 amid a proliferation of online speech regulations. At least 34 states have recently introduced or enacted bills to regulate online speech. *See* Rebecca Kern, *Push to Rein in Social Media Sweeps the States*, POLITICO (July 1, 2022) (Kumar Decl. Ex. 15). Some already-enacted laws pose direct conflicts, including with AB 2273. *Compare, e.g.*, HB 20 (Tex. 2021) *and* SB 7072 (Fla. 2021) (forces services *to publish* certain political speech) *with* Cal. Civil. Code § 1798.99.31(a)(9) (requires services to *remove* content and accounts that violate community standards) *and* AB A7865A (N.Y. 2022) (requires services to create processes to *remove* certain speech) (enjoined by *Volokh*, 2023 WL 1991435, *2). And at least 15 states—Florida, Kansas, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New Mexico, New York, Oregon, South Carolina, Texas, Utah, Virginia, and West Virginia—have proposed laws related to restricting internet speech available to minors. *See, e.g.*, HB 591 (Fla. 2023), SB 1739 (Ill. 2023), SB 222 (Kan. 2023), S404 (S.C. 2023), HB 896 (Tex. 2023), HB 311 (Utah 2023) (would require age verification and ban social media accounts, or certain kinds of social media, for minors); SB844 (Md. 2023), HD 2325 (Mass. 2023), HF1503 (Minn. 2023), A4919 (N.J. 2023), SB 319 (N.M. 2023), S3281 (N.Y. 2023), SB 196 (Or. 2023), HB 1688 & SB 1026 (Va. 2023), HB 2460 (W.Va. 2023) (mimicking all or parts of AB 2273). Other states have enacted or are considering laws restricting the collection of certain personal

information that would likely be needed to comply with AB 2273's age verification requirements—meaning AB 2273 could require services to violate other states' laws. *See, e.g.*, 740 Ill. Comp. Stat. 14/1 *et seq.*; SB 1238 (Ariz. 2023), SB 1085 (Haw. 2023), HB 33/SB 0169 (Md. 2023), HD 3053/SD 2218 (Mass. 2023), SF 954 (Minn. 2023), HB 467 (Miss. 2023), A1362 (N.Y. 2023), S2390 (N.Y. 2023), SB 339 (Tenn. 2023), H 121 (Vt. 2023).

Given AB 2273's broad reach, some providers report plans to self-censor content in all fifty states, eliminate some services altogether, or pause developing new offerings. *See* Masnick Decl. ¶¶ 17, 18; Paolucci Decl. ¶ 17. Much like the "worldwide" regulation enjoined in *American Libraries Association v. Pataki*, 969 F. Supp. 160, 179 (S.D.N.Y. 1997), AB 2273's global reach has generated a widespread "chilling effect"—"exponentially exacerbated" as other states "legislate [their] own requirements," *McKenna*, 881 F. Supp. 2d at 1283, 1285—that has begun to suppress interstate speech, much of it bearing no nexus to California.

On the flip side, AB 2273 would do little to achieve its "putative local benefits" compared to its far-ranging global censorship regime. *Pike*, 397 U.S. at 142. This is typical for online regulations that purport to protect minors from "harmful" speech, "given the vast number of other communication options available to a juvenile." *PSINet, Inc.*, 362 F.3d at 240 (law invalid on this basis, even if it did not regulate extraterritorially); *see also, e.g.*, *Johnson*, 194 F.3d at 1161-62 ("actual benefit conferred" by online speech regulation intended to protect minors "extremely small" because of other outlets for the speech); *McKenna*, 881 F. Supp. 2d at 1286; *Pataki*, 969 F. Supp. at 178. The State provides no factual findings to show that AB 2273 has the salutary effects it asserts. *Cf.* Rumenap Decl. ¶¶ 7-11; Roin Decl. ¶¶ 20, 25; Cairella Decl. ¶ 14; Masnick Decl. ¶¶ 12-13; Paolucci Decl. ¶¶ 12, 14-15; Szabo Decl. ¶¶ 5, 15 (AB 2273 will undermine privacy and harm children). The putative local benefits of AB 2273 have "not been proven," *PSINet, Inc.*, 362 F.3d at 240, and the government's unsupported assertions cannot overcome the law's "extreme burden on interstate commerce." *Johnson*, 194 F.3d at 1162 (citation omitted).

## C.    COPPA Preempts AB 2273.

Congress enacted COPPA to create uniform privacy standards applicable to websites directed to children under 13. State laws "inconsistent with" this framework are expressly

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

preempted. 15 U.S.C. § 6502(d).  AB 2273 is preempted by COPPA.

A statute is "inconsistent with" federal law if it imposes liability for conduct that would not violate federal law.  *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 326-27 (2016) (federal law preempted statute imposing duties "inconsistent with the [federal law's] central design"). State laws that impose the *same* restrictions as COPPA are permissible, but not those imposing new "obligations," "duties," or "requirements" that "differ" from what federal law "already proscribe[s]." *Jones v. Google LLC*, 56 F.4th 735, 740-41 (9th Cir. 2022).

At least two courts have found COPPA preempts state laws similar to AB 2273.  In *New Mexico ex rel. Balderas v. Tiny Lab Productions*, 457 F. Supp. 3d 1103, 1120-21 (D.N.M. 2020), the court found COPPA preempted a state's effort to impose liability on the collection of data from minors because the service lacked actual knowledge of the users' age and thus COPPA permitted the collection.  In *H.K. through Farwell v. Google LLC*, 595 F. Supp. 3d 702, 711 (C.D. Ill. 2022), the court held that COPPA preempted a claim under the Illinois Biometric Privacy Act because COPPA "broadly regulates the collection of children's personal information" and thus displaces conflicting state private causes of action.

AB 2273 is similarly preempted by COPPA.  The two laws' approaches to children's privacy online could hardly be more inconsistent.  "The primary goal of COPPA is to place parents in control over what information is collected from their young children online."  F.T.C., *Complying with COPPA: Frequently Asked Questions* (July 2020) (Kumar Decl. Ex. 16).  AB 2273 takes that parental control away and places a host of new and different state-imposed obligations on services. These requirements "fall squarely in COPPA's orbit," which "broadly regulates the collection of children's personal information."  *H.K.*, 595 F. Supp. 3d at 711.

AB 2273 is also preempted because it requires far more services to modify their offerings to account for children.  COPPA applies to websites "directed to children" or when a provider has "actual knowledge … it is collecting personal information from a child." 15 U.S.C. § 6502(a)(1). A website is "directed to children" if it is "targeted to children," a holistic evaluation based on factors such as "subject matter," "visual content," and "use of animated characters or child-oriented activities and incentives." 16 C.F.R. § 312.2.  A website is not "directed to children" if

(1) it does not "target children as its primary audience"; (2) "[d]oes not collect personal information from any visitor prior to collecting age information"; and (3) "[p]revents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without" notice and parental consent. *Id.*"Actual knowledge" exists "only when a site learns an individual user is a child," for example, "through the entry of a birthdate" or "current grade in school." *In re Alphabet Deriv. Litig.*, 2022 WL 1045642, at *1 (N.D. Cal. Apr. 7, 2022).

In contrast, AB 2273 regulates services "likely to be accessed by children," i.e., services that it is "reasonable to expect" "would be accessed by children." Cal. Civil Code § 1798.99.30(b)(4). Even accounting for the vaguely worded "indicators" for deciding if a service is "likely to be accessed by children," this standard sweeps in far more than COPPA. Indeed, just one of AB 2273's six indicators requires considering whether a service is "directed to children" under COPPA. *Id.* The others are broader. AB 2273 thus creates liability as to children under 13 for conduct COPPA permits, and so is "inconsistent with the methods of regulating, or treatment of, activities under the federal statute." *Jones*, 56 F.4th at 740.

AB 2273 cannot be saved even for minors age 13 to 17. The lack of a severability clause precludes any "presumption in favor of severance." *Cal. Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 270 (2011). And "an invalid provision must be 'grammatically, functionally, *and* volitionally separable'" to be severable. *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1120, 1124 (9th Cir. 2021) (quoting *Matosantos*, 53 Cal. 4th at 271). The age restriction in AB 2273 is not.

### D.    Section 230 Preempts AB 2273's Regulation Of Third-Party Speech.

Section 230 expressly preempts AB 2273's requirement that providers enforce their own published terms, as well as its restrictions on the use of personal information.

Section 230(c)(1) bars states from imposing liability on (1) an "interactive computer service" (2) in a manner that treats the service as the "publisher or speaker" of (3) "information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (citations omitted). Section 230(c)(2) "provides an additional shield from liability" for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider considers to be obscene or otherwise objectionable."

1   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009).

2   To advance Congress's intent that these protections "further First Amendment … interests

3   on the Internet," *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003), Section 230 expressly

4   preempts "inconsistent" state laws.  47 U.S.C. § 230(e)(3).  State legislatures accordingly cannot

5   second-guess online providers' decisions about what kind of third-party content should be

6   published, promoted, or removed.  And because "close cases" implicating Section 230 "must be

7   resolved in favor of" preemption, *Fair Hous. Council of San Fernando Valley v. Roommates.com,*

8   *LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc), courts have not hesitated to find "expressly

9   preempt[ed]" state regulations that even arguably violate Section 230's protections.  *McKenna*,

10  881 F. Supp. 2d at 1273 (Section 230 "expressly preempted" a Washington law that "impos[ed]

11  liability on" internet services for publishing third-party advertisements).

12  Section 230 preempts AB 2273's requirement that online providers enforce their

13  "published terms, policies, and community standards."  Cal. Civ. Code § 1798.99.31(a)(9).  Under

14  Section 230(c)(1), a state may not "condition" an online service's "ability … to operate" upon its

15  "willingness to agree to enforce local laws" regulating user content.  *Airbnb, Inc. v. City of Boston*,

16  386 F. Supp. 3d 113, 123 n.11 (D. Mass. 2019).  In *Airbnb*, the court held invalid a Boston

17  ordinance requiring home-sharing platforms to "monitor and remove third-party content" at the

18  government's behest "or suffer complete banishment from Boston."  *Id.* at 123.  The court found

19  the ordinance's content "[e]nforcement provision" raised "a threat of liability arising from the

20  publication of third-party content for purposes" forbidden by Section 230(c)(1).  *Id.*  AB 2273 has

21  the same forbidden effect.  It empowers the State to oversee enforcement of providers'

22  discretionary content rules, limiting their discretion to review, edit, promote, and decide whether

23  to publish user content.  *Barnes*, 570 F.3d at 1104-05.

24  AB 2273's enforcement requirement also is preempted by Section 230(c)(2), which

25  protects providers' ability to take "good faith" discretionary actions "to restrict access to or

26  availability of material that" they "consider[] to be … objectionable." 47 U.S.C. § 230(c)(2).  AB

27  2273, by contrast, requires publishers to either over-moderate—censoring protected speech—or

28  forgo discretionary moderation altogether, lest they be accused of failing to apply their content

28

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   rules adequately.  This is the very moral hazard Section 230 exists to prevent.

2        Section 230(c)(1) also preempts AB 2273's restrictions on how services may use minors'

3   information in publishing third-party content.  Section 230(c)(1) precludes state laws that would

4   hold online services liable for "deciding whether" to publish third-party content.  *Roommates.com*,

5   521 F.3d at 1170-71.  But that is precisely what AB 2273 does: AB 2273 holds services liable for

6   publishing "materially detrimental" content using minors' information and preferences; imposes

7   liability for publishing content informed by user preferences that is not in a minor's "best

8   interests"; and through its "dark patterns" provision, arguably prohibits the publication of any

9   third-party content through routine recommendation tools like autoplay and newsfeed features if

10  doing so would "encourage" minors to take any action the State finds "materially detrimental" to

11  their "well-being."  Cal Civil Code § 1798.99.31(b)(1), (3), (4), (7).

12       Section 230(c)(1)'s "broad immunity" preempts state laws to the extent they impose *any*

13  liability on an online service "for publishing content provided primarily by third parties." *Carafano*

14  *v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). "[W]hat matters" is the nature of

15  "the duty" the state law creates. *Barnes*, 570 F.3d at 1102. Where, as here, the duty involves

16  decisions "to publish" third-party content, the law is preempted, no matter who the audience. *See,*

17  *e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 416-20 (5th Cir. 2008) (Section 230 barred liability

18  based on allowing communications between a minor and an adult who later assaulted her).

19  Sections 1798.99.31(b)(1), (3), (4) and (7) are thus expressly preempted by Section 230.  And even

20  if they were not, they would be impliedly preempted as they "frustrate[] the purposes" and "stand

21  as an obstacle to the accomplishment and execution of the full purposes and objectives" of

22  Congress.  *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022) (citation omitted).

23  **V.   NETCHOICE AND ITS MEMBERS WILL SUFFER IRREPARABLE HARM.**

24       NetChoice and its members will suffer irreparable harm if AB 2273 is not enjoined.  The

25  "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

26  irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  This is true "even if," as here, the

27  "chill on ... free speech rights" derives from the "threat of enforcement." *Cuviello v. City of*

28  *Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019).  NetChoice has thus established irreparable injury by

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"demonstrating the existence of a colorable First Amendment claim." *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (citation omitted).  In addition, a movant establishes irreparable injury "by being forced to comply with an unconstitutional law or else face financial injury or enforcement action."  *County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017); *Am. Trucking Ass'n v. City of L.A.*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).  Because NetChoice members will suffer immediate expressive harms and must imminently expend considerable sums to comply with AB 2273, AB 2273 exposes NetChoice and its members to irreparable injuries.  *See* Roin Decl. ¶¶ 20, 24-25; Cairella Decl. ¶¶ 14, 19, 21-22; Masnick Decl. ¶¶ 12, 14-19; Paolucci Decl. ¶¶ 16-17; Szabo Decl. ¶¶ 5-7, 12-17.  In any event, even purely "monetary injuries may be irreparable" in constitutional challenges where, as here, sovereign immunity would bar later recovery of those damages. *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 93 (9th Cir. 2009); *e.g.*, *Iowa Pork Producers Ass'n v. Bonta*, 2022 WL 1042561, at *15 (C.D. Cal. Feb. 28, 2022).  Irreparable harm is thus established. *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129, 1140 (E.D. Cal. 2011).

## VI.    EQUITY AND THE PUBLIC INTEREST SUPPORT AN INJUNCTION.

The last two factors support an injunction here because the State "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  This is especially true in First Amendment cases.  *See Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 749 (9th Cir. 2012).  The public has a "fundamental interest in the protection of all people's constitutional rights," *Klein v. City of Laguna Beach*, 381 F. App'x 723, 727 (9th Cir. 2010) (citation omitted), particularly when, as here, permitting "enforcement" of the challenged regulation "would infringe not only the free expression interests of plaintiffs, but also the interests of other people subjected to the same restrictions," *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (citation omitted).  The "balance of equities and the public interest" accordingly "tip sharply" in favor of an injunction.  *Publius*, 237 F. Supp. 3d at 1028 (citation omitted).

## VII.   CONCLUSION

NetChoice respectfully requests an order preliminarily enjoining AB 2273.

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    DATED: February 17, 2023                    DAVIS WRIGHT TREMAINE LLP

2
                                                 By: */s/ Ambika Kumar*
3                                                    Ambika Kumar

4                                                Attorneys for Plaintiff
                                                 NetChoice LLC, d/b/a NetChoice
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899