# EXHIBIT 7

2/15/23, 10:03 PM
Case 5:22-cv-08861-BLF   Document 29-8   Filed 02/17/23   Page 2 of 4
Poll: Americans Don't Want to Share Their Photo ID to Tweet



- About
    - Staff
    - Contributing Scholars
    - Our Board
    - Academic Integrity
- Students
- Research
    - Technology and Innovation
    - Environmental Stewardship
    - Immigration
- News
    - Podcast
    - Scholar Commentary
- Benchmark
- Search
- Donate

Feb 01, 2023

# Poll: Americans Don't Want To Share Their Photo ID To Tweet





Taylor Barkley
Technology and Innovation Director

## Introduction

Legislators in Texas and Utah have introduced bills that would ban minors from using social media. Utah's two bills, SB 152 and HB 311, would ban minors under 18 barring parental or guardian permission. Texas's legislation, HB 896, would outright ban all users under the age of 18 from using social media services. All would add age verification requirements for every user in each state. According to the sponsoring politicians and proponents, these bills are driven by the belief that these services have an overwhelmingly negative impact on teenage users.

The effects of social media on teens are discussed elsewhere. No matter what one thinks of that research, the age verification requirements within these bills would have an effect on the lives of all residents in each state. Those policies are more easily analyzed. Additionally, recent survey data from the Center for Growth and Opportunity and YouGov sheds some insight on how Americans perceive these requirements.

## Age Verification is Key

In order to effectively comply with the requirements set forth in these bills and any future legislation aimed at protecting a certain age group, social media companies would need to know the ages of their users. This is known as "age verification" and is common practice for many websites, apps, and social media platforms. There are multiple methods of verifying user ages and identification, all with trade-offs, but these bills would require the use of government issued identification such as passports, drivers licenses, or birth certificates. They avoid requiring minors to submit identification documents.

In the case of the Utah bills, in addition to government identification, parents or legal guardians would be required to submit statements that show the person submitting the information is a parent or legal guardian and a statement of consent from the parent that the minor is in their care. These statements must then be verified by the platform. The Texas legislation is simpler in its language and states: "A social media platform shall verify the age of the account holder by requiring the account holder to provide a copy of the account holder's driver's license along with a second photo showing both the account holder and the driver's license in a manner that allows the social media company to verify the identity of the account holder."

For all these bills, any Texas or Utah resident who wants to open or retain their social media account would be required to submit proof of identification in the form of a government ID.

## What do Americans think about complying with the age verification requirements in these bills?

In a recent poll, the CGO asked Americans if they are "comfortable sharing a government identification document like a driver's license with social media companies in order to verify age." The survey found that 2 out of 3 of Americans are not comfortable sharing their identification document with social media companies. 1 in 10 Americans were unsure.

We also asked survey participants if they are "comfortable sharing my child's government identification documents with social media companies in order to verify age." On this question, 7 out of 10 Americans were uncomfortable with that prospect. A little over 1 in 10 Americans were unsure.

Another option for age verification is biometric identification, which uses methods like fingerprint data, facial recognition, voice stamps, or other markers unique to each individual's body. Although these three bills do not require biometric identification methods, Americans were equally uncomfortable with those practices. Of course, these practices are common with smartphone technology deploying facial recognition to unlock phones. However, because of trade-offs and historically low accuracy, they are more experimental when it comes to publicly accessible websites and apps. Currently Meta is experimenting with these methods for its Facebook Dating service and Instagram app. They have partnered with a third party firm, Yoti, that scans faces via the camera on the smartphone and analyzes facial patterns to estimate age. Based on the analysis, users would then have or lose access to the platform.

Nonetheless, 2 out of 3 Americans are not comfortable sharing their biometric information with platforms and nearly 7 out of 10 were not comfortable with their children using such methods.

It is worth noting that there are differences of opinion on these questions based on the age of the survey respondent. Generally speaking, our survey revealed that 18-44 year olds are slightly more amenable to age verification requirements than 45-65+ year olds. Yet the fact remains that no age demographic segment favors either verification method for themselves or their children. In fact, across all age groups, disapproval rises when asked about applying these methods to their children.

## What this Means

The issue of age verification is the key issue for the implementation of each of these bills. Without age verification, these bills and their policies could not be targeted at minors. Although other means of age verification could be required, the options are few, all have trade-offs, and most remain deeply unpopular. Americans are less than enthusiastic about how they will come into contact with policy-made-reality.

Aside from anyone's opinion on the matter, there remain troubling issues with age verification requirements when required by the government for widely accessible platforms.

These restrictions for minors and age verification requirements for adults could be violations of speech rights for each age group in Utah and Texas. Each bill would require all users to provide an ID or be banned, effectively, from using social media. Such requirements might constitute an unreasonable burden. While the issue might be clearer for adults, there is Supreme Court and lower court precedent for the speech rights of minors. Government age restriction of substances like alcohol or tobacco or activities like driving, are not helpful analogs because those activities do not entail clearly defined, constitutionally protected rights.

These bills would create a barrier to access that could leave many benefits unrealized. For example, in a TEDx talk from 2020, Dylan Huey gave a talk called "Social Media Saved My Life," telling the story of how it was a lifeline for him during difficult middle school years. It also opened up new creative outlets he would have otherwise missed. Were he to live in a state with the kinds of restrictions outlined in these bills, all the positive outcomes Dylan outlined might not be possible.

For all three bills, there is a risk of identification forgery or misuse much like raising the drinking age to 21 did to increase the number of fake identifications. Social media platforms are immensely popular among teen users and have become woven into their daily lives–which is part of the motivation for these bills. Should they become law, those realities would not disappear. It's not inconceivable that minors in each state would find various means of circumventing the law thus putting themselves and the companies at risk. Policymakers, teens, parents, and caregivers would then continue a cat and mouse game of increasingly onerous identification requirements that, instead of bolstering mental health of teens, will only create a generation of experts at dodging the law.

Given all these factors, policymakers in Utah, Texas, other states, and the federal government would do well to listen to the opinions of Americans.
CGO scholars and fellows frequently comment on a variety of topics for the popular press. The views expressed therein are those of the authors and do not necessarily reflect the views of the Center for Growth and Opportunity or the views of Utah State University.

## Get the latest from The CGO!

**Name**

First

Last

**Email** *(Required)*

Subscribe

**Related Publications**

- CGO Tech Poll
- Section 230: A Retrospective
- Is Common Carriage a Good Framework for Social Media Platforms?

**Related News**

- Americans' attitudes toward tech and media
- CGO-YouGov poll shows increasing politicization of tech sector
- Chart: How do American's feel about tech?

**Related Blogs**

- The state of data privacy in 2023
- Do social media platforms extract value from consumers?
- Everybody in politics hates how social media works
- Are Utah's social media bills the path forward?

**Focuses**

- Technology and Innovation

**States**

- Texas
- Utah

**Contact**

- 3525 Old Main Hill
  Logan, UT 84322-3525
- 655 New York Ave NW
  Washington, DC 20001

General: hello@thecgo.org
Press: media@thecgo.org

- News
- Donate
- Students
- Research
- Careers

© 2023 The Center for Growth and Opportunity. 501(c)(3). EIN: 45-3564310