ROBERT E. DUNN (Bar No. 275600)
EIMER STAHL LLP
99 S. Almaden Blvd, Suite 600
San Jose, CA 95113
408.889.1690
rdunn@EimerStahl.com

MEGAN L. BROWN (*pro hac vice pending*)
KATHLEEN E. SCOTT (*pro hac vice pending*)
BOYD GARRIOTT (*pro hac vice pending*)
WILEY REIN LLP
2050 M St NW
Washington, DC 20036
202.719.7000
mbrown@wiley.law
kscott@wiley.law
bgarriott@wiley.law

*Attorneys for Amicus Curiae,*
*Chamber of Commerce of the United States of America*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice, | Case No. 5:22-cv-08861-BLF |
| Plaintiff, | **BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity, | Judge: Honorable Beth Labson Freeman |
| Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTEREST OF AMICUS CURIAE ............................................................................... 1

INTRODUCTION ............................................................................................................ 2

ARGUMENT ................................................................................................................... 3

    I.      Congress Expressly Preempted State Laws That Regulate Children's Privacy Differently Than COPPA ................................................................... 3

    II.     COPPA Expressly Preempts AB 2273 Because AB 2273 Is Inconsistent With COPPA ..................................................................................................... 9

          A.    AB 2273's "Likely-To-Be-Accessed" Standard Is Inconsistent With COPPA ................................................................................................ 9

          B.    AB 2273's Age Trigger Is Inconsistent With COPPA. ...................... 11

          C.    AB 2273's Compliance Obligations Are Inconsistent With COPPA. . 12

    III.    AB 2273 Is Preempted In Its Entirety Because Its Inconsistent Provisions Are Not Severable ..................................................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Johnson,*
  194 F.3d 1149 (10th Cir. 1999) ...........................................................................6

*Acosta v. City of Costa Mesa,*
  718 F.3d 800 (9th Cir. 2013) ...........................................................................14

*Am. Librs. Ass'n v. Pataki,*
  969 F. Supp. 160 (S.D.N.Y. 1997)......................................................................6

*Arellano v. Clark Cnty. Collection Serv., LLC,*
  875 F.3d 1213 (9th Cir. 2017) ............................................................................6

*Atay v. Cnty. of Maui,*
  842 F.3d 688 (9th Cir. 2016) ..............................................................................4

*Aylward v. SelectHealth, Inc.,*
  35 F.4th 673 (9th Cir. 2022) ...............................................................................3

*New Mexico ex rel. Balderas v. Tiny Lab Prods.,*
  457 F. Supp. 3d 1103 (D.N.M. 2020) ..................................................................7

*CSX Transp., Inc. v. Easterwood,*
  507 U.S. 658 (1993)............................................................................................4

*Fraley v. Facebook, Inc.,*
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ...............................................................11

*Garcia v. City of Los Angeles,*
  11 F.4th 1113 (9th Cir. 2021) ...........................................................................14

*H.K. through Farwell v. Google LLC,*
  595 F. Supp. 3d 702 (C.D. Ill. 2022) ..................................................................7

*Hotel Emps. & Rest. Emps. Int'l Union v. Davis,*
  21 Cal.4th 585 (1999) .......................................................................................14

*Hubbard v. Google LLC,*
  508 F. Supp. 3d 623 (N.D. Cal. 2020) .................................................................7

*Jevne v. Superior Ct.,*
  35 Cal. 4th 935 (2005) .................................................................................14, 15

*Jones v. Google LLC,*
  56 F.4th 735 (9th Cir. 2022) ...............................................................................7

*Manigault-Johnson v. Google, LLC*,
   No. 18-cv-1032, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) ...................................................7

*Mont v. United States*,
   139 S. Ct. 1826 (2019) ........................................................................................................12

*Nat'l R.R. Passenger Corp. v. Su*,
   41 F.4th 1147 (9th Cir. 2022) ................................................................................................3

*Qwest Commc'ns Inc. v. City of Berkeley*,
   433 F.3d 1253 (9th Cir. 2006) .............................................................................................14

*Santa Barbara Sch. Dist. v. Superior Ct.*,
   13 Cal. 3d 315 (1975) .........................................................................................................15

**Constitution, Statutes, and Regulations**

U.S. Const. art. VI, cl. 2 ...........................................................................................................3

Children's Online Privacy Protection Act, Pub. L. No. 105-277,
   112 Stat. 2681 (1998) (codified at 15 U.S.C. §§ 6501–06) .................................................2

   § 6501.........................................................................................................9, 10, 11, 12

   § 6502.................................................................................................................. *passim*

   § 6503..................................................................................................................5, 6

   § 6504..................................................................................................................5

   § 6505..................................................................................................................4

Cal. Civ. Code

   § 1798.99.29...................................................................................................10, 14

   § 1798.99.30...................................................................................................10, 11, 15

   § 1798.99.31...................................................................................................12, 13

16 C.F.R. § 312.2 ...............................................................................................................9, 10

16 C.F.R. §§ 312.4–312.6 ......................................................................................................12

**Legislative Materials**

144 Cong. Rec. S11657 (Oct. 7, 1998) ............................................................................5, 12, 13

144 Cong. Rec. S11658 (Oct. 7, 1998) ......................................................................................5

144 Cong. Rec. S8483 (July 17, 1998) ......................................................................................5

*S. 2326, Children's Online Privacy Protection Act of 1998: Hearing Before the Subcomm. on Commerce, Sci., and Transp.*, 105th Cong. (1998) ............................4, 6, 11, 12

S. 2326, 105th Cong. (1998) .........................................................................4, 9, 11, 12

S. 1628, 117th Cong. (2021) ........................................................................................9

S. 2918, 117th Cong. (2021) ........................................................................................9

S. 3663, 117th Cong. (2022) ........................................................................................9

S. 395, 118th Cong. (2023) ..........................................................................................8

H.R. 5439, 117th Cong. (2021) ....................................................................................9

H.R. 5630, 117th Cong. (2021) ....................................................................................8

H.R. 6056, 117th Cong. (2021) ....................................................................................8

78 Fed. Reg. 3,971 (Jan. 17, 2013) ..............................................................................7

84 Fed. Reg. 35,842 (July 25, 2019) .........................................................................7, 8

87 Fed. Reg. 74,056 (Dec. 2, 2022) .............................................................................8

**Other Authorities**

Amicus Br. of FTC, *Fraley v. Batman*, No. 13-16819 (9th Cir. Mar. 20, 2014) ........................11

*Children's Privacy*,
   FTC, https://www.ftc.gov/business-guidance/privacy-security
   (last visited Feb. 24, 2023) ....................................................................................8

*COPPA Safe Harbor Program*,
   FTC, https://www.ftc.gov/enforcement/coppa-safe-harbor-program
   (last visited Feb. 24, 2023) ....................................................................................8

FTC Takes Action Against Company Formerly Known as Weight Watchers for
   Illegally Collecting Kids' Sensitive Health Data (Mar. 4, 2022),
   https://www.ftc.gov/news-events/news/press-releases/2022/03/ftc-takes-action-
   against-company-formerly-known-weight-watchers-illegally-collecting-kids-
   sensitive.................................................................................................................8

Ariel Fox Johnson, *13 Going On 30: An Exploration of Expanding COPPA's
   Privacy Protections To Everyone*, 44 Seton Hall Legis. J. 419 (2020) ....................8

Notice, FTC Seeks Additional Public Comment on Advertising to Kids in Digital
   Media (Aug. 23, 2022), https://downloads.regulations.gov/FTC-2022-0054-
   0001/content.pdf ...................................................................................................8

Statement of the Federal Trade Commission on Education Technology and the
Children's Online Privacy Protection Act (May 19, 2022),
https://www.ftc.gov/legal-library/browse/policy-statement-federal-trade-
commission-education-technology-childrens-online-privacy-protection ................................8

# INTEREST OF AMICUS CURIAE

The Chamber of Commerce of the United States is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a substantial interest in the resolution of this case because it implicates the stability of the Internet economy. Many of the Chamber's members participate in marketing and advertising products and services over the Internet to the public at large, a group that inherently includes children. The Chamber's members are thus intimately familiar with and profoundly affected by the regulatory regimes in this area. As such, the Chamber possesses unique insight into the problems that will result if California is permitted to disturb the deliberate approach that Congress struck in regulating the collection of children's personal information on the Internet.

Indeed, the Internet is a thriving ecosystem, but it is also a delicate one. Few aspects are more delicate than children's privacy. Everyone wants to see children enriched by innovative and educational online services. At the same time, children need to be specially protected from unscrupulous practices. It follows that sound regulation of websites and online services directed to children involves a difficult balancing act—one that balances the desire to protect children against the desire to allow children to fruitfully engage with online content. Reasonable people can always disagree about how exactly the balance should be struck, but all should agree that it needs to be struck, carefully and definitively, at the national level so that all concerned can ascertain the "rules of the road" around the country and can conduct business accordingly.

Allowing the California Age-Appropriate Design Code Act ("AB 2273") to stand would undermine these rules of the road. For decades, businesses have devoted significant time and effort to developing compliance programs for the federal Children's Online Privacy Protection Act ("COPPA"), a nationwide preemptive children's privacy standard. California's law would upend

these efforts by instituting an inconsistent and unworkable children's privacy regime.  Because the Internet is not constrained by state boundaries, AB 2273 will cast its onerous compliance shadow across the entire country.  This statute is the exact type of law that Congress sought to preempt under the federal standard.

The Chamber respectfully submits that its views on the implications of this case shed important light on the correct resolution of the preemption claim presented here.  No counsel for a party authored any part of this brief.  No entity or person, other than amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## **INTRODUCTION**

Congress chose to enact a uniform federal scheme for children's online privacy in COPPA.  *See* Pub. L. No. 105-277, §§ 1301–08, 112 Stat. 2681, 2681-728–35 (1998) (codified at 15 U.S.C. §§ 6501–06).  Congress's decisions were deliberate and borne of legislative compromise.  Congress did not subject to heightened regulation any website that happened to be accessed by a child, but only those websites that are directed to children or that knowingly collect personal information from children.  Congress likewise chose to regulate online practices related to children under the age of 13 after carefully considering using other ages as the cutoff.  And rather than regulating through rigid technical requirements, Congress instead empowered parents through a flexible notice and consent regime, fleshed out through Federal Trade Commission ("FTC") regulation and industry-driven safe harbors.

Congress chose to protect these detailed choices with an express preemption provision.  Congress recognized that a patchwork of 50 state children's privacy laws would render its statutory scheme unworkable and create profound difficulties within the Internet economy.  It thus provided: "No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section."  15 U.S.C. § 6502(d).  The plain text of this provision prohibits States from regulating children's privacy differently than COPPA.  That commonsense reading is confirmed by COPPA's statutory structure

and legislative history, which establish that States are limited to enforcing federal children's online privacy standards, rather than promulgating their own. Indeed, any contrary reading would render ineffective COPPA's safe harbor scheme.

California's Age-Appropriate Design Code Act ("AB 2273") runs afoul of COPPA's express preemption scheme by imposing liability for activities where COPPA does not. It adopts a new threshold standard—"likely to be accessed"—that by its own terms imposes liability for online practices related to children's privacy that would not trigger liability under COPPA. It imposes liability on practices related to minors over the age of 13, despite Congress's intentional choice not to impose liability for such practices. And it adopts numerous compliance obligations that impose liability where COPPA does not. Because these provisions are expressly preempted and are not severable from the rest of the statute, this Court should hold that AB 2273 is preempted in its entirety.

## ARGUMENT

### I.   CONGRESS EXPRESSLY PREEMPTED STATE LAWS THAT REGULATE CHILDREN'S PRIVACY DIFFERENTLY THAN COPPA.

Under the Constitution's Supremacy Clause, federal law "shall be the supreme Law of the Land," the "Laws of Any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "Congress may displace state law through express preemption provisions." *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680 (9th Cir. 2022) (citations and quotations omitted). Where "a federal statute includes an express preemption provision, the task of statutory construction must in the first instance focus on the plain wording of the clause." *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022) (citations and quotations omitted). "[T]he surrounding statutory framework" and "Congress's stated purposes in enacting the statute" may also inform "whether the state law at issue falls within the scope of the preemption clause." *Id.* at 1152–53 (citations and quotations omitted).

COPPA's express preemption clause directly addresses California's attempt to regulate children's online privacy. It provides: "No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with

3

an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section."  15 U.S.C. § 6502(d).

The plain language of the clause establishes an expansive preemptive effect.  States are prohibited from "impos[ing] *any* liability" on "activities or actions" if (1) those activities or actions are "in connection with an activity or action described" by COPPA, and (2) the imposition of liability is "inconsistent with the treatment of those activities or actions under" COPPA.  *See id.* (emphasis added); *accord Atay v. Cnty. of Maui*, 842 F.3d 688, 701 (9th Cir. 2016) (distilling text of preemption provision into constituent elements).  In other words, state law may not regulate children's privacy differently than COPPA.  The sweeping nature of this "plain wording" "contains the best evidence of Congress' pre-emptive intent."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

The legislative context confirms this reading of the unambiguous text.  Although the initial bill did not include an express preemption clause, *see* S. 2326, 105th Cong. (1998), it was added after regulated parties argued that it was "crucial that the legislation include language to ensure that the Federal standard created [by COPPA] will provide uniform treatment and will prohibit States from imposing liability under an inconsistent standard."  *S. 2326, Children's Online Privacy Protection Act of 1998: Hearing Before the Subcomm. on Commerce, Sci., and Transp.*, 105th Cong. 22 (1998) ("Senate Hearing") (statement of Jill Lesser, Director, Law and Public Policy, Assistant General Counsel, America Online, Inc.).  Congress thus instructed the FTC, at that agency's urging, to promulgate regulations that set forth "*uniform* privacy protections."  *Id.* at 12 (prepared statement of FTC Chairman Robert Pitofsky) (emphasis added); *accord* 15 U.S.C. § 6502(b), (d).

This understanding of the express preemption clause is further reinforced by the statutory structure.  Consider first COPPA's treatment of the FTC, as compared to the States.  Congress vested the FTC with both rulemaking authority to flesh out the requirements of COPPA's regulatory scheme, 15 U.S.C. § 6502(b), as well as enforcement authority, *id.* § 6502(c).  Congress also expressly provided that "[n]othing . . . in [COPPA] shall be construed to limit the authority of the Commission under any other provisions of law."  *Id.* § 6505(e).  Taken together, Congress

1    authorized the FTC to take the lead in both shaping and enforcing federal children's privacy rules,

2    and expressly preserved its existing authority.

3            By contrast, Congress defined a role for the States in regulating children's online privacy

4    that was sharply limited to enforcement.  States may bring civil actions to enforce "regulation[s] *of*

5    *the Commission*," *id* § 6504(a)(1) (emphasis added), but lack the authority to promulgate their own

6    regulations or polices.  Further, the FTC may intervene in any state enforcement suit, *id.* § 6504(b),

7    thus ensuring federal supervision even for States' limited enforcement role.   In addition to

8    preempting "inconsistent" state laws, *id.* § 6502(d), Congress preserved only a defined set of state

9    enforcement powers:  "conduct[ing] investigations," "administer[ing] oaths or affirmations," and

10   "compel[ling] the attendance of witnesses or the production of documentary and other evidence,"

11   *id.* § 6504(c).  COPPA's preemption clause thus makes express what is already contemplated by the

12   statutory scheme:  the FTC may make and enforce rules, and the States may only enforce them.

13           The legislative history confirms that Congress intended for the States to act only in an

14   enforcement role.  As the bill's sponsor, Senator Richard Bryan (D-NV), explained, "[t]he FTC

15   must *come up with* [children's privacy] rules" to effectuate Congress's intent, while "[t]he bill

16   permits States' attorneys general to *enforce* the act."   144 Cong. Rec. S8483 (July 17, 1998)

17   (emphases added).  Indeed, the express preemption clause was added to make clear that "State

18   Attorneys General may enforce violations of the FTC's rules," but "state and local governments

19   may not [] impose liability for activities or actions covered by [COPPA] if such requirements would

20   be inconsistent with the requirements under [COPPA] or Commission regulations implementing

21   [COPPA]."  144 Cong. Rec. S11658 (Oct. 7, 1998) (statement of Sen. Bryan).  These bifurcated

22   regulatory and enforcement roles "were worked out carefully with the participation of the marketing

23   and online industries, the Federal Trade Commission, privacy groups," and other stakeholders.  *Id.*

24   at S11657.

25           Indeed, Congress spoke clearly when it wanted to allow other entities to shape children's

26   privacy rules.  Under COPPA's safe harbor provision, "representatives of the marketing or online

27   industries" or "other persons" may promulgate "self-regulatory guidelines," compliance with which

28   "satisf[ies] the requirements of regulations issued under" COPPA.  15 U.S.C. § 6503(a), (b)(2).  The

FTC may "approve[]" these guidelines though "notice and comment," and the FTC's approval or disapproval is subject to judicial review. *Id.* § 6503(b), (c).  This scheme confirms Congress's intent to carefully define the entities responsible for crafting children's privacy rules and to subject those entities' rules to FTC oversight.

If States were instead permitted to promulgate their own children's privacy rules, it would render ineffective this safe harbor framework.  Congress required the FTC to "provide incentives for" complying with approved guidelines, and those "incentives shall include provisions for ensuring that a person will be deemed to be in compliance with the requirements of the regulations under" COPPA "if that person complies with [approved] guidelines." *Id.* § 6503(b)(1), (2).  But if States could layer on new and different children's privacy requirements, there would be little incentive for businesses to voluntarily comply with an FTC-approved safe harbor because being "deemed to be in compliance" with COPPA would mean little in a world with 50 different children's privacy laws.  Indeed, Congress added the express preemption clause in response to concerns that the "safe harbors could prove ineffective if companies find themselves subject to a myriad of inconsistent State laws relating to children's privacy online."  Senate Hearing, 105th Cong. 21–22 (statement of Jill Lesser).  Because different state children's privacy requirements would "thwart enforcement of [COPPA] and undermine its purpose," *Arellano v. Clark Cnty. Collection Serv., LLC*, 875 F.3d 1213, 1218 (9th Cir. 2017), such differing laws are expressly preempted.

Congress's uniform children's privacy scheme is consistent with its overarching policy of subjecting the Internet's rules of the road to federal control.  When Congress enacted COPPA in 1998, it was well aware that "[t]he Internet" "requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations." *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 182 (S.D.N.Y. 1997).  Because the Internet "requir[es] national regulation," A*CLU v. Johnson*, 194 F.3d 1149, 1162 (10th Cir. 1999), Congress preempted *all* children's privacy regulations that are inconsistent with COPPA.  In the words of the preemption clause, any inconsistent law "in connection with" children's privacy must give way to protect Congress's deliberate choices, including both where it did—and did not—choose to "impose any liability." *See* 15 U.S.C. § 6502(d).  This overarching federal policy confirms that COPPA's preemption clause

6

means what it says:  States may not impose children's online privacy regimes that differ from the federal standard.

Caselaw confirms that States may not regulate children's privacy differently than COPPA. In *New Mexico ex rel. Balderas v. Tiny Lab Productions*, 457 F. Supp. 3d 1103 (D.N.M. 2020), the District of New Mexico found that a plaintiff's "state law claims [we]re preempted by the plain language of COPPA" where the state law would have allowed the plaintiff to state a claim for collecting children's information without "actual knowledge" of collection.  *Id.* at 1120–21.  Noting that COPPA requires "an actual knowledge standard," the court held that the state law claims were preempted because "COPPA preempts state law that treats like conduct differently."  *Id.*  Similarly, in *H.K. through Farwell v. Google LLC*, 595 F. Supp. 3d 702 (C.D. Ill. 2022), a court found that an Illinois law was "preempted by COPPA" where the Illinois law "and COPPA ha[d], at minimum, different notice and data retention requirements."  *Id.* at 709–11.

The Ninth Circuit, in *Jones v. Google LLC*, 56 F.4th 735 (9th Cir. 2022), recently reaffirmed that "contradictory state law requirements, or requirements that stand as obstacles to federal objectives" are "inconsistent" with, and thus preempted by, COPPA.  *Id.* at 740 (en banc petition pending).  Although *Jones* did not find preempted "state-law causes of action that are *parallel to*, or proscribe the *same conduct* forbidden by, COPPA," *id.* at 741 (emphasis added); *but see Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 629–32 (N.D. Cal. 2020) (Freeman, J.); *H.K. through Farwell*, 595 F. Supp. at 709–11; *Manigault-Johnson v. Google, LLC*, No. 18-cv-1032, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019), it left no doubt that COPPA preempts laws with "requirements" or "duties" that "differ" from the federal standard, *see Jones*, 56 F.4th at 740–41 (citations and quotations omitted).

Congress's choices do not prevent the development of new children's online privacy regulations.  Rather, it requires their promulgation at the federal level.  Indeed, the FTC has previously amended its COPPA regulations, *see* Children's Online Privacy Protection Rule, Final Rule Amendments, 78 Fed. Reg. 3,971 (Jan. 17, 2013), and is considering further changes, *see* Request for Public Comment on the Federal Trade Commission's Implementation of the Children's Online Privacy Protection Rule, Regulatory Review; Request for Public Comment, 84 Fed. Reg.

35,842 (July 25, 2019); Notice, FTC Seeks Additional Public Comment on Advertising to Kids in Digital Media (Aug. 23, 2022), https://downloads.regulations.gov/FTC-2022-0054-0001/content.pdf; *accord* Ariel Fox Johnson, *13 Going On 30: An Exploration of Expanding COPPA's Privacy Protections To Everyone*, 44 Seton Hall Legis. J. 419, 428 (2020) ("One of COPPA's biggest benefits is the Commission's rulemaking authority, which allows COPPA to stay up to date via APA-style rulemaking[.]").   Just last year, the FTC released a policy statement interpreting the COPPA Rule in the context of education technology.  *See* Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act (May 19, 2022), https://www.ftc.gov/legal-library/browse/policy-statement-federal-trade-commission-education-technology-childrens-online-privacy-protection.   And the FTC has approved six COPPA safe harbor programs.  *See COPPA Safe Harbor Program*, FTC, https://www.ftc.gov/enforcement/coppa-safe-harbor-program (last visited Feb. 24, 2023).

The FTC also does not hesitate to enforce the federal rules.  *See, e.g.*, FTC, Press Release, FTC Takes Action Against Company Formerly Known as Weight Watchers for Illegally Collecting Kids' Sensitive Health Data (Mar. 4, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/03/ftc-takes-action-against-company-formerly-known-weight-watchers-illegally-collecting-kids-sensitive ("The settlement order requires WW International and Kurbo to delete personal information illegally collected from children under 13, destroy any algorithms derived from the data, and pay a $1.5 million penalty.").  In addition, the FTC uses its general unfair-and-deceptive authority to regulate privacy practices not covered by COPPA's children-specific rules. *See, e.g.*, *Children's Privacy*, FTC, https://www.ftc.gov/business-guidance/privacy-security (last visited Feb. 24, 2023); Petition for Rulemaking of the Center for Digital Democracy, Fairplay, et al., Request for Comment, 87 Fed. Reg. 74,056 (Dec. 2, 2022) (considering rules for minors under unfair-and-deceptive authority).

Congress may also change children's online privacy protections.  Indeed, there is a pending bill in the current Congress to amend COPPA by creating a right to deletion.  *See* S. 395, 118th Cong. (2023).  Other recent bills have proposed modifying COPPA's parental notice provision as applied to a child's school.  *See* H.R. 6056, § 201(a), 117th Cong. (2021); H.R. 5630, 117th Cong.

(2021).  Others, like the KIDS Act, would increase regulation around certain advertising practices.  *See* H.R. 5439, 117th Cong. (2021); S. 2918, 117th Cong. (2021).  And others still—like the Kids Online Safety Act and the Children and Teens' Online Privacy Protection Act—have proposed significant overhauls that would adopt some requirements similar to those contemplated by California's law.  *See* S. 3663, 117th Cong. (2022); S. 1628, 117th Cong. (2021).  Ultimately, even if the adoption of new children's online privacy standards is warranted, the State may not proceed without going through the appropriate federal forum.

*     *     *

In sum, Congress deliberately and expressly chose to preempt all state regulation of children's online privacy that differs from the COPPA standard.  The law's approach to children's privacy regulation may evolve, but only through Congress, the FTC, or the agency's safe harbor program.

## II.   COPPA EXPRESSLY PREEMPTS AB 2273 BECAUSE AB 2273 IS INCONSISTENT WITH COPPA.

### A.   AB 2273's "Likely-To-Be-Accessed" Standard Is Inconsistent With COPPA.

In COPPA, Congress chose to regulate "website[s] or online service[s] directed to children," 15 U.S.C. § 6501(10)(A), and operators with "actual knowledge that [they are] collecting personal information from a child," *id.* § 6502(a)(1).  Congress exempted websites and services that "solely" "refer[] or link[]  to a commercial website or online service directed to children by using information location tools, including a directory, index, reference, pointer, or hypertext link." *Id.* § 6501(10)(B).  Through rulemaking, the FTC has also identified considerations for "determining whether" a service or website "is directed to children." 16 C.F.R. § 312.2.  This rule exempts websites or services that, *inter alia*, "[p]revent[] the collection, use or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with [COPPA's] notice and parental consent provisions." *Id.*

Congress's "directed to children" standard was deliberate.  COPPA initially defined this term using a multifactor test, comprised of vague indicators, such as a website's "tone," "message," or other undefined "characteristic."  *See* S. 2326, 105th Cong. § 2(11).  That draft also did not

9

provide for exemptions from its definition.  *See id.*  Through careful legislative compromise, however, Congress replaced this approach with COPPA's current statutory standard.

AB 2273, by contrast, adopts a "likely to be accessed by children" standard, Cal. Civ. Code § 1798.99.30(b)(4), that uses a vague, multifactor test like the one Congress considered and rejected. This standard is fatally at odds with COPPA.  Indeed, AB 2273 expressly declares as its purpose to regulate "not only" "online products and services specifically *directed at* children,"—*i.e.*, the COPPA standard—but "all online products and services [children] are likely to access."  *Id.* § 1798.99.29 (emphasis added).  Consistent with that intent, the statutory definition of "likely to be accessed by children" expressly sweeps broader than COPPA.  To determine whether content is "likely to be accessed by children"—and thus subject to AB 2273—California uses a confusing set of six indicators, including that "[t]he online service, product, or feature is directed to children as defined by [COPPA]."  *Id.* § 1798.99.30(b)(4)(A).  But because there are five other indicators, *see id.* § 1798.99.30(b)(4)(B)–(F), AB 2273 deliberately regulates activity that would not trigger COPPA's standard.  For example, if "evidence" indicates that a service is "accessed by a significant"—but undefined—"number of children," *id.* § 1798.99.30(b)(4)(B), it can fall within AB 2273's scope, even if that access is incidental, rather than as a result of being "directed" or "targeted" to children, 15 U.S.C. § 6501(10)(A).  Further, AB 2273 does not include the express carveouts in COPPA for websites and services that solely link to other websites and services, 15 U.S.C. § 6501(10)(B), or that ensure compliance with COPPA's parental consent requirements for users who identify themselves as under age 13, 16 C.F.R. § 312.2.

AB 2273's contradictory standard falls squarely within the scope of COPPA's express preemption provision.  Practices related to children's privacy permitted under COPPA's statutory standard may trigger liability under AB 2273's standard.  As a result, AB 2273 is designed to "impose" "liability" for activities and actions "in connection with" children's privacy in a way "that is inconsistent with the treatment of those activities or actions under" COPPA. 15 U.S.C. § 6502(d). This threshold standard is thus expressly preempted.

**B.**   **AB 2273's Age Trigger Is Inconsistent With COPPA.**

COPPA regulates the privacy of "individual[s] under the age of 13."  15 U.S.C. § 6501(1).
The "age of 13" cutoff was no idle choice.  Congress initially proposed regulating the privacy of
"individual[s] under the age of *16*."  S. 2326, 105th Cong. § 2(1) (emphasis added).  But legislators
raised questions about whether "the legislation should cover kids over 13," noting that perhaps "a
16-year-old should be able to inquire about religion, politics, or products without being constrained
by a notification requirement."  Senate Hearing, 105th Cong. 13 (statement of Sen. Burns); *see id.*
at 16 (statement of Sen. Bryan) (same).  Stakeholders likewise advocated that "any legislation in
this area should be limited to children under 13," flagging issues with "restricting the ability of teens
to access important information."  *Id.* at 21 (statement of Jill Lesser).  Congress ultimately agreed
and—though careful legislative compromise—declined to regulate the privacy of individuals age
13 and older.  Although some have since proposed regulating individuals over the age of 13, *see,*
*e.g.*, S. 1628, 117th Cong. § 3(a)(5) (2022), those efforts have not carried the day.

AB 2273 is inconsistent with Congress's deliberate choice to limit children-specific privacy
regulation to individuals under age 13.  AB 2273 regulates the privacy of all individuals "who are
under 18 years of age."  Cal. Civ. Code § 1798.99.30(b)(1).  AB 2273 thus "impose[s]" "liability"
for online activities related to the privacy of minors ages 13 through 17, which "is inconsistent with
the treatment of those activities or actions under" COPPA.  15 U.S.C. § 6502(d).  Because of this
inconsistency, AB 2273's imposition of liability for online activities related to the privacy of
individuals age 13 and older is expressly preempted.  *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d
939, 948 (N.D. Cal. 2013) (Seeborg, J.) ("Because COPPA expressly preempts state requirements
that are inconsistent . . . it could bar any efforts by plaintiffs to use state law to impose a parental
consent requirement for minors over the age of 13." (cleaned up)), *aff'd sub nom. Fraley v. Batman*,
638 F. App'x 594 (9th Cir. 2016).

It is no answer to claim that COPPA's preemptive reach does not extend to teenagers because
they "fall outside the statute's scope."  *Contra* Amicus Br. of FTC at 8, *Fraley v. Batman*, No. 13-
16819 (9th Cir. Mar. 20, 2014).  COPPA preempts regulating not only "an activity or action
described" in COPPA but all matters "*in connection with*" those activities or actions.  15 U.S.C.

11

§ 6502(d) (emphasis added).   As the Supreme Court has "often recognized," the phrase "'in connection with'" typically "bear[s] a 'broad interpretation.'"   *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (collecting cases).   While online practices related to teenagers' privacy were deliberately excluded from children-specific regulation, *compare* S. 2326, 105th Cong. § 2(1), *with* 15 U.S.C. § 6501(1), those practices are plainly "connect[ed] with" COPPA's regulation of minors' privacy.   A contrary reading would undermine Congress's goal of uniform children's privacy rules, *see supra* Section I, and would not respect "Congress' choice to employ the more capacious phrase 'in connection with.'"   *Mont*, 139 S. Ct. at 1833.

### C.   AB 2273's Compliance Obligations Are Inconsistent With COPPA.

COPPA's regulatory centerpiece is "parental consent."   144 Cong. Rec. S11657 (Oct. 7, 1998) (statement of Sen. Bryan).   Congress's overarching goal was to "enhance parental involvement in a child's online activities."   *Id.*   COPPA's drafters recognized that legislation was "not" "the total end of what [Congress was] trying to do," Senate Hearing, 105th Cong. 13 (statement of Sen. Burns), but rather a means to "empower the parents," who would "exercise some judgment and some discretion about" their kids' online activities, *id.* at 13–14 (statement of FTC Chairman Pitofsky).   As a result, COPPA is light on prescriptive requirements and instead relies on parental consent as its touchstone.   *See* 15 U.S.C. § 6502(b); 16 C.F.R. §§ 312.4–312.6.

In stark contrast to this approach, AB 2273 imposes a litany of rigid compliance obligations that require different conduct than COPPA's flexible, parental consent-based regime.   These include requirements to complete and maintain a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by children, Cal. Civ. Code § 1798.99.31(a)(1), (3), (4); to mitigate any risk to children arising from data management practices, *id.* § 1798.99.31(a)(2); to estimate the age of child users "with a reasonable level of certainty" and employ appropriate corresponding data management practices, *id.* § 1798.99.31(a)(5); to offer a "high level of privacy" by default, absent a "compelling reason," *id.* § 1798.99.31(a)(6); to publish and enforce "privacy information, terms of service, policies, and community standards," *id.* § 1798.99.31(a)(7), (9); to provide an "obvious signal" when a child is being monitored or tracked, *id.* § 1798.99.31(a)(8); and to provide "tools" to exercise privacy rights, *id.* § 1798.99.31(a)(10).

12

In addition to these affirmative requirements, AB 2273 imposes prohibitions that outlaw conduct that is legal under COPPA. Under these prohibitions, among others, regulated entities may not "[p]rofile a child by default" absent certain exceptions, *id.* § 1798.99.31(b)(2); use a child's personal information for certain purposes, absent a "compelling reason," *id.* § 1798.99.31(b)(3), (4), (8); and collect any precise geolocation information, unless it is "strictly necessary" or without providing an "obvious sign" while collecting, *id.* § 1798.99.31(b)(5), (6).

These compliance obligations are inconsistent with COPPA. For example, if a business, in California's opinion, does not estimate the age of its users with sufficient "certainty," *id.* § 1798.99.31(a)(5), or fails to employ adequate "community standards," *id.* § 1798.99.31(a)(9), it may be held liable under AB 2273. But because these obligations do not appear in COPPA, a business would not be held liable under the federal standard. Thus, if businesses engage in COPPA-compliant online practices that run afoul of AB 2273's differing compliance obligations, AB 2273 will "impose" "liability" for those activities, which is—by definition—"inconsistent with the treatment of those activities or actions under" COPPA. 15 U.S.C. § 6502(d). These requirements are thus expressly preempted by COPPA.

This commonsense conclusion is buttressed by the statutory structure and legislative history. Consider, for example, AB 2273's ban on collecting "precise geolocation information" unless it is "strictly necessary," regardless of parental consent. Cal. Civ. Code § 1798.99.31(b)(5). Under this provision, it is unclear if or how a teenager could use his geolocation data to call a ride service app or track his running routes. That result is exactly what Congress sought to avoid. COPPA sought to "accomplish[]" its "goals in a manner that preserves the interactivity of children's experience on the Internet and preserves children's access to information in this rich and valuable medium." 144 Cong. Rec. S11657 (Oct. 7, 1998) (statement of Sen. Bryan). That is why COPPA forewent rigid prohibitions and instead incorporated parental notice and consent as its touchstone.

AB 2273 undermines Congress's goal of a flexible, parental consent-based regime by imposing rigid compliance obligations. While some state legislators may wish that COPPA or the FTC imposed more or different requirements related to children's online privacy, the solution is not

1    to create state-specific obligations and liabilities that conflict with the specific and deliberate

2    balance taken by federal law.  Rather, the proper forum for these changes is through Congress.

3    **III.    AB 2273 IS PREEMPTED IN ITS ENTIRETY BECAUSE ITS INCONSISTENT PROVISIONS ARE NOT SEVERABLE.**

4

5            Severability is a question of state law.  *Qwest Commc'ns Inc. v. City of Berkeley*, 433 F.3d

6    1253, 1259 (9th Cir. 2006), *overruled on other grounds by Sprint Telephony PCS, L.P. v. Cnty. of*

7    *San Diego*, 543 F.3d 571 (9th Cir. 2008).  Under California law, an "invalid part" of a statute "can

8    be severed if, and only if, it is grammatically, functionally, and volitionally separable."  *Jevne v.*

9    *Superior Ct.*, 35 Cal. 4th 935, 960 (2005) (citations and quotations omitted); *see Garcia v. City of*

10   *Los Angeles*, 11 F.4th 1113, 1120 (9th Cir. 2021).  A provision "is grammatically separable if it is

11   distinct and separate and, hence, can be removed as a whole without affecting the wording of any

12   of the measure's other provisions."  *Jevne*, 35 Cal. 4th at 960–61 (citations and quotations omitted).

13   "It is functionally separable if it is not necessary to the measure's operation and purpose."  *Id.* at

14   961 (citations and quotations omitted).  Finally, "it is volitionally separable if it was not of critical

15   importance to the measure's enactment."  *Id.* (citations and quotations omitted).

16           The preempted provisions of AB 2273 are not severable because they are not functionally

17   or volitionally separable.  Here, AB 2273's threshold scoping terms—"child" and "likely to be

18   accessed by children"—are preempted.  *See supra* section II.A, B.  Without these terms, the statute

19   simply makes no sense.  The entire point of the statute is for "*children*" to "be afforded protections"

20   by regulating "services they are *likely to access*."  Cal. Civ. Code § 1798.99.29 (emphasis added).

21   These foundational terms are plainly "necessary to the [law]'s operation and purpose."  *Hotel Emps.*

22   *& Rest. Emps. Int'l Union v. Davis*, 21 Cal.4th 585, 613 (1999) (citations omitted).  In addition, it

23   would strain credulity to suggest that the California legislature "would have separately considered

24   and adopted [the rest of the statute] in the absence" of these key scoping terms that go to the statute's

25   very purpose.  *See Acosta v. City of Costa Mesa*, 718 F.3d 800, 818 (9th Cir. 2013) (cleaned up).

26           The analysis is the same for the remaining provisions.  Virtually every substantive obligation

27   imposed by AB 2273 regulates the use of children's data differently than COPPA and is thus

28   preempted.  *See supra* section II.C.  Absent those obligations, all that would remain of AB 2273 is

     a declaration of purpose, a handful of definitions, and a working group.  That is not a statute but a

                                                     14

legislative carcass.  To the extent this Court finds these provisions preempted only as to children under age 13—though it should not—the preempted provisions would still not be grammatically, functionally, or volitionally separable.  The statute would not be grammatically separable because the age threshold—"under 18 years of age," Cal. Civ. Code § 1798.99.30(b)(1)—is written such that it "cannot be cured by excising any word or group of words."  *Santa Barbara Sch. Dist. v. Superior Ct.*, 13 Cal. 3d 315, 330–31 (1975).  And if AB 2273 applied only to individuals age 13 and older, it would create a situation where data practices for older children were subject to *more* state scrutiny than data practices for younger children.  Such an outcome would be irrational and fly in the face of the statute's declaration that "children of *all ages*" should be covered by the law.  AB 2273 § 1(a)(7) (emphasis added).  In sum, because the remaining provisions "are not functionally or volitionally separable," AB 2273 "as a whole [is] preempted."  *Jevne*, 35 Cal. 4th at 962.

## CONCLUSION

For the foregoing reasons, this Court should hold that AB 2273 is expressly preempted by COPPA.

Dated: February 24, 2023                    Respectfully Submitted,

/s/ Robert E. Dunn
Robert E. Dunn (Bar No. 275600)
**EIMER STAHL LLP**
99 S. Almaden Blvd, Suite 600
San Jose, CA 95113
408.889.1690
rdunn@EimerStahl.com

Megan L. Brown (*pro hac vice pending*)
Kathleen E. Scott (*pro hac vice pending*)
Boyd Garriott (*pro hac vice pending*)
**WILEY REIN LLP**
2050 M St NW
Washington, DC 20036
202.719.7000
mbrown@wiley.law
kscott@wiley.law
bgarriott@wiley.law

*Attorneys for Amicus Curiae,*
*Chamber of Commerce of the United States*
*of America*

1

2

## **CERTIFICATE OF SERVICE**

3        **I HEREBY CERTIFY** that on February 24, 2023, I electronically filed the foregoing with

4    the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all

5    counsel of record.

6

7                                                                    /s/ Robert E. Dunn
                                                                     Robert E. Dunn
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28