AMBIKA KUMAR (*pro hac vice*)
  ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

DAVID M. GOSSETT (*pro hac vice*)
  davidgossett@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
meenakshikrishnan@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200

ROBERT CORN-REVERE (*pro hac vice*)
  bob.corn-revere@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473

Attorneys for Plaintiff
NETCHOICE, LLC d/b/a NetChoice

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice,<br><br>Plaintiff,<br><br>v.<br><br>ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity,<br><br>Defendant. | Case No. 5:22-cv-08861-BLF<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      July 27, 2023<br>Time:      1:30 PM<br>Dept.:     Courtroom 3 – 5th Floor<br><br>Action Filed: December 14, 2022 |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     NETCHOICE WILL PREVAIL ON THE MERITS. ......................................... 1

    A.      AB 2273 Violates The First Amendment. ............................................... 1

        1.      AB 2273 regulates speech, not conduct. ....................................... 1

        2.      AB 2273 establishes a system of prior restraint ............................ 3

        3.      AB 2273 is overbroad. ................................................................... 6

        4.      AB 2273 is void for vagueness ...................................................... 7

        5.      AB 2273 regulates speech based on content and fails strict scrutiny ........... 9

            a.      AB 2273 regulates speech based on its content. ............................. 9

            b.      AB 2273 fails strict scrutiny ......................................................... 10

    B.      AB 2273 Violates The Commerce Clause. ............................................ 13

        1.      AB 2273 unduly burdens interstate commerce. ............................ 13

        2.      AB 2273 regulates beyond state lines. ......................................... 14

    C.      COPPA Preempts AB 2273 ................................................................... 15

    D.      Section 230 Preempts AB 2273's Regulation of Third-Party Speech ................... 16

III.    OTHER REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE MET. ........ 16

IV.     THE WHOLE LAW MUST BE ENJOINED ................................................... 17

V.      CONCLUSION ................................................................................................ 17

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ACLU v. Johnson,*

5

    194 F.3d 1149 (10th Cir. 1999) ............................................................................... 13

6

*ACLU v. Mukasey,*

    534 F.3d 181 (3d Cir. 2008) .................................................................................. 5, 6

7

*Am. Amusement Mach. Ass'n v. Kendrick,*

8

    244 F.3d 572 (7th Cir. 2001) ................................................................................ 6, 12

9

*Am. Booksellers Found. v. Dean,*

10

    342 F.3d 96 (2d Cir. 2003) ...................................................................................... 14

11

*Am. Commc'ns Ass'n v. Douds,*

    339 U.S. 382 (1950) .................................................................................................. 4

12

*Ark. Writers' Project, Inc. v. Ragland,*

13

    481 U.S. 221 (1987) .................................................................................................. 3

14

*Ashcroft v. ACLU,*

15

    542 U.S. 656 (2004) ............................................................................................... 6, 9

16

*Backpage.com, LLC v. Dart,*

    807 F.3d 229 (7th Cir. 2015) .................................................................................... 4

17

*Bantam Books, Inc. v. Sullivan,*

18

    372 U.S. 58 (1963) .................................................................................................... 4

19

*Barnes v. Yahoo!, Inc.,*

20

    570 F.3d 1096 (9th Cir. 2009) ................................................................................ 16

21

*Bartnicki v. Vopper,*

    532 U.S. 514 (2001) .................................................................................................. 3

22

*Bates v. City of Little Rock,*

23

    361 U.S. 516 (1960) .................................................................................................. 4

24

*Bigelow v. Virginia,*

25

    421 U.S. 809 (1975) ................................................................................................ 14

26

*Boos v. Barry,*

    485 U.S. 312 (1988) ................................................................................................ 10

27

*Bride v. Snap Inc.,*

28

    2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ........................................................ 16

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) ................................................................................................*passim*

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ............................................................................... 7, 8

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987) .................................................................................................... 14

*Denver Area Educ. Telecomm. Consortium v. FCC*,
   518 U.S. 727 (1996) ................................................................................................. 13

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) .................................................................................. 10

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ................................................................................................. 14

*Ent. Software Ass'n v. Foti*,
   451 F. Supp. 2d 823 (M.D. La. 2006) ..................................................................... 4

*Forbes v. Napolitano*,
   236 F.3d 1009 (9th Cir. 2000) ................................................................................. 8

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) ................................................................................... 8

*G.K. Ltd. Travel v. City of Lake Oswego*,
   436 F.3d 1064 (9th Cir. 2006) ............................................................................... 11

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ................................................................................... 5

*Greater L.A. Agency on Deafness, Inc. v. CNN*,
   742 F.3d 414 (9th Cir. 2014) ........................................................................... 13, 15

*H.K. through Farwell v. Google LLC*,
   595 F. Supp. 3d 702 (C.D. Ill. 2022) ..................................................................... 16

*Harris v. Quinn*,
   573 U.S. 616 (2014) ................................................................................................. 10

*Henry v. Napa Valley Unified*,
   2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .......................................................... 17

*Hotel Emps. & Rest. Emps. Int'l Union v. Nev. Gaming Comm'n*,
   984 F.2d 1507 (9th Cir. 1993) ................................................................................. 4

*IDK, Inc. v. Clark County*,
   836 F.2d 1185 (9th Cir. 1988) ................................................................................. 7

iii

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*In re Matthew B.*,
    232 Cal. App. 3d 1239 (1991) ................................................................................. 7

*Interstate Circuit, Inc. v. City of Dallas*,
    390 U.S. 676 (1968) ............................................................................................... 4

*Levine v. Fair Political Practices Comm'n*,
    222 F. Supp. 2d 1182 (E.D. Cal. 2002) ................................................................. 5

*Long Beach Area Peace Network v. City of Long Beach*,
    574 F.3d 1011 (9th Cir. 2009) ............................................................................... 3

*Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983) ............................................................................................... 3

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ........................................................................................... 8

*Nat'l Pork Producers Council v. Ross*,
    589 U.S. ---, 2023 WL 3356528 (May 11, 2023) ........................................... 13, 14

*NCAA v. Miller*,
    10 F.3d 633 (9th Cir. 1993) ................................................................................. 14

*Near v. Minnesota*,
    283 U.S. 697 (1931) ............................................................................................... 3

*NetChoice, LLC v. Att'y Gen.*,
    34 F.4th 1196 (11th Cir. 2022) ............................................................................. 5

*N.M. ex rel. Balderas v. Tiny Lab Prods.*,
    457 F. Supp. 3d 1103 (D.N.M. 2020) ................................................................. 16

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ................................................................................................. 1

*PG&E v. State Energy Res. Conserv. & Dev. Comm'n*,
    461 U.S. 190 (1983) ............................................................................................. 17

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ............................................................................................. 13

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) ................................................................................. 5

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) ............................................................................... 14

*Publius v. Boyer-Vine*,
    237 F. Supp. 3d 997 (E.D. Cal. 2017) ................................................................. 15

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ............................................................................................... 9, 10

*Reno v. ACLU,*
    521 U.S. 844 (1997) ............................................................................................. 1, 6, 10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
    487 U.S. 781 (1988) ..................................................................................................... 12

*Sam Francis Found. v. Christies, Inc.,*
    784 F.3d 1320 (9th Cir. 2015) (en banc) .................................................................... 15

*Schneider v. Town of Irvington,*
    308 U.S. 147 (1939) ..................................................................................................... 12

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) .............................................................................................. 2, 3, 16

*Telescope Media Grp. v. Lucero,*
    936 F.3d 740 (8th Cir. 2019) ......................................................................................... 1

*Turner Broad. Sys. Inc. v. FCC,*
    512 U.S. 622 (1994) (Opp. 17-19) ............................................................................... 10

*U.S. West, Inc. v. FCC,*
    182 F.3d 1224 (10th Cir. 1999) ..................................................................................... 3

*United States v. Evans,*
    883 F.3d 1154 (9th Cir. 2018) ....................................................................................... 8

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000) ......................................................................................... 10, 11, 12

*United States v. Stevens,*
    559 U.S. 460 (2010) ....................................................................................................... 6

*United States v. Virginia,*
    518 U.S. 515 (1996) ..................................................................................................... 11

*Volokh v. James,*
    --- F. Supp. 3d ----, 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ........................... 10

*Zuru, Inc. v. Glassdoor, Inc.,*
    614 F. Supp. 3d 697 (N.D. Cal. 2022) ........................................................................... 9

**Statutes**

15 U.S.C.
    § 6501 ............................................................................................................................. 8
    § 6502 ....................................................................................................................... 8, 15

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

AB 2273
    Findings and Declarations, § 1 ................................................................................ 1
    Cal. Civ. Code § 1798.99.30 ........................................................................... *passim*
    Cal. Civ. Code § 1798.99.31 ........................................................................... *passim*

Cal. Civ. Code
    § 1798.100 ....................................................................................................... 12
    § 1798.135 ....................................................................................................... 12
    § 1798.140 ................................................................................................. 7, 14
    § 1798.145 ....................................................................................................... 15

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.     INTRODUCTION

The State claims that AB 2273 regulates data management—"nonexpressive conduct," Opp. 11—not speech.  Nonsense.  AB 2273's text expressly requires services to "mitigate or eliminate" risks that a child "could" encounter "potentially harmful … content" online.  Content was the through-line in the legislative process: Defendant Attorney General Bonta praised the Act precisely because it would "protect children from … harmful material" and "dangerous online content"—in other words, speech—and Governor Newsom lauded the law for "protect[ing] kids" from harmful "content."  The State's own expert, who mentions "content" in her declaration *71 times*, derides preexisting laws specifically because they "only" cover data management, not content.  Radesky Decl. ¶ 98.  The State cannot evade the Constitution by pretending the Act regulates only "business practices ... related to the collection and use of children's personal information," Opp. 11, when the law's text, purpose, and effect are to regulate and shape online content.  Like California's last attempt to "restrict the ideas to which children may be exposed," *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792, 794 (2011), AB 2273 violates the First Amendment.  The law also impermissibly regulates across state lines and is preempted by two federal statutes.  It should be enjoined.

## II.     NETCHOICE WILL PREVAIL ON THE MERITS.

### A.     AB 2273 Violates The First Amendment.

#### 1.     AB 2273 regulates speech, not conduct.

"Speech is not conduct just because the government says it is." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019).  The "conduct" the State focuses on here, *e.g.*, Opp. 10-12, is making content available online—the regulation of which is subject to "First Amendment scrutiny." *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *see also Packingham v. North Carolina*, 582 U.S. 98, 105 (2017) (First Amendment applies to laws affecting internet).

The Act's entire purpose is to "create a safer online space for children"—i.e., to make online content "safer"—including by "disabling features" that "offer detrimental material."  AB 2273, Findings and Declarations § 1(a)(3), (a)(8).  That the Act does so under the guise of "data management practices," Cal. Civil Code § 1798.99.31(a)(1)(B), does not matter, as those practices

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

include and thus regulate the distribution of speech.  For example, AB 2273 requires providers to:

- identify and disclose *to the government* risks that their features "could" expose minors to "potentially harmful" "content," § 1798.99.31(a)(1)(B)(i);

- develop a timed plan to "mitigate or eliminate" the identified risks, § 1798.99.31(a)(2);

- estimate user age with a certainty "appropriate to the[se] risks," or apply the most-restrictive "privacy and data protections … to all consumers," § 1798.99.31(a)(5);

- publish and enforce content moderation policies in a manner deemed appropriate *by the State*, § 1798.99.31(a)(9); and

- refrain from publishing content based on a user's preferences, § 1798.99.31(b)(1)-(4), or through "dark patterns"—such as a "nudge" to view content, Radesky Decl. ¶ 54— that might "lead or encourage" a minor to "take any action" the service should know "is materially detrimental" to that user's "well-being," *id.* § 1798.99.31(b)(7).

The Opposition confirms that the Act regulates speech, not just "data management."  The State admits the law aims to "reduc[e] threats" to minors "based on what they are *seeing online*," including by deterring participation in "extreme content generation."  Opp. 1, 5 (emphasis added); *see also id.* at 7 (conceding law requires services to "mitigate or eliminate" risk of "exposing children to harmful or potentially harmful content").  Similarly, the expert hired by the State repeatedly identifies "exposure to harmful content," Radesky Decl. ¶ 48, as the law's target, including "violent mobile games with horror characters," *id.* ¶ 34; "ads with age-inappropriate content," *id.* ¶ 35; "inappropriate video or advertising," *id.* ¶ 38; and "detrimental online content," *id.* ¶ 62.  The State's *amici* agree that the Act will stop publication to minors of "outrageous," "harmful," and "adult content" and "inappropriate" communications.  Fairplay Am. Br. (Dkt. 53-1) 4, 5, 11, 12.  Although AB 2273 might "masquerade[] as a law designed to protect children's privacy, it does far more than regulate how businesses can use children's personal data."  CCIA Am. Br. (Dkt. 45-1) 2.

The legislative history "dispel[s]" any doubt that the law "imposes an aimed, content-based burden."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564-65 (2011).  Lawmakers advocated for AB 2273, on top of California's already extensive data protection laws, because AB 2273 would shield

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

children from "adult content" and other "potentially harmful design features," while existing laws "focus[ed] on … children's [personal information]."  Sieff Decl. Ex. 1 at 1, 3.  The law's author claimed the Act would prevent minors from being "expose[d]" to "harmful material" inappropriate for their "minds, abilities, and sensibilities."  *Id.* Ex. 2 at 16-17.  The Attorney General's office praised the law for "address[ing] … dangerous online content."  *Id.* Ex. 3 at 2.  And after enactment, Governor Newsom vowed to defend the law precisely because it purports to "shield[]" youth from harmful "content."  *Id.* Ex. 4.

Relabeling the publication of expressive materials "commerce" or "conduct," Opp. 11, does not dilute the level of required scrutiny.  "[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category[.]" *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (citation omitted); *see also Near v. Minnesota*, 283 U.S. 697, 720 (1931) (state cannot escape strict scrutiny of speech regulations by "[c]haracterizing [a] publication as a business").  Nor may the State invent a distinction between services' use of information to publish content (which it calls "business practices") and the content itself.  Opp. 10-12.  Regulating use of data to publish content regulates speech.  *Sorrell*, 564 U.S. at 563-64 ("restrictions on the sale, disclosure, and use of" data intended to target speech violated the First Amendment); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1228, 1232 (10th Cir. 1999) ("restricting the use of … customer proprietary information" to "target" content violated First Amendment).  Indeed, content cannot be disseminated online without the collection and use of basic device identifiers and user input, which appear to fall within California's broad definition of "personal information." *See, e.g.*, Szabo Decl. ¶¶ 13-14; Masnick Decl. ¶ 10; Paolucci Decl. ¶ 4; *see also* CCIA Br. 7-8 ("Displaying content on the Internet necessarily requires the 'use' of a person's IP address[.]").  AB 2273's restrictions on the use of data to deliver content therefore necessarily implicate the First Amendment. *Cf. Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231, 234 (1987) (invalidating tax scheme that "singl[ed] out" instrumentalities of speech); *Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (same).

## 2.    AB 2273 establishes a system of prior restraint.

The State claims the Act is not a prior restraint because it does not "'*authorize*[]

---

3

suppression of speech in advance of its expression.'" Opp. 13 (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009)). But the State's advance suppression of speech need not be explicit to be a prior restraint. AB 2273 is designed to—and will—lead to self-censorship, placing it in the category of prior restraints held invalid in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66-67 (1963), and *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 678-79 (1968). Neither law in those cases expressly "authorize[d] suppression," Opp. 13, before speech could be published, but the Supreme Court "look[ed] through forms to the substance" to see them for what they were—cloaked efforts to silence speech before it could occur. *Bantam Books*, 372 U.S. at 67; *see* Mot 9-10. The Act's core provisions have the same effect.

*First*, "[b]efore" making any services available, a provider must devise "a timed plan" to "mitigate or eliminate" the risk that its services "could" expose minors to "harmful" content. § 1798.99.31(a)(1)(A)-(B), (a)(2). "Enforcement authorities" will then review the DPIAs in their "investigation[s]" to "confirm[] whether businesses have made appropriate efforts to comply." EPIC Am. Br. (Dkt. 52-1) 14. If providers fail to mitigate or eliminate these risks, the Act in fact "authorize[s] penalization based on the substance communicated in the DPIAs." *Cf.* Opp. 13. This framework is a blatant "attempt to control the content of" speech, *id.* (quoting *Hotel Emps. & Rest. Emps. Int'l Union v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1518 (9th Cir. 1993)). It places AB 2273 squarely in the camp of "informal censorship" regimes held invalid in *Bantam Books* and *Interstate Circuit. See Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (Posner, J.) ("scaring off" third parties from "facilitating future speech" was a prior restraint). In fact, the Act is even more fraught than the laws in *Interstate Circuit* and *Bantam Books*, where film exhibitors could ignore their self-reported film classifications, *Interstate Circuit*, 390 U.S. at 678, and bookstores could ignore an unofficial morality commission's warnings, *Bantam Books*, 372 U.S. at 66-67. Here, providers *must* "mitigate or eliminate" the risk of harmful content.

*Second*, AB 2273's policy enforcement rule—which would codify as law a provider's own content guidelines—is a form of censorship-by-proxy through "[i]ndirect discouragements," *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 402 (1950), and "subtle … interference." *Bates v. City of Little Rock*, 361 U.S. 516, 523-24 (1960); *see also, e.g.*, *Ent. Software Ass'n v. Foti*, 451 F.

Supp. 2d 823, 834-35 (M.D. La. 2006) ("voluntary" industry "rating system" did "not give the State license to impose its own" censorship based on that system "any more than the existence of MPAA movie ratings give the State license to restrict" films); Mot 11.  The State's claim that the rule just requires online services to do "what they say they are going to do," Opp. 14, ignores that what is being done is *choosing what to publish* under government oversight and the threat of massive financial penalties.  *See* Mot. 10-11; CCIA Br. 4.  The State professes "there is nothing the Attorney General can do" if a provider's policies reserve for themselves "final decisions about content." Opp. 14.  But the First Amendment protects content moderation decisions regardless of whether providers have explicitly reserved those decisions to themselves.  Mot. 11 (citing authorities).  And using discretion in publishing content is not a "deceptive" practice.  *Cf.* Opp. 14-15; *see, e.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020) (service's "statements concerning its content moderation policies" not actionable as deceptive advertising).

  *Third*, the Act's age-verification rule creates another prior restraint, like the law in *ACLU v. Mukasey*, 534 F.3d 181, 196-97 (3d Cir. 2008), which made age verification a defense to publication of "harmful" content.  *See* Mot. 13; Goldman Am. Br. (Dkt. 34-1) 7-10.  The State's claim that the rule simply requires "child-appropriate data and privacy protection" for all consumers absent verification, Opp. 15, ignores that such protections include mitigating the risk of harmful content.  Even if some providers today *voluntarily* attempt some form of verification, *id.* at 16, the First Amendment protects those editorial decisions as much as it protects other services' rights *not* to adopt such restrictions.  *See NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196, 1210, 1213 (11th Cir. 2022).  The State's argument that the age-verification rule implicates only "children's right to access information," Opp. 16, also ignores that the law impinges on *services*' right to reach audiences of all ages.  *See Mukasey*, 534 F.3d at 196-97; *see also Galvin v. Hay*, 374 F.3d 739, 752 (9th Cir. 2004) (First Amendment protects "speakers seeking to reach a particular audience").  It makes no difference what "best practices" the State recommends, *cf.* Opp. 16, as the constitutional evil is the *obligation* to tailor content and features to users' verified ages.  *See, e.g.*, *Levine v. Fair Political Practices Comm'n*, 222 F. Supp. 2d 1182, 1187-88 (E.D. Cal. 2002) (enjoining law that violated the First Amendment, even though State had not yet "issued

regulations specifying the enforcement parameters for these provisions").

### 3.   AB 2273 is overbroad.

AB 2273 is also impermissible because it is overbroad.  The Act reaches every kind of online content—from images of war on a newspaper's website, to political commentary on an independent blog, to movie and book reviews.  *See* Mot. 14-16; Roin Decl. ¶¶ 11-16; Cairella Decl. ¶¶ 2, 6, 11; Masnick Decl. ¶¶ 2, 8, 15; Paolucci Decl. ¶ 6; CCIA Br. 9-10.  The State neither disputes this broad sweep nor denies that the Act will decimate the availability of online content for everyone, "torch[ing] a large segment of the internet." *Reno*, 521 U.S. at 882; *see also Ashcroft v. ACLU*, 542 U.S. 656, 666-70 (2004) (universal restrictions on all users to protect minors from content "harmful to minors" was overbroad).  In fact, the State's own expert confirms that the Act sweeps boundlessly to prevent untold "harms" that could result from minors' "contact with others" online.  Radesky Decl. ¶ 73; *see also* Opp. 5 (AB 2273 seeks to prevent harm to minors "based on what they are seeing online" when they "us[e] platforms" to "engage" other users).

The State's overbreadth defense again rests on the falsehood that the law restricts conduct, not speech—debunked above, *supra* § II.A.1—and the bald assertion that even if AB 2273 reaches speech, it "is not substantially overbroad relative to its legitimate sweep." Opp. 23 (citation omitted).  The State neither substantiates this latter assertion nor distinguishes NetChoice's authorities.  *See* Mot. 14-16.  By forcing providers to modify their services to shield minors from anything even potentially "harmful," AB 2273 necessarily limits speech accessible to adults, *Mukasey*, 534 F.3d at 197, and broadly intrudes on minors' rights.  The State does not have "free-floating power to restrict the ideas to which children may be exposed," such as political commentary, the news, blog posts, book reviews, film summaries, and the like.  *Brown*, 564 U.S. at 794-95.  "People are unlikely to become well-functioning, independent-minded adults and responsible citizens if they are raised in an intellectual bubble." *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 577 (7th Cir. 2001) (Posner, J.); *see also* NYT Am. Br. (Dkt. 56-1) 13 (Act "limits young people's ability to access lawful news content and fully participate in public life").  Even if AB 2273 had any legitimate sweep, it would pale in comparison to the law's impermissible applications.  *See* Mot. 14-16; CCIA Br. 9-10; *United States v. Stevens*, 559 U.S.

6

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

460, 473 (2010).

### 4.   AB 2273 is void for vagueness.

AB 2273 is also constitutionally defective because it rests on vague, subjective terms that provide little notice, much less fair notice, of what it prohibits.  Mot. 16-19; CCIA Br. 1, 9, 11-12. The State's defense once again rests on its claim that the law regulates "conduct," which is false. *Supra* § II.A.1.  The State's remaining arguments that the terms are not vague also fail.

The State claims the phrases "dark patterns," "best interest of the child," and "likely to be accessed" are not vague because they are defined.  Opp. 24.  But the State's own declarants offer subjective interpretations of "dark patterns" that are broader than the capacious statutory definition, which limits "dark pattern[s]" to features with the "substantial effect" of "subverting or impairing" user autonomy or decisions. Cal Civil Code § 1798.140(l); *see* Egelman Decl. ¶ 51; Radesky Decl. ¶¶ 53-56, 97 (features that "nudge" a user to make a "decision" in the service's best interest).  The State does not specify any laws that use "best interest of the child," but the term apparently is used most in family law, where it does not restrict speech and courts have deemed it an "elusive guideline that belies rigid definition." *In re Matthew B.*, 232 Cal. App. 3d 1239, 1263 (1991) (citation omitted).  As for "likely to be accessed," that definition rests on subjective and undefined terms, like "routine[]" and "significant number of children," Mot. 17, which provide far less guidance than those in *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1198 (9th Cir. 1988), Opp. 24, a case that did not even apply the heightened standard applicable to First Amendment vagueness challenges.

The phrases "materially detrimental," "a significant number," and "substantial effect" are not "modifiers" "of common understanding." Opp. 24 (citation omitted).  They are nothing like the terms in *California Teachers Association v. State Board of Education*, 271 F.3d 1141, 1152 (9th Cir. 2001), which upheld a law requiring educators to provide instruction "overwhelmingly" in English to all students and "nearly all" in English to English learners—terms that mean near totality in a way the Act's terms do not.  And unlike in that case, NetChoice's declarants have testified that the law's vagueness will substantially chill protected speech.  Mot. 17; *see also* NYT Br. 6 (Act will cause "news organizations" to "prevent those under the age of 18 from accessing

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

online news content, features, or services").  These terms are also not only "modifiers," but core determinants of the law's applicability.  Though statutes may not require "mathematical" precision, Opp. 24 (citation omitted), they still must be "intelligible, defining a 'core' of proscribed conduct."  *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000).  These terms are neither mathematical nor intelligible.

The State's defense of the Act's vague age-verification requirement is similarly flawed. The meaning of the phrase "appropriate to the risks" is not evident from "common sense," Opp. 24.  *United States v. Evans*, 883 F.3d 1154, 1163 n.8 (9th Cir. 2018); *see also* Cairella Decl. ¶ 12. The State fails to explain how "common sense" would help providers understand how much age certainty is "appropriate to the risks" of their services.  Nor can the Act be analogized to other laws that "provide data privacy protections based on age," such as COPPA and the CPPA, Opp. 24, because those laws use standards that yield concrete, objective conclusions—such as whether a provider has "actual knowledge" of the user's age and whether a service is "directed" to children. 15 U.S.C. §§ 6501(1), 6502.  In contrast, AB 2273's sliding scale of age certainty rests on "subjective" assessments that will result in discriminatory, haphazard enforcement.  *Foti v. City of Menlo Park*, 146 F.3d 629, 638-39 (9th Cir. 1998) (citation omitted) (requiring "ad hoc and subjective" judgments risked enforcement "only against … messages the officer … dislikes").

The State's argument that the Act's "scienter requirements" mitigate its vagueness, Opp. 24, misreads the statute.  Although some (but not all) parts of the Act absolve services of liability if they did not "know[]" or did not "ha[ve] reason to know" of potential harm to children, § 1798.99.31(b)(1), (b)(7), that is not scienter.  "[S]cienter" is "a degree of fault greater than negligence."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1107 (1993); *cf. Cal. Teachers*, 271 F.3d at 1154 (upholding law's "willfully and repeatedly" requirement).

Finally, the State claims NetChoice's members must already comply with similar requirements in the UK Children's Code.  Opp. 25.  Even assuming all NetChoice members were subject to the Code (they are not), the laws are not interchangeable.  The Code is a flexible "code of practice," violations of which do not result in "liab[ility]" in "court."  Keaney Decl. ¶¶ 16, 27, 30, 41.  And unlike AB 2273, the Code incorporates other "established UK government or industry

8

1  guidance and standards." *See id.* ¶ 46.  More to the point, unlike the Code, AB 2273 must be

2  interpreted in light of the U.S. Constitution.  *See Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d

3  697, 707 (N.D. Cal. 2022) (this country's "commitment to free speech isn't universally shared").

4            **5.**    **AB 2273 regulates speech based on content and fails strict scrutiny.**

5                **a.**    **AB 2273 regulates speech based on its content.**

6          The State concedes that AB 2273 "refer[s] to content" and creates content-based

7  obligations and "exceptions."  Opp. 18.  The State's experts and *amici* agree.  Radesky Decl. ¶¶ 22,

8  34-41, 48, 60, 62, 65, 67, 69-72 (law seeks to protect minors from "exposure to harmful content");

9  Fairplay Br. 4, 5, 11, 12-13.  Even so, the State claims the Act is "facially neutral" and subject to

10  deferential review because its "overriding objective" is "to prioritize the privacy, safety, and well-

11  being of children."  Opp. 16-17 (citation omitted).  But a law may be content-based no matter "the

12  government's justifications or purposes."  *Reed v. Town of Gilbert*, 576 U.S. 155, 164-65 (2015).

13  And in any event, the Act regulates speech based on content in *both* purpose and effect.  Mot. 19-

14  20.  The Act's acknowledged purpose is to protect minors from harmful content.  *See supra*

15  § II.A.1.  Laws "designed to protect minors from viewing harmful materials" are content-based

16  precisely because they restrict speech based on its appropriateness.  *Ashcroft*, 542 U.S. at 670;

17  *Brown*, 564 U.S. at 794, 799 (restriction on violent video games to protect minors from

18  psychological harm was content-based).

19          The State's claim that businesses "can continue to offer, provide access to, and recommend

20  any content they want" as "long as [they] do not use children's data," Opp. 17, is wrong.  Many of

21  the Act's provisions have nothing to do with data collection or use, such as the requirements that

22  services document and mitigate risks of "harmful, or potentially harmful, content,"

23  § 1798.99.31(a)(1)(B)(i), (a)(2); enforce their own editorial policies to the State's satisfaction,

24  § 1798.99.31(a)(9); and refrain from using certain design interfaces that might "lead or encourage"

25  a user to "take any action" the service should know "is materially detrimental" to a young user's

26  "well-being," § 1798.99.31(b)(7).  And because all online providers must use data to deliver their

27  content and services, the undisputed effect of the Act's mandates is censorship of content based

28  on subject matter and audience.  *See, e.g.*, Paolucci Decl. ¶¶ 18-19; Masnick Decl. ¶¶ 14-18; Roin

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

Decl. ¶¶ 11-17; Cairella Decl. ¶¶ 18-19; Szabo Decl. ¶¶ 6-14; *see also, e.g.*, Egelman Decl. ¶ 31 (conceding data collection is necessary to avoid "degrad[ed] … online experiences"). The law is thus content-based. *See Reed*, 576 U.S. at 163-64, 168-69 (regulation of "specific subject matter is content based even if it does not discriminate among viewpoints").

None of the three more lenient standards proposed by the State applies here. *First*, the secondary effects standard does not apply merely because the Act aims to prioritize minors' "safety" and "well-being." Opp. 17. Where, as here, "the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners," strict scrutiny applies. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813, 815 (2000); *see also Boos v. Barry*, 485 U.S. 312, 320-21 (1988) ("secondary effects" test does not apply to laws designed to "prevent … psychological damage" from speech). *Second*, the "commercial speech" standard, Opp. 19, is inapplicable because AB 2273 regulates speech that does far more than "propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (citation omitted). The fact that websites—like "books, newspapers, and magazines"—are published "for profit" does not render their content commercial speech. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012); *see also Volokh v. James*, --- F. Supp. 3d ----, 2023 WL 1991435, at *7-8 (S.D.N.Y. Feb. 14, 2023) (online moderation policies are not commercial speech). *Third*, the standard applicable to content-neutral must-carry laws for cable, *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622 (1994) (Opp. 17-19), flows from "technological difference[s]" inherent in the cable medium. *Id.* at 638-39. "Those factors are not present in cyberspace," and the Supreme Court has refused to extend *Turner* to the internet, holding there is "no basis for qualifying the level of First Amendment scrutiny" online. *Reno*, 521 U.S. at 868-70.

In sum, AB 2273 regulates *any* content or interactive feature that is even "potentially harmful" to minors, "materially detrimental" to their "well-being," not age "appropriate," not in their "best interests," or that otherwise violates website content rules. §§ 1798.99.31(a)(1)(B), (a)(5)-(6), (a)(9), (b)(1)-(4), (b)(7). Strict scrutiny applies.

### b.    AB 2273 fails strict scrutiny.

To survive strict scrutiny, the State must establish that AB 2273 is both "narrowly tailored

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to promote a compelling Government interest" and "the least restrictive means to further the articulated interest." *Playboy*, 529 U.S. at 813, 827 (citation omitted); *contra* Opp. 21-22 (citing *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1073-74 (9th Cir. 2006), for a lower standard, even though that case applied *intermediate scrutiny*). Even assuming a compelling interest here, AB 2273 is not narrowly tailored or the least restrictive means to achieve it.

Rather than establish a "direct causal link" between unregulated internet access and harm to minors, *Brown*, 564 U.S. at 799, the State offers the "predictive judgment," *id.*, of a single physician, Dr. Radesky. The Court should not credit Dr. Radesky's made-for-litigation testimony. *United States v. Virginia*, 518 U.S. 515, 516 (1996) ("justification" for law subject to heightened scrutiny "must be genuine, not hypothesized or invented post hoc in response to litigation"). At any rate, Dr. Radesky's testimony is even less compelling than the evidence held insufficient in *Brown*, which likewise comprised opinions from "research psychologists" "whose studies" "purport[ed] to show a connection between exposure to" certain content "and harmful effects on children." 564 U.S. at 800. As in *Brown*, Dr. Radesky's conclusions "do not prove that" unmitigated access to internet speech and interactive features "*cause*[s] minors" to suffer harm, but "at best" show "some correlation" between "exposure" and small "real-world effects." *Id.* at 800-01. Dr. Radesky finds "associat[ions]" between minors' unregulated access to online speech and "poorer sleep," which could "contribut[e] to youth mental health" problems—citing studies finding "small" correlations "between time spent on digital media and" symptoms like "depression" and "sedentary behaviors." Radesky Decl. ¶ 50. But she neither claims that unmitigated internet use *causes* these symptoms nor shows how the Act would prevent them. In fact, competing studies reach conflicting conclusions. *See* Sieff Decl. Ex. 5 at 3 ("Using social media is not inherently beneficial or harmful to young people."); Ex. 6 at 5 (surveying literature concerning benefits of internet to minors, e.g., "facilitat[ing] social connection, identity development, and positive emotions"); Ex. 7 at 824 (literature linking technology and poor mental health based on "suboptimal" methodologies, including faulty self-reporting).

The State's evidence also rests on "anecdote and supposition." *Playboy*, 529 U.S. at 822. Dr. Radesky speculates that "children seeking peer validation *may* take part in extreme content

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

Davis Wright Tremaine LLP
865 S. Figueroa St, Suite 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

generation" like "posting dangerous challenges," Radesky Decl. ¶ 61 (emphasis added), but offers no evidence that access to purportedly harmful content online causes such effects, nor that other media do not.  *See Brown*, 564 U.S. at 800-01 (rejecting tailoring evidence where claimed effects were "indistinguishable from effects produced by other media").  Dr. Radesky's other opinions do not even propose causal mechanisms between online speech and harm.  *Id.* ¶ 72 (claiming children are shown "violent-themed video games" featuring "injured" cartoon characters, such as "Peppa Pig apparently injured with [her] eyes crossed out," without explaining how this harms them); *but see* every Wile E. Coyote cartoon.  *See also Kendrick*, 244 F.3d at 577 ("To shield children right up to the age of 18 from exposure to violent descriptions and images would not only be quixotic, but deforming[.]").  It is "with good reason" that "every court to consider" this kind of evidence has found it inadequate to justify the censorship of speech.  *Brown*, 564 U.S. at 800.

The State likewise fails to rebut NetChoice's evidence that AB 2273 is overinclusive and not the least restrictive alternative.  AB 2273 is overinclusive because it takes a universal medium-focused approach that abridges protected speech on any subject, including speech sent to and received exclusively by adults.  *See* Mot. 14, 21-22; *supra* § II.A.1.  It is not the least restrictive alternative because the State could accomplish its putative privacy goals by enforcing existing laws like COPPA, the CCPA, and the CPRA.  Mot. 21-22.  The State claims these laws have not been adequately enforced, *see* Opp. 4; Radesky Decl. ¶¶ 31-39; Egelman Decl. ¶¶ 37-40.  In fact, existing law prohibits the practices the State's experts criticize.  *See, e.g.*, Egelman Decl. ¶¶ 19, 24 (criticizing "convoluted user interfaces" and lengthy privacy policies), *but see* Cal. Civ. Code § 1798.100(b) (requiring services to provide privacy information "prominently and conspicuously"); § 1798.135(a)(1) (requiring "clear and conspicuous link" on homepage to opt out of data selling).  The Act is not the least restrictive means to achieve data privacy where "the State may vigorously enforce" existing law.  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988); *see also Schneider v. Town of Irvington*, 308 U.S. 147, 162 (1939) (same).

Even as to AB 2273's actual purpose—to shield minors from content—the Act is still not the "least restrictive" means since it uses a one-size-fits-all method instead of a "household-by-household" approach.  *Playboy*, 529 U.S. at 816, 818, 823 (enjoining universal approach, holding

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"these judgments are for the individual to make, not for the Government to decree").  Dr. Radesky, for instance, admits some services already enable parents to create "child subaccounts" that limit access to "age-appropriate video content."  Radesky Decl. ¶ 96.  The State does not explain why it did not, for example, mandate similar family-focused rules.

Citing *Denver Area Educational Telecommunications Consortium v. FCC*, 518 U.S. 727, 744-45 (1996), the State claims AB 2273 survives strict scrutiny because it only "restrict[s] content" rather than "ban[ning]" it "all together [sic]."  Opp. 20.  This "startling and dangerous" suggestion, *Brown*, 564 U.S. at 792, misreads the quoted passage of *Denver Area*, which analyzed Section 10(a) of the Cable Act under the *intermediate scrutiny* applicable to cable regulations that permitted (but did not require) cable operators to prohibit channels from broadcasting sexually explicit programming.  518 U.S. at 733.  AB 2273, in contrast, *limits* services' discretion, and is akin to Section 10(c), the provision *Denver Area* invalidated (even under intermediate scrutiny) because it required operators to block "patently offensive" content.  518 U.S. at 754.

### B.    AB 2273 Violates The Commerce Clause.

AB 2273 not only violates the First Amendment, it also violates the Commerce Clause.

### 1.    AB 2273 unduly burdens interstate commerce.

The State's defense to NetChoice's argument under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), rests on the assumption that online services can exclude California users through geofencing.  Opp. 26.  But geofencing is far more complex and imperfect than this presumes and can be circumvented.  *See* Masnick Decl. ¶ 16.  Further, the law is based on a user's *residency*, not *location*.  Regardless, the State cannot deny the Act's obvious burdens on interstate commerce, or establish the advancement of an adequate local interest.

Insulating whole populations from parts of the internet by its very nature impedes the flow of commerce online.  *See ACLU v. Johnson,* 194 F.3d 1149, 1162 (10th Cir. 1999) (internet "requires national regulation"); *see also Nat'l Pork Producers Council v. Ross*, 589 U.S. ---, 2023 WL 3356528, at *11 n.2 (May 11, 2023) (preserving rule that "state regulations on instrumentalities" of commerce are impermissible "when a lack of national uniformity would impede *the flow*" of commerce).  Unlike the closed-captioning requirement in *Greater L.A. Agency*

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

1   *on Deafness, Inc. v. CNN*, 742 F.3d 414 (9th Cir. 2014), Opp. 27, AB 2273 would restrict the

2   distribution of information across state lines. *Cf. Bigelow v. Virginia*, 421 U.S. 809, 822-29 (1975)

3   (state "may not, under the guise of exercising internal police powers, bar a citizen of another State

4   from disseminating information" to its residents). And it would directly conflict with other states'

5   laws mandating publication of content that California would require services to block. *See CTS

6   Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987) (Commerce Clause bars "statutes that

7   may adversely affect interstate commerce by subjecting activities to inconsistent regulations");

8   Mot. 24. The State dismisses this as a "provider's choice." Opp. 26. The Commerce Clause does

9   not permit the State to place a service "in jeopardy of being subjected to inconsistent legislation"

10  in "other states." *NCAA v. Miller*, 10 F.3d 633, 640 (9th Cir. 1993).

11          The State also offers no evidence that AB 2273 achieves "substantial local benefits," Opp.

12  27, for the welfare of minor internet users, much less benefits that outweigh the law's interstate

13  burdens. Dr. Radesky asserts a "small" "associated" *correlation* between unmitigated internet use

14  and adverse mental health symptoms, but nothing approaching causation, nor that AB 2273 itself

15  could meaningfully reduce these harms. *E.g.*, Radesky Decl. ¶ 50. The State fails to distinguish

16  decisions rejecting similar efforts. *See* Mot. 25. Weighed against the unrebutted testimony that

17  AB 2273 will undermine privacy and could harm minors, *see* Rumenap Decl. ¶¶ 7-11; Goldman

18  Br. 3; NYT Br. 12-13; CHOP Am. Br. (Dkt. 42-1) 6-15, the Act's putative benefits simply have

19  "not been proven," *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004).

20                          **2.      AB 2273 regulates beyond state lines.**

21          The State does not dispute that regulations targeting interactive communication services

22  beyond state borders are impermissible. Opp. 26; *see also Am. Booksellers Found. v. Dean*, 342

23  F.3d 96, 103 (2d Cir. 2003); Mot. 22-23. In fact, the Supreme Court just reaffirmed that a

24  regulation would violate the Constitution's "horizontal separation of powers" if its practical effect

25  reached activities "wholly outside" the State's borders. *Nat'l Pork*, 2023 WL 3356528, at *10 n.1

26  (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 641-43 (1982)).

27          That is precisely what AB 2273 does. *See* Mot. 22-23. The law restricts operations of any

28  online service that does business in California, including operations outside the State. *See* Cal.

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Civ. Code §§ 1798.99.30(a), 1798.140(d), (i); *see also* Mot. 23.  That the law is limited to minors "who are residents of California," Opp. 26, is irrelevant.  *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc) (holding invalid law regulating conduct having "no necessary connection with the state other than the residency").  Before a provider offers any service to anyone, it must discern the age and residence of each user, and if a user is under 18 and a California resident—not merely present in California—tailor its offerings accordingly.  The CCPA does not suffer this flaw, as it exempts activity "wholly outside California," such that providers need only determine whether a user is in California when collecting data, Cal. Civ. Code § 1798.145(a)(7)—not whether a user is a California *resident*.

Nor is AB 2273 like the regulation upheld in *CNN*, 742 F.3d 414; *contra* Opp. 26.  That law required CNN to add closed captioning to programming it was already distributing through CNN.com to California audiences.  742 F.3d at 426.  There was no obligation to prevent or alter content, such as by moderating comments in an article.  AB 2273 is thus more like the law enjoined in *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017), which required websites to remove California legislators' personal information on command, no matter who posted the content or where the website was located.  *Id.* at 1025.  AB 2273 similarly requires internet services to take actions that have no nexus with California other than a user's (possible) California residency.  *See also Christies*, 784 F.3d at 1323.  The State does not even attempt to respond to NetChoice's evidence or examples.  *Cf.* Egelman Decl. ¶¶ 55-62.

## C.    COPPA Preempts AB 2273

AB 2273 is also invalid because it is preempted by COPPA.  The State claims AB 2273 "supplements" COPPA's "minimum" notice and consent framework.  Opp. 28.  But AB 2273 conflicts with COPPA.  COPPA applies to services "directed to children," 15 U.S.C. § 6502(a)(1), whereas AB 2273 specifies that "children should be afforded protections *not only* by online products and services *specifically directed at them* but by all online products and services they are likely to access." § 1798.99.29 (emphasis added); *see also* Egelman Decl. ¶ 44 (criticizing COPPA's "actual knowledge" standard).  COPPA empowers parents to decide what their children can access online; AB 2273 strips parents of that power.  Chamber of Commerce Am. Br. (Dkt.

---

NETCHOICE'S REPLY ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

33-1) 12.  And AB 2273 bars conduct that is permissible under COPPA.  *See* Mot. 25-27; Chamber of Commerce Br. 9-10, 12-14.  The State fails to explain why all these differences are consistent. Nor does it mention, let alone distinguish, the cases holding COPPA preempts laws with different threshold or substantive requirements or that "treat[] like conduct differently."  *N.M. ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1120-21 (D.N.M. 2020); *see also* Mot. 26; *H.K. through Farwell v. Google LLC*, 595 F. Supp. 3d 702, 711 (C.D. Ill. 2022).

Finally, the State misconstrues NetChoice's arguments related to AB 2273's application to minors over 13.  NetChoice makes no claim of "field preemption," Opp. 28.  Rather, AB 2273 cannot be saved for minors aged 13-17 because its age restriction is not severable.  *See infra* § IV.

**D.     Section 230 Preempts AB 2273's Regulation of Third-Party Speech.**

Section 230 preempts the Act's content policy enforcement and content publication rules. Mot. 27-29.  The State admits Section 230 preempts state laws creating liability for a service's decisions about what content to block or publish, as well as a service's discretion to publish or remove objectionable content.  Opp. 29.  The State claims enforcement of a service's own rules is first-party conduct.  *Id*.  But that "conduct" is the *publication* of third-party speech.  The content policy rule holds a service liable for failing to publish or remove content, putting it in the heartland of Section 230's protections.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *see also, e.g., Bride v. Snap Inc.*, 2023 WL 2016927, at *7 (C.D. Cal. Jan. 10, 2023) (Section 230 barred claims based on Snapchat's "own alleged misrepresentations and false statements" in its content policy).  The rules governing use of information likewise impose a duty not to publish third-party content and cannot be limited to the "conduct" of using information.  *Cf. Sorrell*, 564 U.S. at 564 (use of information to make a publication decision is speech).

**III.    OTHER REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE MET.**

The State does not dispute that the loss of First Amendment freedoms constitutes irreparable harm. Mot. 29-30.  And its argument that the Act promotes the public interest in protecting minors, Opp. 30, lacks evidence.  The State's other arguments are makeweight.  The fact that AB 2273 does not become enforceable until July 2024, *id.*, makes no difference because services undisputedly are already preparing for AB 2273.  *See* Roin Decl. ¶¶ 20, 24-25; Cairella

Decl. ¶¶ 14, 19-22; Masnick Decl. ¶¶ 12, 14-19; Paolucci Decl. ¶¶ 16-18; Szabo Decl. ¶¶ 5-7, 12-17. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *PG&E v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201 (1983). This is true even if some services already comply with the UK Code. *See supra* § II.A.4. The non-compensable financial injuries described in NetChoice's declarations are thus neither "vague" nor "speculative," Opp. 30. NetChoice's members will *certainly* suffer these injuries absent an injunction.

## IV.    THE WHOLE LAW MUST BE ENJOINED

The State does not dispute that AB 2273 is not severable. Mot. 27. Accordingly, if the Court holds invalid the challenged provisions of AB 2273, the entire law must be enjoined. *See Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016).

## V.    CONCLUSION

NetChoice respectfully requests an order preliminarily enjoining AB 2273.


 DATED: May 19, 2023                    DAVIS WRIGHT TREMAINE LLP


                                        By: */s/ Ambika Kumar*
                                            Ambika Kumar

                                        Attorneys for Plaintiff
                                        NetChoice LLC, d/b/a NetChoice

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899