# EXHIBIT 1

CONCURRENCE IN SENATE AMENDMENTS
AB 2273 (Wicks, et al.)
As Amended  August 22, 2022
Majority vote

## SUMMARY

Establishes the California Age-Appropriate Design Code Act which generally requires businesses that provide online services, products, or features likely to be accessed by children to comply with specified standards.

**Senate Amendments**

1) Specify the required contents of a data protection impact assessment (DPIA), and clarify that a DPIA must only be completed if an online service, product, or feature is likely to be accessed by children, as defined.

2) Remove the requirement that a DPIA be submitted to a public agency and instead require that a business provide a completed DPIA to the Attorney General (AG) upon request.

3) Exempt DPIAs from the disclosure requirements under the California Public Records Act, and clarify that disclosure of a DPIA to the AG does not waive existing attorney-client or work product privileges.

4) Require the AG to provide written notice to a business in violation of the bill but in substantial compliance with the DPIA requirements of the bill identifying the specific provisions of the bill the AG alleges have been or are being violated before initiating an action to prosecute the violation; and provide that if, within 90 days of the notice, the business cures any noticed violation and provides the AG a written statement that the alleged violations have been cured, and sufficient measures have been taken to prevent future violations, the business shall not be liable for a civil penalty for any violation so cured.

5) Amend the standard of known harm to children that a use of personal information or dark patterns must meet to constitute a violation of the bill from "de minimus" to "materially detrimental."

6) Replace the taskforce created by the bill with a working group, with members appointed by the Governor, Senate, Assembly, California Privacy Protection Agency, and AG, to provide specified recommendations to the Legislature; and require the working group to take input from a broad range of specified stakeholders.

7) Define the term "profiling" to mean any form of automated processing of personal information that uses personal information to evaluate certain aspects relating to a natural person, including analyzing or predicting aspects concerning a natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements; and permit a business to profile a child by default only if the business can demonstrate it has appropriate safeguards in place to protect children, and either of the following is true: (a) profiling is necessary to provide the online service, product, or feature requested and only with respect to the aspects of the online service, product, or feature with which the child is actively and knowingly engaged; or (b) the business can demonstrate a compelling reason that profiling is in the best interests of children.

8) Authorize, rather than require, the AG to adopt additional regulations to implement the bill's provisions, as necessary.

9) Clarify the definition of "likely to be accessed by children" by doing both of the following: (a) replacing the reference to "academic or market research" that the service, product, or feature is likely to be accessed by children with "competent and reliable evidence regarding audience composition"; and (b) clarifying that businesses that have advertisements *marketed* to children, rather than businesses that "advertise to children", are within the scope of the bill.

10) Make several technical and clarifying changes.

## COMMENTS

On March 29, 2022, the Privacy and Consumer Protection Committee and the Arts, Entertainment, Sports, Tourism, and Internet Media Committee held an informational hearing entitled, *Protecting Kids Online: Challenges & Opportunities in a Digital World.*  Testimony from the hearing indicated that adults, children, and teens alike are frustrated with the effort and expertise it takes to make online experiences safe for children.

As the internet has become more accessible and attractive to children, the government has created some laws to protect children online. Enacted in 1998, the federal Child's Online Privacy Protection Act of 1998 (COPPA), requires the Federal Trade Commission (FTC) to issue and enforce a rule (the Rule) concerning children's online privacy. The FTC notes that:

> The primary goal of COPPA and the Rule is to place parents in control over what information is collected from their young children online. The Rule was designed to protect children under age 13 while accounting for the dynamic nature of the internet. The Rule applies to operators of commercial websites and online services directed to children under 13 that collect, use, or disclose PI from children, and operators of general audience websites or online services with actual knowledge that they are collecting, using, or disclosing PI from children under 13.[1]

In an effort to further protect minors online, California subsequently passed SB 568 (Steinberg), Chapter 336, Statutes of 2013, known as Privacy Rights for California Minors in the Digital World, which prohibits the operator of an internet website or other online service or mobile application from marketing or advertising a product or service to a minor if the minor cannot legally purchase the product or participate in the service in California, or, compiling PI to market those products or services. This prohibition only applies to an operator that has *actual knowledge* that a minor is using its online service or whose site or service is directed to minors. That bill also permits a minor to remove content or information posted to a website or service, as specified.

SB 568 was opposed by the Center for Democracy and Technology, who took issue with the bill's limitation that a website must be *directed to* minors for the provisions of the bill to apply. SB 568, now codified beginning at Business and Professions Code Sec. 22580, provided that a site or service is "directed to minors" if it is "created for the purpose of reaching an audience that

---

[1] FTC: Frequently Asked Questions about the Children's Online Privacy Protection Rule, http://www.ftc.gov/privacy/coppafaqs.shtm, [as of Apr. 2, 2021].)

is *predominantly* composed of minors, and is not intended for a more general audience comprised of adults." (Emphasis added.) The definition adds that a site or service would not be deemed to be "directed at minors" merely because it contained links to sites or services that were directed to minors.

Further protecting the rights of minors, the Legislature enacted the California Consumer Protection Act of 2018 (CCPA; Chau, Chapter 55, Statutes of 2018) which provides various rights to consumers related to the sale of their PI, as defined. Relevant to this bill, the CCPA prohibits any business, as defined, from selling the PI of minors 16 years of age and under, without prior opt-in consent to the sale of the information. For minors between the ages of 13 and 16, the minor can opt-in to the sale of their PI on their own. For minors under 13 years of age, only a parent or guardian may opt-in to the sale of the minor's information. (Civ. Code Sec. 1798.120.)

Notably, the protections for children online largely focus on regulating the collection and sale of children's PI, rather than ensuring that children are protected from manipulative design (dark patterns), adult content, or other potentially harmful design features. In addition, for the most part, the existing laws protecting minors online are only triggered when an online platform has actual knowledge that children are accessing their website. This has incentivized many social media platforms and other online services to ignore the age of their consumers, so that they do not have to adhere to the standards set out in the laws described above.

This bill, modeled after the Age Appropriate Design Code recently enacted in the United Kingdom, seeks to elevate child-centered design in online products and services that are likely to be accessed by children. The bill would additionally require the CPPA to establish a working group to make recommendations to the Legislature concerning best practices for complying with and enforcing the bill's provisions.

This bill would take a different approach to protecting children online than the state and federal laws described above in two distinct ways. First, the bill would require online platforms likely to be accessed by children to turn privacy and safety settings up to a level that is protective of children's mental and physical health and well-being *unless* the online platform can, with an appropriate level of certainty, determine the age of the consumer. In other words, existing law generally permits online platforms to treat all consumers as adults unless there is actual knowledge that the consumer is under 13 years of age. This bill would instead require that websites and other online services likely to be accessed by children offer privacy and safety protections by default, unless there is reasonable certainty that the consumer is an adult.

Amendments taken in the Senate provide greater detail concerning the required content of a DPIA and the circumstances in which such an assessment is necessary. Rather than requiring submission of a DPIA to a public agency, the amendments instead require a business to provide a DPIA to the AG within three days of a request. To further encourage child-centered design and comprehensive assessment of the potential impacts of services, products, and features on children prior to releasing a service, product, or feature, the amendments require that, should a business in alleged violation of the provisions of the bill be in substantial compliance with the DPIA requirements, the AG provide notice of the alleged violation and an opportunity to cure the violation, and indicate steps to prevent future violations, within 90 days.

**According to the Author**
> While existing federal and state privacy laws offer important protections that guard children's privacy, there is no coherent, comprehensive law that protects children under 18 from goods, services, and products that endanger their welfare. As a result, online goods, services, and products that are likely to be accessed by kids have been loaded with adult design principals that do not factor in the unique needs of young minds, abilities, and sensibilities, nor offer the highest privacy protections by design and by default. As a result, children under 18 face a number of adverse impacts due to their interactions with online world, including bullying, mental health challenges, and addictive behaviors.

**Arguments in Support**
In support, a large coalition of organizations representing public health, parent, school and youth groups, researchers, and advocacy organizations write:

> Children across the globe are facing an unprecedented mental health crisis. Even before the onset of COVID-19 and subsequent social distancing and isolation, teen suicide was on the rise; in the US the CDC found that between 2007 to 2017 the suicide rate among people aged 10 to 24 increased by 56%. And in the year between spring of 2020 and 2021 emergency room visits for girls ages 12 to 17 increased by 50%.

> In 2020, 81% of 14 to 22-year-olds said they used social media either "daily" or "almost constantly." This is by design. As private companies beholden to shareholders, performance incentives for product developers and executives are tied to profit and therefore time spent on their platform. Social media platforms and tech companies do not design these services with their youngest and most vulnerable users in mind.

> Ensuring the safety of tech products is long overdue. We have nutrition labels on food packaging, rigorous testing for cribs and car seats, and yet the technology children use daily from the youngest of ages have little to no safeguards.

**Arguments in Opposition**
A coalition of industry trade groups comprised TechNet, California Chamber of Commerce, Entertainment Software Association, and California Manufacturers & Technology Association argues:

> AB 2273 still contains a great deal of subjectivity and our companies would benefit greatly from additional opportunities to seek guidance and feedback from the Attorney General before penalties are instituted.  The UK Information Commissioner's Office (ICO), which is the authority that implements the UK Age Appropriate Design Code, produced a robust online resource for companies to better understand the ICO's interpretations of the standard's requirements and also provides the opportunity to ask questions of the regulator.  If the goal is to encourage and incentivize companies to take proactive steps to protect children online, companies should have the opportunity to fix mistakes or compare their interpretations with the Attorney General as they try in good faith to comply with this new standard.

## FISCAL COMMENTS

According to the Senate Appropriations Committee:

1) *DOJ:*  The Department of Justice (DOJ) reports costs of $2.4 million in Fiscal Year (FY) 2024-25 and $2.3 million in FY 2025-26 and annually thereafter (General Fund).  The bill would also generate revenue to the DOJ in an unknown amount, resulting from penalty assessments of up to $7,500 per affected child, to be deposited into the Consumer Privacy Fund with the intent they be used to offset costs incurred by the DOJ.

2) *CPPA*:  The [California Privacy Protection Agency] reports total costs of $1.05 million the first year, and $752 thousand ongoing to convene the task force, issue and update regulations, and review Data Protection Impact Assessments (General Fund).

3) *Judicial Branch:*  Unknown cost pressures due to increased court workload (Special Fund – Trial Court Trust Fund, General Fund).

**VOTES:**

**ASM PRIVACY AND CONSUMER PROTECTION:  10-0-1**
**YES:**  Gabriel, Bauer-Kahan, Bennett, Berman, Cunningham, Mike Fong, Irwin, Valladares, Wicks, Wilson
**ABS, ABST OR NV:**  Kiley

**ASM APPROPRIATIONS:  16-0-0**
**YES:**  Holden, Bigelow, Bryan, Calderon, Carrillo, Megan Dahle, Davies, Mike Fong, Fong, Gabriel, Eduardo Garcia, Levine, Quirk, Robert Rivas, Akilah Weber, Wilson

**ASSEMBLY FLOOR:  72-0-6**
**YES:**  Aguiar-Curry, Arambula, Bauer-Kahan, Bennett, Bigelow, Bloom, Boerner Horvath, Mia Bonta, Bryan, Calderon, Carrillo, Cervantes, Chen, Cooley, Cooper, Cunningham, Megan Dahle, Davies, Flora, Mike Fong, Fong, Friedman, Gabriel, Gallagher, Cristina Garcia, Eduardo Garcia, Gray, Grayson, Haney, Holden, Irwin, Jones-Sawyer, Kalra, Lackey, Lee, Levine, Low, Maienschein, Mathis, Mayes, McCarty, Medina, Mullin, Muratsuchi, Nazarian, Nguyen, Patterson, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Salas, Santiago, Seyarto, Smith, Stone, Ting, Valladares, Villapudua, Voepel, Waldron, Ward, Akilah Weber, Wicks, Wilson, Wood, Rendon
**ABS, ABST OR NV:**  Berman, Choi, Daly, Gipson, Kiley, O'Donnell

**SENATE FLOOR:  33-0-7**
**YES:**  Allen, Archuleta, Atkins, Becker, Bradford, Caballero, Cortese, Dahle, Dodd, Durazo, Eggman, Glazer, Gonzalez, Hertzberg, Hueso, Hurtado, Kamlager, Laird, Leyva, Limón, McGuire, Min, Newman, Nielsen, Pan, Portantino, Roth, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**ABS, ABST OR NV:**  Bates, Borgeas, Grove, Jones, Melendez, Ochoa Bogh, Wilk

**UPDATED**

VERSION: August 22, 2022

CONSULTANT:  Landon Klein / P. & C.P. / (916) 319-2200                         FN: 0004511