```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4
       NETCHOICE, LLC,                )   CV-22-8861-BLF
5                                     )
                     PLAINTIFF,       )   SAN JOSE, CALIFORNIA
6                                     )
               VS.                    )   JULY 27, 2023
7                                     )
       BONTA,                         )   PAGES 1-99
8                                     )
                     DEFENDANT.       )
9      _____)

10                    TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE BETH LABSON FREEMAN
                  UNITED STATES DISTRICT JUDGE
12

13     A P P E A R A N C E S:

14

       FOR THE PLAINTIFF:      BY:  AMBIKA KUMAR
15                             DAVIS WRIGHT TREMAINE LLP
                               920 FIFTH AVENUE, SUITE 3300
16                             SEATTLE, WA 98104

17

18     FOR THE PLAINTIFF:      BY:  ADAM STANLEY SIEFF
                               DAVIS WRIGHT TREMAINE LLP
19                             865 S. FIGUEROA STREET, 24TH FLOOR
                               LOS ANGELES, CA 90017
20

21             APPEARANCES CONTINUED ON THE NEXT PAGE

22

23     OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1     APPEARANCES CONTINUED:

 2     FOR THE PLAINTIFF:      BY:  DAVID MORRIS GOSSETT
                               DAVIS WRIGHT TREMAINE LLP
 3                             1301 K STREET NW, SUITE 500 EAST
                               WASHINGTON, DC 20005
 4

 5     FOR THE DEFENDANT:      BY:  ELIZABETH WATSON
                                    ANYA BINSACCA
 6                             CALIFORNIA ATTORNEY GENERAL'S OFFICE
                               CALIFORNIA DEPARTMENT OF JUSTICE
 7                             455 GOLDEN GATE AVENUE, STE 11000
                               SAN FRANCISCO, CA 94102
 8

 9     FOR THE DEFENDANT:      BY:  NICOLE JULIET KAU
                               CALIFORNIA ATTORNEY GENERAL'S OFFICE
10                             DEPARTMENT OF JUSTICE
                               300 S. SPRING ST.
11                             LOS ANGELES, CA 90013

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              SAN JOSE, CALIFORNIA              JULY 27, 2023

2                        P R O C E E D I N G S

3         (COURT CONVENED AT 1:30 P.M.)

4              THE COURT:  GOOD AFTERNOON, EVERYONE.  WELCOME.

5     PLEASE BE SEATED.

6              ALL RIGHT.  LET'S CALL OUR CASE AND I WILL GET YOUR

7     APPEARANCES ON THE RECORD.

8              THE CLERK:  CALLING CASE 22-8861.  NETCHOICE, LLC

9     VERSUS BONTA.

10             COUNSEL, PLEASE STATE YOUR APPEARANCES.

11             MS. KUMAR:  AMBIKA KUMAR FROM DAVIS WRIGHT TREMAINE

12    FOR THE PLAINTIFF, NETCHOICE.

13             THE COURT:  ALL RIGHT.  I'M GOING TO NEED YOU TO PULL

14    THAT MICROPHONE.

15             MS. KUMAR:  SORRY.  ALL RIGHT.

16        AMBIKA KUMAR FROM DAVIS WRIGHT TREMAINE FOR THE PLAINTIFF.

17             MR. SIEFF:  ADAM SIEFF OF DAVIS WRIGHT TREMAINE FOR

18    THE PLAINTIFF, NETCHOICE.

19             MR. GOSSETT:  AND DAVID GOSSETT, ALSO FROM DAVIS

20    WRIGHT TREMAINE, FOR THE PLAINTIFF.

21             MS. WATSON:  ELIZABETH WATSON FOR ATTORNEY GENERAL,

22    ROB BONTA.

23             MS. BINSACCA:  ANYA BINSACCA FOR ATTORNEY GENERAL,

24    ROB BONTA.

25             MS. KAU:  NICOLE KAU FOR THE SAME.
```

1          THE COURT:  ALL RIGHT.  WELCOME TO ALL OF YOU.

2          WE HAVE A LOT TO COVER TODAY, AND WHEN YOU ARE ACTUALLY

3     MAKING YOUR ARGUMENTS, I WILL ASK YOU TO COME UP TO THE PODIUM.

4          FIRST OF ALL, I WANT TO ACKNOWLEDGE THE REALLY EXCELLENT

5     WORK OF ALL OF THE AMICI WHO FILED BRIEFS.  I DON'T KNOW IF

6     THERE ARE ANY REPRESENTATIVES OF THOSE ORGANIZATIONS HERE

7     TODAY, BUT IT ROUNDED OUT THE BRIEFING BY THE PARTIES AND I

8     GREATLY APPRECIATE IT.

9          IN TERMS OF MOVING FORWARD THIS AFTERNOON, I PUT A LOT OF

10    THOUGHT INTO THIS, IT'S A COMPLICATED ISSUE.  I WILL SAY I AM

11    MOST TAKEN BY THE FACT THAT OUR LEGISLATURE PASSED THIS

12    LEGISLATION UNANIMOUSLY, AND I DON'T TAKE THAT LIGHTLY, THAT'S

13    A VERY SIGNIFICANT DEMONSTRATION OF THE VAST AND DEEP SUPPORT

14    THAT THIS LEGISLATION HAS HAD IN THE STATE OF CALIFORNIA, AND I

15    TAKE THAT AS A VERY IMPORTANT THING, WITH MY GREAT ADMIRATION

16    AND RESPECT OF THE LEGISLATIVE PROCESS.  SO I CAN GO HOME AND

17    BE HAPPY I VOTED FOR MY ASSEMBLY MEMBER AND MY SENATOR, AND

18    THAT'S ALL GREAT.

19         THE ISSUE HERE TODAY IS DIFFERENT AND IS NOT GUIDED BY HOW

20    MUCH THE LEGISLATURE FAVORED THIS LEGISLATION AND THE PURPOSES

21    OF IT, AND IN READING ALL THE BRIEFS, I DON'T THINK THERE'S

22    ANYONE HERE WHO WOULD SAY THAT PROTECTING CHILDREN IS NOT A

23    GOOD IDEA AND NOT A STATE INTEREST, THE QUESTION IS WHETHER

24    THIS LEGISLATION PASSES MUSTER UNDER THE FIRST AMENDMENT.

25         AND THAT'S WHERE I WOULD LIKE TO FOCUS TODAY.  THE

1    COMMERCE CLAUSE AND SECTION 230 I THINK ARE NOT -- I DON'T

2    THINK THAT'S ACTUALLY THE DIRECTION THE PRELIMINARY INJUNCTION

3    WILL TAKE.  I'M GLAD TO HEAR SOME ARGUMENT ON THAT IF WE

4    ACTUALLY GET TO THAT AND THERE'S SOME TIME FOR IT.

5           IN FOCUSING ON THE FIRST AMENDMENT ARGUMENT, I HAVE --

6    THERE ARE A FEW ISSUES AND STRUCTURE THAT I WOULD LIKE TO

7    FOLLOW, BUT I'M NOT RESTRICTING YOUR FULL ARGUMENT, AND I

8    WELCOME IT.

9           IN TRYING TO ANALYZE WHETHER THERE'S EVEN SPEECH AT ISSUE,

10   AND IF THERE IS, WHETHER THE STATUTE IS A PRIOR RESTRAINT OR

11   FAILS TO BE CONTENT-NEUTRAL, I STRUGGLED TO IDENTIFY A CONCRETE

12   EXAMPLE OF WHAT WOULD BE REGULATED UNDER THE STATUTE.  AND WHEN

13   I LOOKED AT THE MEMBER ORGANIZATIONS OF NETCHOICE, NOTHING

14   REALLY SPRUNG TO MIND.

15          AND SO I WOULD LIKE TO SUGGEST A COUPLE IDEAS OF A

16   REPRESENTATIVE ONLINE SERVICE, PRODUCT OR FEATURE THAT WE CAN

17   PERHAPS USE AS A TOUCHSTONE, BECAUSE THAT WOULD BE HELPFUL TO

18   ME.

19          IN MY ANALYSIS OF IT, IT SEEMED TO ME THAT IT MIGHT BE

20   HELPFUL TO CONSIDER EITHER AN ONLINE NEWSPAPER OR A NEWS FEED.

21   SO GOOGLE HAS A NEWS FEED, APPLE HAS A NEWS FEED, I DON'T THINK

22   APPLE IS ACTUALLY A MEMBER OF NETCHOICE, BUT IT WOULD BE

23   AFFECTED BY THIS.  AND BECAUSE IT WAS AN AMICUS, THE *NEW YORK*

24   *TIMES* CERTAINLY HAS AN ONLINE PRESENCE AND ITS CONTENT WOULD BE

25   SUBJECT TO THIS REGULATION.

1    SO IS THAT AN APPROPRIATE EXEMPLAR FOR US TO CONSIDER?

2    AND LET ME TURN TO PLAINTIFFS FIRST.

3         MS. KUMAR:  WOULD YOU LIKE ME TO COME UP?

4         THE COURT:  JUST FOR THIS ANSWER, NO, YOU DON'T NEED

5    TO, BUT THANK YOU.

6         MS. KUMAR:  OKAY.

7    IF THE QUESTION IS WHETHER THE *NEW YORK TIMES* IS A GOOD

8    EXAMPLE, OR ONLINE NEWS, I THINK IT IS ONE EXAMPLE.  I SUSPECT

9    THAT THE LAW AFFECTS OTHER SERVICES AS WELL IN DIFFERENT WAYS,

10   ALTHOUGH I'M HAPPY TO START THERE.

11        THE COURT:  SO I'M JUST -- I JUST WANT TO BE ABLE TO

12   TEST THE STATUTE WITH A CONCRETE EXAMPLE, SO THAT'S WHAT I'M

13   LOOKING FOR.  AND I CERTAINLY APPRECIATE, MS. KUMAR, THAT THERE

14   ARE MANY -- I MEAN, THERE ARE VIRTUALLY AN INFINITE NUMBER.  SO

15   I WAS LOOKING FOR A GOOD EXAMPLE THAT WOULD BE EASY TO

16   UNDERSTAND.  SO WHAT WOULD YOU RECOMMEND?

17        MS. KUMAR:  I THINK THAT WOULD BE A GOOD EXAMPLE.

18   THE OTHER EXAMPLE I WOULD POINT YOUR HONOR TO IS THE

19   DECLARATION FROM GOODREADS, WHICH IS A --

20        THE COURT:  WELL, I'M SORRY I DON'T THAT ALL OF THAT

21   IN FRONT OF ME, JUST TELL ME WHAT THE PRODUCT, SERVICE OR

22   FEATURE IS.

23        MS. KUMAR:  GOODREADS IS --

24        THE COURT:  OH, GOODREADS, THE BOOK.

25        MS. KUMAR:  YES.

1              THE COURT:  OKAY.  OKAY.

2          AND THEN LET ME TURN TO THE ATTORNEY GENERAL.  DO YOU HAVE

3      A DISAGREEMENT ON THAT AS AN EXAMPLE?

4              MS. WATSON:  WELL, I CERTAINLY THINK IT COULD BE ONE

5      EXAMPLE.  I THINK THAT IF IT'S -- AS LONG AS WE ARE ALLOWED TO

6      KIND OF TALK ABOUT OTHER THINGS, I THINK THAT WOULD BE HELPFUL

7      AS WELL, BECAUSE CERTAINLY THE SOCIAL MEDIA ASPECTS OF IT ARE

8      QUITE DIFFERENT WHEN YOU ARE OFFERING PERSONALIZED FEEDS,

9      PERSONAL APPS.

10             THE COURT:  SO NEWS FEED, LIKE A GOOGLE NEWS FEED OR

11     APPLE, IS OFFERING A PERSONALIZED FEED.  MINE DOES.  WHEN I

12     HANDLED THE GOLF CASE, I GOT EVERY ARTICLE ON GOLF THAT EVER

13     EXISTED.

14             MS. WATSON:  I APOLOGIZE, YOUR HONOR.

15         I WAS THINKING MORE LIKE FACEBOOK, LIKE A NEWS FEED FOR

16     YOUR FRIENDS AND YOUR CONTACTS AND THAT ALLOWS YOU TO MESSAGE

17     TO EACH OTHER.

18             THE COURT:  OKAY.  SO WHAT EXAMPLE WOULD YOU GIVE?

19             MS. WATSON:  SO I THINK THERE HAVE BEEN CASES, LIKE

20     THERE'S ALREADY CASES IN THE NINTH CIRCUIT ABOUT SNAPCHAT, SO

21     THERE IS SOME KIND OF MORE EXPANSIVE INFORMATION ABOUT THAT OUT

22     THERE.

23             THE COURT:  OKAY.  THANK YOU.

24         AND THAT'S JUST A THRESHOLD -- IT WILL HELP ME TO KIND OF

25     TEST THE STATUTE, AND THAT'S WHAT I'VE BEEN TRYING TO DO.

1          SO LET ME JUST OUTLINE WHAT I THINK WILL BE HELPFUL TO ME,

2     AND SO YOU CAN BE SURE TO ADDRESS YOUR COMMENTS TO IT.  IT

3     APPEARS TO ME THAT THE ISSUE OF STANDING IS REALLY OFF THE

4     TABLE, THAT EVERYONE ACCEPTS THE RELAXED STANDARD FOR STANDING

5     IN A FIRST AMENDMENT FACIAL CHALLENGE.

6          I KNOW THERE'S A COMMENT IN THE OPPOSITION THAT LOOKING AT

7     THE EFFECT ON USERS, SUCH AS THE CHILDREN, WOULD BE BEYOND THE

8     SCOPE OF THE STANDING REQUIREMENTS, WHICH I THINK IS PROBABLY

9     CORRECT, BUT IT'S STILL -- IT'S NOT JUST THE NETCHOICE MEMBERS,

10    THEMSELVES, SO HENCE THE *NEW YORK TIMES*, AS AN EXAMPLE, WOULD

11    BE IN THAT REALM.

12         SO I THINK THAT THE FIRST ISSUE THAT WE NEED MORE CLARITY

13    ON FOR ME, IS WHETHER THIS IS SPEECH AT ALL OR ONLY CONDUCT.

14         I THINK THAT THE STATUTE HAS BEEN A LITTLE BIT

15    MISREPRESENTED IN THE PLAINTIFFS BY WHAT IT REQUIRES OF THE

16    ONLINE PROVIDERS, BUT ONLY A LITTLE BIT, AND SO WE WANT TO

17    DISCUSS THAT.  AND I'M ALSO CONCERNED THAT THE ATTORNEY GENERAL

18    STARTS THE DISCUSSION BY SAYING, EMPHATICALLY, AND MORE THAN

19    ONCE, PLAINTIFF'S MEMBERS HAVE NO RIGHT TO CHILDREN'S PERSONAL

20    INFORMATION.

21         IT'S A VERY STRONG STATEMENT, IT'S JUST GIVEN TO ME

22    WITHOUT ANY AUTHORITY, SO I WOULD REALLY LIKE TO CIRCLE BACK TO

23    THAT AND KNOW WHAT THE AUTHORITY FOR THAT IS.  SO THAT WILL BE

24    HELPFUL.

25         IF WE DETERMINE -- IF I DETERMINE THAT THIS IS SPEECH,

1    THEN I ACTUALLY THINK THE REMAINDER OF DISCUSSION IS PRETTY

2    STRAIGHTFORWARD ON THE LEVEL OF SCRUTINY, BECAUSE I THINK UNDER

3    SORRELL AND REED, IF THIS IS SPEECH, THEN IT IS NOT

4    CONTENT-NEUTRAL.

5         AND I WILL BE GLAD TO HEAR ARGUMENT ON IT, BUT I DIDN'T

6    HAVE TO READ ANY FURTHER THAN SECTION 31 (A), "A BUSINESS THAT

7    PROVIDES AN ONLINE SERVICE, PRODUCT OR FEATURE, LIKELY TO BE

8    ACCESSED BY CHILDREN."  IN ORDER TO KNOW WHETHER THE SERVICE IS

9    LIKELY TO BE ACCESSED, ONE HAS TO LOOK AT THE CONTENT.

10        AND SO I DON'T THINK I NEED TO LOOK AT ANYTHING ELSE TO

11   KNOW THAT.  BUT I DON'T KNOW IF IT'S SPEECH, BECAUSE THAT -- IT

12   SEEMS TO BE THE PRIMARY DISPUTE BETWEEN THE PARTIES.

13        AND THEN I JUST WANT TO GO THROUGH THE FIRST AMENDMENT FOR

14   THE THINGS I WANT TO HEAR FROM YOU.  IF IT IS SPEECH AND I

15   DETERMINE THAT STRICT SCRUTINY APPLIES, OR FRANKLY WHATEVER

16   LEVEL OF SCRUTINY, IT WAS UNCLEAR TO ME WHETHER, IN THE

17   PLAINTIFF'S VIEW, OR THE DEFENDANT'S, I NEED TO EVALUATE UNDER

18   THE STRICT SCRUTINY OR LOWER STANDARD, INTERMEDIATE SCRUTINY,

19   EACH AND EVERY ONE OF THE MANDATED ACTS AND THE PROHIBITED

20   ACTS, AND RULE ON THEM SEPARATELY.

21        AND THEN IF I RULE THEM UP AND TABULATE AND SOME ARE IN

22   AND SOME ARE OUT, DOES THE WHOLE STATUTE GO IF ONE OF ITS

23   CONSTITUENT PARTS IS INFIRM, OR DO I STRIKE ONLY THOSE THAT

24   ARE -- THAT DON'T MEET CONSTITUTIONAL MUSTER.  THERE'S NO

25   SEVERABILITY CLAUSE IN THE STATUTE, BUT IT'S NOT EXACTLY CLEAR

1    TO ME THAT I WOULD HAVE TO STRIKE DOWN THE ENTIRE STATUTE.  SO

2    I WILL NEED YOUR INPUT ON THAT.

3         SO I THINK THAT OUTLINES THE THINGS -- AND THEY MAY BE ON

4    THE OUTLINES THAT YOU HAD, AND I GREATLY APPRECIATE THAT, BUT

5    WHAT I WOULD LIKE TO DO IS DIVIDE THE FIRST AMENDMENT ARGUMENT

6    IN TWO, AND I REALLY WOULD LIKE TO HEAR FIRST, YOUR ARGUMENT ON

7    WHETHER OR NOT THIS IS SPEECH, AND THEN -- BECAUSE THEN IT WILL

8    GET TO WHETHER OR NOT IT'S CONTENT NEUTRAL, I THINK THAT'S A

9    FAIRLY SHORT CONVERSATION, AND THEN WE CAN TALK ABOUT THE

10   SCRUTINY AND HOW I WOULD ANALYZE THAT.

11        SO WITH ALL -- AND THEN WE WILL GET TO THE COMMERCE CLAUSE

12   AND SECTION 230, BUT I REALLY WANT TO FOCUS ON THIS.  AND I

13   WOULD BE GLAD TO GIVE EACH OF YOU 15 MINUTES TO GO THROUGH THIS

14   IN ARGUMENT, I THINK THAT SHOULD BE ENOUGH ON JUST THIS FIRST

15   PIECE OF IT THAT I WANT TO LIMIT YOU TO SO THAT I CAN FOCUS ON

16   IT.

17        SO IT'S PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, LET

18   ME HEAR, MS. KUMAR, YOUR ARGUMENT.

19        AND I WILL HAVE YOU PULL THAT MICROPHONE DOWN SO THAT WE

20   CAN HEAR YOU.  LET'S GET IT TURNED ON.

21             MS. KUMAR:  OKAY.  HERE WE GO.

22             THE COURT:  THAT SOUNDS BETTER.

23             MS. KUMAR:  THANK YOU, YOUR HONOR, FOR THOSE

24    INTRODUCTORY COMMENTS.

25        I AGREE WITH MUCH OF WHAT YOU SAID, AND I WANT TO

1      UNDERSCORE AS I TALK ABOUT WHY THE STATUTE REGULATES SPEECH,

2      THAT THIS IS A CONTENT REGULATION, IT'S NOT A DATA PRIVACY LAW.

3            AND THE ATTORNEY GENERAL, THE GOVERNOR, THE STATE'S EXPERT

4      WITNESS, THEY MADE CLEAR THAT THE INTENDED EFFECT AND PURPOSE

5      OF THE LAW IS TO REGULATE THE CONTENT THAT CHILDREN ARE EXPOSED

6      TO.

7            AND AS YOUR HONOR SAID, WE BELIEVE IT'S --

8            THE COURT:  DOES IT REGULATE THE CONTENT OR REGULATE

9      EXPOSURE TO THAT CONTENT?

10            MS. KUMAR:  WELL, I THINK THE STATUTE IS VAGUE, I

11      WILL SAY THAT.  YOU KNOW, WE DO HAVE A VAGUENESS CHALLENGE.  SO

12      IT'S NOT CLEAR THE MECHANISM THROUGH WHICH THE LEGISLATURE

13      WANTS TO REGULATE CONTENT.  AND I WOULD RESPECTFULLY SAY IT

14      DOESN'T MATTER WHETHER IT'S EXPOSURE OR CONTENT ITSELF, THE

15      GOVERNMENT CANNOT ENACT LAWS TO DETER THE PUBLICATION OF

16      PROTECTED SPEECH, PERIOD.

17            AND I THINK THE EXAMPLES THAT I POINT YOU TO IN THE CASE

18      LAW ARE THE BANTAM BOOKS CASE AND INTERSTATE CIRCUIT.

19            SO IN THE BANTAM BOOKS CASE, A MORALITY COMMISSION SENT

20      LETTERS TO BOOK SELLERS ABOUT BOOKS THE COMMISSION FOUND

21      OBJECTIONABLE, AND NOTED THAT THERE WERE LAWS RESTRICTING THAT

22      CONTENT, DIDN'T HAVE ANY POWER TO PENALIZE THE BOOK SELLERS OR

23      STOP THEM FROM SELLING THE BOOKS, BUT THE SUPREME COURT SAID,

24      THAT'S ENOUGH, THERE'S A HUGE CHILLING EFFECT HERE, AND THIS IS

25      AN UNCONSTITUTIONAL PRIOR RESTRAINT.

1          SIMILARLY, IN INTERSTATE CIRCUIT, THERE WAS A LAW THAT

2     REQUIRED FILM EXHIBITORS TO SAY WHETHER FILMS WERE SUITABLE FOR

3     CHILDREN OR NOT SUITABLE FOR CHILDREN.  THEY COULD STILL

4     EXHIBIT THEM, THERE WAS NO RESTRICTION ON THAT, BUT THE CLEAR

5     EFFECT OF THE LAW AND THE INTENT OF THE LAW WAS TO SUPPRESS

6     PROTECTED SPEECH.

7          AND THAT'S EXACTLY WHAT'S HAPPENED HERE, AND IT'S WHAT THE

8     STATE TRIED TO DO IN THE BROWN V. ENTERTAINMENT MERCHANTS

9     ASSOCIATION CASE.  IT'S QUITE CLEAR THAT THE GOVERNMENT CANNOT

10    DECIDE IN CATEGORIES OF PROTECTED SPEECH, WHAT THE PUBLIC

11    SHOULD VIEW AND WHAT THE PUBLIC SHOULDN'T VIEW.

12         TURNING TO THE, SORT OF THE TEXT OF THE STATUTE, WHICH I

13    THINK IS AT THE HEART OF YOUR QUESTION, WE COULD TAKE THIS IN

14    TERMS OF PROVISIONS, AND I WILL START WITH THE DPIA PROVISION.

15    AND THAT IS -- LET'S SEE HERE, 31-1, I THINK.  YEAH.

16         "SO BEFORE ANY NEW ONLINE SERVICE, PRODUCT OR FEATURE IS

17    OFFERED TO THE PUBLIC, A PROVIDER HAS TO COMPLETE A DATA

18    PROTECTION IMPACT ASSESSMENT."  AND IT SAYS UNDER 1(B), "THE

19    DATA PROTECTION IMPACT ASSESSMENT SHALL ADDRESS, TO THE EXTENT

20    APPLICABLE, ALL OF THE FOLLOWING."  AND THE VERY FIRST ONE IS

21    "WHETHER THE DESIGN OF THE ONLINE PRODUCT, SERVICE OR FEATURE

22    COULD HARM CHILDREN, INCLUDING BY EXPOSING CHILDREN TO HARMFUL

23    OR POTENTIALLY HARMFUL CONTENT ON THE ONLINE PRODUCT, SERVICE

24    OR FEATURE."

25              THE COURT:  SO LET ME STOP YOU THERE BECAUSE THIS WAS

1    HARD FOR ME.

2         SO THIS HAS NOTHING TO DO WITH THE DATA MANAGEMENT, THIS

3    SECTION, THIS HAS TO DO WITH THE UNDERLYING CONTENT OF THE

4    PRODUCT.  SO VIOLENCE IN A VIDEO GAME, PULITZER PRIZE WINNING

5    PHOTOGRAPHS OF WAR SCENES, CONTENT ABOUT GENDER AFFIRMING

6    HEALTHCARE, SOME STATES THINK THAT'S HARMFUL.

7              MS. KUMAR:  THAT'S TRUE.

8              THE COURT:  AND CALIFORNIA COULD.

9              MS. KUMAR:  THAT'S RIGHT.

10        AND IF THIS LAW WERE ENACTED AS IT'S BEING PROPOSED ACROSS

11   THE COUNTRY, THERE WOULD BE ALL SORTS OF EXAMPLES YOU COULD

12   GIVE.

13             THE COURT:  SO THAT'S HOW YOU READ THIS --

14             MS. KUMAR:  I DO.

15             THE COURT:  -- AS IT APPLYING TO THE CONTENT OF THE

16   PRODUCT, SERVICE OR FEATURE.

17             MS. KUMAR:  YES.  WELL, I THINK THE DESIGN OF THE

18   PRODUCT IN --

19             THE COURT:  SO I DON'T KNOW WHAT DESIGN -- SO DESIGN

20   OF THE PRODUCT.  SO HOW DO I DESIGN A NEWSPAPER ARTICLE?  I

21   WRITE IT, WOULDN'T THAT BE RIGHT?

22             MS. KUMAR:  WELL, I DON'T THINK THIS IS -- THIS IS A

23   REGULATION OF THE PUBLISHER OF THE NEWSPAPER, RIGHT.  SO IN

24   YOUR EXAMPLE, THE NEWSPAPER WOULD EITHER, UNDER THIS STATUTE,

25   AS THE *NEW YORK TIMES* HAS SAID, THEY MIGHT JUST NOT LET MINORS

1  ACCESS THEIR SITE, RIGHT, THAT'S ONE OPTION THEY HAVE.  THE

2  OTHER OPTION THEY HAVE IS TO ONLY PUBLISH ARTICLES THAT --

3          THE COURT:  BUT THIS DOESN'T SAY WHETHER DESIGN OF

4  THE METHOD OF ACCESS WOULD HARM CHILDREN.  I ACTUALLY THINK --

5  I READ IT AS WHETHER THE PRODUCT WOULD HARM CHILDREN.  YOU

6  DON'T --

7          MS. KUMAR:  I THINK IT DEPENDS ON WHAT THE PRODUCT

8  IS, RIGHT.  THE PRODUCT -- WE CAN GO -- IT'S DEFINED IN THE

9  STATUTE, I BELIEVE.

10          THE COURT:  THAT'S WHY I SAY THE NEWSPAPER ARTICLE

11  WOULD BE THE PRODUCT, WOULDN'T IT, OF THE *NEW YORK TIMES*?

12          MS. KUMAR:  YES.  I THINK -- LOOK, THE STATUTE IS

13  VAGUE, RIGHT, IT IS A CONTENT REGULATION MASQUERADING AS A

14  PRIVACY STATUTE.  AND THAT'S WHY YOU HAVE WORDS IN THERE LIKE

15  "DATA MANAGEMENT PRACTICES" OR THIS SORT OF AMBIGUOUS DESIGN.

16      IT'S CLEAR THAT WHAT THE LEGISLATURE WANTED TO DO WAS TO

17  FORCE PRIVATE SERVICES TO MITIGATE THE RISK THAT CHILDREN USING

18  THOSE SERVICES WOULD ENCOUNTER HARMFUL CONTENT.

19          THE COURT:  OKAY.  THANK YOU.

20          MS. KUMAR:  TURNING TO THE CONTENT ENFORCEMENT

21  STANDARDS WHICH ARE --

22          THE COURT:  SO I GUESS -- I MEAN, I'M STILL CIRCLING

23  BACK, WHY IS THIS SPEECH?  BECAUSE THAT'S THE BIGGEST ARGUMENT

24  THAT THE ATTORNEY GENERAL MAKES.

25          MS. KUMAR:  WHY IS THIS SPEECH?

1          THE COURT:  WHY DOES THIS STATUTE REGULATE SPEECH?

2          MS. KUMAR:  THE STATUTE REGULATES SPEECH BECAUSE IT

3     REQUIRES SERVICES TO BOTH IDENTIFY AND MITIGATE, AND IDENTIFY

4     FOR THE GOVERNMENT, BY THE WAY, WHAT CONTENT THEY ARE

5     PUBLISHING THAT MIGHT EXPOSE MINORS -- SORRY, WHAT THEY ARE

6     DOING MIGHT EXPOSE MINORS TO HARMFUL CONTENT.

7          I DON'T SEE HOW YOU CAN GET AWAY FROM -- IF YOU TOOK

8     "CONTENT" OUT OF THAT PROVISION THAT WE ARE TALKING ABOUT, THE

9     LAW WOULDN'T MAKE ANY SENSE.

10         THE COURT:  OKAY.

11         MS. KUMAR:  AND YOU KNOW, JUST TO UNDERSCORE, YOU

12    KNOW, THE ATTORNEY GENERAL HAS SAID, THIS IS -- I'M GLAD YOU

13    GUYS DID THIS, THIS IS GOING TO HELP US PROTECT CHILDREN FROM

14    DANGEROUS ONLINE CONTENT.

15         THE GOVERNMENT HAS SAID AS MUCH.  THE STATE'S OWN EXPERT,

16    HER DECLARATION IS RIPE WITH EXAMPLES OF ALLEGEDLY HARMFUL

17    CONTENT.  AND SHE CRITICIZES EXISTING LAW BECAUSE IT ONLY

18    COVERS DATA MANAGEMENT PRACTICES.

19         THE COURT:  IT SEEMS TO ME THAT THE LAUDABLE GOALS OF

20    THIS LEGISLATION ARE ONLY MET BY BANNING CHILDREN FROM THE

21    INTERNET, WHICH ISN'T GOING TO HAPPEN.

22         MS. KUMAR:  RIGHT.

23         THE COURT:  THE INTERNET IS HARMFUL TO CHILDREN, USED

24    INCORRECTLY, AND IT OPENS UP A WORLD TO CHILDREN WHO DON'T

25    OTHERWISE HAVE ACCESS, OR ANY PERSON WITH ANY CURIOSITY.

1          MS. KUMAR:  IT'S REALLY NO DIFFERENT THAN VIDEO GAMES

2     OR MOVIES.  YOU KNOW, EVERY TIME THERE'S A TECHNOLOGICAL

3     ADVANCE, THERE IS A CONCERN THAT, UNDERSTANDABLY, OF HOW IT

4     WILL AFFECT OUR CHILDREN.  BUT THE SUPREME COURT HAS MADE CLEAR

5     TIME AND TIME AGAIN THAT THE SOLUTION IS NOT TO TAKE AWAY THE

6     DISCRETION OF INDIVIDUAL USERS AND PROVIDERS TO SHOW CERTAIN

7     SPEECH.

8          IF PARENTS, FOR EXAMPLE, WANT TO CONTROL WHAT THEIR

9     CHILDREN SEE OR DON'T SEE, THAT'S THEIR PREROGATIVE.  AND THAT

10    IS WHAT THE SUPREME COURT HAS DIRECTED IS THE PROPER, LESS

11    RESTRICTIVE ALTERNATIVE TO REGULATING SPEECH, LIKE IN THE

12    PLAYBOY ENTERTAINMENT CASE.

13         YOU KNOW, IN THIS CASE, THE GOVERNMENT -- AND I REALIZE WE

14    ARE GETTING INTO, KIND OF SCRUTINY, A LITTLE BIT, BUT THE

15    GOVERNMENT HAS SAID, WELL PEOPLE DON'T READ PRIVACY POLICIES,

16    OR COPPA ISN'T BEING ENFORCED.  THOSE ARE NOT REASONS TO ENACT

17    A STATUTE LIKE THIS.  THOSE ARE REASONS TO ENFORCE COPPA, AND

18    THEY ARE REASONS TO MAYBE EDUCATE PEOPLE ABOUT PRIVACY

19    POLICIES.  IN THE PLAYBOY ENTERTAINMENT CASE, PARENTS HAD THE

20    OPTION TO REQUEST FILTERING ON A HOUSEHOLD-BY-HOUSEHOLD BASIS.

21    THE GOVERNMENT SAID, PARENTS AREN'T REALLY DOING IT.  AND THE

22    COURT SAID, THAT'S NOT A REASON FOR YOU TO REGULATE CONTENT,

23    THAT'S A REASON FOR YOU TO EDUCATE PARENTS MORE, FOR EXAMPLE.

24          THE COURT:  GO AHEAD.

25          MS. KUMAR:  I WANT TO BE SURE I'M ADDRESSING YOUR

1      CONCERNS ABOUT SPEECH OR NOT SPEECH.  AND I THINK THAT, YOU

2      KNOW, ALL OF THE -- ALL OF THESE --

3              THE COURT:  WELL, IF IT'S NOT SPEECH, YOU LOSE.

4              MS. KUMAR:  INDEED.  AND IT'S THE FIRST THING IN MY

5      OUTLINE, SO IT'S SOMETHING I ANTICIPATED THAT WE WOULD TALK

6      ABOUT HERE.

7          AND I THINK EACH OF THE PROVISIONS THAT WE ARE

8      CHALLENGING, IN ITS OWN WAY, IS A CONTENT REGULATION.

9          SO FOR EXAMPLE, THE REQUIREMENT THAT SERVICES PUBLISH AND

10     ENFORCE THEIR OWN COMMUNITY STANDARDS, IS ABSOLUTELY A CONTENT

11     REGULATION.  YOU KNOW, THE *NEW YORK TIMES* HAS A RULE AGAINST

12     THINGS THAT ARE IN POOR TASTE -- OH, NO, I'M SORRY, THEY WANT

13     RESPECTFUL LANGUAGE.  THE *WASHINGTON POST* WANTS CONTENT THAT'S

14     NOT IN POOR TASTE.  WHAT THIS STATUTE WOULD DO IS GIVE THE

15     GOVERNMENT THE POWER TO DECIDE WHAT'S IN POOR TASTE, WHAT'S

16     DISRESPECTFUL, OR ALTERNATIVELY IT WILL INCENTIVIZE SERVICES TO

17     STOP USING THOSE STANDARDS ALL TOGETHER.  SO NO MATTER WHICH

18     WAY YOU GO, THE STATUTE IS IMPERMISSIBLE.

19         THE AGENT VERIFICATION REQUIREMENT IS ALSO ABOUT SPEECH,

20     IT REQUIRES SERVICES TO CHOOSE BETWEEN VERIFYING THE IDENTITY

21     OF EVERYBODY THAT VISITS THEIR SERVICE OR PRINTING ONLY WHAT'S

22     FIT FOR CHILDREN.

23         AND THE DECLARATIONS IN THIS CASE ARE REPLETE WITH

24     EXAMPLES OF WHY PROVIDERS DON'T DO THIS.  THE PAOLUCCI

25     DECLARATION MAKES CLEAR THAT ANONYMITY IS A KEY SERVICE,

1    ESPECIALLY FOR VULNERABLE POPULATIONS, AND THAT THEY ARE VERY

2    CONCERNED.  THEY EVEN TALKED ABOUT SHUTTING DOWN BECAUSE OF

3    THIS LAW.  SO I DON'T THINK IT'S A STRETCH TO SAY THAT -- I

4    MEAN, THAT ABSOLUTELY IS A CONTENT REGULATION AS WELL.

5            AND SO ARE -- I SUSPECT THE STATE WILL HARP ON THE

6    PROVISIONS THAT, YOU KNOW, THIS IDEA OF NO FIRST AMENDMENT

7    RIGHT TO PERSONAL INFORMATION.  AND I THINK THE SORRELL CASE

8    ANSWERS THAT HEAD ON.  IN THAT CASE, THE GOVERNMENT WAS TRYING

9    TO RESTRICT THE USE OF PRESCRIBER IDENTIFYING INFORMATION

10   BECAUSE THE GOVERNMENT DIDN'T LIKE WHAT WAS HAPPENING TO THAT

11   INFORMATION.  AND THE COURT SAID NO, NO, THERE IS -- THIS IS

12   INFORMATION THAT WAS OBTAINED AND SHOULD AND CAN BE USED.  IN

13   FACT, THERE WERE DOCTORS IN THE RECORD WHO APPRECIATED THE

14   TAILORED, TARGETED INFORMATION.

15           AND HERE, IF YOU LOOK AT THE DECLARATIONS AND YOU LOOK AT

16   THE CCIA BRIEF, THE COMPUTER COMMUNICATION INFORMATION

17   ASSOCIATION, THEY TALK ABOUT HOW PERSONALIZATION IS INTEGRAL TO

18   THE WAY THE INTERNET WORKS, THE WAY PUBLICATIONS WORK ON THE

19   INTERNET, AND YOU KNOW, THOSE PROVISIONS THAT PURPORTEDLY ONLY

20   RESTRICT THE USE OF INFORMATION STRIKE AT THE HEART OF THE

21   EDITORIAL PROCESS AS IT WORKS ONLINE.

22           THOSE ARE THE SETS OF PROVISIONS THAT WE CHALLENGED.  I'M

23   HAPPY TO ANY FURTHER QUESTIONS.

24               THE COURT:  ALL RIGHT.  SO THAT TAKES US TO WHETHER

25    OR NOT IT'S SPEECH.  AND THEN WE WILL COME BACK IN A FEW

```
1      MINUTES.  I THINK -- I DON'T EVEN KNOW THAT I'M GOING TO REACH

2      PRIOR RESTRAINT ISSUES BECAUSE IT MAY BE ENOUGH TO DISCUSS

3      WHETHER IT'S CONTENT-NEUTRAL OR NOT.  SO WE WILL COME BACK.

4      LET'S COME BACK TO THAT.

5            WHO FROM THE ATTORNEY GENERAL -- AND TELL ME YOUR NAME

6      AGAIN?

7                  MS. WATSON:  ELIZABETH WATSON.

8                  THE COURT:  THANK YOU, MS. WATSON.

9            GO AHEAD, PLEASE.

10                 MS. WATSON:  THANK YOU, YOUR HONOR.

11           SO I CAN JUST JUMP RIGHT INTO THE PROVISIONS, IF THAT'S

12     OKAY.

13                 THE COURT:  I'VE GOT IT RIGHT HERE.

14                 MS. WATSON:  SO THE DATA PROTECTION IMPACT ANALYSIS.

15           THIS LAW SPECIFICALLY REQUIRES BUSINESSES TO EVALUATE THE

16     RISKS THAT ARISE FROM THE DATA MANAGEMENT PRACTICES OF THE

17     SERVICE.  THAT'S WHAT THE TEXT OF THE LAW SAYS.

18           SO FOR EXAMPLE, THIS PROVISION REQUIRES BUSINESSES TO

19     CONSIDER HOW THE PRODUCT'S USE DESIGN FEATURES, LIKE NUDGING TO

20     KEEP A CHILD ENGAGED TO EXTEND THE TIME THE CHILD IS USING THE

21     PRODUCT.  SUCH EXTENDED USE BENEFITS THE BUSINESS, BUT AS OUR

22     DECLARATION SHOWS, IS HARD ON THE CHILDREN BECAUSE IT MAKES IT

23     HARDER FOR THEM TO DISENGAGE, AND THIS RESULTS IN PROBLEMS LIKE

24     SLEEP DEPRIVATION AND BEHAVIORAL PROBLEMS.

25           SO THOSE HAVE NOTHING -- THE PROBLEM, A USE OF EXTENDED
```

1   FEATURES, THE KIND OF AUTOPLAY, THE "PLEASE GET BACK ON AT THIS

2   TIME," THAT HAS NOTHING TO DO WITH SPEECH.  REGARDLESS OF WHAT

3   CONTENT IS GOING ON THAT THE BUSINESS IS TRYING TO GET THE USER

4   BACK TO, IT HAS NOTHING TO DO WITH CONTENT, IT'S ABOUT THE

5   DESIGN FEATURE, THE CONTINUOUS USE, THE NUDGING.

6           THE COURT:  SO WHICH OF THESE SUBSECTIONS ARE YOU

7   REFERRING ME TO?

8           MS. WATSON:  I'M SORRY, YOUR HONOR?

9           THE COURT:  BECAUSE THIS ANALYSIS IS DEEPLY ROOTED IN

10  MY REVIEW OF THE SPECIFIC LANGUAGE, AND I THINK THERE'S BEEN

11  SOME MISCHARACTERIZATION.

12          MS. WATSON:  ABSOLUTELY, YOUR HONOR.

13      SO THE EXTENDED TIMING IS --

14          THE COURT:  SO I'M LOOKING AT SECTION 31, THAT REALLY

15  SEEMS TO BE THE PRIMARY SECTION.

16          MS. WATSON:  YES.

17      SO IT'S SECTION 31(A)(1)(B)(7) IS THE PROVISION THAT TALKS

18  ABOUT -- THE PROVISION SAYS "WHETHER AND HOW THE ONLINE

19  PRODUCT, SERVICE OR FEATURE USES SYSTEM DESIGN FEATURES TO

20  INCREASE, SUSTAIN OR EXTEND USE OF THE ONLINE PRODUCT, SERVICE

21  OR FEATURE BY CHILDREN, INCLUDING AUTOMATIC PLAYING OF MEDIA

22  AND REWARD FOR TIME SPENT AND NOTIFICATIONS."

23          THE COURT:  BUT I GUESS I'M KIND OF -- SO IT'S

24  INTERESTING HERE BECAUSE THIS GETS INTO SOME OF THESE SECTIONS

25  MIGHT REGULATE SPEECH AND OTHERS NOT.  BECAUSE I'M LOOKING AT

```
 1        (1)(B)(1), WHETHER THE DESIGN OF THE ONLINE PRODUCT, SERVICE OR

 2        FEATURE COULD HARM CHILDREN, INCLUDING BY EXPOSING THEM TO

 3        HARMFUL OR POTENTIALLY HARMFUL CONTENT.

 4             MS. WATSON:  YES, YOUR HONOR.

 5        I THOUGHT YOU MIGHT ASK ABOUT THAT.

 6             THE COURT:  OF COURSE.  AND I KNOW YOU DIDN'T WRITE

 7        THIS, MS. WATSON, IT'S YOUR DUTY TO DEFEND IT.

 8             MS. WATSON:  NO.  BUT I ALSO THINK -- I REALLY DO

 9        THINK IT'S THE CASE THAT THE QUESTION IS WHETHER THE DESIGN OF

10        THE ONLINE PRODUCT, AS IN A PRODUCTS LIABILITY CASE, HOW YOU

11        ARE DESIGNING YOUR PRODUCT, IS THAT DANGEROUS FOR CHILDREN, IS

12        THAT EXPOSING CHILDREN --

13             THE COURT:  THAT'S WHY -- SO GIVE ME AN EXAMPLE OF A

14        PRODUCT THAT WOULD BE COVERED, THAT'S WHY I SAID A NEWSPAPER

15        ARTICLE.

16             MS. WATSON:  I'M SORRY, I DON'T HAVE THE HARMFUL

17        CONTENT ONE FOR YOU, BUT THE REASON I MENTIONED SNAPCHAT IS

18        BECAUSE THERE WAS A RECENT PRODUCTS LIABILITY CASE THAT WENT UP

19        TO THE NINTH CIRCUIT ABOUT SNAPCHAT, IT WAS CALLED THEIR SPEED

20        FILTER.

21         AND WHAT IT DID WAS, IT WAS SO THAT YOU COULD PUT A FILTER

22        OVER YOUR IMAGE AND TAKE A VIDEO, A SHORT CLIP TO SHARE, AND

23        THE FEATURE OF THE FILTER WAS THAT IT WOULD TRACK HOW FAST YOU

24        ARE GOING.  AND CHILDREN WERE -- YOUNG PEOPLE WERE USING IT,

25        SAW IT AS AN ENCOURAGEMENT TO GO OVER A HUNDRED MILES AN HOUR.
```

1          THIS WENT UP ON A MOTION TO DISMISS, SO THESE ARE THE

2     ALLEGED FACTS.

3               THE COURT:  SURE.

4               MS. WATSON:  BUT THAT'S A PRODUCT THAT SNAPCHAT

5     DESIGNED, AND THE PLAINTIFF'S SUIT WAS THAT THIS WAS NEGLIGENT

6     DESIGN.  AND YOU KNOW, THERE'S OBVIOUSLY QUESTIONS OF WHAT DID

7     SNAPCHAT KNOW AND DID THEY DESIGN IT THAT WAY, BUT THAT'S THE

8     KIND OF PRODUCTS LIABILITY THAT THIS IS TRYING TO GET AT.

9               THE COURT:  SO THE STATUTE COVERS -- I MEAN, ONE OF

10    THE PROBLEMS WITH OVERBREADTH -- SO I'M BACK INTO THE SPEECH.

11    SO I WANT TO KNOW WHY THIS ISN'T SPEECH.

12              MS. WATSON:  YES.

13         SO I THINK WE HAVE THE EXAMPLE OF THE NUDGING, BUT EVEN ON

14    THE EVALUATING THE RISK OF HARMFUL CONTENT, CONDUCT, CONTACT,

15    YOU ARE LOOKING AT THE DESIGN, AND THE BUSINESSES NEED NOT

16    ALTER THE CONTENT AVAILABLE ON THEIR PLATFORM OR THEIR USER

17    POPULATION TO AVOID AND MITIGATE THE RISK OF HARM TO CHILDREN

18    THAT THIS LAW IS TRYING TO ADDRESS.

19         THERE ARE PLENTY OF NON CONTENT-BASED MITIGATION TOOLS

20    AVAILABLE.  BUSINESSES COULD MITIGATE HARM TO -- MITIGATE

21    EXPOSURE TO HARMFUL CONTENT BY NOT GETTING UNSOLICITED ADS ON

22    CHILDREN'S PERSONALIZED FEEDS, RIGHT, OR JUST NOT DOING IT AT

23    ALL.

24         THEY COULD MITIGATE EXPOSURE TO HARMFUL CONTACT BY NOT

25    ALLOWING UNKNOWN MEMBERS, UNKNOWN USERS TO MESSAGE CHILDREN,

1    RIGHT, IT'S CLOSED MESSAGING, JUST ONLY ALLOW UNSOLICITED

2    MESSAGES FROM PEOPLE THEY KNOW.

3            THE COURT:  SO WHAT IF THEY GO OUT AND BUY THE WEEKLY

4    READER AND SEND THAT OUT TO CHILDREN'S ACCOUNTS?

5            MS. WATSON:  WELL, THIS IS ONLY ASSESSING HOW YOUR

6    BUSINESS MODELS, RIGHT, MIGHT HARM CHILDREN.

7        SO I THINK THE *NEW YORK TIMES* COULD LOOK AT, HOW -- ARE

8    YOU GIVING UNSOLICITED ADS, HOW ARE SELLING CHILDREN'S DATA OR

9    ARE YOU SELLING CHILDREN'S DATA TO CREATE PERSONALIZED ADS FOR

10   THEM, AND ARE THOSE ADS -- IS THAT POTENTIALLY HARMFUL.

11           THE COURT:  SO IT'S NOT JUST ADS, IT'S PERSONALIZED

12   FEED OF THESE --

13           MS. WATSON:  RIGHT, BUT I WOULD SAY -- SORRY.

14           THE COURT:  I'M SORRY, I KNOW, MY BAD.

15           MS. WATSON:  I THINK IF YOU GO TO THE *NEW YORK TIMES*

16   NEWS FEED TO SEE NEWS, THAT THE CHILD IS KNOWINGLY ENGAGED IN

17   THAT, I DON'T KNOW, I'M NOT FAMILIAR WITH THE *NEW YORK TIMES*

18   NEWS FEED UNFORTUNATELY, BUT LIKE ON FACEBOOK'S NEWS FEED,

19   RIGHT, SOME OF IT IS YOUR FRIEND'S STUFF, SOME IT'S AN AD, SOME

20   OF IT IS STUFF LIKE, HEY, WOULD YOU LIKE TO LOOK AT THIS,

21   BECAUSE THE WEBSITE IS TRYING TO KEEP YOU ENGAGED, THAT'S HOW

22   THEY MAKE MONEY.

23       SO IT'S NOT, DOES THE *NEW YORK TIMES* NEED TO LOOK AT EVERY

24   ARTICLE THEY HAVE AND SEE, IS THIS GOING TO HARM CHILDREN, IS

25   THIS GOING TO HARM CHILDREN?  NO, ESPECIALLY WITH THE DATA

1    PROTECTION RISK ANALYSIS, IT'S HOW ARE YOUR DATA MANAGEMENT

2    PRACTICES, HOW ARE YOUR DATA MANAGEMENT PRACTICES EXPOSING

3    CHILDREN TO HARM OR NOT, OR ARE THEY EXPOSING CHILDREN TO HARM.

4         AND THEY CAN SAY NO, IT DOESN'T, RIGHT, WE DON'T.  AND

5    THERE IS A SAMPLE OF DPIA INCLUDED IN THE RECORD HERE, AND IT

6    IS -- THERE ARE ANSWERS THAT ARE LIKE, WELL, WE DON'T EXPOSE --

7    THERE IS NO THREAT OF EXPOSURE TO HARMFUL CONTENT.

8         THE COURT:  WELL, ONE CONSIDERS THIS JUST A

9    CHECKLIST, BECAUSE THE ANSWER TO WHETHER THE DESIGN COULD HARM,

10   NO; WOULDN'T THAT BE SUFFICIENT?

11        MS. WATSON:  WELL, I THINK YOU WOULD HAVE TO GO,

12   THERE'S LIKE EIGHT ELEMENTS, SO I DO THINK YOU WOULD HAVE TO

13   SAY --

14        THE COURT:  WELL WHY COULDN'T YOU ANSWER NO?  YOU

15   COULD JUST SAY NO.

16        MS. WATSON:  RIGHT.  YEAH.  YOU COULD JUST SAY NO.

17   YOU COULD JUST SAY NO, AND THEN WHEN IT'S YOUR --

18        THE COURT:  WHAT IF THE ATTORNEY GENERAL DISAGREES

19   WITH THAT?

20        MS. WATSON:  THERE IS NO PUNISHMENT.

21        FOR THIS REQUIREMENT, THE DPIA REQUIREMENT, YOU DO THE

22   ASSESSMENT, YOU WRITE THE PLAN, YOU PUT IT IN A DRAWER.  THAT'S

23   IT.  AND THEN YOU GO ON AND RELEASE YOUR PRODUCT.  THE ATTORNEY

24   GENERAL DOESN'T REVIEW DPIA'S BEFORE A PRODUCT CAN BE RELEASED,

25   THERE IS NO PENALTY FOR FAILING TO ABIDE BY YOUR MITIGATION

1    PLAN, THE ONLY WAY YOU WOULD BE PENALIZED BY FAILING TO ABIDE

2    BY YOUR MITIGATION PLAN IS IF YOU EVALUATE A DIFFERENT

3    PROVISION.

4        I THINK ONE OF THEIR DPIA REQUIREMENTS IS GEOLOCATION, AND

5    THERE'S ALSO RESTRICTIONS ON GEOLOCATION IN THE PROHIBITION

6    PART OF THE STATUTE.

7            THE COURT:  FOR SECTION 2, THE MITIGATION DOES

8    REQUIRE CONDUCT BEFORE THE SERVICE IS ACCESSED.

9            MS. WATSON:  WELL, IT REQUIRES THE PLAN.

10           THE COURT:  NO, IT SAYS -- YES, CREATE A TIMED

11   PLAN --

12           MS. WATSON:  YEAH.

13           THE COURT:  -- TO MITIGATE.

14       SO IN FOREVER?  IN NEVER, I'M GOING TO DO THIS?  THAT'S MY

15   TIMED PLAN?  WHAT DOES THIS MEAN?

16           MS. WATSON:  YEAH.  I THINK IT IS A PLAN, TO THE

17   EXTENT THAT YOU, OBVIOUSLY -- THE GOVERNMENT --

18           THE COURT:  SO WHEN I WILL START THINKING ABOUT.

19   SEE, I DON'T KNOW WHAT THIS MEANS, "CREATE A TIMED PLAN."

20           MS. WATSON:  YES.  I THINK IT WOULD BE -- AGAIN,

21   THESE PLANS ARE NOT -- THERE IS NO WAY TO --

22           THE COURT:  WELL, THERE IS REASONABLENESS READ INTO

23   ANY STATUTE THAT IS SILENT.

24           MS. WATSON:  I WOULD THINK THERE IS A TIME -- IT

25   MIGHT BE THAT ACTUALLY IT'S GOING TO TAKE SOME TIME, ESPECIALLY

1      SINCE THIS IS JUST STARTING, RIGHT, SO SOME OF THESE THINGS

2      HAVE BEEN IN EXISTENCE FOR YEARS AND YEARS, RIGHT.

3              THE COURT:  YES.

4              MS. WATSON:  SO I DON'T THINK THE AG EXACTLY EXPECTS

5      THAT WE ARE GOING TO SOLVE ALL OF THESE PROBLEMS IN A DAY.  IT

6      MIGHT NECESSITATE.

7              THE COURT:  AND IF I'M A COVERED BUSINESS, HOW -- AM

8      I GOING TO GUESS HOW LONG THE ATTORNEY GENERAL WILL GIVE ME?

9              MS. WATSON:  WELL, THERE'S NO PUNISHMENT.  AS LONG AS

10     YOU WRITE THE PLAN, THERE IS NO WAY TO BE IN VIOLATION, RIGHT.

11         SO --

12             THE COURT:  SO YOU ARE ACTUALLY TELLING EVERYONE BY

13     YOUR STATEMENT, JUST ANSWER ALL THE QUESTIONS "NO" AND DEVELOP

14     A PLAN THAT STARTS IN 50 YEARS AND YOU ARE GOOD.

15             MS. WATSON:  WELL, WE WOULD SINCERELY HOPE THAT'S NOT

16     THE CASE.

17             THE COURT:  BUT YOU ARE TELLING ME THERE'S NO

18     PENALTY, SO WOULDN'T THAT BE THE LOGICAL OUTCOME OF THIS?  I'M

19     JUST EXPLORING THE VAGUENESS OF THIS BECAUSE I REALLY WOULDN'T

20     WANT TO BE IN THE SHOES OF ONE OF THESE COVERED BUSINESSES FOR

21     THE ATTORNEY GENERAL IN PURSUING HIS SWORN DUTIES TO THE STATE

22     OF CALIFORNIA TO SAY, WELL, A RULE OF REASONABLENESS HERE MEANS

23     THAT YOU ARE GOING TO DEVELOP THAT PLAN RIGHT BEFORE THE

24     PRODUCT GOES OUT, AND "TIMED" MEANS PROBABLY WITHIN 30 DAYS YOU

25     ARE GOING TO START IT.

1      AND BUSINESSES ARE GOING TO SAY, GOSH, COULD YOU HELP ME

2  OUT HERE BECAUSE I DIDN'T SEE THE LEGISLATURE SAYING THAT.

3          MS. WATSON:  WELL, YOUR HONOR, I DON'T THINK -- I

4  DON'T -- I THINK YOU ARE RIGHT, THAT WOULD NOT BE A REASONABLE

5  ENFORCEMENT OF THAT LAW.  BUT THIS IS ALSO NOT THE ONLY THING

6  WE ARE RELYING ON, RIGHT, THERE IS A LIST OF REQUIREMENTS,

7  THERE IS A LIST OF PROHIBITIONS, RIGHT.

8      SO IT MIGHT BE THAT ONE OF THE THINGS THAT YOU ADDRESS IN

9  A DPIA IS LIKE, WE ARE USING GEOLOCATION, AND WE ARE GOING TO

10  STOP USING GEOLOCATION.  AND WE ACTUALLY KNOW THAT THEY ARE

11  GOING TO STOP USING GEOLOCATIONS BECAUSE THERE'S A PROHIBITION

12  ON GEOLOCATIONS.

13      SO WHETHER THEY PUT IT IN THEIR PLAN, THEY MIGHT SAY THEY

14  ARE GOING TO MITIGATE IT IN A YEAR, BUT ONCE THIS LAW GOES INTO

15  EFFECT, THERE'S VERY RESTRICTED USE OF GEOLOCATION.

16          THE COURT:  HOW DO YOU ADDRESS THE ISSUES RAISED IN

17  SORRELL ON THE ABILITY TO COUNTER YOUR STATEMENT?  YOU SAY

18  PLAINTIFF'S MEMBERS HAVE NO RIGHT TO CHILDREN'S PERSONAL

19  INFORMATION.

20          MS. WATSON:  RIGHT, YOUR HONOR.

21      I WOULD SAY SORRELL IS PRETTY NARROW.  IT WAS PHYSICIAN'S

22  PRESCRIBER INFORMATION THAT THE GOVERNMENT ALREADY REQUIRED

23  THEM TO RECORD AND THAT OTHER PEOPLE ALSO HAD ACCESS TO.  THIS

24  IS ALL POSSIBLE PERSONAL INFORMATION THAT CAN BE ELECTED

25  ABOUT -- THAT CAN BE, EXCUSE ME, COLLECTED ABOUT A CHILD,

1      RIGHT.  SO IT'S MUCH MORE INFORMATION.

2           AND THE SUPREME COURT ACTUALLY NOTED IN SORRELL THAT THIS

3      CASE SHOULD NOT BE READ TO APPLY TO ALL FORMS OF DATA

4      RESTRICTIONS BECAUSE IT CONCERNED ONLY ONE SPECIFIC TYPE OF

5      DATA.  THE COURT RECOGNIZED THE LIMITED CIRCUMSTANCES IN

6      CONCLUDING THAT "THE CAPACITY OF TECHNOLOGY TO FIND AND PUBLISH

7      PERSONAL INFORMATION, INCLUDING RECORDS -- "

8           THE COURT:  A LITTLE SLOWER, PLEASE.

9           MS. WATSON:  "THE CAPACITY OF TECHNOLOGY TO FIND AND

10     PUBLISH PERSONAL INFORMATION, INCLUDING RECORDS REQUIRED BY THE

11     GOVERNMENT, PRESENTS SERIOUS AND UNRESOLVED ISSUES WITH RESPECT

12     TO THE PERSONAL PRIVACY AND THE DIGNITY IT SEEKS TO SECURE.

13          IN CONSIDERING HOW TO PROTECT THOSE INTERESTS, HOWEVER,

14     THE STATE CANNOT ENGAGE IN CONTENT-BASED DISCRIMINATION IN

15     ADVANCE OF ITS OWN SIDE OF A DEBATE."

16          BUT THAT'S NOT WHAT'S HAPPENING HERE.  IN SORRELL, THE

17     CASE WAS THAT THE GOVERNMENT COLLECTED THIS INFORMATION, AND

18     SOME PEOPLE WHO THE GOVERNMENT'S MESSAGE LIKED, WERE ABLE TO

19     USE THAT INFORMATION, AND SOME PEOPLE WHO THE GOVERNMENT'S

20     MESSAGE DID NOT LIKE AS MUCH, WERE NOT ABLE TO USE THAT

21     INFORMATION.  THAT'S WHY THAT WAS A PROBLEM IN SORRELL.

22          THE COURT:  WELL, BUT THIS STATUTE MAKES THE

23     DIFFERENCE BETWEEN NONPROFITS AND BUSINESSES FOR PROFITS, IT

24     DOESN'T COVER NONPROFITS.

25          MS. WATSON:  BUT I THINK THAT GOES BACK TO THE

```
1     PURPOSE OF THE STATUTE.  THE PURPOSE OF THE STATUTE IS TO PUT

2     CHILDREN'S INTERESTS OVER PROFIT, BUT NONPROFITS DON'T HAVE

3     THAT ECONOMIC INCENTIVE.

4           THE COURT:  A LOT OF NONPROFITS, I WOULDN'T THINK ARE

5     NOT HARMFUL TO CHILDREN.

6           MS. WATSON:  WELL, I THINK IT'S THE ECONOMIC

7     INCENTIVE, RIGHT?

8         BECAUSE THE PLAINTIFFS SAY, RIGHT, THEY ARE USING THIS

9     DATA TO SELL ADVERTISING.

10          THE COURT:  RIGHT.  WELL, NONPROFITS CAN SELL

11    ADVERTISING, THEY JUST CAN'T MAKE A PROFIT.  THEY HAVE TO HAVE

12    MONEY TO RUN.

13          MS. WATSON:  RIGHT.  BUT I THINK THE PROFIT INCENTIVE

14    IS NOT THERE.  I DON'T THINK THE PROFIT INCENTIVE FOR PRIVATE

15    BUSINESSES IS THE SAME AS IT IS FOR GOVERNMENT AND NONPROFIT.

16          THE COURT:  BUT THAT'S NOT THE PURPOSE -- THE PURPOSE

17    OF THE STATUTE IS NOT TO REDUCE THE PROFITABILITY OF PRIVATE

18    COMPANIES, THE PURPOSE IS TO PROTECT CHILDREN.

19        AND SO WHAT I'M SAYING IS THAT THE COLLECTION OF PERSONAL

20    DATA IS TAKEN PLACE BY NONPROFITS AS WELL.  AND NONPROFITS

21    WOULD BE ONES THAT ARE PUTTING OUT THE KIND OF INFORMATION THAT

22    SOME STATES LAUD AND OTHERS DEMONIZE.

23          MS. WATSON:  RIGHT.  BUT I THINK ACTUALLY THAT'S MORE

24    EVIDENCE THAT THIS ISN'T REALLY ABOUT CONTENT.

25        I THINK ONE OF THE FINDINGS, AND I THINK THEY DID A FIRST
```

1    INTRO OF THE LAW, SAYS THIS IS ABOUT PUTTING CHILDREN OVER

2    PROFIT.  SO I THINK THERE IS CERTAINLY AN ELEMENT.

3              THE COURT:  WHAT I'M SAYING IS -- WELL, MAYBE IT GETS

4    INTO THE LEVEL OF SCRUTINY THAT IT'S NOT NARROWLY TAILORED

5    BECAUSE IT HAS THIS GAPING HOLE.

6              MS. WATSON:  WELL, I THINK THE -- I THINK IT'S

7    AMERICAN SOCIETY OF JOURNALISTS V. BONTA, THAT THERE WAS ALSO

8    IN THAT STATUTE, SOME -- THAT JOURNALISTS WERE REGULATED, AS

9    WELL AS OTHER BUSINESSES, BUT SOME BUSINESSES WERE EXCLUDED

10   FROM THE LABOR REGULATION IN THAT LAW.  AND THE NINTH CIRCUIT

11   SAID THAT'S OKAY BECAUSE YOU CAN ADDRESS THE PLACE THAT'S

12   HAVING PROBLEMS, BUT IT'S NOT THE CASE THAT WHENEVER YOU --

13             THE COURT:  BECAUSE I WAS PICKING THAT UP FROM THE

14   SORRELL DECISION, IS THAT BECAUSE THE INFORMATION WAS AVAILABLE

15   TO SOME AND USEABLE FOR MARKETING AND NOT TO OTHERS.

16             MS. WATSON:  YES.  I AGREE THAT THAT IS A -- THAT WAS

17   A DISTINGUISHMENT THAT WAS MADE IN THAT CASE, BUT I DO THINK

18   THERE ARE OTHER CASES THAT SAY WHEN YOU ARE CREATING THESE

19   LAWS, YOU CAN ADDRESS THE PROBLEM THAT YOU ARE HAVING WITHOUT

20   ADDRESSING PROBLEMS THAT YOU ARE NOT HAVING, LIKE THE

21   LEGISLATURE IS ALLOWED TO DO THAT.

22             THE COURT:  UH-HUH.

23             MS. WATSON:  SORRY, JUST A COUPLE MORE POINTS ON

24   SORRELL, BECAUSE I DON'T WANT THEM TO BE MISSED.

25             THE COURT:  PLEASE DO.

1          MS. WATSON:  THE COURT ALSO EXPLICITLY SAID THAT, TO

2     SAY THAT ALL PRIVACY MEASURES MUST AVOID CONTENT-BASED RULES

3     WAS NOT THE HOLDING OF THE CASE, AND THE PROBLEM WAS THAT THE

4     STATE CONDITIONED PRIVACY ON ACCEPTANCE OF A CONTENT-BASED

5     RULE, THAT WAS NOT DRAWN TO SERVE STATE INTERESTS, SO IT SOUNDS

6     LIKE WE WILL GET BACK TO THAT SECOND PART LATER.

7          AND I THINK REALLY IMPORTANTLY HERE, THIS WAS INFORMATION

8     ABOUT ADULTS WITH ADVANCED DEGREES THAT HAD THE RIGHT TO SAY

9     "NO," RIGHT.  AND THAT WAS A PART OF THE COURT'S HOLDING, THAT

10    PHYSICIANS COULD SAY, DON'T USE MY DATA FOR THIS.

11         AND I DON'T THINK CHILDREN HAVE THAT SAME ABILITY HERE.

12    LIKE, THEY JUST CAN'T SAY, DON'T PUT UNSOLICITED ADS ON MY

13    FEED, RIGHT.

14         THE COURT:  BOTH COPPA AND THE MOMS AND DADS DO IT.

15         MS. WATSON:  HUH?

16         THE COURT:  BOTH COPPA, AND THE FEDERAL LAW, AND THE

17    STATE LAW ALLOW PARENTS TO DO THAT.

18         MS. WATSON:  NO -- I'M SORRY, YOUR HONOR.

19         THE COURT:  NO, GO AHEAD.

20         MS. WATSON:  NO, IT'S NOT A COMPLETE -- THAT IS NOT

21    TRUE, IT'S NOT THE CASE.  THIS LAW IS MORE EXPANSIVE THAN

22    CURRENT LAW.

23         THE COURT:  I AGREE WITH YOU.  YOU ARE JUST SAYING

24    THAT ADULTS HAVE THE ABILITY TO SAY DON'T COLLECT MY DATA AND

25    CHILDREN DON'T.  AND IN FACT, CHILDREN DO THROUGH THEIR

1    PARENTS, AND IT'S HOW CHILDREN GET MOST THINGS DONE IN LIFE

2    UNTIL THEY CAN TAKE OVER THEIR OWN LIVES.

3         MS. WATSON:  RIGHT.

4         WELL, AND I THINK WE MAY GET TO THIS LATER WHEN WE ARE

5    TALKING ABOUT, KIND OF, WHAT'S THE STATE INTEREST HERE, BECAUSE

6    I DON'T THINK THE STATE FEELS THAT -- WELL, I SHOULD SAY I KNOW

7    THE STATE DOESN'T FEEL THAT, WELL, CHILDREN'S PARENTS WHO DON'T

8    UNDERSTAND, DON'T HAVE THE TIME.  IT'S DIFFICULT, RIGHT, AS OUR

9    DECLARATION SHOWS, QUITE DIFFICULT --

10        THE COURT:  BUT I DON'T KNOW OF A FIRST AMENDMENT

11   EXCEPTION FOR WHEN OTHER LAWS ARE IN EFFECT, AND THAT'S WHAT

12   MS. KUMAR SUGGESTED AS WELL.

13        MS. WATSON:  WELL, I THINK THIS LAW IS MUCH BROADER.

14   THERE IS NO LAW THAT COMPREHENSIVELY COVERS DATA, INCLUDING

15   STATE LAW --

16        THE COURT:  I DON'T DISAGREE WITH THAT.

17        MS. WATSON:  -- IN THE WAY THAT THIS LAW DOES.

18        SO IT'S NOT THE CASE THAT -- I DON'T THINK WE CAN ACHIEVE

19   THIS WITH COPPA.

20        THE COURT:  OKAY.  AND COPPA REGULATES 13-YEAR-OLDS

21   AND YOUNGER.

22        MS. WATSON:  YES.  AND IT REGULATES A DIFFERENT SET

23   OF BUSINESSES.

24        THE COURT:  AND IT'S SITES THAT ARE DESIGNED FOR

25   CHILDREN AS OPPOSED TO LIKELY TO HARM, SO I CERTAINLY

```
1          UNDERSTAND.

2                    MS. WATSON:  YEAH.

3               I DON'T KNOW --

4                    THE COURT:  YOU HAVE TIME, I'M NOT RUSHING YOU.

5                    MS. WATSON:  BECAUSE I WANTED TO DISCUSS THE OTHER

6          TWO, UNLESS YOU HAVE MORE.

7                    THE COURT:  NO, PLEASE DO.  I BUILD IN TIME SO I CAN

8           INTERRUPT.

9                    MS. WATSON:  THANK YOU.

10              SO I THINK THE DPIA PROVISION, BUSINESSES ARE FREE TO

11         CONSTRUCT WHATEVER POLICIES THEY WANT, HOWEVER THEY LIKE.  THIS

12         PROVISION DOES NOT TELL BUSINESSES WHAT TO DO WITH THEIR

13         POLICIES, REQUIRING BUSINESSES TO ENFORCE THEIR OWN POLICIES,

14         KEEP ALL POLICY-MAKING DECISIONS, INCLUDING DECISIONS ABOUT

15         WHAT CONTENT TO INCLUDE ON THEIR PLATFORM, IN THE HANDS OF

16         BUSINESSES.

17              PLAINTIFF'S ARGUMENT IS THAT THIS REGULATES SPEECH BECAUSE

18         BUSINESSES, THEMSELVES, THEY PUBLISH POLICIES WHERE THEY COMMIT

19         TO REMOVING CONTENT UNDER CERTAIN SERVICES.

20                   THE COURT:  SO YOU HAVE MOVED ON NOW TO THE POLICIES

21          OF --

22                   MS. WATSON:  YES, YOUR HONOR, I APOLOGIZE.

23                   THE COURT:  THE TERMS OF USE OR --

24                   MS. WATSON:  YES.

25                   THE COURT:  OKAY.
```

1          MS. WATSON:  BUT THAT BUSINESSES, THEMSELVES, CAN

2    COMMIT TO REMOVING CONTENT IF THEY WANT TO, THAT'S THEIR RIGHT.

3    THAT DOESN'T CREATE A FIRST AMENDMENT PROBLEM.

4          AND BOTH THE SUPREME COURT AND THE NINTH CIRCUIT HAVE BEEN

5    QUITE CLEAR THAT PRIVATE PARTIES MAY FREELY BARGAIN WITH EACH

6    OTHER TO RESTRICT THEIR OWN SPEECH, AND THAT COURTS CAN ENFORCE

7    THOSE AGREEMENTS WITHOUT IMPLICATING THE FIRST AMENDMENT.

8          THE COURT:  I THINK -- AND IT'S NOT BEFORE ME TODAY,

9    I THINK THAT IF UNDER AN AS-APPLIED STANDARD, THERE WERE TO BE

10   A CHALLENGE TO, OR THERE WOULD BE A PROSECUTION OR A PENALTY

11   FOR NOT ENFORCING A BUSINESS'S OWN POLICIES, THAT WE MAY --

12   THAT'S WHY I THINK SECTION 230 IS GOING TO RISE UP.

13         IT'S NOT BEFORE ME TODAY, I DON'T THINK 230 IS THE RIGHT

14   AVENUE FOR THIS MOTION FOR PRELIMINARY INJUNCTION ON AN AS --

15   ON A FACIAL ATTACK, SO THAT'S WHY I WASN'T GOING TO GIVE IT ANY

16   TIME TODAY, BUT I JUST -- IT'S KIND OF A PLACEHOLDER.  IN THE

17   FUTURE, I THINK THAT'S WHERE 230 IS GOING TO COME UP, IF

18   THERE'S AN ENFORCEMENT OF FAILURE TO APPLY A COMPANY'S OWN

19   STANDARDS.

20         MS. WATSON:  I AGREE WITH YOU.  AND THERE IS

21   PRECEDENT ON THIS IN THE NINTH CIRCUIT, INCLUDING BARNES V.

22   YAHOO THAT TALKS ABOUT 230, INCLUDING ON HOW 230 WORKS WITH

23   GENERAL POLICIES.

24         THE COURT:  YEAH.  I'M NOT THERE YET.

25         MS. WATSON:  I'M NOT DOING THAT.  WE ARE NOT THERE

1      TODAY.

2              THE COURT:  AND THERE MAY NEVER BE SUCH A

3      PROSECUTION.

4              MS. WATSON:  ABSOLUTELY.

5          AND I THINK THAT IT SEEMS LIKE THE KIND OF ROOT OF THIS

6      CONTENT-BASED POLICY PROBLEM, IS THAT THE BUSINESS AND THE

7      GOVERNMENT MIGHT DISAGREE ON WHAT THE MEANING OF THE POLICY IS,

8      BUT I THINK THAT'S A COMMON POINT OF DISPUTE IN ANY CONSUMER

9      PROTECTION CASE.

10         SO PART OF THE FACT FINDING MISSION OF THE COURT IN SUCH A

11     CASE WOULD BE --

12             THE COURT:  SO THE AGE ESTIMATION IS REALLY A VERY

13     KEY PART OF THIS.  AND I THINK WE'VE DEALT WITH THE PERSONAL

14     POLICIES AT THIS POINT, BUT I THINK YOU SUGGEST IN YOUR PAPERS

15     THAT THESE PLAINTIFFS AND ALL OF THESE COMPANIES THAT WOULD BE

16     REGULATED, ALREADY DO ESTIMATE AGE, BECAUSE THAT'S EXACTLY WHAT

17     YOU ARE TRYING TO GET AT IS THEY KNOW EVERYTHING ABOUT US.  AND

18     SO THEY CERTAINLY KNOW OUR AGE IF WE ARE ONLINE, THEY KNOW

19     CHILDREN'S AGES.

20         BUT -- AND SO I'M JUST CURIOUS ABOUT THIS, THIS WOULD

21     REQUIRE COMPANIES TO TAKE WHAT THEY ALREADY KNOW AND DRAW A

22     CORRAL AROUND THE YOUNGER USERS FOR PRIVACY.

23             MS. WATSON:  WELL, YOUR HONOR, YES.  THIS IS ONLY

24     ABOUT DATA AND PRIVACY PROTECTION.

25         SO WE ARE TALKING ABOUT THE LEVEL OF DATA AND PRIVACY

1      PROTECTIONS, WHICH I THINK ADMITTEDLY, YES, IT MIGHT LIMIT HOW

2      BUSINESSES CAN USE DATA, BUT OBVIOUSLY THIS PROVISION DOESN'T

3      SAY ANYTHING ABOUT CONTENT.

4              THE COURT:  OKAY.

5              MS. WATSON:  AND AS WE'VE DISCUSSED, BUSINESSES --

6      OUR POSITION IS BUSINESSES DON'T HAVE A --

7              THE COURT:  BUT IF I AM A COMPANY AND I CHOOSE TO USE

8      MY -- THE DATA I ALREADY HAVE, BECAUSE I THINK IT'S PRETTY

9      RELIABLE, IT'S MAKING ME A LOT OF MONEY, SO I THINK IT'S GOOD,

10     THAT I AM GOING TO LIMIT THE ACCESS OF MY YOUNGER USERS TO

11     INFORMATION THAT I DEEM HARMFUL TO CHILDREN.  THAT'S WHAT

12     HAPPENS HERE.  I'M NOT GOING TO PUSH CONTENT.

13             MS. WATSON:  I THINK A BUSINESS CAN DECIDE TO DO

14     WHATEVER IT WANTS, BUT THAT'S CERTAINLY NOT WHAT THE LAW

15     REQUIRES.

16             THE COURT:  THE STATUTE SAYS THEY CAN.  I THINK THE

17     STATUTE SAYS YOU'VE GOT TO APPLY THE RESTRICTED PRIVACY RULES

18     FOR ANYONE YOU IDENTIFY AS UNDER 18, AND IF YOU DON'T MAKE THE

19     DIVISION, YOU HAVE TO MAKE EVERYBODY A CHILD.

20             MS. WATSON:  WELL, IN TERMS OF THEIR DATA AND PRIVACY

21     PROTECTIONS, YOU WOULD HAVE TO APPLY THE SAME STANDARD TO

22     EVERYONE.  BUT I THINK THE BASIS OF --

23             THE COURT:  SO WE ARE ALL GOING TO BE WATCHING

24     BUGS BUNNY AND WE ARE NOT GOING TO BE GETTING ANYTHING ELSE.

25     THAT'S HOW I SEE THIS.

1        MS. WATSON:  SO THE BASIS OF PLAINTIFF'S ARGUMENT IS

2    THAT HIGHER DATA PROTECTION MEANS LESS ACCESS TO SPEECH.  BUT I

3    DON'T THINK THAT'S NECESSARILY THE CASE, RIGHT, AND SOME OF

4    PLAINTIFF'S DECLARATIONS SAY, WE HAVE VERY HIGH PRIVACY

5    STANDARDS, WE DON'T COLLECT A LOT OF DATA, WE DON'T SHARE A LOT

6    OF DATA, WE DON'T SELL ANY DATA, RIGHT.  SO IF YOU DON'T HAVE

7    ANY DATA, WHY WOULD IT MATTER?  LIKE, YOU WOULD NOT HAVE TO --

8        THE COURT:  SO I'M NOT ANALYZING THE STATUTE UNDER

9    THE LEAST AFFECTED PARTY, I'M ANALYZING IT ACTUALLY BROADLY TO

10   SEE IF IT'S OVERBROAD AND SCOOPS UP PROTECTED SPEECH ALONG WITH

11   UNPROTECTED.

12       SO THAT'S THE PROBLEM WITH USING THE MOST BENIGN EXAMPLE,

13   IS THAT IT DOESN'T REALLY ADDRESS THE FIRST AMENDMENT ANALYSIS

14   THAT THE PLAINTIFFS ARE ASKING ME TO MAKE.

15       MS. WATSON:  RIGHT, YOUR HONOR.

16       BUT I THINK IN ORDER -- ESPECIALLY WITH THIS PROVISION, IN

17   ORDER TO BE TALKING ABOUT SPEECH, YOU WOULD EITHER HAVE TO SAY

18   THAT BUSINESSES HAVE A RIGHT TO THIS DATA, SO IT VIOLATES THEIR

19   SPEECH IF YOU STOP THEM FROM COLLECTING AND USING THIS DATA.

20       THE COURT:  BUT YOU NEVER ANSWERED MY QUESTION AS TO

21   WHY THEY DON'T HAVE THE RIGHT TO IT.  I STARTED THERE, I'M

22   STILL LOOKING FOR AN ANSWER.  AGAIN, YOU SAID IT WITHOUT ANY

23   AUTHORITY, WHY DON'T THEY HAVE THE RIGHT TO IT?

24       MS. WATSON:  I THINK IT'S BECAUSE THERE HAS NEVER

25   BEEN A CASE THAT SAYS BUSINESSES HAVE A RIGHT TO CHILDREN'S

1    DATA, I'M NOT AWARE OF ANY PRECEDENT --

2              THE COURT:  SO WE NORMALLY --

3              MS. WATSON:  -- THAT SAYS THAT.

4              THE COURT:  -- SEE SOMETHING OF PROHIBITION BECAUSE

5    IT HASN'T BEEN DETERMINED TO BE A RIGHT.  I THOUGHT WE NORMALLY

6    STARTED OUT WITH FREEDOM AND THEN WE NARROWLY CONSTRUED

7    RESTRICTIONS.

8              MS. WATSON:  BUT PLAINTIFFS ARE CLAIMING THIS

9    VIOLATES THE FIRST AMENDMENT, SO THEY HAVE TO HAVE A FIRST

10   AMENDMENT RIGHT INVOLVED, RIGHT.

11             THE COURT:  IF IT'S SPEECH, YES, YES THEY DO.

12             MS. WATSON:  SO THEN THE SPEECH WOULD BE -- I'M

13   POSITING FROM WHAT I'VE READ IN PLAINTIFF'S BRIEF, THE SPEECH

14   IS EITHER, I HAVE THE FIRST AMENDMENT RIGHT TO COLLECT AND USE

15   DATA, OR I THINK THEIR ALTERNATIVE ARGUMENT IS THAT IF I DON'T

16   GET DATA, THEN I'M GOING TO RESTRICT WHAT OTHER PEOPLE CAN

17   ACCESS.  AND THAT'S WHERE THE SPEECH COMES IN, BECAUSE YOU ARE

18   RESTRICTING CONTENT TO SOMEONE ELSE.

19        BUT I WOULD POSIT THERE'S NO -- I DON'T THINK THERE'S ANY

20   PRECEDENT SAYING THEY HAVE A RIGHT TO THE DATA, THAT IT'S THEIR

21   FIRST AMENDMENT RIGHT TO COLLECT AND USE DATA.

22             THE COURT:  I THINK I HAVE TO TAKE MY GUIDANCE FROM

23   SORRELL.

24             MS. WATSON:  WELL, YOUR HONOR, I THINK I'VE GIVEN YOU

25   ALL THE DISTINGUISHMENTS I HAVE THERE.

1          THE COURT:  I THINK YOU HAVE, AND I APPRECIATE THAT.

2     AND YOU'VE GIVEN ME SOME DISTINCTIONS -- AND FOR THE COURT

3     REPORTER, S-O-R-R-E-L-L.

4          MS. WATSON:  YES.  I THINK THAT IN CASE, YOUR HONOR,

5     IF WE ARE GOING TO GO FORWARD DISCUSSING DATA COLLECTION AND

6     USE AS SPEECH AND A FIRST AMENDMENT RIGHT TO DATA COLLECTION

7     AND USE, THEN YES, WE CAN GO FORWARD WITH THE SCRUTINY

8     ANALYSIS.

9          THE COURT:  OKAY.

10         SO MAYBE YOU WOULD LIKE TO COLLECT YOUR THOUGHTS FOR A

11    MINUTE, BECAUSE NOW I WANT TO GO TO THE NEXT LEVEL OF THE

12    ARGUMENT.

13         AND THANK YOU SO MUCH, MS. WATSON, THIS HAS BEEN REALLY

14    HELPFUL TO ME.

15         IF THIS IS NOT SPEECH, THEN OF COURSE I WILL DENY THE

16    PRELIMINARY INJUNCTION, BUT IF IT IS SPEECH, I WANT TO GO TO

17    THE NEXT PART OF THE ANALYSIS.  AND THAT IS, ASSUMING IT'S

18    SPEECH, MS. KUMAR, I ACTUALLY THINK THAT THE MOST DIRECT

19    ARGUMENT TO EVALUATE THE LEVEL OF SCRUTINY IS WHETHER THIS IS

20    CONTENT-NEUTRAL OR NOT.

21         I RECOGNIZE YOU DEVOTED THE MAJORITY OF YOUR BRIEFING ON

22    THIS ISSUE TO PRIOR RESTRAINT, AND I THINK THIS OTHER ISSUE MAY

23    BE CLEARER IN THE LAW.  SO I WANT YOUR THOUGHT ON THAT.

24         IF I'M MISTAKEN, I DON'T WANT YOU TO GET TO THE

25    NINTH CIRCUIT AND LOSE YOUR PRELIMINARY INJUNCTION BECAUSE I

1    WAS MISTAKEN.  I MEAN, I COULD BE RIGHT, I COULD BE WRONG, BUT

2    IF YOU COULD GUIDE ME ON THIS, BECAUSE I KNOW YOU BRIEFED IT

3    DIFFERENTLY, I WOULD APPRECIATE THAT.

4         SO MS. WATSON, I WILL LET YOU SIT DOWN FOR A FEW MINUTES,

5    I'M SURE YOU WOULD LIKE TO BREATHE FOR A MINUTE, AND BRING

6    MS. KUMAR BACK ON THIS.

7         NOW WE ARE MOVING TO THE SECOND, ASSUMING IT'S SPEECH,

8    THEN IS IT IMPERMISSIBLE, IS THE STATUTE AN IMPERMISSIBLE

9    RESTRICTION ON THAT SPEECH?

10        MS. KUMAR:  YOUR HONOR, WOULD YOU MIND IF I SAID ONE

11   THING ABOUT THE PRIOR ISSUE?

12        THE COURT:  OH, PLEASE DO.

13        MS. KUMAR:  BECAUSE I WENT BACK AND LOOKED AT THE

14   STATUTE AFTER YOU MADE THE COMMENT ABOUT THE *NEW YORK TIMES*

15   ARTICLE BEING A PRODUCT.

16        I THINK THE PRODUCT IS THE SERVICE, THE *NEW YORK TIMES*

17   WEBSITE OR SERVICE, BECAUSE IT'S NOT JUST A WEBSITE, IT'S AN

18   APP, ET CETERA.  AND I THINK ONE WAY YOU CAN KNOW THAT IS IF

19   YOU LOOK AT THE PORTION OF THE STATUTE THAT EXPLAINS WHAT A

20   SERVICE, PRODUCT OR FEATURE IS NOT -- AND LET ME -- IT'S IN THE

21   DEFINITIONS --

22        THE COURT:  SO THAT'S IN SECTION 30?

23        MS. KUMAR:  YES.  SECTION 30(B)(5).

24        THE COURT:  I ONLY HAVE (B) -- OH, WAIT, OKAY.

25        MS. KUMAR:  IT SAYS "ONLINE SERVICE, PRODUCT OR

1    FEATURE DOES NOT MEAN ANY OF THE FOLLOWING:  A BROADBAND

2    INTERNET ACCESS SERVICE, A TELECOMMUNICATIONS SERVICE, OR THE

3    DELIVERY OR USE OF THE PHYSICAL PRODUCT."

4         THE COURT:  RIGHT.  WELL, THAT WOULD BE LIKE A

5    BASKETBALL COMING IN THE MAIL.

6         MS. KUMAR:  RIGHT.

7       BUT MY POINT IS WHEN THE LEGISLATURE EXCLUDED THESE, THOSE

8    ARE OF THE SAME ILK AS WHATEVER IT WAS TRYING TO REGULATE,

9    RIGHT, BECAUSE IT WAS A SERVICE.  THIS DOESN'T SAY AN ONLINE

10   SERVICE, PRODUCT OR FEATURE IS NOT A PHYSICAL PRODUCT, IT IS

11   THE DELIVERY OR USE OF THE PHYSICAL PRODUCT.

12        THE COURT:  OH, I SEE WHAT YOU ARE SAYING.

13        MS. KUMAR:  SO IT'S NOT JUST THE *NEW YORK TIMES*

14   ARTICLE, IT'S THE WAY THAT THE ENTIRE *NEW YORK TIMES* SERVICE

15   FUNCTIONS.

16        THE COURT:  BUT THE ULTIMATE CONTENT IS THE CONTENT

17   OF THE ARTICLE ITSELF, CORRECT?

18        MS. KUMAR:  YES.

19        THE COURT:  OKAY.

20        MS. KUMAR:  THE PROBLEM WITH THE STATUTE IS THE

21   EFFECT ON WHAT THE *NEW YORK TIMES* WILL DO, WILL IT PUBLISH AN

22   ARTICLE ABOUT WAR THAT MIGHT BE HARMFUL?  WILL IT NOT ALLOW

23   MINORS TO ACCESS ITS SITE?  YOU KNOW, THAT'S THE KIND OF

24   DECISION THAT THE *TIMES* WILL HAVE TO MAKE.

25        THE COURT:  OKAY.  THANK YOU.  THAT'S HELPFUL.

1          MS. KUMAR:  TURNING TO YOUR QUESTION ABOUT PRIOR

2     RESTRAINT AND CONTENT-BASED.

3          SO I THINK THAT WHICHEVER WAY YOU GET THERE, WHETHER IT'S

4     PRIOR RESTRAINT OR CONTENT-BASED RESTRICTION, THE RESULT IS

5     GOING TO BE INVALIDATION OF THE CHALLENGED PORTION OF THE

6     STATUTE.

7          SO WE CAN TALK ABOUT BOTH.  I DO THINK IT'S A PRIOR

8     RESTRAINT.  I DO THINK THE CASES ON PRIOR RESTRAINT ARE NOT --

9     THEY ARE NOT AS DOCTRINAL AS WE MIGHT LIKE.

10          THE COURT:  THEY ARE NOT.

11          SO IN MY VIEW, THE SUPREME COURT IN REED REDUCED THIS TO

12     THE SIMPLEST TEST POSSIBLE.  AND REED CAME AFTER SORRELL, SO

13     THAT'S WHY ALTHOUGH THE SUBJECT MATTER OF REED WAS DIRECTIONAL

14     SIGNS THAT A CHURCH WAS USING AS OPPOSED TO THE DETAILER'S USE

15     OF COLLECTED PERSONAL INFORMATION OF THE PHARMACIST.

16          SO SORRELL IS MORE -- IS EASIER TO OVERLAY ONTO OUR CASE,

17     BUT REED IS THE MOST RECENT SUPREME COURT STATEMENT AND A VERY

18     STRAIGHTFORWARD TEST.

19          MS. KUMAR:  I UNDERSTAND THAT.

20          I GUESS WHAT I WOULD SAY IS, YOU CAN LOOK AT A LONG LINE

21     OF SUPREME COURT CASES.  AND WE TALKED ABOUT BANTAM BOOKS AND

22     INTERSTATE CIRCUIT, THOSE ARE PRIOR RESTRAINTS, THEY ARE NOT --

23     ON THEIR FACE, THEY ARE NOT DIRECT SUPPRESSION OF SPEECH BEFORE

24     IT HAPPENED.

25          AND ANOTHER EXAMPLE I WOULD POINT YOU TO IS ACLU V.

1    MUKASEY IN THE 3RD CIRCUIT WHICH PROHIBITED THE TRANSMISSION OF

2    HARMFUL MATERIAL TO MINORS FOR COMMERCIAL PURPOSES.  AND THERE

3    WAS AN AGE VERIFICATION DEFENSE, AND THE COURT SAID THIS IS A

4    PRIOR RESTRAINT, NOT OKAY, AGE VERIFICATION DOESN'T HELP YOUR

5    CAUSE, THIS IS UNCONSTITUTIONAL.

6         TURNING TO WHETHER THE LAW IS CONTENT-BASED, I THINK

7    YOUR HONOR, YOU HIT THE NAIL ON THE HEAD WHEN YOU STARTED,

8    WHICH IS IF YOU -- WHAT THE DPIA PROVISION REQUIRES, IT

9    REQUIRES GOING TO WHETHER THE CONTENT IS LIKELY TO BE ACCESSED

10   BY CHILDREN.  NOT ONLY THAT, BUT THERE ARE A LITANY OF OTHER

11   TERMS IN THE STATUTE THAT MAKE CLEAR IT'S CONTENT-BASED.

12        THE WORD "HARMFUL," THE WORDS "POTENTIALLY HARMFUL,"

13   "MATERIALLY DETRIMENT," "BEST INTEREST OF THE CHILD," ALL THOSE

14   THINGS -- YOU KNOW, "WELL BEING," YOU KNOW, THOSE ARE ALL WAYS

15   OF CHARACTERIZING THE CONTENT OF SPEECH.  AND SO I DON'T THINK

16   THERE CAN BE A CONCLUSION THAT THIS IS NOT CONTENT-BASED IF YOU

17   CONCLUDE THAT IT DOES REGULATE SPEECH.

18        THE COURT:  YEAH.

19        SO AM I CORRECT THAT, IN YOUR VIEW, IT'S NOT EVEN A CLOSE

20   CALL THAT SPEECH IS REGULATED HERE?

21        MS. KUMAR:  IT'S NOT.  I THINK --

22        THE COURT:  WOULD YOU CONCEDE THAT THERE ARE ANY

23   ASPECTS THAT ARE NOT SPEECH-BASED?

24        MS. KUMAR:  WELL, THERE ARE PROVISIONS OF THE STATUTE

25   THAT WE HAVEN'T CHALLENGED IF YOU LOOK FOR THE PRAYER FOR

1    RELIEF IN THE COMPLAINT.

2              THE COURT:  OKAY.

3              MS. KUMAR:  SO FOR EXAMPLE, THE STATE TALKED

4    EXTENSIVELY ABOUT GEOLOCATION, BUT THE GEOLOCATION PROVISION IS

5    NOT ACTUALLY ONE OF THE PARTS OF THE LAW THAT WE ARE ASKING BE

6    ENJOINED.

7              THE COURT:  SO -- AND SO JUST SO I CAN CLOSE THIS

8    POINT AND MOVE ON, SO YOU ARE ASKING FOR AN INJUNCTION OF

9    CERTAIN PORTIONS OF THE LAW, OTHER PORTIONS COULD GO FORWARD.

10             MS. KUMAR:  YES, YOUR HONOR.

11        I MEAN, THAT IS WHAT THE RELIEF IN THE COMPLAINT IS ASKING

12   FOR.  SO YES, I WOULD SAY THAT.  I WOULD ALSO SAY THOUGH, AND I

13   KNOW WE ARE GOING TO GET TO THIS LATER, I THINK THE LAW -- I

14   MEAN, THERE IS NO SEVERABILITY CLAUSE, AND THE LAW AS A WHOLE

15   IS DIRECTED AT CONTENT, SO I THINK THERE WOULD BE A BASIS FOR

16   ENJOINING ENFORCEMENT OF ALL OF IT.

17             THE COURT:  I ASSUME YOU DID, BUT YOU GAVE ME A

18   PROPOSED INJUNCTION.

19             MS. KUMAR:  WE DID, BUT I DON'T KNOW -- I WOULD HAVE

20   TO LOOK TO SEE IF IT SPECIFIES.  IF NOT, WE ARE HAPPY TO --

21             THE COURT:  SO THAT WILL BE -- AND YOU AND YOUR

22   COLLEAGUES CAN MAKE A NOTE OF IT, SOMETIMES THE MOST TELLING

23   DOCUMENT FROM THE PLAINTIFF IS WHAT RELIEF YOU WANT, BECAUSE

24   THAT CAN SEND UP RED FLAGS.

25             SO IF YOU ARE ASKING THAT I ENJOIN CERTAIN PORTIONS OF THE

1        STATUTE, IF YOU COULD LAY THEM OUT CHAPTER AND VERSE TO ENJOIN

2        THEM AS A -- AND YOU DON'T HAVE TO TELL ME AS A PRIOR RESTRAINT

3        AS TO THIS OR THE OTHER, I JUST WANT THAT.  AND THEN I GUESS

4        WHAT YOU WOULD BE SAYING, IF I WERE TO AGREE WITH YOU, IS UP TO

5        THE STATE WHETHER THEY ARE GOING TO ENFORCE THE OTHER PORTIONS,

6        WHETHER THEY CAN OR NOT.

7                    MS. KUMAR:  YES, YOUR HONOR.

8                    THE COURT:  OKAY.  THANK YOU.

9              AND I INTERRUPTED, SO NOW LET'S -- IS THERE MORE YOU WOULD

10       LIKE TO ARGUE ON EITHER PRIOR RESTRAINT, OVERBREADTH?  I MEAN,

11       I AM VERY CONCERNED THAT THIS STATUTE REACHES TO PROTECTED

12       SPEECH, EVEN IF NONE OF YOUR MEMBERS NECESSARILY HAS PROTECTED

13       SPEECH, IT WAS A LITTLE HARD TO WRAP MY HANDS AROUND YOUR

14       MEMBERS, THAT'S WHY I NEEDED SOMETHING CONCRETE.

15             IS THERE SOMETHING CONCRETE THAT GOOGLE HAS?  GOOGLE HAS A

16       NEWS FEED, I SUPPOSE THAT WOULD BE SOMETHING CONCRETE.

17                   MS. KUMAR:  GOOGLE DOES HAVE A NEWS FEED.

18             I MEAN, I THINK THERE ARE MEMBERS WHO HAVE -- I MEAN, WHEN

19       WE TALK ABOUT SOCIAL MEDIA, FOR EXAMPLE, WHICH BY THE WAY, THE

20       LAW IS NOT, OF COURSE, LIMITED TO SOCIAL MEDIA.

21                   THE COURT:  RIGHT.

22                   MS. KUMAR:  BUT ALL THE CONTENT ON FACEBOOK, FOR

23       EXAMPLE, IS PUBLICATION.  FACEBOOK IS A PUBLISHER OF SORTS, IN

24       THE SENSE THAT THE SPEECH MIGHT COME FROM THIRD PARTIES, BUT

25       IT'S STILL SPEECH, AND FACEBOOK IS STILL MAKING DECISIONS ABOUT

1    WHETHER THE SPEECH SHOULD BE PUBLISHED, SHOULD NOT BE PUBLISHED

2    OR WHERE IT SHOULD BE PUBLISHED AND HOW.

3           THE COURT:  UNDER SECTION 230, IT'S NOT A PUBLISHER,

4    IS IT, EXCEPT FOR THEIR OWN CONDUCT.

5           MS. KUMAR:  WELL, I THINK PEOPLE OFTEN MAKE THAT

6    STATEMENT ABOUT SECTION 230.  BUT WHAT 230 SAYS IS YOU WILL NOT

7    BE TREATED AS A PUBLISHER OR SPEAKER.  IT SAYS NOTHING ABOUT

8    WHETHER YOU ARE A PUBLISHER OR SPEAKER ITSELF.

9           THE COURT:  OKAY.

10          MS. KUMAR:  SO, YOU KNOW, ALL OF THE MEMBERS -- AND I

11   WOULD HAVE TO GO LOOK AT A MEMBERSHIP LIST TO GO THROUGH THEM

12   FOR YOU, ALL OF THEM IN SOME WAY, SHAPE OR FORM, DO PUBLISH

13   SPEECH.  IT MAY NOT BE WHAT YOU THINK OF RIGHT AWAY WHEN YOU

14   THINK OF SPEECH, BUT THAT'S THE WAY THE WORLD OPERATES TODAY,

15   AND ALL OF THAT IS SPEECH.

16          THE COURT:  OKAY.  ALL RIGHT.

17        THERE WERE A LOT OF OTHER ISSUES HERE, I WANT TO HEAR ALL

18   YOUR ARGUMENT ON EVERYTHING THAT WILL HELP ME DETERMINE,

19   ASSUMING I DETERMINE IT'S SPEECH, TO DETERMINE THE PROPER LEVEL

20   OF SCRUTINY.

21        SO THERE IS AN ARGUMENT THAT THIS IS COMMERCIAL SPEECH AND

22   IT'S ENTITLED TO LESSER REVIEW AND A LESSER LEVEL OF SCRUTINY.

23   WOULD YOU LIKE TO ADDRESS THAT, AND ANY OF THE OTHER ISSUES

24   THAT WERE RAISED?

25          MS. KUMAR:  SURE.  I AM HAPPY TO ADDRESS THAT.

1          THIS IS NOT COMMERCIAL SPEECH.  LET ME START BY SAYING

2     THIS IS NOT COMMERCIAL SPEECH.  THE SUPREME COURT HAS

3     REPEATEDLY MADE CLEAR THAT AN ECONOMIC MOTIVATION DOES NOT TURN

4     SPEECH INTO COMMERCIAL SPEECH, OR EVERY BIT OF SPEECH FROM THE

5     NEW YORK TIMES ON TO SOCIAL MEDIA, OR WHAT HAVE YOU, WOULD BE

6     COMMERCIAL SPEECH.  AND THAT'S NOT THE WAY IT IS, AND IN FACT

7     THE SUPREME COURT REITERATED THAT RECENTLY IN THE CREATIVE 303

8     CASE THAT CAME OUT WITHIN THE LAST FEW MONTHS.

9          THE OTHER THING I WILL SAY IS THAT SORRELL MAKES CLEAR

10    THAT THAT DOESN'T MATTER, RIGHT.  I MEAN, THE COURT SAID SOME

11    OF THE MOST IMPORTANT INFORMATION IS IN THE FORM OF COMMERCIAL

12    SPEECH.  AND IT WAS CONTENT-BASED THERE, AND BECAUSE IT WAS

13    CONTENT-BASED, IT WAS SUBJECT TO HEIGHTENED SCRUTINY.  IT

14    DIDN'T DENIGRATE IT AND SAY, WELL THAT'S COMMERCIAL SPEECH, SO

15    WE ARE GOING TO DO A DIFFERENT LEVEL OF SCRUTINY.

16          I WILL SAY THAT ALSO WE'VE ARGUED IT DOESN'T MATTER WHAT

17    THE LEVEL OF SCRUTINY IS, THIS IS NOT NARROWLY TAILORED OR DOES

18    NOT -- BOTH INTERMEDIATE AND STRICT SCRUTINY REQUIRE TAILORING

19    AND THERE IS NOT TAILORING HERE.  AND THAT'S, I THINK,

20    EVIDENCED MOSTLY BY THE EXISTENCE OF THE CCPA AND COPPA, WHICH

21    DO EXACTLY WHAT THE STATE WAS TALKING ABOUT WHICH IS GIVE

22    PARENTS THE RIGHT TO DECIDE WHEN THEIR CHILDREN'S INFORMATION

23    WILL BE COLLECTED, HOW, AND WHAT IT'S USED FOR.

24          SO AGAIN I GO BACK TO THE STATE SAID THIS IS A

25    COMPREHENSIVE STATUTE.  IT'S A MORE COMPREHENSIVE STATUTE

1    BECAUSE IT TAKES DIRECT AIM AT CONTENT, NOT BECAUSE IT HAS

2    EXPANDED PRIVACY IMPLICATIONS.

3           THEIR OWN EXPERT AND THEIR OWN AMICI SAY EXISTING LAW IS

4    NOT SUFFICIENT BECAUSE IT DOESN'T DETER CONTENT THAT WE DON'T

5    LIKE OUR KIDS TO SEE.

6           THE COURT:  YEAH.

7           MS. KUMAR:  I'M HAPPY TO PROVIDE ARGUMENT ON

8    VAGUENESS OR OVERBREADTH.

9           THE COURT:  NO, I THINK YOUR BRIEFING WAS FINE ON

10   THAT.

11          OKAY.  SO AGAIN, I'M TRUNCATING ALL OF THIS, I'M HEARING

12   LITTLE PIECES OF IT.  SO LET ME HEAR FROM MS. WATSON, JUST NOW

13   WE ARE ON THE LEVEL, ASSUMING IT'S SPEECH, AND I KNOW YOU

14   DON'T, BUT ASSUMING IT'S SPEECH, IS THIS A PRIOR RESTRAINT?  IS

15   THIS NOT CONTENT-NEUTRAL?

16          MS. WATSON:  SO I HAVE THESE IN ORDER OF THE THREE

17   LAWS THAT THE PLAINTIFF CHALLENGED ON FIRST AMENDMENT GROUNDS.

18          THE COURT:  THANK YOU.

19          MS. WATSON:  SO WE MIGHT HAVE TALKED ABOUT THE DPIA

20   ENOUGH ALREADY, BUT THE DPIA, WE WOULD ARGUE IT'S NOT A PRIOR

21   RESTRAINT BECAUSE IT DOESN'T RESTRAIN BUSINESSES FROM DOING

22   ANYTHING, THEY CAN STILL RELEASE THEIR PRODUCT, THEY DON'T NEED

23   APPROVAL FROM THE ATTORNEY GENERAL OF THEIR ASSESSMENT OR THEIR

24   PLAN.  SO THERE IS NO RESTRAINT IN THAT SENSE, IT'S JUST A

25   REGULAR LAW.

1       IT'S DETERRENT TO THE FACT THAT IT MAKES SOME THINGS

2    IMPERMISSIBLE IN THE REST OF THE LAW, BUT IT DOESN'T STOP

3    PLAINTIFFS FROM DOING SOMETHING BEFORE THEY CAN DO IT.  IT

4    DOESN'T RESTRAIN PLAINTIFFS BEFORE THEY ARE ABLE TO ACT.

5       I THINK IN TERMS OF THE CONTENT-BASED, THIS PROVISION

6    ISN'T CONTENT-BASED, BECAUSE I WAS EXPLAINING WHEN I WAS UP

7    HERE BEFORE, THERE ARE NON CONTENT-BASED WAYS OF MITIGATING

8    THESE PROBLEMS.  THE DPIA ASKED THEM TO ASSESS THE RISK, RIGHT,

9    NOT TO -- IT DOESN'T REQUIRE THAT THEY CHANGE ANYTHING.  WELL,

10   IT REQUIRES THAT THEY MADE A PLAN, BUT IT DOESN'T REQUIRE THAT

11   THEY --

12           THE COURT:  BUT CONTENT-NEUTRAL, UNDER REED, REALLY

13    REQUIRES THAT IN ORDER TO -- IF I HAVE TO LOOK AT THE CONTENT

14    IN ORDER TO DETERMINE WHETHER CERTAIN RESTRICTIONS APPLY, THEN

15    IT'S CONTENT-BASED.

16           MS. WATSON:  WELL, I DON'T THINK YOU HAVE TO LOOK AT

17    THE CONTENT.

18           THE COURT:  THE FIRST SECTION (A) TELLS ME TO.

19       I'VE GOT -- FIRST I'VE GOT TO DETERMINE IF THE BUSINESS

20    PRODUCT, SERVICE OR FEATURE IS LIKELY TO BE ACCESSED BY

21    CHILDREN.  I HAVE TO LOOK AT THE PRODUCT IN ORDER TO DETERMINE

22    THAT, AND DIVIDE THE WORLD INTO THINGS THAT ARE LIKELY TO BE

23    ACCESSED AND NOT LIKELY TO BE ACCESSED.

24       THEN I GO THE NEXT STEP AND I HAVE TO DECIDE WHETHER IT'S

25    LIKELY TO BE HARMFUL TO CHILDREN.  AGAIN, I HAVE TO LOOK AT THE

```
1    CONTENT IN ORDER -- AND THAT'S -- I MEAN, THAT IS THE BENEFIT

2    OF WHAT THE SUPREME COURT HAS TOLD US IN REED IS THAT -- ON THE

3    SHOULDERS OF ITS ORDER AND ITS RULING IN SORRELL, IS THAT THIS

4    IS -- IT SAYS, "THOUGH FACIALLY CONTENT-NEUTRAL LAWS WILL BE

5    CONSIDERED CONTENT-BASED, REGULATIONS OF SPEECH, LAWS THAT

6    CANNOT BE JUSTIFIED WITHOUT REFERENCE TO THE CONTENT OF THE

7    REGULATED SPEECH."

8         SO THIS ISN'T JUSTIFIED WITHOUT REFERENCE TO THE CONTENT

9    OF THE SPEECH, "ACCESSED BY CHILDREN," "HARM BY CHILDREN,"

10   THAT'S CONTENT.

11              MS. WATSON:  WELL, I WOULD MAKE TWO POINTS,

12   YOUR HONOR.

13        LIKELY TO BE ACCESSED BY CHILDREN, I THINK REQUIRES A

14   BUSINESS TO LOOK AT THEIR INFORMATION, LIKE THE WAY YOU

15   DETERMINE.  THERE ARE WAYS TO DETERMINE IF A SITE IS LIKELY TO

16   BE ACCESSED BY CHILDREN JUST BY LOOKING AT YOUR DATA NUMBERS,

17   LIKE HOW MANY CHILDREN ARE VISITING THE SITE, RIGHT, THAT'S ONE

18   OF THE COMPONENTS OF "LIKELY TO BE ACCESSED BY CHILDREN."

19        BUT I WOULD AGREE WITH YOU, I BELIEVE THAT ONE OF THE

20   COMPONENTS IS ALSO LIKE YOU HAVE FEATURES THAT ARE SUPPOSED TO

21   APPEAL TO CHILDREN.  SO MAYBE IT COULD BE THAT YOU ARE NOT

22   ACCESSED BY A LOT OF CHILDREN, BUT YOU WANT TO BE, SO YOU ARE

23   PUTTING THINGS OUT THERE.

24        SO IN THAT RESPECT, I THINK THAT YOU ARE CORRECT.  BUT I

25   THINK FOR THE DPIA REQUIREMENTS, IT'S ASKING ABOUT THEIR
```

1    BUSINESS PRACTICES, THEIR DESIGN OF THEIR PRODUCT, RIGHT, AND I

2    THINK WHETHER -- I MEAN, AS WE DISCUSSED WHEN I WAS UP HERE

3    EARLIER, IT MAY BE THAT YOU DON'T HAVE ANY -- YOU ARE NOT --

4    YOUR BUSINESS PRACTICES, YOUR OPERATIONS DON'T EXPOSE CHILDREN

5    TO HARMFUL CONTENT, YET YOU COULD STILL EVALUATE, WELL, IS

6    THERE A RISK, RIGHT?  LIKE, IF YOU ALLOW OPEN MESSAGING,

7    THERE'S A RISK THAT CHILDREN COULD BE CONTACTED BY STRANGERS

8    TRYING TO EXPLOIT THEM, WHETHER OR NOT THAT'S ACTUALLY

9    HAPPENING OR THAT HAS HAPPENED.

10        SO I THINK YOU CAN EVALUATE THE RISK WITHOUT HAVING TO GO

11   THROUGH AND LOOK AT EVERYTHING ON YOUR SITE, RIGHT?  AND I

12   THINK IN THE SAME WAY, LIKE SOME SITES CHOOSE TO, ON THEIR OWN,

13   SAY, LIKE, THEY ARE NOT GOING TO HAVE PORNOGRAPHY, RIGHT, SO

14   THERE WOULDN'T BE REALLY A RISK OF THAT SORT OF CONTENT COMING

15   UP, AND THAT COULD BE SOMETHING THAT YOU SAY IN YOUR DPIA.

16        SO I DO THINK THAT THESE AREN'T REALLY CONTENT-BASED IN

17   THAT SENSE, IN THAT FOR THE DPIA, AT LEAST, YOU ARE ACCESSING

18   AND MITIGATING RISK.

19        AND SO TO ME, AND AS I EXPLAINED THE FIRST TIME, THERE ARE

20   NON CONTENT-BASED WAYS TO BOTH ASSESS AND TO MITIGATE POTENTIAL

21   RISK.

22        AND THEN SORRY, YOU ALSO SAID WE ARE DOING COMMERCIAL

23   SPEECH ANALYSIS AT THIS POINT AS WELL?

24            THE COURT:  WELL, I'M GLAD TO HEAR -- YES, I WANT TO

25   HEAR -- YOU HAD ARGUED THAT BECAUSE -- I BELIEVE YOU ARGUED

1    THAT BECAUSE IT'S COMMERCIAL SPEECH ONLY, IT'S NOT ENTITLED TO

2    STRICT SCRUTINY.  I THINK THAT WAS YOUR ARGUMENT.  IF I

3    MISSTATED IT, I APOLOGIZE, YOU CAN CORRECT ME.

4         MS. WATSON:  NO, YOUR HONOR, THAT'S IT.  SORRY.  I

5    WAS JUST LOOKING FOR THE RIGHT PAGE IN MY NOTES.

6         SO TO THE EXTENT THIS COURT DETERMINES THAT THIS PROVISION

7    REGULATES SPEECH AT ALL, THE SPEECH IT REGULATES IS COMMERCIAL,

8    AND ALL THREE CHARACTERISTICS LISTED IN BOLGER COMMERCIAL

9    SPEECH ANALYSIS ARE PRESENT HERE.  THE PROVISION REGULATES

10   SPECIFIC ASPECTS OF SPECIFIC PRODUCTS, NAMELY THE DATA

11   MANAGEMENT PRACTICES OF PRODUCTS LIKELY TO BE ACCESSED BY

12   CHILDREN.

13        "THE BUSINESS'S CURRENT DATA MANAGEMENT PRACTICES ARE

14   PRIMARILY DESIGNED TO ALLOW BUSINESSES TO MAXIMIZE DATA

15   COLLECTION, DATA USE, DATA SELLING, DATA SHARING FOR PROFITS."

16        THE COURT:  JUST SLOW DOWN A LITTLE.

17        MS. WATSON:  SORRY.

18        PLAINTIFFS CONCEDE THAT ONLINE BUSINESSES DERIVE ALL OF OR

19   MOST OF THEIR REVENUE FROM ADVERTISING THAT USES THIS DATA.

20   THEY ACTUALLY SAY THAT IN THEIR BRIEF ON PAGE 2, SO I DON'T

21   EVEN THINK THAT'S A POINT.

22        THE COURT:  IT'S PRETTY WELL-KNOWN, YES.

23        MS. WATSON:  AND I THINK PLAINTIFFS AND DEFENDANTS

24   HAVE AGREED THAT THE INTERNET WOULDN'T BE WHAT IT IS WITHOUT

25   THE ADVERTISING AND DATA.

1        SO ADVERTISING AND ECONOMIC MOTIVE, I THINK ARE ALMOST NOT

2    IN DISPUTE WHEN IT COMES TO THIS DPIA PROVISION.  AND AS I'M

3    SURE YOU KNOW, THE PRECEDENT ON THIS DOESN'T EVEN REQUIRE THAT

4    ALL THREE FACTORS BE MET, BUT THEY ARE MET HERE.

5        AND THEN DO YOU WANT ME TO PAUSE BEFORE I GO THROUGH THE

6    SCRUTINY ANALYSIS?

7              THE COURT:  SO THAT IS WHERE WE ARE GOING TO TURN.

8              MS. WATSON:  OR DO YOU WANT THE OTHER TWO LAWS FIRST?

9              THE COURT:  I'M SORRY, WHAT'S THAT?

10             MS. WATSON:  DO YOU WANT ME TO DO THE CONTENT-BASED

11   FOR THE OTHER TWO LAWS?

12             THE COURT:  I WANT YOU TO GIVE ME ALL YOUR ARGUMENT

13   THAT SETS THE STAGE FOR WHAT LEVEL OF SCRUTINY.

14       SO THE PLAINTIFFS HAVE ASKED ME TO CONSIDER PRIOR

15   RESTRAINT, CONTENT-BASED, NOT BEING CONTENT-NEUTRAL,

16   OVERBREADTH, VAGUENESS -- I PROBABLY LEFT SOMETHING OUT, BUT

17   THOSE ARE THE ONES.

18       SO I WANT TO HEAR ALL YOUR ARGUMENT ON IT, I WANT TO GIVE

19   YOU THAT OPPORTUNITY.

20             MS. WATSON:  THANK YOU.

21             THE COURT:  AND IF YOU WANT TO REST ON THE BRIEFS,

22   THAT'S TOTALLY FINE WITH ME AS WELL.  I'M NOT TRYING TO TORTURE

23   YOU.

24             MS. WATSON:  OKAY.

25       SO I WOULD LIKE TO MOVE ON TO THE BUSINESS ENFORCEMENT OF

1    BUSINESS POLICIES.

2        SO THIS IS NOT A PRIOR RESTRAINT, AGAIN, BECAUSE

3    BUSINESSES AREN'T REQUIRED TO GET PERMISSION FROM THE

4    GOVERNMENT BEFORE PUBLISHING THEIR POLICIES, BEFORE CHANGING

5    THEIR POLICIES.  THEY ARE IN COMPLETELY -- THEY ARE IN COMPLETE

6    CONTROL OF THEIR OWN POLICIES.  SO THERE IS NO PRIOR RESTRAINT.

7        FOR THE COMMERCIAL SPEECH ANALYSIS, IF THIS COURT DECIDES

8    THAT THE PROVISION DOES REGULATE SPEECH, IT IS SUBJECT TO, AT

9    MOST, INTERMEDIATE SCRUTINY BECAUSE IT BOTH REGULATES

10   COMMERCIAL SPEECH AND IS CONTENT-NEUTRAL.

11       THE PRACTICE AT ISSUE IN THIS PROVISION, BUSINESS

12   ENFORCEMENT PROVISION, CONTAINS AT LEAST TWO, AND POTENTIALLY

13   THREE, ALL THREE CHARACTERISTICS OF COMMERCIAL SPEECH, THE

14   POLICY ENFORCEMENT PROVISION, LIKE ALL OF THESE PROVISIONS,

15   APPLY ONLY TO PRODUCT, SERVICES AND FEATURES LIKELY TO BE

16   ACCESSED BY CHILDREN.

17       THE PLAINTIFF ADMITS THAT THESE POLICIES EXIST TO INFORM

18   USER'S DECISIONS ABOUT HOW AND WHETHER TO ENGAGE WITH THE

19   PRODUCT, WHICH OF COURSE HOW THESE BUSINESSES MAKE MONEY IS BY

20   ENGAGEMENT WITH THE PRODUCT.  AND PLAINTIFFS SAY IN THEIR BRIEF

21   AT PAGE 3, THIS IS THE PURPOSE OF THESE POLICIES.

22       AND THEN FINALLY TO THE EXTENT THAT A BUSINESS CHOOSES TO

23   HAVE POLICIES THAT TALK ABOUT HOW THE BUSINESS INTERACTS WITH

24   ADVERTISERS, HOW THE BUSINESS SHARES THEIR DATA, THERE'S AN

25   ADVERTISING COMPONENT OF IT AS WELL.  SO AT LEAST TWO,

1    POTENTIALLY ALL THREE OF THE COMMERCIAL SPEECH COMPONENTS ARE

2    MET HERE.

3           AND THIS PROVISION IS CONTENT-NEUTRAL.  THERE IS NOTHING

4    ABOUT CONTENT IN THE PHRASE -- IN THE PROVISION, THE PROVISION

5    IS QUITE SHORT, IT APPLIES TO ALL OF THE PUBLISHED POLICIES AND

6    ALL REGULATED BUSINESSES.  IT DOES NOT CREATE A DIFFERENT MEANS

7    OF ENFORCEMENT OR AUTHORIZE DIFFERENT PENALTIES BASED ON THE

8    NATURE OR THE CONTENT OF THE BUSINESS'S POLICIES, IT JUST SAYS

9    ENFORCE YOUR POLICIES.

10          THE COURT:  SO IT'S AN INTERESTING THING BECAUSE THE

11   PLAINTIFFS BRING UP IN THEIR REPLY BRIEF THAT THIS KIND OF -- I

12   THINK YOU DID -- THAT THIS PARTICULAR ISSUE OF ENFORCING THE

13   POLICIES ACROSS THE BOARD DOESN'T ACTUALLY RELATE TO THE

14   PURPOSE OF THE STATUTE.

15          SO IF THERE IS A POLICY TO NOT ALLOW -- WELL, I MEAN, IT'S

16   HARD TO -- I DON'T EVEN KNOW WHAT THESE POLICIES SAY BECAUSE

17   THEY ARE ALL DIFFERENT, BUT IT COULD BE A POLICY THAT ACTUALLY

18   ONLY PROTECTS ADULTS, WOULD BE COVERED HERE.  SO TERMS OF USE

19   BY COMPANIES ARE NOT DESIGNED WITH CHILDREN IN MIND ALONE.

20          MS. WATSON:  RIGHT.

21          THE COURT:  THEY ARE DESIGNED FOR ALL USERS.  AND

22   THEY ARE DESIGNED TO PROTECT THE PRIVATE COMPANY, ITSELF.

23   THEY'RE THE COMPANY'S TERMS OF USE, THEY ARE COMMUNITY

24   STANDARDS, THE KIND OF SITE THEY WANT TO BE, A FREE FOR ALL

25   FREE SPEECH OR SOMETHING THAT HAS SOME CURATED CONTENT TO KEEP

1    CERTAIN THINGS OUT AND CERTAIN THINGS IN.

2         SO I AM CONCERNED THAT YOU WANDER FROM THE PURPOSE OF THE

3    STATUTE WITH THIS PORTION.

4              MS. WATSON:  WELL, A COUPLE OF RESPONSES TO THAT,

5    YOUR HONOR.

6         FIRST, PRIVACY POLICIES ARE EXPLICITLY MENTIONED IN THAT

7    PROVISION.

8              THE COURT:  IN THE STATUTE.

9              MS. WATSON:  YES.  THE PROVISION THAT WE ARE TALKING

10   ABOUT HERE IS ENFORCE, PUBLISH TERMS, POLICIES AND COMMUNITY

11   STANDARDS ESTABLISHED BY THE BUSINESS, INCLUDING BUT NOT

12   LIMITED TO PRIVACY POLICIES AND THOSE CONCERNING --

13             THE COURT:  RIGHT.  SO IT'S ALL THOSE POLICIES.

14             MS. WATSON:  RIGHT.  IT IS ABSOLUTELY ALL THEIR

15   POLICIES.

16             THE COURT:  SO IT'S CLEARLY BROADER THAN CHILDREN.

17             MS. WATSON:  RIGHT.  BUT CLEARLY THEY DO MEAN PRIVACY

18   POLIES CONCERNING CHILDREN.

19        AND I DO THINK THAT THE COMMUNITY STANDARDS IS AN

20   IMPORTANT ELEMENT THERE, LIKE ESPECIALLY WHEN YOU WERE TALKING

21   ABOUT WHAT CHILDREN ARE EXPOSED TO, RIGHT.  LIKE, I THINK IF A

22   PARENT OR A CHILD, RIGHT, SEES A STANDARD THAT SAYS THERE WILL

23   BE NO RACIAL SLURS ON THIS WEBSITE, THEY MIGHT FEEL DIFFERENTLY

24   GOING THERE THAN IF THEY DIDN'T HAVE THEM.  YOU KNOW, THEY

25   MIGHT FEEL SAFER GOING THERE.

1          THE COURT:  SO THE PLAINTIFF'S ARGUMENT HERE, THOUGH,

2     IS THAT THE STATE CAN'T DO, THROUGH ENFORCEMENT OF PRIVATE

3     RULES, WHAT IT WOULD BE PROHIBITED FROM DOING UNDER THE

4     FIRST AMENDMENT.

5          MS. WATSON:  WELL, I THINK THAT'S --

6          THE COURT:  SO IT VIEWS THESE COMMUNITY STANDARDS AS

7     A PROXY.

8          MS. WATSON:  WELL, I DON'T THINK THAT'S THE CASE,

9     YOUR HONOR.

10        AS WITH ANY OTHER TERM, LIKE POLICY, RIGHT.  SO IF THE

11    BUSINESS SAYS, I'M NOT GOING TO SELL YOUR DATA, AND THEN THEY

12    SELL YOUR DATA, THEY ARE VIOLATING THE POLICY.

13         THE COURT:  WELL THAT'S A BREACH OF CONTRACT CASE.

14         MS. WATSON:  WELL, BUT I THINK THAT'S -- I DO THINK

15    THAT'S WHAT THIS IS GETTING AT, RIGHT.

16         THE COURT:  SO THE STATE IS STEPPING IN.  I MEAN, IT

17    COULD BE A UCL ISSUE IN CALIFORNIA, IT COULD BE THE ATTORNEY

18    GENERAL COULD COME IN UNDER THE UCL AND BRING DOWN THESE ISSUES

19    AS BEING VIOLATIVE OF THOSE STATUTES.  AND THE ATTORNEY GENERAL

20    HAS BROAD AUTHORITY THERE, AND IT DOESN'T IMPLICATE THE

21    FIRST AMENDMENT.

22         MS. WATSON:  YES, YOUR HONOR.

23        I DO THINK THAT IS THE CASE, RIGHT, THAT THESE BUSINESSES

24    ARE PUTTING FORTH THESE POLICIES.  AND AGAIN, THEY ARE FREE TO

25    SAY IN THERE, I DO NOT INTEND THIS TO BE A PROMISE, I'M GOING

1    TO TRY MY BEST, BUT I'M NOT GOING TO TELL YOU THAT THIS ISN'T

2    GOING TO SHOW UP ON THE WEBSITE.  THOSE ARE ALL THINGS THEY ARE

3    FREE TO PUT IN THEIR POLICIES.

4         AND AGAIN, THE NINTH CIRCUIT ADDRESSED THIS IN <u>BARNES</u>,

5    THEY SAID IF YOU WANT TO HAVE A POLICY THAT YOU DON'T WANT TO

6    BE BOUND TO, JUST SAY I DON'T INTEND TO BE BOUND TO THIS

7    POLICY.

8         AND THE AG CAN'T DO -- THE AG CAN'T SAY, OH WELL I'M ONLY

9    GOING TO ACCEPT THE FIRST PART BEFORE YOU SAID YOU WEREN'T

10   GOING TO BE BOUND, AND NOW -- SO IT'S NOT THAT THE AG CAN PICK

11   AND CHOOSE, THESE ARE THE BUSINESS'S POLICIES, RIGHT, AND THIS

12   IS WHAT THEY ARE PUTTING FORWARD TO CALIFORNIA CONSUMERS,

13   SAYING THIS IS THE PROMISE THEY ARE MAKING TO CONSUMERS, UNLESS

14   THEY SAY OTHERWISE THAT THEY EXPLICITLY SAY THEY ARE NOT MAKING

15   THAT PROMISE, BUT IF THESE ARE PUT FORWARD AS PROMISES THEY ARE

16   MAKING TO THE CONSUMER, I THINK THE AG DOES HAVE THE ABILITY TO

17   ENFORCE THAT FOR THE PUBLIC GOOD, FOR THE POLICIES THAT THE

18   BUSINESS HAS SAID THEY ARE GOING TO DO.

19        AND AGAIN, THE BUSINESSES ARE FREE TO CHANGE THEIR

20   POLICIES IF THEY THINK THAT IT DOESN'T WORK FOR THEM OR THEY

21   DON'T WANT IT.

22        AND THE PROCEDURAL PROTECTIONS HERE ARE ALSO QUITE GREAT,

23   RIGHT, IT'S NOT JUST THE AG SAYS, I THINK YOU VIOLATED YOUR OWN

24   POLICY, NOW SEND ME YOUR PENALTY.  THE AG HAS TO -- THERE'S A

25   90-DAY CURE PERIOD, THERE IS A -- THERE HAS TO BE A STATE COURT

1    DECISION ASSESSING A PENALTY.

2         SO IT'S NOT JUST WHATEVER THE AG THINKS OF THE POLICIES.

3    AND I THINK BECAUSE I SAID -- I'M SORRY, I CAN'T EXACTLY

4    REMEMBER THE FIRST TIME I WAS UP HERE -- THAT THESE DISPUTES

5    ABOUT WHAT DO THE TERMS MEAN, RIGHT, ARE JUST COMMON FORMS OF

6    DISPUTE, WHEN YOU HAVE A BUSINESS MAKING ONE STATEMENT AND, YOU

7    KNOW, AND A CONSUMER INTERPRETING IT.

8         I'M SORRY, I JUST WANTED TO --

9         THE COURT:  I JUST WANT TO HEAR YOUR FULL ARGUMENT ON

10   WHETHER WE GET TO STRICT SCRUTINY OR INTERMEDIATE SCRUTINY.

11        MS. WATSON:  YES, YOUR HONOR.

12        WELL, I THINK FOR THE REASONS THAT I MIGHT HAVE GONE OVER

13   ENOUGH HERE ALREADY, THIS IS CONTENT-NEUTRAL, AND IT MEETS THE

14   COMMERCIAL SPEECH REQUIREMENTS, BECAUSE AGAIN, THIS IS HOW YOU

15   ENGAGE.

16        SO THAT IS THE POLICY ENFORCEMENT.  AND THEN THE PRIVACY

17   PROTECTION, AGAIN, THIS ISN'T A PRIOR RESTRAINT BECAUSE

18   BUSINESSES ARE NOT REQUIRED TO RESTRICT SPEECH IN ANY WAY.  AT

19   LEAST I WOULD SAY TO THE EXTENT THAT PLAINTIFF'S ARGUMENT IS

20   THAT THE REASON WHY THIS RESTRICTS SPEECH IS BECAUSE IT

21   RESTRICTS WHAT CHILDREN CAN ACCESS, I DON'T THINK THAT'S --

22   THAT'S NOT WHAT THIS PROVISION DOES.

23        AND WE HAVE ALREADY DISCUSSED WHETHER THE COLLECTION OF

24   DATA, ITSELF, IS SPEECH.  AND IF THIS COURT DETERMINES THAT

25   THIS PROVISION IS SUBJECT TO HEIGHTENED SCRUTINY, IT IS SUBJECT

1    TO AT MOST, INTERMEDIATE SCRUTINY, BECAUSE THIS IS COMMERCIAL

2    SPEECH AND IS CONTENT-NEUTRAL.  THE PRIVACY PROTECTIONS NEED TO

3    BE ELEVATED BASED ON AGE, OR IF THE BUSINESS DOESN'T WANT TO

4    ESTIMATE AGE, MADE SAFE FOR EVERYONE.  SO THERE IS NO, YOU

5    CAN'T SHOW THIS CONTENT, YOU CAN'T SHOW THAT CONTENT IN THIS

6    PROVISION.

7          AND THIS IS COMMERCIAL SPEECH BECAUSE IT APPLIES TO A

8    SPECIFIC PRODUCT MOST LIKELY TO BE ACCESSED BY CHILDREN.

9          AND AGAIN, BUSINESSES ENGAGE IN THIS DATA COLLECTION FOR

10   ECONOMIC REASONS, FOR ADVERTISING PURPOSES, TO INCREASE

11   ENGAGEMENT, SO THIS IS AN ECONOMIC MATTER FOR THEM.

12         AND IT'S NOT THE CASE HERE THAT THIS WOULD BE -- THAT

13   THIS -- AS THERE ARE IN SOME SPEECH CASES, BECAUSE THIS DOESN'T

14   RESTRICT SPEECH.  IT'S NOT THE CASE THAT OH, WELL CHILDREN'S

15   DATA WILL JUST GET COLLECTED SOMEWHERE ELSE, RIGHT.  IF YOU

16   RESTRICT THE COLLECTION OF CHILDREN'S DATA, THEN IT'S

17   RESTRICTED.  AND THIS PROVISION IS NOT CONTENT-BASED.

18         AND I THINK I WILL REST ON OUR BRIEFING FOR VAGUENESS.

19   BUT FOR OVERBREADTH, I JUST WANTED TO POINT OUT ALONG THE SAME

20   LINES OF THE COMMERCIAL SPEECH ARGUMENTS WE HAVE MADE HERE

21   TODAY, THE SUPREME COURT HAS SAID THE JUSTIFICATION FOR

22   OVERBREADTH ANALYSIS APPLIES WEAKLY, IF AT ALL, IN THE

23   COMMERCIAL CONTEXT.

24         SO I THINK IT'S QUITE A LARGE HILL TO CLIMB WHEN YOU ARE

25   REGULATING -- TO THE EXTENT THIS IS REGULATING SPEECH AT ALL,

1    THAT IT WOULD BE REGULATING COMMERCIAL -- THAT THE COLLECTION

2    AND USE OF DATA WOULD BE COMMERCIAL SPEECH.

3         SO ON ITS FACE, THE SCOPE OF THIS PROVISION, OR THIS

4    PROVISION IS QUITE LIMITED, IT REGULATES ONLY CERTAIN

5    BUSINESSES THAT SPECIFICALLY HAVE A DATA MANAGEMENT ASPECT TO

6    THEIR BUSINESS, AND IT ONLY REGULATES THOSE BUSINESSES, TO THE

7    EXTENT THAT THEY OFFER SERVICES, PRODUCTS AND FEATURES LIKELY

8    TO BE ACCESSED BY CHILDREN, AND IT PROVIDES A SPECIFIC LIST OF

9    WHAT THOSE BUSINESSES ARE REQUIRED TO DO AND PROHIBITED FROM

10   DOING.  SO I THINK IT IS QUITE NARROW IN THAT SCOPE.

11        AND I THINK I WILL END WITH, OR AT LEAST THIS SECTION,

12   INVALIDATION FOR OVERBREADTH IS VERY STRONG MEDICINE.  SO I

13   THINK THE COURT SHOULD BE VERY SKEPTICAL TO APPLY IT HERE.

14             THE COURT:  THANK YOU.

15        ALL RIGHT.  LET ME NOW TURN TO THE LEVEL OF SCRUTINY.

16        IF -- ASSUMING THAT I FIND THAT THIS IS SPEECH AND THAT IT

17   IS CONTENT-BASED OR A PRIOR RESTRAINT, THEN -- AND I WANT TO

18   HEAR YOUR FULL ARGUMENT UNDER BOTH STRICT SCRUTINY AND

19   INTERMEDIATE SCRUTINY SO THAT WE CAN WRAP UP THIS SECTION, AND

20   THEN TAKE A SHORT BREAK AND THEN COME BACK ON THE OTHER TWO

21   ISSUES, TO THE EXTENT YOU WOULD LIKE TO ARGUE THEM.

22        SO MS. KUMAR, LET ME TURN TO YOU AGAIN.

23             MS. KUMAR:  THANK YOU, YOUR HONOR.

24        I WILL ADDRESS BOTH STANDARDS AT THE SAME TIME.

25             THE COURT:  YES.

1          MS. KUMAR:  YOU KNOW, WE KNOW THAT CONTENT-BASED

2      RESTRICTIONS ON SPEECH MUST BE NECESSARY TO SERVE A COMPELLING

3      GOVERNMENT INTEREST, MUST BE NARROWLY TAILORED TO SERVE THAT

4      INTEREST, IN FACT, BE THE LEAST RESTRICTIVE MEANS TO SERVE THAT

5      INTEREST.

6          THE INTERMEDIATE SCRUTINY STANDARD DIFFERS, ALTHOUGH IT

7      ALSO REQUIRES CONSIDERING SOME OF THE SAME THINGS.  THE

8      QUESTION IS WHETHER IT FURTHERS AN IMPORTANT GOVERNMENT

9      INTEREST IF THE GOVERNMENT INTEREST IS UNRELATED TO THE

10     SUPPRESSION OF FREE EXPRESSION, AND IF THE INCIDENTAL

11     RESTRICTION ON THE ALLEGED FIRST AMENDMENT FREEDOMS IS NO

12     GREATER THAN NECESSARY TO FURTHER THAT INTEREST.

13         AND NEITHER TEST, IN OUR VIEW, IS SATISFIED.  AND I WILL

14     ADD THAT WE TALKED A LITTLE BIT ABOUT WHAT PORTIONS OF THE LAW

15     YOU WOULD ENJOIN, I THINK IN LOOKING BACK AT IT, YOU KNOW THE

16     WHOLE LAW IS CONTENT-BASED, RIGHT.

17              THE COURT:  RIGHT.

18              MS. KUMAR:  IN MY VIEW.

19              THE COURT:  SO I WOULD -- IF I AGREE WITH YOU ON

20     THAT, I WOULD AGREE IT'S THE WHOLE LAW, I DON'T THINK I NEED TO

21      PARSE THE SECTIONS.

22         ON THE LEVEL OF SCRUTINY, I ACTUALLY THINK I MAY NEED TO

23     MAKE A FINDING ON WHETHER EACH OF THE MANDATES IN EACH OF THE

24     PROHIBITIONS PASSES THE LEVEL OF SCRUTINY I DETERMINE.

25         DO YOU AGREE WITH THAT?

1          MS. KUMAR:  I THINK I DO.

2     I THINK YOU SHOULD GO -- I MEAN, I WOULD WANT TO GO

3     PROVISION-BY-PROVISION IN ANY ORDER.

4          THE COURT:  OF THE ONES YOU CHALLENGE, OF COURSE,

5     YES.

6          MS. KUMAR:  AND EVEN -- I WILL SAY, EVEN THE ONES

7     THAT ARE NOT LISTED IN THE PRAYER FOR RELIEF, YOU KNOW --

8          THE COURT:  IF THEY ARE NOT LISTED IN YOUR

9     PRELIMINARY INJUNCTION MOTION, I'M NOT CONSIDERING THEM.

10          MS. KUMAR:  PRELIMINARY INJUNCTION ASKS FOR

11     ENJOINMENT OF THE WHOLE STATUTE.

12          THE COURT:  I HAD THOUGHT THAT, AND -- BUT THEN YOU

13     SAID THAT YOU WERE ONLY CHALLENGING --

14          MS. KUMAR:  NO, THAT WAS MY MISTAKE.

15          THE COURT:  SO -- WELL BEFORE WE GO INTO THIS, SO

16     THERE ARE, I DIDN'T COUNT THEM, BUT THERE ARE EIGHT OR NINE

17     MANDATES, AND THERE ARE EIGHT PROHIBITED ACTS IN SECTION 31.

18     SO IF I FIND SIX DON'T MEET THE LEVEL OF SCRUTINY AND

19     EIGHT DO, YOU NEED TO TELL ME WHAT YOU THINK THE RESULT IS FOR

20     YOUR INJUNCTION.  DO I ENJOIN ONLY THE ONES THAT DON'T PASS

21     MUSTER OR DO I ENJOIN THE WHOLE STATUTE, AND WHY?

22          MS. KUMAR:  OKAY.

23     I THINK -- FIRST OF ALL, AS WE TALKED ABOUT, THERE'S NO

24     SEVERABILITY CLAUSE, RIGHT, AND CALIFORNIA LAW REQUIRES THAT

25     FOR YOU TO LEAVE SOME IN TACT AND OTHERS NOT, THE TEST IS

1    WHETHER IT'S GRAMMATICALLY, FUNCTIONALLY AND VOLITIONALLY

2    SEVERABLE.  AND I DON'T THINK IT IS.

3         AND I WAS REMINDED OF THAT TEST BECAUSE I THINK SO MUCH OF

4    THE LAW IS INTERLINKED, IT'S NOT AS IF WE HAVE -- THEY ARE

5    INSEPARABLE, IN MY VIEW.  IF YOU ENJOIN ONE PART, IT'S GOING TO

6    BE VERY HARD TO EVEN KNOW WHAT THE REMAINING PART MEANS, FROM A

7    GRAMMATICAL STANDPOINT.

8         AND THE VOLITIONAL REQUIREMENT IS THAT LEGISLATURE HAS TO

9    HAVE SAID SOMETHING THAT SAYS, THIS IS WHAT WE WANT.  AND

10   USUALLY THEY DO THAT THROUGH A SEVERABILITY CLAUSE, AND THEY

11   HAVEN'T DONE IT HERE.

12        SO I THINK IF YOU ARE LOOKING AS TO WHETHER YOU COULD

13   SEVER PORTIONS OF THE STATUTE, I DON'T THINK YOU CAN.  AND I

14   THINK IT WILL BE BETTER IF WE MAKE IT CONCRETE, RIGHT, BECAUSE

15   WHEN I THINK ABOUT THE STATUTE, THERE ARE MANY PORTIONS THAT

16   ARE INTERLINKED IN A WAY THAT YOU CAN'T REALLY SEPARATE THEM.

17        AND SO I'M HAPPY TO WALK THROUGH THE PROVISIONS, BUT IF WE

18   AGREE, FOR EXAMPLE, THAT THE USE OF PERSONAL INFORMATION IS

19   PROTECTED BY THE FIRST AMENDMENT, WHICH SORRELL SAYS, THEN ALL

20   OF THE USE RESTRICTIONS ARE SUBJECT TO STRICT SCRUTINY AND NONE

21   OF THEM WILL PASS STRICT SCRUTINY.

22        WE HAVEN'T EVEN HEARD ARGUMENT FROM THE STATE.  I THINK

23   THERE'S MAYBE A PAGE OR TWO ON STRICT SCRUTINY IN THEIR

24   OPPOSITION BRIEF, BUT THERE'S NO FULSOME EXPLANATION AS TO WHY

25   THE LAW SATISFIES STRICT SCRUTINY.  I THINK PART OF THE REASON

1    FOR THAT IS BECAUSE ALMOST NOTHING EVER SATISFIES STRICT

2    SCRUTINY, AND THEY WERE RESTING ON THE HOPE THAT THE COURT WILL

3    FIND THIS DOESN'T REGULATE CONTENT.  AND THE COURT MAY YET FIND

4    THAT, BUT AS LONG AS IT FINDS THAT IT REGULATES CONTENT, IT'S A

5    NO-BRAINER THAT THE STATUTE ITSELF CAN'T PASS MUSTER,

6    PARTICULARLY GIVEN THE EXISTENCE OF THE LESS RESTRICTIVE

7    ALTERNATIVES THAT WE TALKED ABOUT, THE CCPA AND COPPA.  IF

8    PRIVACY IS THE GOAL HERE, THOSE LAWS ADDRESS PRIVACY.  THOSE

9    ARE DATA PRIVACY LAWS, THIS IS NOT.

10         THE COURT:  OKAY.

11       SO LET ME HEAR YOUR STRICT SCRUTINY, INTERMEDIATE SCRUTINY

12    ANALYSIS AS TO WHY IT DOESN'T PASS MUSTER.

13         MS. KUMAR:  STARTING WITH THE INTEREST OF THE

14    GOVERNMENT, WHETHER IT'S SUBSTANTIAL OR COMPELLING, THE STATE

15    HAS PUT FORTH A DECLARATION OF AN EXPERT THAT SAYS LOOK AT ALL

16    THIS AWFUL STUFF ON THE INTERNET.  BUT WHAT -- IF YOU READ

17    CAREFULLY, WHAT SHE DOESN'T SAY AND WHAT SHE DOESN'T SHOW OR

18    CITE TO, IS STUDIES THAT SHOW ANY CAUSATION BETWEEN THE

19    ALLEGEDLY HARMFUL CONTENT, MUCH LESS THE BUSINESS PRACTICES

20    BEHIND THOSE ALLEGEDLY HARMFUL -- BEHIND THE ALLEGEDLY HARMFUL

21    CONTENT, IS THE CAUSE OF THE HARMS THAT ARE ALLEGED.

22       YOU KNOW, I DON'T THINK ANYONE WOULD DISAGREE THERE IS A

23    MENTAL HEALTH CRISIS AMONG TEENAGERS, BUT I DON'T THINK WE KNOW

24    WHY.  AND THE DECLARATION THE STATE PROVIDES DOESN'T TELL US,

25    IT KIND OF -- IT APPEALS TO YOUR JUST INNATE SENSE OF OH, WELL

1    GHEE, IT CAN'T POSSIBLY BE GOOD FOR MY KID TO BE SEEING X, Y OR

2    Z.

3            THE COURT:  WHEN I READ THEM, I THOUGHT THE WHOLE

4    INTERNET SHOULD BE SHUT DOWN TO CHILDREN UNDER 18, BECAUSE

5    THAT'S REALLY THE CASE THEY'RE MAKING.

6            MS. KUMAR:  YES.

7        AND YOU KNOW, IF THAT'S WHAT PARENTS WANT TO DO, THAT'S

8    WHAT PARENTS WANT TO DO, BUT IT'S NOT THE STATE'S ROLE TO COME

9    IN AND TELL PARENTS THAT.

10       SO I WOULD SAY THAT ALTHOUGH CERTAINLY WE ALL HAVE A

11   COMPELLING INTEREST IN THE MENTAL HEALTH OF OUR CHILDREN, THE

12   COMPELLING INTEREST HERE HAS NOT -- IT HASN'T BEEN SHOWN THAT

13   WE HAVE A COMPELLING INTEREST IN LIMITING ACCESS TO THE

14   INTERNET.  SO IT FAILS SCRUTINY ON THAT BASIS ALONE.

15           THE COURT:  WELL, I THINK WITH THE GOVERNMENT

16   INTEREST, UNDER EITHER STANDARD, I HAVE TO DEFINE WHAT IT IS.

17   AND THEN -- BECAUSE I THINK THERE IS A GOVERNMENT INTEREST, I

18   DON'T THINK WE CAN SAY THERE ISN'T ONE.

19       SO I NEED TO DEFINE WHAT THE GOVERNMENT INTEREST IS AND

20   THEN DETERMINE WHETHER THIS STATUTE WILL ADDRESS THAT INTEREST

21   IN A NARROWLY TAILORED WAY.  AM I MISSTATING THE STANDARD?

22           MS. KUMAR:  GENERALLY SPEAKING, BOTH THE STANDARDS

23   ASK YOU TO DO THAT.

24           THE COURT:  OKAY.  RIGHT.

25       BECAUSE I DON'T THINK -- I THINK WE JUST NEED TO DEFINE

1    THE GOVERNMENT INTEREST, AND I THINK YOU JUMPED INTO THE NEXT

2    STAGE.

3         SO HOW DO YOU DEFINE THE GOVERNMENT INTEREST?  HOW DO YOU

4    READ THE GOVERNMENT INTERESTED DEFINED BY THE STATE?

5              MS. KUMAR:  I'M LOOKING AT THEIR BRIEF RIGHT NOW, AND

6    THEY SAY AT THE TOP OF PAGE 20 IN THEIR OPPOSITION, "IT'S

7    EVIDENT BEYOND THE NEED FOR ELABORATION THAT A STATE'S INTEREST

8    IN SAFEGUARDING THE PHYSICAL AND PSYCHOLOGICAL WELL-BEING OF A

9    MINOR IS COMPELLING."

10        SO THAT'S WHAT THEY SAY THE INTEREST IS.  I DON'T THINK WE

11   DISPUTE THAT THE WELL-BEING OF CHILDREN IS A COMPELLING

12   INTEREST, BUT --

13             THE COURT:  RIGHT.  BECAUSE I THINK THE ANALYSIS

14   REALLY HAS TO DRILL DOWN ON WHETHER IT'S NARROWLY TAILORED.

15        SO LET'S MOVE TO THE NEXT.

16             MS. KUMAR:  SURE.

17        SO I CAN'T THINK OF A WAY IN WHICH THIS STATUTE COULD

18   POSSIBLY BE NARROWLY TAILORED.  AND THAT'S EVIDENCED BY OUR

19   OVERBREADTH ARGUMENTS, BY OUR VAGUENESS ARGUMENTS, BY THE

20   DECLARATIONS IN THE AMICUS BRIEFS THAT SAY THIS IS WHAT'S GOING

21   TO HAPPEN UNDER THE STATUTE.

22        I WOULD AGAIN POINT THE COURT TO PLAYBOY, IN WHICH THE

23   COURT HELD THAT -- THE SUPREME COURT HELD THAT THE ALTERNATIVE

24   OF HAVING CHILDREN AND HAVING PARENTS ABLE TO REQUEST FILTERING

25   TECHNOLOGY, WHICH WAS PROVIDED FOR BY THE LAW IN THAT CASE, WAS

1    THE LEAST LESS-RESTRICTIVE ALTERNATIVE.  MERELY BECAUSE IT

2    WASN'T BEING TAKEN ADVANTAGE OF WAS NOT A REASON WHY IT

3    WOULDN'T BE INEFFECTIVE TO SERVE THAT INTEREST.

4         AND I WOULD SAY THE SAME THING ABOUT THE CCPA AND COPPA.

5    AND JUST TO GO BACK TO THE INTEREST FOR A MINUTE, YOUR HONOR,

6    THE STATE MIGHT SAY IT'S THE PSYCHOLOGICAL WELL-BEING OF

7    MINORS, BUT THE CASES HAVE BEEN CLEAR OVER TIME THAT THE STATE

8    DOESN'T HAVE A COMPELLING INTEREST IN STOPPING MINORS FROM

9    SEEING HARMFUL CONTENT.  INDEED, MINORS ARE ENTITLED TO

10   SIGNIFICANT PROTECTIONS FOR CONTENT, THEY HAVE FIRST AMENDMENT

11   RIGHTS AS WELL.  THE STATE CAN PROHIBIT WHAT'S OBSCENE TO

12   MINORS FOR MINORS, BUT NOT MUCH BEYOND THAT.

13        AND YOU KNOW, YOU LOOK AT THE BROWN CASE, IT SAYS THAT,

14   EVEN THOUGH THERE ARE ALL THESE --

15        THE COURT:  I'M NOT SURE I CAN JUMP TO THE HARM TO

16   USERS UNDER EVEN A RELAXED STANDING REQUIREMENTS FOR A FACIAL

17   ATTACK UNDER THE FIRST AMENDMENT.

18        MS. KUMAR:  I'M NOT SUGGESTING THAT YOU DO.

19        THE COURT:  OKAY.  THANK YOU.

20        MS. KUMAR:  WHAT I AM SAYING IS THAT ONE WAY TO

21   DEFINE THE GOVERNMENT INTEREST HERE IS THAT IT'S AN INTEREST IN

22   PROTECTING CHILDREN FROM HARMFUL CONTENT, AND THAT'S NOT A

23   LEGITIMATE STATE INTEREST, IT NEVER HAS BEEN.  AND THERE ARE

24   MANY CASES TO THAT EFFECT, STRIKING DOWN STATUTES THAT ARE

25   DESIGNED TO PROTECT CHILDREN FROM HARMFUL CONTENT.

1        GOING TO THE --

2            THE COURT:  SO TELL ME WHAT'S NOT NARROWLY TAILORED.

3        WHY IS IT NOT NARROWLY TAILORED TO MEET THE COMPELLING

4        STATE INTEREST?  AND OF COURSE IT CAN'T ALSO BE -- THIS IS

5        WHERE CONTENT NEUTRALITY CAN'T BE CONTENT-BASED EITHER.  SO WE

6        COME BACK TO CONTENT-BASED AGAIN.

7            MS. KUMAR:  IT DOES DEPEND ON HOW YOU FRAME THE

8        GOVERNMENT'S INTEREST.  BECAUSE THE GOVERNMENT'S INTEREST IS

9        JUST IN THE -- IF YOU DECIDE THAT THE GOVERNMENT INTEREST HERE

10       IS NOT TO SHIELD CHILDREN FROM HARMFUL CONTENT, BUT IS INSTEAD

11       JUST TO PROTECT CHILDREN GENERALLY, AGAIN I WOULD SAY THAT THE

12       STATE HASN'T PROVIDED ANY EVIDENCE.

13           IN BROWN V. ENTERTAINMENT MERCHANTS ASSOCIATION THERE WERE

14       STUDIES THAT TALKED ABOUT THE EFFECT OF VIOLENT VIDEO GAMES ON

15       CHILDREN.  WE DON'T EVEN HAVE THAT HERE.

16           THE COURT:  THAT DIDN'T GO VERY WELL, DID IT.

17           MS. KUMAR:  IT DIDN'T.  THAT WASN'T ENOUGH, RIGHT.

18       AND EVEN HERE, WE HAVE FAR FEWER DATA POINTS.  WHAT WE DO

19       HAVE IS THE EXPERT SAYING THERE'S A SMALL CORRELATION BETWEEN

20       THE CONTENT AND OUTCOMES, NOT CAUSATION, CORRELATION.  THERE

21       COULD BE A MYRIAD OF REASONS WHY A PARTICULAR CHILD IS

22       SUFFERING AND IT HAVE ABSOLUTELY NOTHING TO DO WITH WHAT THEY

23       ARE SEEING ON THE INTERNET OR WHETHER THEY ARE BEING NUDGED AND

24       WHAT HAVE YOU.  AND AGAIN, WHEN WE ARE TALKING ABOUT SPEECH

25       RESTRICTIONS, THEY HAVE TO BE VERY NARROWLY DRAWN, AND THIS IS

1     NOT THAT.

2          SO SETTING ASIDE THAT THE EXPERT HASN'T PROVIDED EVIDENCE

3     THAT REDUCING HARMFUL CONTENT EXPOSURE WILL, ITSELF, PROMOTE

4     THE PSYCHOLOGICAL WELL BEING OF CHILDREN, AGAIN THERE ARE LESS

5     RESTRICTIVE WAYS OF DOING THAT.

6          AND COPPA REFLECTS EXACTLY JUST THAT, WHICH IS -- NOT IN

7     TERMS OF CONTENT, BUT IN TERMS OF GIVING PARENTAL PARENTS

8     CONTROL, JUST LIKE IN PLAYBOY, GIVING PARENTS CONTROL, AND THE

9     STATE HAS NOT SHOWN THAT THAT ALTERNATIVE WOULD NOT BE

10    EFFECTIVE TO ADDRESS ITS INTEREST IN THE WELL BEING OF MINORS.

11              THE COURT:  OKAY.

12         OKAY.  ANY -- WOULD YOU LIKE TO FINISH ON THAT?

13              MS. KUMAR:  I THINK IT'S WORTH NOTING THAT THE

14    BREATHTAKING POSITION THAT THE STATE HAS BEEN TAKING, EVEN

15    DURING THIS ARGUMENT, ABOUT SORT OF THE STATE'S INTEREST AND

16    THE IDEA THAT THIS DOESN'T REGULATE CONTENT OR ISN'T

17    CONTENT-BASED, I MEAN, THE WHOLE PURPOSE OF THE LAW, RIGHT, IS

18    TO STOP ALLEGEDLY HARMFUL CONTENT OR CONTENT THE GOVERNMENT

19    DEEMS HARMFUL FROM REACHING CHILDREN.

20         AND YOU KNOW, THE STATE CAN TRY TO DISAVOW THAT BY PUTTING

21    ON BLINDERS, BUT THAT'S THE REALITY OF THE STATUTE.  AND IT

22    CAN'T BE SUSTAINED BECAUSE IT'S NOT -- THAT DOESN'T SERVE THEIR

23    INTEREST.  AND WHATEVER INTEREST EXISTS COULD BE SERVED THROUGH

24    NARROWER MEANS.

25              THE COURT:  OKAY.  THANK YOU.

1          ALL RIGHT.  LET ME HEAR THIS NEXT PORTION, AND THEN WE ARE

2     GOING TO TAKE A BREAK, OKAY.

3          AND MS. WATSON, I WANT YOU TO DEFINE WHAT THE COMPELLING

4     INTEREST OF THE STATE OR IMPORTANT STATE INTEREST IS.  I THINK

5     YOU GET TO SET THE STAGE ON THAT.

6          MS. WATSON:  ABSOLUTELY, YOUR HONOR.

7          WELL, I STAND BY WHAT WE PUT IN OUR BRIEF THAT IT IS THE

8     PSYCHOLOGICAL AND WELL BEING OF MINORS.  AND I THINK THERE IS

9     QUITE A LOT THAT SHOWS IN THE LEGISLATIVE HISTORY AND IN OUR

10    DECLARATIONS, AS WELL AS A RECENT REPORT BY THE SURGEON GENERAL

11    OF THE UNITED STATES, THAT JUST ENCOURAGED LOCAL GOVERNMENTS --

12    OR EXCUSE ME, STATE GOVERNMENTS, TO PUT IN PLACE, PROTECTIONS

13    FOR MINORS.

14         SO I'M HAPPY TO GO KIND OF MORE INTO DETAIL ON EACH OF

15    THOSE THINGS.

16         THE COURT:  SO THAT'S FINE.  SO THEN LET'S MOVE ON.

17         I ACCEPT YOUR STATEMENT OF THE COMPELLING OR IMPORTANT

18     STATE INTEREST.  SO NOW LET'S LOOK AT WHETHER THIS STATUTE IS

19     NARROWLY TAILORED TO ADDRESS THAT.

20         MS. WATSON:  YES, YOUR HONOR.

21         SO I DO WANT TO GO -- WELL, I THINK I CAN GO

22    PROVISION-BY-PROVISION THAT WAS CHALLENGED, BUT THEN MAYBE AT

23    THE END, SINCE PLAINTIFFS SEEM TO BE ARGUING FOR COMPLETE

24    INVALIDATION, TALK ABOUT SOME OF THE RELIEF AND SEVERABILITY

25    POINTS.

```
 1           BUT AS A STARTING POINT, I WOULD REALLY ENCOURAGE THE

 2     COURT TO LOOK AT RADESKY'S DECLARATION, BECAUSE SHE DOES GO

 3     PROVISION-BY-PROVISION AND PROVIDE EXAMPLES OF HOW THESE

 4     PROVISIONS HELP CHILDREN, RIGHT.  AND SHE DOES CITE NUMEROUS

 5     STUDIES, INCLUDING THINGS LIKE 45,000 CHILDREN HAVE BEEN

 6     EXPLOITED THROUGH USING MESSAGING ON THE INTERNET, RIGHT, AND

 7     CLOSING THAT MESSAGING, RIGHT, WHICH IS ONE OF THE THINGS THIS

 8     LAW LOOKS AT, COULD HELP WITH THAT, RIGHT.

 9           THE COURT:  YOU KNOW, IT'S KIND OF AN INTERESTING

10     THING BECAUSE THIS STATUTE MIGHT, AT THE SAME TIME, SWEEP TOO

11     BROADLY AND SWEEP TOO NARROWLY.

12        SO YOU MENTIONED INSTANT MESSAGING, YOU COULD MENTION

13     TIKTOK, NO STATUTE IS GOING TO KEEP KIDS OFF OF THOSE

14     PLATFORMS.

15           MS. WATSON:  WELL, THAT'S NOT THE GOAL OF THIS

16     STATUTE.  THE GOAL IS NOT TO KEEP CHILDREN OFF OF THESE

17     PLATFORMS, THE GOAL IS TO REGULATE DATA MANAGEMENT PRACTICES SO

18     THAT HARM IS LIMITED.  THAT'S THE GOAL OF THIS STATUTE.

19           THE COURT:  I DON'T HAVE ANY -- SEE, THAT'S REALLY MY

20     POINT, IS THAT THIS SEEMS -- THERE ARE CERTAIN THINGS THAT THE

21     LITERATURE SEEMS TO POINT TO ARE PARTICULARLY DAMAGING TO

22     CHILDREN IN TAPPING INTO THE ADDICTIVE NATURE OF THEIR

23     PERSONALITIES THAT CAUSE THEM TO JUST STAY ON THESE SITES

24     FOREVER, TIKTOK, OR THESE REELS THAT THEY WATCH AND THE NUMBER

25     OF HOURS.
```

1         I THINK SENATOR MURPHY HAD A PIECE IN THE *NEW YORK TIMES*

2    JUST THIS WEEK ABOUT FEDERAL LEGISLATION, I'M SURE YOU READ IT,

3    I'M SURE YOU KNOW EVERYTHING ABOUT THE FEDERAL LAW, WE ARE NOT

4    GOING TO GO INTO THAT NOW, BUT I'M CONCERNED THAT, AND MAYBE

5    IT'S NOT A FIRST AMENDMENT CONCERN, THAT IT'S ACTUALLY -- THE

6    COMPELLING STATE INTEREST, IF WE ACCEPT IT, IS SO BROAD THAT

7    THESE RESTRICTIONS DON'T EVEN TOUCH IT.  THEY DON'T EVEN TOUCH

8    IT BECAUSE NONE OF THIS IS GOING TO KEEP KIDS OFF OF WHAT THEIR

9    FRIENDS ARE TELLING THEM TO BE ON.

10        I MEAN, YOU'RE SAYING -- I'M NOT A 12-YEAR-OLD GIRL, AND

11   THAT'S KIND OF THE TARGET AUDIENCE FOR THIS STATUTE, IS HELPING

12   THESE KIDS NOT BE SO ADDICTED TO THE INTERNET.  BUT I STRUGGLE

13   TO SEE THE EFFECTIVENESS OF THIS, BUT MAYBE THAT'S IN ITS

14   APPLICATION.

15        MS. WATSON:  WELL, AND I MEAN, I WOULD REALLY

16   ENCOURAGE YOU TO LOOK AT DR. RADESKY'S DECLARATION BECAUSE SHE

17   DOES TALK ABOUT, LIKE THERE ARE THINGS YOU CAN DO, RIGHT, TO

18   LIMIT THE HARM, RIGHT.  AND IT'S NOT -- AND I KNOW THAT NEITHER

19   ONE OF OUR DECLARANTS THOUGHT CHILDREN SHOULDN'T BE ON

20   INTERNET, THEY JUST DO FEEL, BASED ON THE EVIDENCE AND THE

21   RESEARCH THEY HAVE DONE THROUGH THEIR DECADES AND CAREER, THAT

22   THERE ARE WAYS TO MAKE THE INTERNET SAFER FOR CHILDREN, THERE

23   ARE WAYS, IT IS POSSIBLE.

24        AND I THINK THEY DO -- THEY WERE VERY AWARE AS THEY WERE

25   WRITING, THAT PEOPLE KIND OF DO WANT TO JUST THROW THEIR HANDS

1    UP AND SAY, WELL, WHAT COULD WE DO, RIGHT.  AND THEY REALLY DID

2    WANT TO TAKE THAT INTO CONSIDERATION AND LOOK AT THE STATUTE

3    AND TRY TO GIVE REAL WORLD EXAMPLES.

4         SO KIND OF FOR THE OVERALL EFFECT, I WOULD REALLY

5    ENCOURAGE THAT.

6              THE COURT:  OKAY.  GOOD.

7              MS. WATSON:  BUT I CAN GO PROVISION-BY-PROVISION AS

8    WELL, ON THE STRICT SCRUTINY PIECE.  AND I DON'T THINK THIS HAD

9    BEEN ALL TOO LONG.

10        SO OF COURSE OUR POSITION IS, AS I EXPLAINED EARLIER, THAT

11   THESE PROVISIONS SHOULD BE ASSESSED UNDER INTERMEDIATE

12   SCRUTINY.  AND I THINK IT IS THE CASE IN SORRELL THAT THEY DID

13   APPLY INTERMEDIATE SCRUTINY.  IT MIGHT HAVE BEEN THE CASE THAT

14   THEY -- THEY APPLIED WITHOUT DECIDING THAT INTERMEDIATE

15   SCRUTINY WAS THE RIGHT STANDARD, AND THEN SINCE THE PROVISION

16   DIDN'T MEET INTERMEDIATE SCRUTINY, THEY DIDN'T GO INTO STRICT

17   SCRUTINY.

18             THE COURT:  RIGHT, OF COURSE.

19             MS. WATSON:  SO I DON'T THINK SORRELL SAYS THAT YOU

20   MUST APPLY STRICT SCRUTINY HERE, BUT I DO THINK THESE

21   PROVISIONS SURVIVE STRICT SCRUTINY, SO THEN THEY DO SURVIVE

22   INTERMEDIATE SCRUTINY.

23        SO EVEN IF THE COURT AGREES WITH THE PLAINTIFF THAT THE

24   DPIA PROVISION IS A CONTENT-BASED PROVISION ON SPEECH, IT

25   SHOULD NOT BE INVALIDATED BECAUSE THE GOVERNMENT HAS A

1        COMPELLING INTEREST ON THE NATURE OF ONLINE SPACE FOR CHILDREN.

2        AND THAT'S WHAT THIS PROVISION DOES, IS IT DOES SO BY REQUIRING

3        BUSINESSES TO CONSIDER --

4                THE COURT:  I JUST -- I CAN'T EVEN LISTEN TO THAT,

5        LET ALONE MY COURT REPORTER.

6                MS. WATSON:  I'M SORRY.

7            THAT PROVISION DOES SO BY REQUIRING THAT BUSINESSES

8        CONSIDER HOW PRODUCTS THAT ARE LIKELY TO BE ACCESSED BY

9        CHILDREN MIGHT HARM CHILDREN, AND HOW THE BUSINESS MIGHT

10       MITIGATE THOSE HARMS, LIKE THE CONCERN OF THE LAW IS DATA

11       MANAGEMENT PRACTICES AND HOW BUSINESSES CAN EVALUATE --

12               THE COURT:  SO YOU ARE SAYING THAT THE STATE INTEREST

13       IS MAKING THE INTERNET SAFER FOR CHILDREN, OR THE INTEREST IS

14       THE PSYCHOLOGICAL WELL BEING OF MINORS?  I MEAN, I NEED THE

15       ARTICULATION OF WHAT THE INTEREST IS.

16               MS. WATSON:  WELL -- I'M SORRY.

17               THE COURT:  SO I JUST -- THAT'S WHY I GAVE YOU CARTE

18       BLANCHE, TELL ME, AND YOU SAID IT'S WHAT YOU WROTE IN YOUR

19       BRIEF?

20               MS. WATSON:  WELL, I THINK THAT'S --

21               THE COURT:  AND YOU WROTE IN YOUR BRIEF SOMETHING

22       MUCH BROADER.

23               MS. WATSON:  YES.  WELL I THINK THAT'S PART OF IT,

24       RIGHT, IS PROTECTING --

25               THE COURT:  BECAUSE IF YOU DRILL DOWN MORE, I JUST

```
1      WANT TO KNOW THAT.

2              MS. WATSON:  WELL I DO THINK TO THE EXTENT CHILDREN

3      ARE NOT SAFE, THAT THEY ARE PROBABLY NOT WELL, YOU KNOW,

4      LIKE THE -- SO I DO THINK THAT'S INCLUDED, RIGHT.  I THINK THIS

5      LAW, I WOULD SAY OVERALL, OPERATES THROUGH DATA MANAGEMENT,

6      LIKE THAT'S WHAT THIS LAW DOES, DATA MANAGEMENT AND LOOKING AT

7      DESIGN, PRODUCT DESIGN.

8              THE COURT:  OKAY.

9              MS. WATSON:  SO YES, THE INTEREST IS THE SAFETY AND

10     WELL BEING OF CHILDREN AS IT APPLIES TO THE REGULATED

11     BUSINESSES, I WOULD SAY, NOT KIND OF THE WHOLE WORLD OF --

12             THE COURT:  SURE.

13             MS. WATSON:  SO REQUIRING BUSINESSES TO LOOK AT HOW

14     THEIR PRACTICES MIGHT HARM CHILDREN, AND HOW THEY MIGHT

15     MITIGATE THOSE HARMS AND HOW THEY MIGHT REDUCE THOSE HARMS, I

16     THINK IS NARROWLY TAILORED.

17         AND THERE'S -- YOU KNOW, IT'S QUITE NARROWLY TAILORED IN

18     THAT IT'S A SMALL UNIVERSE OF THINGS THEY TO HAVE LOOK AT FOR

19     THE DPIA, IT'S NOT ALL POSSIBILITIES, RIGHT, IT IS THE EIGHT

20     FACTORS THAT ARE LISTED THERE.

21         SO I BELIEVE BECAUSE THE LAW -- BECAUSE WE BELIEVE THE LAW

22     PROVIDES STRICT SCRUTINY, I THINK IT WOULD SURVIVE INTERMEDIATE

23     SCRUTINY AS WELL.

24         THE DATA -- OR I'M SORRY, THE BUSINESS ENFORCEMENT

25     PROVISION, I THINK THIS DOES REALLY DEPEND ON HOW THE COURT
```

1    INTERPRETS THE CONTENT-BASED POLICY QUESTION, BECAUSE IF THE

2    COURT DETERMINES THAT THAT'S A REGULATION OF SPEECH, AND THAT

3    THAT'S NOT COMMERCIAL SPEECH, THAT I THINK IT WOULD BE A HARD

4    ROW TO HOE TO SAY THAT IF THE COURT -- IF THE COURT ACCEPTS

5    PLAINTIFF'S ARGUMENTS THAT THE AG'S RULE IS TO ENFORCE THEIR

6    POLICIES HOWEVER THEY ARE WRITTEN, THEN I DO THINK THAT WOULD

7    BE -- IT WOULD BE HARD TO SAY THAT THAT'S NOT CONTENT-BASED.

8         ALTHOUGH I DO THINK IT WOULD STILL BE COMMERCIAL SPEECH,

9    SO IN THAT SENSE, WE WOULD HAVE A COMPELLING INTEREST -- OR

10   SORRY, A STRONG INTEREST IN MAKING SURE THAT CONSUMERS HAVE THE

11   ABILITY TO SEE WHAT THE PLATFORM THEIR CHILD IS GOING ON OR

12   WHAT PLATFORM THE CHILD, THEMSELVES, ARE CHOOSING TO GO ON, TO

13   KNOW AND HAVE CONFIDENCE THAT THE BUSINESS IS SAYING WHAT THEY

14   ARE DOING, RIGHT.

15        I THINK IT IS NOT ANYTHING NEW FOR THE GOVERNMENT TO HAVE

16   AN INTEREST IN BUSINESSES BEING HONEST AND UP FRONT WITH

17   CONSUMERS ABOUT THEIR POLICIES.

18        SO BY DEFINITION, THESE POLICIES ARE POSTED POLICIES.  SO

19   THEY ARE PUTTING THEM OUT THERE AND PUTTING THEM AS THE

20   POLICIES THAT THEY FOLLOW.  AND THEY CONSTITUTE AN AGREEMENT

21   BETWEEN THE CONSUMER AND THE BUSINESS FOR BUSINESS PURPOSES.

22   AND THE GOVERNMENT HAS A SUBSTANTIAL INTEREST IN PROTECTING

23   THEIR CONSUMERS.  AND THIS LAW DOES SO BY REQUIRING THAT

24   BUSINESSES FOLLOW THROUGH ON THEIR COMMITMENTS.

25        AND THEN FOR THE PRIVACY PROTECTION ANALYSIS, EVEN IF THE

1    COURT DETERMINES THAT STRICT SCRUTINY APPLIES TO THIS

2    PROVISION, THAT THE PROVISION SHOULD BE UPHELD.  THE GOVERNMENT

3    HAS A COMPELLING INTEREST IN PROTECTING CHILDREN FROM PRIVACY

4    VIOLATIONS AND INVADES THE DATA COLLECTION AND USE POLICIES.

5    AND ALL THIS PROVISION DOES IS HEIGHTEN DATA AND PRIVACY

6    PROTECTIONS.  THE PROVISION IS NARROWLY TAILORED TO SERVE THAT

7    INTEREST BECAUSE IT --

8              THE COURT:  SO ARE YOU LOOKING AT WHAT I CALL THE

9    PROHIBITIONS IN THE STATUTES NOW?

10             MS. WATSON:  NO, THIS IS THE THIRD LAW.  I'M SO

11   SORRY.  THIS IS THE THIRD PROVISION THAT IS CHALLENGED THAT

12   SAYS, "ESTIMATE THE AGE OF CHILD USERS WITH A REASONABLE LEVEL

13   OF CERTAINTY APPROPRIATE TO THE RISKS THAT ARISE FROM THE DATA

14   MANAGEMENT -- "

15             THE COURT:  THAT IS JUST TOO FAST.

16             MS. WATSON:  OH, I'M SO SORRY.

17        WE ARE TALKING ABOUT PROVISION, IT'S 1798993185.  SO THE

18   PROVISION SAYS, "ESTIMATE THE AGE OF CHILD USERS WITH A

19   REASONABLE LEVEL OF CERTAINTY APPROPRIATE TO THE RISKS THAT

20   ARISE FROM THE DATA MANAGEMENT PRACTICES OF BUSINESSES OR APPLY

21   THE PRIVACY AND DATA PROTECTIONS AFFORDED TO CHILDREN TO ALL

22   CONSUMERS."

23             THAT'S THE FULL CONSENT -- CONTENT OF THE PROVISION THAT'S

24   CHALLENGED HERE.  SO IT ONLY ADDRESSES DATA AND PRIVACY

25   PROTECTIONS.  SO EVEN -- SO I THINK THAT --

1        THE COURT:  5 CAN'T BE UNCOUPLED FROM 6.

2        SO FIRST YOU ESTIMATE, BUT THEN THERE ARE THINGS YOU MUST

3    DO IF YOU -- ONCE YOU ESTIMATE IT, HAVE YOU TO CONFIGURE

4    DEFAULT SETTINGS.

5        MS. WATSON:  NO -- OH, SORRY, GO AHEAD.

6        THE COURT:  I'M SORRY.

7        IT LOOKS AS THOUGH, YOU HAVE TO -- 6, "CONFIGURE ALL

8    DEFAULT PRIVACY SETTINGS PROVIDED TO CHILDREN."

9        SO YOU ONLY KNOW IF THEY ARE PROVIDED TO CHILDREN IF YOU

10   HAVE DONE THE AGE ESTIMATION IN 5.

11        MS. WATSON:  NO, I DON'T THINK THAT'S THE CASE,

12   YOUR HONOR.  BECAUSE FOR ANY OF THESE TO APPLY, RIGHT, IT HAS

13   TO BE LIKELY TO BE ACCESSED BY CHILDREN.

14        THE COURT:  LIKELY TO BE ACCESSED AND AGE

15   VERIFICATION ARE TWO DIFFERENT THINGS.

16        MS. WATSON:  RIGHT.  THIS LAW DOESN'T REQUIRE AGE

17   VERIFICATION THOUGH, IT REQUIRES AGE ESTIMATION.

18        BUT I DO THINK -- JUST BASED ON THE NUMBERING OF THE

19   STATUTE, I THINK 5 AND 6 ARE SEPARATE.  I DON'T THINK ONE

20   DEPENDS ON THE OTHER.

21        THE COURT:  OKAY.  WE CAN DISAGREE.  OKAY.

22        MS. WATSON:  SO I THINK THE NARROWLY TAILORED

23   ANALYSIS HERE IS THAT THE INTEREST IS IN PROTECTING CHILDREN,

24   THIS INCREASES PROTECTION FOR CHILDREN FOR DATA AND PRIVACY

25   PURPOSES.  SO IT'S QUITE NARROWLY TAILORED IN THAT RESPECT.

1     AND I JUST WANTED TO SPEAK BRIEFLY TO RELIEF AND

2     SEVERABILITY, IF THIS IS THE RIGHT TIME FOR THAT OR IF YOU WANT

3     TO BREAK AND THEN GO BACK TO IT.

4          THE COURT:  I'M JUST LOOKING AT HOW LONG IT'S BEEN.

5     IT'S A HARD JOB FOR ALL OF US.  LET'S TAKE A BREAK.

6          LET'S TAKE A TEN-MINUTE BREAK AND THEN WE CAN COME BACK

7     AND YOU CAN GIVE ME THE REST OF THIS ARGUMENT AND WE WILL MOVE

8     TO COMMERCE CLAUSE.

9          (RECESS FROM 3:17 P.M. UNTIL 3:26 P.M.)

10          THE COURT:  PLEASE BE SEATED, EVERYONE.

11          ALL RIGHT.  MS. WATSON, I'M GOING TO LET YOU FINISH UP.

12          MS. WATSON:  THANK YOU, YOUR HONOR.

13     I'M GOING TO TRY TO GO SLOW.

14          SO I WANTED TO FINISH UP WITH A FEW THOUGHTS ABOUT RELIEF

15     AND SEVERABILITY, BECAUSE YOU WERE HAVING THE BACK AND FORTH

16     WITH THE PLAINTIFFS.

17          SO I THINK ON RELIEF HERE, ON THE FREE SPEECH CLAIM, THE

18     FIRST AMENDMENT CLAIMS, I THINK THE MEASURE FOR RELIEF IS

19     DIFFERENT.  BUT WITH THE OTHER, THE VAGUENESS CLAIM ESPECIALLY,

20     I THINK THE RELIEF HERE --

21          THE COURT:  ON THE VAGUENESS CLAIM?

22          MS. WATSON:  YES, ON THE VAGUENESS CLAIM.  I WOULD

23     JUST ENCOURAGE THE COURT TO LOOK AT BOTH FACIAL AND AS-APPLIED

24     RELIEF.  A FACIAL PRE-ENFORCEMENT VAGUENESS CHALLENGE IS QUITE

25     A HIGH BAR TO MEET.  SO I WOULD JUST ENCOURAGE -- I WANT TO

1    HIGHLIGHT FOR THE COURT THAT PLAINTIFFS OFFER QUITE A FEW

2    HYPOTHETICAL INDIVIDUALIZED EXAMPLES, AND I THINK THE COURTS,

3    BOTH THE NINTH CIRCUIT AND THE SUPREME COURT, HAVE MADE IT

4    QUITE CLEAR THAT LAWS LIKE THESE ARE BASED ON CREATIONS OF

5    FACT, AND THAT INCLUDES ANYTHING ABOUT -- INCLUDING WHEN YOU

6    ARE THINKING ABOUT THE CONSTITUTIONALITY.  SO I WANTED TO RAISE

7    THAT KIND OF OVERALL --

8              THE COURT:  YES.

9              MS. WATSON:  -- AND THEN TALK A LITTLE BIT ABOUT

10   SEVERABILITY.  BECAUSE TO THE EXTENT PLAINTIFF RAISED IT IN

11   THEIR BRIEF, THEY ONLY RAISED IT WITH RESPECT TO THE AGE

12   ESTIMATION PRIVACY PROTECTION PROVISION, AND SAYING THAT THIS

13   COULD ONLY BE APPLIED TO CHILDREN, I THINK THEY SAID BETWEEN 13

14   AND 17 MAYBE, OR THEY HAD AN AGE RANGE WHERE THEY THOUGHT IT

15   APPLIED FAIRLY TO THEM AND IT WAS NOT SEVERABLE, WAS THEIR

16   ARGUMENT, SO THAT PROVISION HAD TO BE --

17             THE COURT:  WELL I THOUGHT THAT WENT TO THE COPPA

18   ARGUMENT BECAUSE COPPA APPLIES TO 13-YEAR-OLDS AND YOUNGER, AND

19   THEY WERE SAYING THAT IT WAS PREEMPTED FOR ANYONE 13 YEARS AND

20   YOUNGER.

21      SO WITH THE SEVERABILITY, LET'S STICK WITH THE FIRST

22   AMENDMENT THOUGH, THERE'S NO SEVERABILITY CLAUSE, WE ALL AGREE

23   ON THAT.

24             MS. WATSON:  YES.

25             THE COURT:  AND SO THE QUESTION IS, IF I FIND CERTAIN

1    PORTIONS DO NOT MEET THE LEVEL OF SCRUTINY AND OTHERS DO, IN

2    YOUR VIEW, DO I ENJOIN ENFORCEMENT OF ONLY THOSE PORTIONS THAT

3    I FIND DON'T MEET CONSTITUTIONAL MUSTER AND THEN LET THE STATE

4    DECIDE WHETHER IT CAN GO FORWARD WITH ANY OF THE OTHERS IN THE

5    INTERIM BEFORE WE HAVE A TRIAL ON THE MERITS?

6         MS. WATSON:  YES, YOUR HONOR.  THANK YOU FOR GETTING

7    ME BACK ON TRACK, THAT IS WHAT I WANTED TO ADDRESS HERE.

8         SO I DO THINK THE LAW IS SEVERABLE.  I THINK IT'S HARD,

9    KIND OF IN THE ABSTRACT, DEPENDING ON WHAT PROVISIONS THAT WE

10   ARE TALKING ABOUT.  BUT AS I'M SURE YOU ARE AWARE, THERE ARE --

11   YOU KNOW, THERE IS THE STANDARD FOR SEVERABILITY, DRAMATICALLY

12   SEVERABLE, FUNCTIONALLY SEVERABLE, WHICH I DID HAVE PREPARED ON

13   THE AGE ESTIMATION PROVISION, AND I'M HAPPY TO KIND OF APPLY

14   THEM HERE IF WE WANT TO GET INTO MORE DETAIL ABOUT WHICH

15   PROVISIONS THAT WE ARE TALKING ABOUT, BUT I THINK IT'S POSSIBLE

16   THAT ADDITIONAL BRIEFING MIGHT BE HELPFUL HERE IF YOU WANT TO

17   GO PROVISION-BY-PROVISION ABOUT WHAT STRICT SCRUTINY IS ON

18   THESE PROVISIONS, AND WHAT'S SEVERABLE AND WHAT'S NOT.

19        I THINK MOST OF THESE PROVISIONS ARE PRETTY INDEPENDENT,

20   AND WE WERE JUST HAVING THE DISCUSSION ABOUT THE DIFFERENCE IN

21   FIVE VERSUS SIX PROVISIONS, SO I WOULD SAY MOST OF THESE ARE

22   INTENDED TO BE READ SEPARATELY AND CAN FUNCTION SEPARATELY, BUT

23   I WOULD ALSO, YES, JUST OFFER UP ADDITIONAL BRIEFING ON THOSE

24   POINTS IF IT'S NEEDED HERE.

25        SO THOSE ARE MY POINTS.

```
 1                THE COURT:  THOSE WERE HELPFUL POINTS.  THANK YOU.

 2           ALL RIGHT.  AND MS. KUMAR, WOULD YOU LIKE TO JUST ADDRESS

 3      THIS ISSUE OF SEVERABILITY?  I DID HAVE THE OPPORTUNITY TO PULL

 4      YOUR PROPOSED ORDER, AND IT WAS TO ENJOIN ENFORCEMENT OF THE

 5      ENTIRE STATUTE.

 6           SO TWO QUESTIONS:  ONE, WHAT IS YOUR VIEW ABOUT

 7      SEVERABILITY?  AND TWO, DO YOU WANT TO MODIFY THE SCOPE OF YOUR

 8      REQUESTED INJUNCTION?

 9                MS. KUMAR:  THANK YOU, YOUR HONOR.

10           NO, WE DON'T WANT TO MODIFY THE SCOPE.  AND YOU KNOW,

11      DURING THE BREAK, I WAS LOOKING THROUGH THE STATUTE, AND I

12      THINK IT'S PRETTY CLEAR FROM THE ENTIRE STATUTE THAT IT IS

13      INHERENTLY CONTENT-BASED, ALL OF IT.  AND WE CAN GO THROUGH

14      PROVISION-BY-PROVISION, AND I THINK IT'S EVIDENT FROM THE

15      STATUTE.

16           SO FOR EXAMPLE, IF YOU LOOK AT THE DPIA PROVISIONS IN 31,

17      I STARTED CIRCLING IN PEN EVERY TIME I SAW SOMETHING THAT

18      LOOKED LIKE IT WOULD BE CONTENT-BASED.  AND EVERY SINGLE ONE OF

19      THEM, ALL OF (B)(1), ALMOST VIRTUALLY ALL OF THEM USE THE TERM

20      "HARMFUL" OR "POTENTIALLY HARMFUL."  AND THOSE THAT DO NOT,

21      TALK ABOUT -- 7 TALKS ABOUT WHETHER THE SERVICE IS TRYING TO

22      EXTEND THE USE OF THE PRODUCT.  BUT REMEMBER, THE USE OF THE

23      PRODUCT, WHAT WE ARE TALKING ABOUT HERE IS TRYING TO ATTRACT

24      VIEWERS TO CONTENT, AND SO THAT TOO IS A CONTENT RESTRICTION,

25      AND IT IS CONTENT-BASED.
```

1          THE MITIGATION REQUIREMENT TWO REQUIRES MITIGATION OF

2     HARMFUL CONTENT.  AND ALL OF THE -- ALL OF THE OTHER

3     RESTRICTIONS, SO "ESTIMATE THE AGE OF CHILD USERS, WITH A

4     REASONABLE LEVEL OF CERTAINTY APPROPRIATE TO THE RISKS OR APPLY

5     THE PRIVACY AND DATA PROTECTIONS AFFORDED TO CHILDREN TO ALL

6     CONSUMERS."

7          NOW REMEMBER "DATA PROTECTIONS" IN THE STATUTE IS JUST

8     CODE FOR CONTENT RESTRICTIONS.  THERE IS NO DEFINITION OF DATA

9     MANAGEMENT PRACTICES, AND THE ONLY WAY TO KNOW WHAT THOSE

10    MANAGEMENT PRACTICES ARE IS TO GO TO LOOK TO THE CONTEXT OF THE

11    STATUTE, WHICH IN THE DPIA PROVISION, IT'S CLEAR THAT DATA

12    MANAGEMENT PRACTICES ARE REALLY THE ESSENCE OF SPEECH OF WHAT

13    THESE SERVICES DO.  THEY ALL PUBLISH SPEECH.

14         YOU KNOW, WE TALKED ABOUT IT A LITTLE BIT EARLIER, BUT

15    JUST TO UNDERSCORE, IMDB PROVIDES -- YOU HAVE DECLARATIONS, BUT

16    IMDB PROVIDES INFORMATION ABOUT MOVIES AND ACTORS AND THE LIKE.

17    GOODREADS PROVIDES A COMMUNITY FOR PEOPLE TO TALK ABOUT BOOKS.

18         I USE GOODREADS, AND I APPRECIATE THAT THERE ARE

19    RECOMMENDATIONS ON GOODREADS, AND A LOT OF PEOPLE DO.  AND

20    THERE ARE -- YOU KNOW, THE PAOLUCCI DECLARATION, I THINK IT'S

21    VERY PERSUASIVE, YOU KNOW, IT TALKS ABOUT SORT OF ANONYMOUS

22    USE, AND UNDERPRIVILEGED USERS.  SO THIS CASE, THE WHOLE CASE

23    IS ABOUT SPEECH, IT'S NOT ABOUT DATA PRIVACY.

24         GOOGLE, EVERYTHING IN A GOOGLE SEARCH RESULT, THAT IS ALSO

25    SPEECH, AND THAT IS HOW IT'S ANALYZED IN THE CASES.  JUST

1    BECAUSE IT IS ON THE INTERNET AND JUST BECAUSE IT MAY LOOK

2    DIFFERENT THAN WHAT WE HAVE TRADITIONALLY CONSIDERED TO BE

3    SPEECH, DOESN'T MAKE IT NOT SPEECH, IT IS SPEECH.

4         YOU KNOW, THE ENFORCEMENT PROVISION IS CONTENT-BASED.  I

5    MEAN, ALL OF THESE, I MEAN, I CAN KEEP GOING, BUT I THINK THE

6    BOTTOM LINE IS THERE'S NO PART OF THE LAW THAT IS NOT

7    CONTENT-BASED, AND THERE'S NO PART OF THE LAW THAT CAN BE

8    SUSTAINED UNDER THE CONTENT-BASED STANDARD, FOR THE REASONS

9    THAT WE HAVE DISCUSSED.  AND SO WE WOULD ASK THE COURT TO

10   ENJOIN THE ENTIRE LAW, NOT JUST CERTAIN PROVISIONS.

11        AND I WILL SAY THAT WE HAVE CHALLENGED ALMOST ALL OF THEM,

12   AND WHAT REMAINS CANNOT BE -- WOULDN'T MAKE SENSE WITHOUT THE

13   REST OF THE STATUTE.  SO WE WOULD URGE THE COURT TO ENJOIN THE

14   STATUTE IN ITS ENTIRETY.

15             THE COURT:  THANK YOU.

16        ALL RIGHT.  LET'S THEN WRAP UP WITH, IT'S NOT THAT THEY

17   AREN'T IMPORTANT ISSUES, BUT I THINK THIS IS WHERE THE TIME IS

18   MOST -- WAS BEST SPENT.

19        THERE ARE ARGUMENTS -- THERE'S AN ARGUMENT UNDER THE

20   COMMERCE CLAUSE, AND OF COURSE THE SUPREME COURT HELPED US

21   AFTER YOU DID YOUR BRIEFING, MAYBE THE REPLY HAD JUST SEEN IT

22   FOR A COUPLE OF DAYS, THE NAT'L PORK PRODUCERS V. ROSS CASE.

23        SO I'M GLAD TO HEAR ARGUMENT ON IT.  I KNOW THAT THE STATE

24   DIDN'T HAVE THE OPPORTUNITY TO EVEN ADDRESS THE CASE.  I THINK

25   THAT THE SUPREME COURT RAISES SOME NEW ANALYSIS OF HOW THESE

1    STATUTES ARE CONSIDERED UNDER THE COMMERCE CLAUSE.  SO ON THE

2    ISSUE OF EXTRATERRITORIALITY, I THINK THAT THAT MAY BE

3    CONSIDERED A CHANGE IN THE LAW, A LOOSENING OF THE LAW IN

4    COMMERCE CLAUSE RESTRICTIONS.

5         SO I'M WILLING TO GIVE EACH OF YOU A FEW MINUTES.  I

6    ACTUALLY DO NOT THINK I NEED ARGUMENT ON SECTION 230 BECAUSE I

7    THINK IT'S JUST NOT APPROPRIATE FOR A FACIAL CHALLENGE.

8              MS. KUMAR:  WHAT ABOUT THE COPPA PREEMPTION ARGUMENT?

9              THE COURT:  OH, I'M GLAD TO HEAR ON THAT, SURE.

10             MS. KUMAR:  OKAY.

11             THE COURT:  ARE YOU TAKING EVERYTHING HERE TODAY,

12   MS. KUMAR?

13             MS. KUMAR:  YEAH, I AM.

14             THE COURT:  OKAY.

15             MS. KUMAR:  WITH RESPECT TO COPPA, THE STATUTE

16   PREEMPTS INCONSISTENT STATE LAWS, AND THIS LAW IS INCONSISTENT

17   WITH COPPA FOR A FEW REASONS.

18        THE FIRST IS IT PROHIBITS PARENTS FROM MAKING DECISIONS

19   ABOUT THEIR CHILDREN'S PRIVACY, INSTEAD, IMPOSING THE STATE'S

20   OWN VIEW.

21        SO I HAVE TWO CHILDREN.  IF I WANT THEM TO BE ABLE TO SEE

22   THE *NEW YORK TIMES*, FOR EXAMPLE, THERE'S -- OR GOODREADS OR

23   IMDB OR ANY OF THESE SITES, THE STATE OF CALIFORNIA IS GOING TO

24   MAKE THAT DETERMINATION FOR ME.  COPPA WAS CLEARLY INTENDED TO

25   GIVE POWER TO PARENTS, AND THIS TAKES PARENTS' POWER AWAY.

1          IT ALSO CONFLICTS WITH CONGRESS'S DECISIONS ABOUT HOW TO

2     APPROACH PRIVACY FOR CHILDREN AGE 13 AND UNDER, WHICH IS TO NOT

3     BAR CONTENT FROM REACHING THEM ALL TOGETHER, BUT TO GIVE THEIR

4     PARENTS CONTROL OVER HOW THEIR INFORMATION IS USED.

5          AND IT ALSO CONFLICTS WITH CONGRESS'S DECISION TO LIMIT

6     APPLICATION OF THESE LAWS TO SITES THAT ARE DIRECTED AT

7     CHILDREN OR WHERE THE SITE HAS OR THE SERVICE HAS ACTUAL

8     KNOWLEDGE THAT A CHILD IS USING THE SERVICE.

9          AND I WILL SAY THAT THAT LIMITATION IN COPPA IS CONSISTENT

10    WITH THE FIRST AMENDMENT AND THE FIRST AMENDMENT CASES THAT

11    MAKE CLEAR THAT A CERTAIN MENS RHEA OR CULPABILITY OR STATE OF

12    MIND IS REQUIRED TO IMPOSE LIABILITY FOR PUBLICATION OF SPEECH.

13          THE COURT:  SO I WILL JUST COMMENT THAT I REALLY AM

14     HOPING TO AVOID BEING REVERSED TWICE ON THE COPPA PREEMPTION

15     ARGUMENT, SO YOU CAN ONLY IMAGINE I'M PARTICULARLY MINDFUL OF

16     THE NINTH CIRCUIT'S NEW DECISION.

17          MS. KUMAR:  WE ARE TOO, AND WE THINK THAT DECISION

18     STANDS FOR THE PROPOSITION THAT THE STATES CAN BAR WHAT COPPA

19     BARS.  THAT'S IT.

20          THE COURT:  THAT'S ALL THEY WERE ASKED TO CONSIDER.

21          MS. KUMAR:  AND WE ARE NOT SAYING -- WHAT WE ARE

22     SAYING HERE IS NOT THAT THE STATE CAN'T BAR WHAT COPPA BARS,

23     WHAT WE ARE SAYING HERE IS THAT THE ENTIRE APPROACH IS AN

24     OBSTACLE PREEMPTION ARGUMENT.

25          THE COURT:  SO I THINK YOUR ARGUMENT THAT COPPA PUTS

1    THE CONTROL IN PARENTAL HANDS AND THIS ACT TAKES IT OUT OF

2    PARENTAL HANDS, COULD BE A CONFLICT.  I THINK THE ARGUMENT ON

3    EXPANDING PROHIBITIONS TO SITES LIKELY TO BE HARMFUL TO

4    CHILDREN IS NOT -- I DON'T THINK THAT'S A CONFLICT, I THINK

5    THAT EVEN DISTRICT COURT CASES BEFORE THE JONES CASE, ALLOWED

6    MORE PROTECTION THAN COPPA GIVES, JUST NOT CONFLICTING.

7         SO YOU'VE IDENTIFIED -- A HEAD-ON CONFLICT IS ONE THING

8    YOU'VE IDENTIFIED.  IT'S BIG, BECAUSE IT PERMEATES THE ENTIRE

9    SECTION.

10             MS. KUMAR:  THAT'S RIGHT.

11             THE COURT:  THAT MAY BE ENOUGH.  AND I HAVE TO THINK

12   ABOUT THAT BECAUSE THAT MAY BE, BUT MAYBE I WON'T HAVE TO REACH

13   THE CONGRESS CLAUSE YET.

14        OKAY.

15             MS. KUMAR:  I MEAN, THAT PRINCIPLE MUST HAVE ITS

16   LIMITS THOUGH, THAT THE STATE CAN BAR THINGS IN ADDITION TO

17   COPPA, BECAUSE COPPA SETS UP THE FRAMEWORK OF ADDRESSING

18   SOMETHING.  IF THE STATE SAID, WE ARE GOING TO BAN CHILDREN

19   FROM THE INTERNET, THERE WOULD BE PROBLEMS WITH THAT, BUT THERE

20   WOULD ALSO BE PREEMPTION PROBLEMS WITH THAT.

21             THE COURT:  WELL, I DON'T THINK CONGRESS TRIED TO

22   CARVE OUT A PLACE WHERE CHILDREN CAN BE, I THINK IT CARVED OUT

23   WAYS IN WHICH THEY ARE TO BE PROTECTED THROUGH PARENTAL

24   CONTROL.

25             SO -- BUT THERE ARE DISTRICT -- BECAUSE WHEN I MADE MY

1    RULING IN THE JONES CASE, THERE WERE DISTRICT COURT CASES THAT

2    BASICALLY LOOKED TO SEE WHETHER THE STATE RESTRICTION ADDED

3    PROTECTIONS THAT DID NOT DIRECTLY CONFLICT.

4         SO I'M NOT SURE I AGREE WITH THAT, BUT I THINK YOU HAVE A

5    DIFFERENT ARGUMENT THAT MAY BE MORE PERSUASIVE.

6         ALL RIGHT.  LET'S MOVE TO THE COMMERCE CLAUSE.

7              MS. KUMAR:  YES.

8         SO AS YOUR HONOR NOTED, THERE WAS A DECISION THAT

9    POSTDATED, WELL, THE STATE'S BRIEFING, NOT OURS.  AND YOU COULD

10   SEE THAT IN OUR REPLY BRIEF, WE STILL BELIEVE THAT THIS IS A

11   VIOLATION OF THE DORMANT COMMERCE CLAUSE, EVEN AFTER THE NAT'L

12   PORK PRODUCERS V. ROSS CASE.

13        IF YOU LOOK AT FOOTNOTE 2 OF THE DECISION, IT LEAVES IN

14   TACT THIS DOCTRINE THAT STATES CAN'T REGULATE

15   EXTRATERRITORIALLY, WHICH IS WHAT HAPPENS IN THIS CASE.

16        REMEMBER, THIS CASE IS NOT -- THIS STATUTE IS NOT LIMITED

17   TO PEOPLE WHO ARE PHYSICALLY IN CALIFORNIA, IT IS -- IT EXTENDS

18   TO ALL CALIFORNIA RESIDENTS.

19        SO IF A CALIFORNIA RESIDENT IS IN THE STATE OF VERMONT,

20   FOR EXAMPLE, THE LAW STILL APPLIES, AND SOMEHOW PROVIDERS ARE

21   SUPPOSED TO KNOW THAT THE CALIFORNIA RESIDENT IS IN VERMONT.

22   THAT'S A DIFFERENT ARGUMENT AND ANOTHER PROBLEM WITH THE LAW,

23   BUT IT ALSO MEANS THAT THERE WILL BE CONFLICTING LAWS THAT

24   PROVIDERS HAVE TO COMPLY WITH.

25        SO THERE IS A LAW IN FLORIDA THAT HAS BEEN THE SUBJECT OF

1    LITIGATION THAT WOULD REQUIRE CERTAIN OBLIGATIONS WITH RESPECT

2    TO CANDIDATES FOR OFFICE FOR FLORIDA, AGAIN, WHETHER THEY ARE

3    IN FLORIDA OR NOT.

4        SO THERE WILL NECESSARILY BE INTERACTIONS COMPLETELY

5    OUTSIDE THE STATE OF CALIFORNIA THAT WILL BE REGULATED BY THIS

6    LAW, ONE WAY OR ANOTHER.

7        AND YOU KNOW, THE STATE'S ANSWER IS, THE PROVIDER GETS TO

8    CHOOSE WHETHER THEY COMPLY WITH CALIFORNIA LAW OR TEXAS LAW OR

9    FLORIDA LAW.  AND THAT'S NOT A CHOICE, AND THAT'S WHY THE

10   COMMERCE CLAUSE EXISTS, IS TO MAKE SURE THAT YOU ARE NOT PUT IN

11   THE POSITION OF DECIDING WHICH LAW TO VIOLATE.

12       THE COMMERCE CLAUSE PROHIBITS THE STATES FROM REGULATING

13   THE INSTRUMENTALITIES OF COMMERCE.  AND THE INTERNET IS

14   SOMETHING THAT IS PERVASIVE AND DIFFICULT TO REGULATE AT THE

15   STATE LEVEL, AND WE THINK THAT THE DORMANT COMMERCE CLAUSE BARS

16   ENFORCEMENT OF IT.

17       THE COURT:  WELL IT IS VERY DIFFICULT TO REGULATE

18   REGARDING RESIDENTS, BECAUSE OF OUR 40 MILLION PEOPLE, MANY OF

19   THEM ARE TRANSIENT ON A DAY-TO-DAY BASIS, MANY ARE STUDENTS WHO

20   GO TO SCHOOL ELSEWHERE, REMAIN RESIDENTS HERE.  IT WOULD

21   ESSENTIALLY CAUSE THESE -- IT SEEMS TO ME IT MAY CAUSE THESE

22   PROVIDERS TO CHANGE THEIR PRACTICES NATIONWIDE.

23       MS. KUMAR:  THAT'S EXACTLY RIGHT.  AND THAT'S WHAT

24   THE DECLARATIONS DO SAY.

25       THE COURT:  RIGHT.

1              MS. KUMAR:  AND IT'S A PROBLEM FOR THAT REASON TOO.

2              THE COURT:  YEAH.  I MEAN, YOU DON'T KNOW WHERE, IF

3       ONE'S PHONE IS ONE'S SOURCE, THE VEHICLE THAT ONE GETS THE

4       INFORMATION, THAT PHONE MOVES AROUND EVERYWHERE.

5              MS. KUMAR:  THAT'S RIGHT.

6              THE COURT:  OKAY.

7           ALL RIGHT.  THANK YOU.

8              MS. KUMAR:  THANK YOU, YOUR HONOR.

9              THE COURT:  ALL RIGHT.  MS. WATSON, ARE YOU GOING TO

10      FINISH UP AS WELL?

11             MS. WATSON:  YES, YOUR HONOR.

12             THE COURT:  IT'S A LOT OF WORK TO COVER ALL THESE

13      ISSUES FOR ONE PERSON, ISN'T IT.

14             MS. WATSON:  YEAH, WE SHOULD HAVE RETHOUGHT THAT

15      INTERNALLY.

16          JUST A COUPLE OF POINTS THOUGH, YOUR HONOR, BECAUSE I

17      THINK WE CAN LARGELY RELY ON OUR BRIEFS HERE.

18          SO ON PREEMPTION, AS YOU KNOW, THERE WAS A DECISION JUST A

19      COUPLE OF WEEKS AGO THAT REAFFIRMED.  AND THE FTC ALSO WEIGHED

20      IN THERE TO SAY CONGRESS DID NOT INTEND TO WHOLLY FORECLOSE

21      STATE PROTECTION OF CHILDREN'S ONLINE PRIVACY, AND THE PANEL

22      PROPERLY REJECTED AN INTERPRETATION OF COPPA THAT WOULD ACHIEVE

23      THAT OUTCOME.  SO I THINK THAT BINDING PRECEDENT HERE IS PRETTY

24      CLEAR.

25             BUT I DO WANT TO TOUCH ON YOUR POTENTIAL PARENTAL CONFLICT

1    POINT.

2         WHERE I THINK THAT THE CONFLICT THAT THE PREEMPTION CLAUSE

3    IS GETTING AT, IS THE KIND OF -- THE STATE REQUIRES SOMETHING

4    THAT THE FEDERAL LAW PROHIBITS, OR THE FEDERAL LAW PROHIBITS

5    SOMETHING THAT THE -- OR THE STATE LAW PROHIBITS SOMETHING THAT

6    THE FEDERAL LAW REQUIRES.  THAT'S A CONFLICT.

7         BUT WHAT YOU ARE TALKING ABOUT, I DON'T THINK PUTS

8    BUSINESSES IN A DIFFERENT SITUATION WITH REGARD TO LIABILITY

9    UNDER COPPA VERSUS UNDER THIS LAW.  LIKE, I HEAR WHAT YOU ARE

10   SAYING THAT THE PARENTS HAVE A DIFFERENT ROLE IN SOME OF THESE

11   PROVISIONS UNDER THIS LAW, BUT I DON'T THINK THAT CREATES A

12   CONFLICT WITH COPPA BECAUSE THERE IS NO -- THE ENFORCEMENT

13   MECHANISM IS NOT DIFFERENT, AS FAR AS WHAT BUSINESSES ARE

14   HELD -- CAN BE HELD LIABLE FOR.  THIS LAW SUPPLEMENTS COPPA BY

15   INCREASING THE POPULATION OF BUSINESSES THAT ARE REGULATED, AS

16   WELL AS THE POPULATION OF CHILDREN THAT ARE PROTECTED.

17            THE COURT:  OKAY.

18            MS. WATSON:  AND FOR THE DORMANT COMMERCE CLAUSE, I

19   JUST WANTED TO TOUCH ON THE RECENT SUPREME COURT CASE, WHICH I

20   THINK SAID PRETTY CLEARLY THAT EVEN IF EXTRATERRITORIAL EFFECTS

21   ARE PROVEN, AND THEY HAVEN'T BEEN PROVEN HERE, THAT THOSE FACTS

22   ALONE WOULDN'T JUSTIFY VALIDATION ON THE BASIS OF THE COMMERCE

23   CLAUSE.

24       THERE'S ALSO, AND I BELIEVE THIS IS IN OUR BRIEF, SO I

25   WILL JUST MENTION IT BRIEFLY, THERE'S BINDING NINTH CIRCUIT

1    PRECEDENT THAT SAYS THAT BUSINESSES, IN THAT CASE IT WAS CNN,

2    CAN CHANGE THEIR HOME PAGE BASED ON THE STATE.

3         AND I THINK THE PROBLEM OR POTENTIAL PROBLEM OF A

4    CALIFORNIA RESIDENT WHO IS TRAVELLING, I THINK IT'S A VERY

5    NARROW EXAMPLE, FOR ONE, BUT ALSO I THINK IT CAN GO BACK TO

6    KIND OF WHAT THE PROCEDURAL ASPECTS OF THIS LAW ARE, RIGHT.

7    LIKE, IF THE AG WERE TO ENFORCE, AND THE PLAINTIFF'S DEFENSE

8    WAS OH, WELL THEY WERE TRAVELLING AND THAT'S WHY THEY DIDN'T

9    KNOW THEY WERE THERE, THAT SEEMS LIKE A BESPOKE CASE.

10        AND IT -- OH, SORRY, YOUR HONOR.

11             THE COURT:  NO, I'M JUST TRYING TO DETERMINE ON A

12   FACIAL CHALLENGE, OF COURSE, NO ONE CAN PREDICT THE ENFORCEMENT

13   CHOICES OF THE PROSECUTOR, OF THE ATTORNEY GENERAL.  AND SO I

14   DON'T KNOW IF I CAN DECIDE THIS BASED ON THE LIKELIHOOD OR

15   UNLIKELIHOOD OF ENFORCEMENT.  I THINK I HAVE TO PRESUME THAT IT

16   WILL ALL BE ENFORCED.

17             MS. WATSON:  WELL, YOUR HONOR, EVEN IF THAT CASE -- I

18   WOULD SAY AS FAR AS THAT CASE, I THINK THAT'S -- AGAIN, I THINK

19    IT'S A UNIQUE CASE.

20        BUT I THINK IN ANY CASE, THAT DOESN'T REALLY GET TO THIS

21   DORMANT COMMERCE CLAUSE PROBLEM.  THE DORMANT COMMERCE CLAUSE

22   IS ABOUT, YOUR KNOW, DISCRIMINATING AGAINST THE ECONOMIC

23   INTEREST OF ANOTHER STATE, AND I DON'T THINK THERE'S REALLY A

24   QUESTION THAT THAT IS HAPPENING HERE.  I THINK AT MOST, THERE

25   MAY BE SOME EXTRATERRITORIAL EFFECTS, AND I THINK THE SUPREME

1    COURT'S RECENT DECISION DEFINITELY CLARIFIES THAT IN A WAY THAT

2    REALLY SUPPORTS THE DEFENDANT'S CLAIM.

3           AND WE ARE NOT TALKING ABOUT 230, SO I THINK THAT'S ALL.

4           THANK YOU.

5              THE COURT:  ALL RIGHT.

6           WELL, THIS HAS BEEN A LENGTHY ARGUMENT, AND I'M VERY

7    GRATEFUL THAT YOU WERE BOTH SO CAPABLE OF HANDLING IT.

8           I THINK I'M GOING TO CLOSE WHERE I STARTED, IN SAYING THAT

9    WHAT THIS LEGISLATION SEEKS TO DO IS INVALUABLE, AND

10   RECOGNIZING THAT CHILDREN ARE AT GREAT RISK IS SOMETHING THAT

11   IS ON MANY OF OUR ELECTED OFFICIALS' MINDS, TO THE GOOD OF ALL

12   OF US.

13          THE COURT'S ROLE IS ONLY TO MAKE SURE THAT IT MEETS

14   CONSTITUTIONAL MUSTER.  I DON'T HAVE AN OPINION ONE WAY OR THE

15   OTHER ON WHETHER THIS LEGISLATION IS GOOD OR BAD, I THINK WE

16   ALL JUST KNOW THAT WE ARE -- WE ALL HAVE AN OBLIGATION TO

17   PROTECT CHILDREN, WHETHER IT'S ON OUR LOCAL STREETS, IN OUR

18   HOMES, IN OUR SCHOOLS OR IN SOCIETY AT LARGE.

19          SO I THINK THAT'S SOMETHING THAT I DON'T LOSE SIGHT OF AND

20   I KNOW ALL OF YOU SHARE AS WELL.

21          ALL RIGHT.  THANK YOU ALL.

22          AND THIS DECISION WILL NOT BE OUT QUICKLY, BUT I

23   APPRECIATE THAT THE LAW DOESN'T GO INTO EFFECT UNTIL -- IS IT

24   NEXT SUMMER?

25              MS. KUMAR:  THAT'S RIGHT.  ALTHOUGH I WILL JUST NOTE,

1    THE EFFECTS ARE BEING FELT RIGHT NOW BY MEMBERS.

2         THE COURT:  OH, INTERESTING.

3         I MEAN, I WILL CERTAINLY MOVE ALONG AS QUICKLY AS I CAN,

4    BUT THIS IS COMPLICATED.

5         THERE WAS A SUGGESTION OF ADDITIONAL BRIEFING ON THE

6    ANALYSIS UNDER STRICT AND INTERMEDIATE SCRUTINY ON WHETHER THE

7    STATUTE WAS NARROWLY TAILORED.

8         SO I HAVE BEEN DIRECTED TO ONE AFFIDAVIT THAT I CAN GO

9    BACK TO, BUT I THINK THE SUGGESTION WAS -- I WAS ASKED WHETHER

10   IT BE HELPFUL TO HAVE ESSENTIALLY A PARAGRAPH ON EACH OF THE

11   ELEMENTS OF THE STATUTE THAT EXPLAINS WHY IT'S NARROWLY

12   TAILORED.

13        IS THAT WHAT YOU WERE SUGGESTING, MS. WATSON?

14        MS. WATSON:  YES, YOUR HONOR.  WHATEVER HELPS YOU.

15   THAT'S NOT CURRENTLY IN THE BRIEFING.

16        THE COURT:  RIGHT, IT'S NOT.

17        AND I THINK -- MS. KUMAR, YOUR THOUGHT ON THAT AS TO WHY

18   IT IS OR IS NOT NARROWLY TAILORED?

19        MS. KUMAR:  WE ARE HAPPY TO PROVIDE THE COURT

20   ADDITIONAL BRIEFING.

21        THE COURT:  SO I THINK THAT WOULD BE HELPFUL TO ME.

22        AND MS. WATSON HAS TOLD US THAT THE COMPELLING STATE

23   INTEREST IS WHAT SHE DEFINED IN HER BRIEF, AND SO THAT'S WHAT

24   IT IS, AND SO THAT WILL GUIDE EVERYONE, THAT SHE'S CAREFULLY

25   LAID THAT OUT FOR US AND INDICATED THAT'S WHERE THE STATE IS

1      RESTING THE ARGUMENT.

2          AND SO -- AND IF YOU WOULD GIVE ME, I MEAN, LITERALLY

3      SECTION-BY-SECTION, THIS IS WITHIN SECTION 31, AND SO I THINK

4      THE BURDEN ON IT BEING NARROWLY TAILORED ACTUALLY IS TO THE

5      DEFENDANT, AND SO I'M GOING TO ASK THAT THE STATE PROVIDE ME

6      WITH A BRIEF.

7          AND I LITERALLY WANT YOU TO LIST NUMBER ONE, NUMBER TWO,

8      NUMBER THREE, I DON'T WANT -- I NEED THIS TO BE VERY DIRECTED.

9      AND I'M HOPING YOU CAN DO THIS IN FIVE PAGES, IS THAT

10     REASONABLE, BECAUSE THERE'S ONLY SO MUCH I CAN TAKE IN.

11             MS. WATSON:  I THINK THE REQUIREMENTS AND THE

12     PROHIBITIONS FOR EACH.

13             THE COURT:  BOTH, YES.  I MEAN, IS FIVE PAGES ENOUGH?

14             MS. WATSON:  DO YOU ALSO WANT ANYTHING ON

15     SEVERABILITY OR NO?

16             THE COURT:  I SUPPOSE MAYBE WE OUGHT TO HAVE A LITTLE

17     BIT ON THAT.

18         ALL RIGHT.  I WILL THEN -- SEVEN PAGES EACH.  I'M GOING TO

19     HAVE THE STATE PRODUCE ITS BRIEF FIRST, BECAUSE THE BURDEN IS

20     ON YOU ON IT BEING NARROWLY TAILORED.  HOW MUCH TIME DO YOU

21     NEED?

22             MS. WATSON:  TWO WEEKS.

23             THE COURT:  ALL RIGHT.

24         AND MS. KUMAR, HOW MUCH TIME WOULD YOU NEED AFTER THAT?

25             MS. KUMAR:  WELL, YOUR HONOR, MY COLLEAGUE AND I ARE

1        IN TRIAL IN NASHVILLE FROM AUGUST 10TH TO AUGUST 17TH.

2                    THE COURT:  OH, THAT'S ROUGH.

3                    MS. KUMAR:  IT'S BEEN A BUSY --

4                    THE COURT:  I'M IN TRIAL RIGHT NOW.

5                    MS. KUMAR:  IT'S BEEN A BUSY SUMMER.

6                    THE COURT:  YES, I KNOW.

7                    MS. KUMAR:  SO I GUESS I WOULD SAY -- LET'S SEE, IF

8        THE STATE FILES IN TWO WEEKS, THAT'S THE 10TH.

9                    MS. WATSON:  WE CAN FILE LATER, IF THAT HELPS.

10                   THE COURT:  WHEN CAN YOU FILE A BRIEF, MS. KUMAR?  IT

11       CERTAINLY DELAYS MY ABILITY TO GET AN ORDER OUT.

12                   MS. KUMAR:  NO, I KNOW THAT, YOUR HONOR.

13          SO IF THE STATE WILL FILE IN TWO WEEKS, WHICH MAKES SENSE,

14       HOW ABOUT WE FILE OUR RESPONSE NO LATER THAN THE 31ST, AND WE

15       WILL AIM TO GET IT TO YOU SOONER THAN THAT.

16                   THE COURT:  SO I HAVE NO REASON TO -- I CAN GIVE THE

17        STATE A LITTLE MORE TIME, TO BE FAIR.

18                   MS. KUMAR:  SURE.

19                   THE COURT:  IF YOU ARE OUT OF POCKET.

20          SO WHY DON'T WE HAVE -- INSTEAD OF THE 10TH, WHY DON'T WE

21       HAVE THE STATE'S BRIEF ON AUGUST 15TH, AND THE DEFENSE BRIEF --

22       THE PLAINTIFF'S BRIEF ON AUGUST 31.  I THINK THAT GIVES --

23       MS. WATSON, YOU DON'T NEED TO BE UNDER THE BURDEN AND PRESSURE

24       OF THAT TIME IF WE ARE -- AND I KNOW MS. KUMAR AND HER TEAM

25       WILL BE INCREDIBLY BUSY WITH TRIAL SOMEWHERE ELSE.

1          MS. KUMAR:  THANK YOU, YOUR HONOR.

2          JUST ONE POINT OF CLARIFICATION.  THE COURT IS ENVISIONING

3     BRIEFING, NOT EVIDENCE OR TESTIMONY, CORRECT?

4          THE COURT:  ONLY BRIEFING.  I'M NOT LOOKING FOR ANY

5     ATTACHMENTS.  YOU CAN REFER ME TO EVIDENCE I ALREADY HAVE, BUT

6     NO MORE.

7          OKAY.  SO THAT WILL BE HELPFUL.  THIS IS MEANT TO BE A

8     VERY ACCESSIBLE DOCUMENT WHERE YOU ARE GOING TO BE VERY

9     DIRECTIVE TO ONE VERY SMALL ISSUE AND GIVE ME SOMETHING ON THE

10    SEVERABILITY ISSUE.

11         AND THE PLAINTIFFS REST ON THEIR PROPOSED ORDER.  I MEAN,

12    YOU WANT AN INJUNCTION THAT JUST BASICALLY ENJOINS ENFORCEMENT

13    OF THE WHOLE THING, THAT'S CLEAR.  THAT'S CLEAR.  IT WOULD BE

14    ENFORCEABLE IF I AGREED WITH IT, AND WE WILL SEE.

15         OKAY.  THANK YOU ALL.  AND I WILL LOOK FOR YOUR BRIEFS AND

16    THEN YOU WILL LOOK FOR MY ORDER.

17         MS. KUMAR:  THANK YOU, YOUR HONOR.

18         MS. WATSON:  THANK YOU, YOUR HONOR.

19         (THE PROCEEDINGS WERE CONCLUDED AT 3:53 P.M.)

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 8/1/23