AMBIKA KUMAR (*pro hac vice*)
  ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

DAVID M. GOSSETT (*pro hac vice*)
  davidgossett@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
meenakshikrishnan@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200

ROBERT CORN-REVERE (*pro hac vice*)
  bob.corn-revere@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473

Attorneys for Plaintiff
NETCHOICE, LLC d/b/a NetChoice

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice,<br><br>    Plaintiff,<br><br>    v.<br><br>ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity,<br><br>    Defendant. | Case No. 5:22-cv-08861-BLF<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:    July 27, 2023<br>Time:   1:30 PM<br>Dept.:  Courtroom 3 – 5th Floor<br><br>Action Filed: December 14, 2022 |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A.  AB 2273 Regulates Speech. ................................................................................. 1

    B.  AB 2273 Fails Strict and Intermediate Scrutiny. .................................................. 2

    C.  The Invalid Provisions Cannot Be Severed. ......................................................... 6

III. CONCLUSION ................................................................................................................ 7

i

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023) .................................................................................................... 1, 2

*Acosta v. City of Costa Mesa*,
   718 F.3d 800 (9th Cir. 2013) ................................................................................................ 7

*Am. Soc'y of Journs. & Authors v. Bonta*,
   15 F.4th 954 (9th Cir. 2021) .................................................................................................. 2

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011) ................................................................................................. 2, 3, 4, 5

*Cal. Redev't Ass'n v. Matosantos*,
   53 Cal. 4th 231 (2011) .......................................................................................................... 7

*Fowler Packing Co. v. Lanier*,
   -- F. Supp. 3d. --, 2023 WL 3687374 (E.D. Cal. 2023) ...................................................... 7

*Free Speech Coal., Inc. v. Colmenero*,
   No. 1:23-cv-00917 (W.D. Tex. Aug. 31, 2023) ................................................................... 5

*Garcia v. Los Angeles*,
   11 F.4th 1113 (9th Cir. 2021) ........................................................................................... 6, 7

*IMDB.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) .............................................................................................. 4

*In re Reyes*,
   910 F.2d 611 (9th Cir. 1990) ................................................................................................ 7

*McCoy v. Alphabet, Inc.*,
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ......................................................................... 4

*NetChoice, LLC v. Griffin*,
   No. 5:23-cv-05105 (W.D. Ark. Aug. 31, 2023) ................................................................... 5

*Newman v. Google LLC*,
   2023 WL 5282407 (N.D. Cal. Aug. 17, 2023) .................................................................... 6

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd*, 62 F.4th 1145 (9th Cir. 2023) .................... 1

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020) ................................................................................................ 6

ii

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Progressive Democrats for Soc. Just. v. Bonta*,
   73 F.4th 1118 (9th Cir. 2023) .................................................................................................. 3

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ................................................................................................................. 1

*Reno v. ACLU*,
   521 U.S. 844 (1997) ................................................................................................................. 4

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................................................................. 2

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ................................................................................................................. 3

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) ......................................................................................................... 3, 4, 5

**Constitutional Provision**

U.S. Const., Amend. I. ............................................................................................................... *passim*

**Statutes**

AB 2273 ....................................................................................................................................... *passim*
     Findings and Declarations, § 1 ............................................................................................ 7
     Cal. Civ. Code § 1798.99.31 ......................................................................................... *passim*
     Cal. Civ. Code § 1798.99.32 ......................................................................................................... 7
     Cal. Civ. Code § 1798.99.33 ......................................................................................................... 7
     Cal. Civ. Code § 1798.99.35 ......................................................................................................... 7

Cal. Civ. Code
     § 1798.100 ............................................................................................................................... 4
     § 1798.120 ............................................................................................................................... 4

iii
NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I. INTRODUCTION

AB 2273 restricts the publication of speech based on whether that speech is likely to be accessed by and could "potentially harm" minors. It is thus subject to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015). The State defends the law as necessary to "protect[] the … health and well-being of minors." Supp. Br. 1-2; *see also* Hrg. Tr. 71:7-8, 76:9-11. But it fails to show how the law serves that boundless objective, much less how it is tailored to do so—as even intermediate scrutiny requires. The State cites arbitrary examples of speech and features it considers harmful, such as Snapchat's discontinued "speed filter," Supp. Br. 2, but AB 2273 applies to a "virtually … infinite" universe of online speech. Hrg. Tr. 6:14. And even for the examples it cites, the State fails to explain why AB 2273 is necessary and tailored. These defects permeate the law, which is also overbroad, unconstitutionally vague, barred by the Commerce Clause, and preempted. No portion of the law is severable, and it should be enjoined as a whole.

## II. ARGUMENT

### A. AB 2273 Regulates Speech.

If AB 2273 regulates speech, "it is not content-neutral" and must survive strict scrutiny. Hrg. Tr. 8:25-9:9. Likely recognizing the law fails any level of First Amendment scrutiny—the issue the Court ordered the parties to address—the State disputes that AB 2273 regulates speech at all. Supp. Br. 1. The State is wrong. AB 2273 regulates speech because it restricts how, under what conditions, and to whom content may be published. *See 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (website's decisions about design, content, and features are "pure speech"); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-87 (N.D. Cal. 2022) (First Amendment protects websites' publication decisions), *aff'd*, 62 F.4th 1145 (9th Cir. 2023), *cert. pending*.

AB 2273 indisputably regulates speech based on content. The State admitted the Court was "correct" that AB 2273 requires services to evaluate whether they publish content "likely to be accessed" by minors, Hrg. Tr. 50:13-24, rendering the entire law content-based. The State also admitted it would "be hard to say" that evaluating whether services have "enforce[d] their policies" regarding content, Cal. Civ. Code § 1798.99.31(a)(7), (9), is "not content-based." Hrg. Tr. 77:3-7; *see also* Supp. Br. 5 (conceding § .31(a)(9) "regulates policy enforcement" by holding websites

1

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"accountable" to moderate content) (short cites are to subsections of § 1798.99). The remaining provisions also regulate speech based on content: They require services to assess and report "risks" that editorial decisions "could" expose minors to "potentially harmful" content, and create a "timed plan" to "mitigate or eliminate" those risks, § .31(a)(1)-(4); estimate user age with greater or lesser certainty based on "the risks" presented by content, § .31(a)(5)-(6); and not publish content based on users' preferences or through "dark patterns" (like alerts or pop-ups), unless the content is in the user's "best interests" or would not be "materially detrimental" to the user, § .31(b)(1)-(4), (7).

Speech regulation is not valid just because it is done, in part, by limiting data use. The Constitution protects "us[ing] … information" to publish and "target[]" speech. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64, 578 (2011). In deciding "how to protect [privacy] interests" related to such use, "the State cannot engage in content-based discrimination." *Id.* at 579-80. But that is what AB 2273 does, using terms like "harmful," "well-being," and "best interests" to restrict content, contacts, and advertising; what minors "witness" online; and algorithms that curate speech. § .31(a)(1)(B), (b); *accord Am. Soc'y of Journ. & Authors v. Bonta*, 15 F.4th 954, 962 n.7 (9th Cir. 2021) (cited Supp. Br. 1) (*Sorrell* protects speech, such as "disseminating information").

That services publish speech "to increase engagement" or "sell advertising," Supp. Br. 1, is irrelevant. Speech is not commercial just because the speaker "seek[s] profit." *303 Creative*, 143 S. Ct. at 2316, 2320; *see also* Reply 10. Otherwise, newspapers would be unprotected because they, too, aim to increase engagement and sell ads. *See* NYT Br. 2-4. And *Sorrell* did not, *cf.* Supp. Br. 1, apply intermediate over strict scrutiny; it held the law failed either. 564 U.S. at 571.

B. **AB 2273 Fails Strict and Intermediate Scrutiny.**

The Supreme Court has repeatedly held that restricting speech is not a permissible basis to promote the well-being of minors, unless the speech falls into a traditionally unprotected category like obscenity. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011); *see also* Mot. 13-16. The State is therefore unable to cite a single case upholding a speech restriction designed to accomplish this goal. *Cf.* Supp. Br. 2-7. Whether under strict or intermediate scrutiny, a speech restriction survives only if the state proves that the law (1) will "in fact" serve some sufficiently "substantial" interest "unrelated to the suppression of free expression" in "a direct and material way" that is "not

2
NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

merely conjectural," and (2) is at least narrowly tailored to suppress no more speech "than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662-64 (1994) (cleaned up) (intermediate scrutiny); *see also United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 827 (2000) (strict scrutiny also requires the interest to be "compelling," and the law to be "the least restrictive means to further" it). The State has not and cannot prove these.

First, the State has not shown that its interests are "unrelated to the suppression of free expression" or limited to unprotected speech. Indeed, the State concedes that suppression of protected speech the State deems harmful—such as information about "sports betting" and "gambling"—*is* the goal. Supp. Br. 4-6; *see also* Reply 9 (discussing Radesky Decl. and Fairplay Br.). This alone dooms the law even under intermediate scrutiny. *Turner*, 512 U.S. at 662.

Second, the State fails to show that the law will "in fact," *id.* at 664, prevent "harm to minors," however the State defines that. *Brown*, 564 U.S. at 799-800; *see also Progressive Democrats for Soc. Just. v. Bonta*, 73 F.4th 1118, 1124 (9th Cir. 2023) ("speculative benefits" fail heightened scrutiny). The State again cites its expert, Dr. Radesky, but even she does not conclude that each of the law's restrictions is needed to protect minors' well-being. Instead, she cites studies finding small correlations between time online and lack of sleep, depression, and sedentary behaviors, Radesky Decl. ¶ 50, which neither she nor the State has distinguished from the studies *Brown* rejected, 564 U.S. at 800-01. *See* Reply 11. The *U.S. Surgeon General's Advisory: Social Media & Youth Mental Health* (May 2023) (cited Supp Br. 2-6), is similarly deficient, as it concerns only social media, not all services "likely to be accessed" by minors; finds positive effects of social media and a "potentially bidirectional" effect on youth mental health, *id.* at 6, 11; cautions that research regarding social media and mental health is "correlational" and plagued by "known evidence gaps," *id.* at 11-12; and identifies less restrictive alternatives to regulation, *id.* at 13-19.

Third, the Act is not tailored to achieve the State's purported interest of protecting minors' well-being. The application of the law to services "likely to be accessed" by a minor, § .31(b)(4), creates a sweeping standard that is not confined to social media or minors, much less to features that cause the asserted potential harms. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 882 (1997) (Mot. 14) (state cannot "torch a large segment of the Internet" to prevent discrete risks to children). The

3

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

State does not even try to explain why the "likely to be accessed" standard—the law's lynchpin—is narrowly tailored. It sweeps in nearly the entire internet, including the New York Times, Time for Kids, ESPN.com, Goodreads, blogs and countless other digital media—none of which the State suggests harms minors. *See Reno*, 521 U.S. at 882.

The law is also "underinclusive when judged against its asserted justification" to protect children's well-being. *Brown*, 564 U.S. at 801-02. It leaves unregulated a wide range of potential harms that occur offline or through exempt services—such as TV, offline video games, print media, junk food, late bedtimes, and not-for-profit websites. *Compare* Radesky Decl. ¶ 62 (critiquing "online content [that promotes] unsafe eating disorder[s]") *with, e.g.*, https://electriclit erature.com/the-book-that-fueled-my-eating-disorder (discussing "book" "that fueled [author's] eating disorder"). This underinclusiveness is "alone enough" to invalidate AB 2273. *Brown*, 564 U.S. at 801-02; *IMDB.com Inc. v. Becerra*, 962 F.3d 1111, 1126-27 (9th Cir. 2020).

Fourth, the State fails to show AB 2273 is the least restrictive means to protect children's well-being. Californians are already protected by constitutional and common-law privacy rights, *see, e.g.*, *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7-8 (N.D. Cal. Feb. 2, 2021), as well as a comprehensive statutory data privacy regime that requires services to inform consumers what data they collect and why, and prohibits the sale or sharing of data about consumers known to be younger than 16 absent authorization. Cal. Civ. Code §§ 1798.100(a)(2), (b); 1798.120(b)-(d). The State does not mention these existing protections, much less explain why they "will be ineffective." *Playboy*, 529 U.S. at 816 (failure to rebut plausible alternative dispositive under strict scrutiny). Moreover, the State concedes that existing law, such as tort law and COPPA, already regulates the types of harms AB 2273 targets. *See, e.g.*, Supp. Br. 2 (citing tort lawsuit challenging Snapchat's speed filter); Radesky Decl. ¶ 56 (discussing enforcement under COPPA).

The State fails to meet its tailoring burden as to the remaining provisions, too.

**DPIA Requirements** (§ .31(a)(1)-(4)). The State fails to address why the DPIA requirement is adequately tailored. The State claims "more guidance" or a "safety-first approach" would meet its interests, Supp. Br. 2-3, but these provisions do not provide "guidance" to companies or require a "safety-first approach." Indeed, the State itself asserts they are essentially

4

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

meaningless because mitigation could legally "start[] in 50 years." Hrg. Tr. 26:12-16. And the provisions apply to protected speech across the internet, including to speech directed to adults. *See* Roin Decl. ¶¶ 11-16; Cairella Decl. ¶¶ 2, 6, 11; Masnick Decl. ¶¶ 2, 8, 15; Paolucci Decl. ¶ 6; Mot. 14-16; Reply 12-13. The State also fails to explain why tort law is not sufficient protection.

      ***Age Estimation & Age-Appropriate Speech*** (§ .31(a)(5)-(6)). These provisions restrict access to protected speech by children *and* adults. *See* Goldman Br. 4-10. This is compounded by the vagueness of the phrases "reasonable level of certainty appropriate to the risks" and "best interests of children," and will cause services to self-censor. Mot. 17-19; Reply 8; Roin Decl. ¶¶ 18-21; Cairella Decl. ¶¶ 12-14; Masnick Decl. ¶¶ 11-13; Paolucci Decl. ¶¶ 12-15; Szabo Decl. ¶ 15; *see also* NYT Br. 8-9 (law may force Times to limit minors' access to website). The State fails to show why age estimation is necessary and narrowly tailored. Just today, two courts held the opposite. *See NetChoice, LLC v. Griffin*, No. 5:23-cv-05105, ECF No. 44 at 35-48 (W.D. Ark. Aug. 31, 2023) (law requiring age-verification and parental consent for minors to create social media accounts impermissibly "impedes access to content writ large"); *Free Speech Coal., Inc. v. Colmenero*, No. 1:23-cv-00917, ECF No. 36 at 20-28 (W.D. Tex. Aug. 31, 2023) (holding invalid law requiring age verification before access to "sexual material harmful to minors"). Further, unrebutted evidence shows age estimation will *harm* children by requiring invasive data collection. Rumenap Decl. ¶¶ 7-10; *see also* Goldman Br. 3-4; *Brown*, 564 U.S. at 799. The State claims COPPA's approach—limited to sites "directed" to children under 13 and requiring parental consent—is insufficient, Supp. Br. 3-4, but its experts say only that COPPA is not sufficiently enforced, Radesky Decl. ¶¶ 31-39, Egelman Decl. ¶¶ 37-40. And the State does not even try to explain why California law—which prohibits knowingly selling or sharing information of users under 16 without authorization—is insufficient. Both COPPA and state law address the State's concerns while undisputedly restricting less speech. *See Playboy*, 529 U.S. at 816.

      ***Content Policy Enforcement*** (§.31(a)(7), (9)). The State provides no evidence that government enforcement of private content moderation rules protects minors. In fact, if a service's policy were to publish information the State finds harmful, *enforcing* that policy would not, in the State's own view, promote children's well-being. If the State worries services will renege on

5
NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"promises," Hrg. Tr. 58:8-18, AB 2273 is not so limited and extends to inherently discretionary "policies" and "community standards." § .31(a)(7), (9). If users or parents object to the way a service exercises discretion, they can stop using it. If a service reneges on an actual promise, it can be held accountable in a private contract action. *See, e.g.*, *Newman v. Google LLC*, 2023 WL 5282407, at *3-6 (N.D. Cal. Aug. 17, 2023) (considering such a claim). To the extent the State worries policies may be "deceptive," *see* Opp. 14-15, it may use existing consumer protection laws. *See, e.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (considering such a claim).

**Content Restrictions** (§ .31(b)(1)-(4), (7)). The State fails to show that these provisions—each of which turns on whether use of information to publish speech is in a minor's "best interests" or is "materially detrimental" to their "well-being"—are narrowly tailored. Rather, it tries to justify them based on a tautology, asserting the rules protect children from "harm" and "material detriment" because they restrict content only when it causes "harm" or "material detriment." Supp. Br. 5-7. This hall-of-mirrors approach underscores the law's overbreadth, vagueness, and lack of tailoring. Without any definition confining "harm" to a proscribable category of speech, these provisions restrict protected speech, including speech that may only be deemed harmful in retrospect. *See* Mot. 15-16; Reply 6, 12-13. Unrebutted evidence shows services will respond by self-censoring content, including for adults. *See* Roin Decl. ¶¶ 11-16; Cairella Decl. ¶¶ 2, 6, 11; Masnick Decl. ¶¶ 2, 8, 15; Paolucci Decl. ¶ 6; *see also* Mot. 14, 21-22; Reply 12-13. The State fails to show this across-the-board censorship is necessary to promote the well-being of children, or why COPPA's notice-and-consent framework for parents is an insufficient alternative.

### C. The Invalid Provisions Cannot Be Severed.

A law is severable only if "grammatically, functionally, and volitionally separable." *Garcia v. Los Angeles*, 11 F.4th 1113, 1120 (9th Cir. 2021). The State repeatedly asserts that the challenged provisions—as well as unchallenged provisions, such as the restriction on geolocation, Supp. Br. 7—are severable because they are "not cross-referenced in or dependent on any other provisions." Supp. Br. 4-7. This is not the test. There is no evidence the legislature intended the law to be severable, and the challenged provisions cannot be excised without impacting the

6

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"coherence of what remains." *Cal. Redev't Ass'n v. Matosantos*, 53 Cal. 4th 231, 271 (2011).

The law's provisions are not grammatically or functionally severable. The "likely to be accessed" standard, for example, is not severable because it defines the "operation" and application of the entire law, *Garcia*, 11 F.4th at 1120; *see* Findings and Decls. § 1(a)(5). Without it, there is no basis to decide what services are subject to the law. The DPIA provisions cannot be severed because they create a regulatory safe harbor across the entire law, *see* § .35(c), so their invalidation would alter the enforcement framework the Legislature intended for other provisions. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 820 (9th Cir. 2013) (court may not "rewrit[e]" a law). The requirement that services provide tools to help children "exercise their privacy rights," § .31(a)(10), is tethered to "rights" enumerated in the invalid provisions. And the age-estimation requirements underlie the provisions that require services to provide alerts to children, § .31(a)(8), know if they are collecting "precise geolocation of a child," § .31(b)(5)-(6), or limit their use of age-estimation information, § .31(b)(8). Finally, provisions related to the law's application, penalties, and compliance, §§ .32, .33, .35, cannot stand alone.

Nor is the law volitionally separable. The absence of a severability clause is the best evidence the Legislature intended the law's components to "operate together or not at all." *In re Reyes*, 910 F.2d 611, 613 (9th Cir. 1990). Content-based language—such as "harmful" and "best interests" and "material detrimental" and "risks"—is "interwoven" in the law, *Acosta*, 718 F.3d at 818, and severing it would yield a rump statute untethered to the State's "express policy statement[s]" to protect children from harmful content. *Fowler Packing Co. v. Lanier*, -- F. Supp. 3d. --, 2023 WL 3687374, at *18 (E.D. Cal. 2023). There is no indication the Legislature would have adopted what little remains of the law had it foreseen invalidation of the likely-to-be accessed standard, age-estimation or DPIA requirements, dark pattern and automated processing restrictions, data limits, enforcement requirements, privacy setting standards, and (effectively) the safe harbor. *Matosantos*, 53 Cal. 4th 231 at 271; *cf.* Findings and Decls. § 1(a). The law operates as and should be invalidated as a "unitary whole." *Garcia*, 11 F.4th at 1120.

### III.  CONCLUSION

NetChoice respectfully requests an order preliminarily enjoining AB 2273 in its entirety.

7

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

| | | |
|---|---|---|
| 1 | DATED: August 31, 2023 | DAVIS WRIGHT TREMAINE LLP |
| 2 | | |
| 3 | | By: */s/ Ambika Kumar*<br>     Ambika Kumar |
| 4 | | Attorneys for Plaintiff |
| 5 | | NetChoice LLC, d/b/a NetChoice |

8

NETCHOICE'S SUPP. BR. ISO PRELIMINARY INJUNCTION
Case No. 5:22-cv-08861-BLF

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899