AMBIKA KUMAR (*pro hac vice*)
  ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800

DAVID M. GOSSETT (*pro hac vice*)
  davidgossett@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200

ROBERT CORN-REVERE (*pro hac vice*)
  bob.corn-revere@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473

Attorneys for Plaintiff
NETCHOICE, LLC d/b/a NetChoice

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice,<br><br>        Plaintiff,<br><br>    v.<br><br>ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity,<br><br>        Defendant. | Case No. 5:22-cv-08861-BLF<br><br>**SUPPLEMENTAL DECLARATION OF DENISE PAOLUCCI IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:    January 23, 2025<br>Time:   9:00 a.m.<br>Dept.:   Courtroom 3 – 5th Floor<br><br>Action Filed: December 14, 2022 |

1
PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

I, Denise Paolucci, declare:

1. **Identity of Declarant.** I am the co-owner of Dreamwidth Studios, LLC, which operates the website Dreamwidth.org. I have co-owned and operated Dreamwidth since the site's inception and have worked in multiple roles, including as the head of the Trust and Safety team and head of product development. I make this declaration from personal knowledge and a review of Dreamwidth's records kept in the ordinary course of business. I submit this declaration as a supplement to my February 15, 2023, declaration in support of NetChoice's motion for a preliminary injunction against enforcement of AB 2273.

2. Since NetChoice's motion was initially filed in 2022, Dreamwidth has become an official member of NetChoice. I have followed this litigation and am aware that this Court granted NetChoice's motion. I am also aware that the Ninth Circuit Court of Appeals affirmed that the requirement in AB 2273 that certain businesses submit a "Data Protection Impact Assessment" (DPIA) to the California Attorney General for every "feature" on a website is unconstitutional. And I understand the court for now vacated the injunction against enforcement of the other challenged provisions of the law pending further analysis by this Court.

3. Even without the DPIA requirements, AB 2273's remaining provisions raise many of the same problems for Dreamwidth's ability to maintain its platform for its users to freely express themselves without fear of potentially devastating civil penalties for violating the amorphous provisions of the statute.

4. **Definition of Covered Businesses.** A fundamental continuing problem with AB 2273 is that it imposes significant regulatory burdens on online businesses like Dreamwidth (including prohibiting certain practices and mandating certain actions) based on what kind of content the online business publishes. Specifically, the statute applies to online content "likely to be accessed by children," such as those with design elements, cartoons, music, celebrities, or content of interest to minors. If Dreamwidth publishes any material that falls within those categories, that would trigger the various obligations and prohibitions of the statute, many of which would require Dreamwidth to guess at the meaning of vague terms such as "material detriment"

2

PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and censor content (as I discussed in my original declaration).

5. Dreamwidth has many users between the ages of 13 and 18, and its users post a great deal of material that could conceivably be considered "likely to be accessed" by teens. To avoid having to comply with AB 2273, Dreamwidth would have to somehow reliably identify content that a regulator might consider "likely to be accessed by children" and stop publishing such content altogether. That type of censorship runs exactly counter to the entire spirit and purpose of Dreamwidth.

6. *Age Estimation*. One of the most significant remaining burdens imposed by AB 2273 is the requirement that businesses that fall within the statute's coverage "[e]stimate the age of child users with a reasonable level of certainty appropriate to the risks that arise from the data management practices of the business[.]" In my prior declaration (in paragraphs 12-15), I explained in detail why reliably determining the age of any user of the site is nearly impossible. Just as important, any of the available options for making that determination would inevitably require the collection of private information that many Dreamwidth users do not wish to share. Age estimation also would effectively block access to the site for many categories of users who wish to use our services anonymously without sharing their age or identity information, particularly those from marginalized groups, or those who lack official documentation that would give Dreamwidth "reasonable certainty" as to their ages. Dreamwidth is committed to being an accessible platform to all users who wish to participate, and to respecting the privacy (and, if desired, anonymity) of themembers of the community. The requirement that Dreamwidth estimate the age of each of its users is antithetical to these core commitments.

7. The fact that the age estimation requirement can be avoided if Dreamwidth were to "apply the privacy and data protections afforded to children to all consumers" is of no comfort, as a practical matter. From what we can tell, AB 2273's use of the term "data protections" in context means protections from potentially harmful content, whatever that means.

8. The age estimation requirement thus puts Dreamwidth in the position of having to either invade the privacy of its users and impede significant portions of its user base from freely accessing the site (absent first determining user age with""reasonable certainty"), or else censor a

3

PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

potentially vast swath of material the site's users post, in order to ensure content available to all users is "appropriate" for children. Either option would be untenable. In order to avoid liability, penalties, and fines under AB 2273 by "apply[ing] the privacy and data protections afforded to children to all consumers", we would need to remove significant amounts of speech from being visible to any visitor to the site, including adults. Not only do we not have the capacity and resources necessary to engage in such broad suppression of speech that we believe has significant social value for both adults and children, doing so is contrary to our guiding principles as a business and to the promises we have made to our users and that they rely on us to uphold.

9. **Data Collection, Retention, Processing, and Use.** Even though Dreamwidth does not run advertisements and minimizes the personal data it collects from users, it still collects certain data that is has to use, retain, and share with third-party companies to facilitate the basic operation of the site. It is impossible to know if those practices will be deemed by a state to be "materially detrimental to the physical health, mental health, or well-being of a child" or, in the alternative "necessary" to provide the service. In practice, I fear this application will depend on whether a regulator approves or disapproves of the content that is featured on the Dreamwidth site. After all, as I explained in my earlier declaration, state regulators around the country have taken aggressive action to define certain content by and for marginalized groups as harmful to children, such as material dealing with gender-affirming care and LGBTQ issues generally. So if a 16-year-old creates an account on Dreamwidth to access content that helps them explore their gender identity, a state regulator could decide that content was "harmful" or detrimental to the 16-year-old's "mental health, or well-being," and impose financial penalties against Dreamwidth for not applying sufficient "data protections" for children.

10. **Effect of Cure Provision Injunction.** The Court's preliminary injunction of the DPIA requirements relieves Dreamwidth of the need to opine about the "risks" of expressive content and "mitigate" those risks through censorship. But an effect of this ruling is that there is no longer a way for a service subject to the statute to "cure" any perceived violations before the State would impose penalties—including significant monetary fines—for non-compliance. Although the privacy invasion and self-censorship that AB 2273 imposes goes against

4

PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Dreamwidth's core values, the removal of the "cure" provision means that even if Dreamwidth tried to comply with the requirements of the statute, Dreamwidth could be subject to fines that threaten its ability to continue as a business if a state regulator decides those efforts were not good enough at ensuring Dreamwidth's content is in the "best interests of children." Given the inherent inability to determine in advance what the state of California believes is "harmful" to children, this introduces even more uncertainty than the original form of AB 2273 and increases the likelihood that we will need to be significantly over-cautious in removing or restricting the speech of all our users, including both children and adults.

11. As my original declaration explained, Dreamwidth is deeply committed to respecting the privacy and safety of its community, including users under 18. While I acknowledge that statutes like AB 2273 may be animated by similar concerns, I firmly believe that imposing government regulation over what kind of content can be published online is not only unconstitutional, but undermines the very values that the statute was ostensibly designed to protect. I also believe that the provisions of AB 2273, both as enacted and as currently pending after the decisions of the Ninth Circuit Court of Appeals, will cause a significant increase in the amount of data that any website will need to collect about its visitors in order to comply with the age estimation provision of the law, and that this increase in the amount of data that every website will need to collect in order to minimize the amount of governmental restriction on the speech its users are allowed to engage in will be an overall net decrease in privacy and security for all citizens of California, including children.

5

PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 31st day of October, 2024, in Baltimore, MD.

*Denise Paolucci*

PAOLUCCI SUPPL. DECL. ISO MOT. FOR PRELIM. INJ.
Case No. 5:22-cv-08861-BLF

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566