AMBIKA KUMAR (*pro hac vice*)
  ambikakumar@dwt.com
BIANCA CHAMUSCO (*pro hac vice* forthcoming)
  biancachamusco@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800

DAVID M. GOSSETT (*pro hac vice*)
  davidgossett@dwt.com
MEENAKSHI KRISHNAN (*pro hac vice*)
  meenakshikrishnan@dwt.com
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200

ROBERT CORN-REVERE (*pro hac vice*)
  bob.corn-revere@thefire.org
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, D.C. 20003
Telephone: (215) 717-3473

Attorneys for Plaintiff
NETCHOICE, LLC d/b/a NetChoice

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| NETCHOICE, LLC d/b/a NetChoice,<br><br>          Plaintiff,<br><br>     v.<br><br>ROB BONTA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, in his official capacity,<br><br>          Defendant. | Case No. 5:22-cv-08861-BLF<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF LEGISLATIVE HISTORY**<br><br>Date:     January 23, 2025<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 3 – 5th Floor<br><br>Action Filed: December 14, 2022 |

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF
LEGISLATIVE HISTORY
Case No. 5:22-cv-08861-BLF

At oral argument on January 23, 2025, the Court asked Plaintiff NetChoice LLC to submit the various versions of AB 2273 that were considered by the California legislature prior to enactment, as well as an explanation of the vote history on the Bill. The requested material is attached, and detailed below. All of this material has been obtained from the website of the California legislature; the primary link for records of the Act is https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220AB2273. These materials are all subject to judicial notice. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

1.      The "History" of the bill—each action taken by the Assembly, the Senate, and Senate and Assembly committees—is attached as **Attachment 1** (and is available at https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=202120220AB2273). Further details of each formal vote taken on the bill—which are also included in abbreviated form in the "History" tab"—is attached as **Attachment 2** (and is available at https://leginfo.legislature.ca.gov/faces/billVotesClient.xhtml?bill_id=202120220AB2273).

2.      There are five versions of the Act available on the legislature's website. The first publicly available version of the Act—as introduced in the Assembly—is dated February 16, 2022. Neither that version nor the April 26, 2022 "Amended Assembly" version include a "cure" provision. (Both versions are available by selecting the relevant version from the pull-down menu "Version:" on the right side of the website.)

3.      On June 28, 2022, the Senate Judiciary Committee voted (by a vote of 9-1, with one member not voting) to refer the bill to the full Senate, with a recommendation to amend the bill and then re-refer the bill to the Senate Committee on Appropriations.

4.      On June 30, 2022, the Senate amended the bill and re-referred it to the Senate Appropriations Committee. (There is no recorded Senate vote on this, but the action is summarized on the "History" tab of the website.)

5.      Attached as **Attachment 3** is a true and correct copy of the June 30, 2022 version of the Act. This version also contained no "cure" provision. (We attach this version because it is the last version *not* to include a cure provision.)

1

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
Tel: (213) 633-6800
Fax: (213) 633-6899

6.      On August 1, 2022, the Senate Appropriations Committee voted unanimously (7-0) to place the June 30, 2022 version of the bill on the suspense file.

7.      On August 11, 2022, the Senate Appropriations Committee voted unanimously (5-0, with two members not voting) to recommend that the Senate amend and pass the Act, thus returning the bill to the Senate floor. According to the bill History, the Senate approved those amendments that day.

8.      Attached as **Attachment 4** is a true and correct copy of the August 11, 2022, version of the Act. This version contains (in section 1798.99.35(c)) a 45-day cure provision.

9.      On August 22, 2022, the full Senate "read" the bill a third time and amended it again.

10.     Attached as **Attachment 5** is a true and correct copy of the August 22, 2022, version of the Act. This version extends the cure provision to 90 days, and further clarifies that provision.

11.     That version was eventually enacted without further amendment, after votes in the Assembly and Senate on August 30, 2022, and the Governor's approval on September 15, 2022.

DATED:  January 28, 2025

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ambika Kumar*
          Ambika Kumar

Attorneys for Plaintiff
NetChoice LLC, d/b/a NetChoice

2

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF
LEGISLATIVE HISTORY
Case No. 5:22-cv-08861-BLF

# ATTACHMENT 1

Bill PDF |   Add To My Favorites   |  Version: 09/15/22 - Chaptered   Go

## AB-2273 The California Age-Appropriate Design Code Act. (2021-2022)

| Text | Votes | **History** | Bill Analysis | Today's Law As Amended ⓘ | Compare Versions | Status | Comments To Author |

| Date | Action |
|------|--------|
| 09/15/22 | Chaptered by Secretary of State - Chapter 320, Statutes of 2022. |
| 09/15/22 | Approved by the Governor. |
| 09/02/22 | Enrolled and presented to the Governor at 4 p.m. |
| 08/30/22 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 75. Noes 0. Page 6481.). |
| 08/30/22 | In Assembly. Concurrence in Senate amendments pending. |
| 08/30/22 | Read third time. Passed. Ordered to the Assembly. (Ayes 33. Noes 0. Page 5235.). |
| 08/23/22 | Read second time. Ordered to third reading. |
| 08/22/22 | Read third time and amended. Ordered to second reading. |
| 08/15/22 | Read second time. Ordered to third reading. |
| 08/11/22 | Read second time and amended. Ordered returned to second reading. |
| 08/11/22 | From committee: Amend, and do pass as amended. (Ayes 5. Noes 0.) (August 11). |
| 08/02/22 | In committee: Referred to suspense file. |
| 06/30/22 | Read second time and amended. Re-referred to Com. on APPR. |
| 06/29/22 | From committee: Amend, and do pass as amended and re-refer to Com. on APPR. (Ayes 9. Noes 1.) (June 28). |
| 06/08/22 | Referred to Com. on JUD. |
| 05/27/22 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 05/26/22 | Read third time. Passed. Ordered to the Senate. (Ayes 72. Noes 0.) |
| 05/19/22 | Read second time. Ordered to third reading. |
| 05/19/22 | From committee: Do pass. (Ayes 16. Noes 0.) (May 19). |
| 05/11/22 | In committee: Set, first hearing. Referred to suspense file. |
| 04/27/22 | Re-referred to Com. on APPR. |
| 04/26/22 | Read second time and amended. |
| 04/25/22 | From committee: Amend, and do pass as amended and re-refer to Com. on APPR. (Ayes 10. Noes 0.) (April 19). |
| 03/03/22 | Referred to Com. on P. & C.P. |
| 02/17/22 | From printer. May be heard in committee March 19. |
| 02/16/22 | Read first time. To print. |

# ATTACHMENT 2


## California
### LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |
|---|---|---|---|---|---|---|

## AB-2273 The California Age-Appropriate Design Code Act. (2021-2022)

| Bill Votes | |
|---|---|
| Date | 08/30/22 |
| Result | (PASS) |
| Location | Assembly Floor |
| Ayes Count | 75 |
| Noes Count | 0 |
| NVR Count | 5 |
| Motion | AB 2273 Wicks Concurrence in Senate Amendments |
| Ayes | Aguiar-Curry, Alvarez, Arambula, Bauer-Kahan, Bennett, Berman, Bigelow, Bloom, Boerner Horvath, Mia Bonta, Bryan, Calderon, Carrillo, Cervantes, Chen, Choi, Cooley, Cooper, Cunningham, Megan Dahle, Daly, Davies, Flora, Mike Fong, Fong, Friedman, Gabriel, Gallagher, Cristina Garcia, Eduardo Garcia, Gray, Grayson, Haney, Holden, Jones-Sawyer, Kalra, Lackey, Lee, Levine, Low, Maienschein, Mathis, Mayes, McCarty, McKinnor, Medina, Mullin, Muratsuchi, Nazarian, Nguyen, O'Donnell, Patterson, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Blanca Rubio, Salas, Santiago, Smith, Stone, Ting, Valladares, Villapudua, Voepel, Waldron, Ward, Akilah Weber, Wicks, Wilson, Wood, Rendon |
| Noes | |
| NVR | Gipson, Irwin, Kiley, Rodriguez, Seyarto |

| Bill Votes | |
|---|---|
| Date | 08/30/22 |
| Result | (PASS) |
| Location | Senate Floor |
| Ayes Count | 33 |
| Noes Count | 0 |
| NVR Count | 7 |
| Motion | Assembly 3rd Reading AB2273 Wicks et al. By Newman |
| Ayes | Allen, Archuleta, Atkins, Becker, Bradford, Caballero, Cortese, Dahle, Dodd, Durazo, Eggman, Glazer, Gonzalez, Hertzberg, Hueso, Hurtado, Kamlager, Laird, Leyva, Limón, McGuire, Min, Newman, Nielsen, Pan, Portantino, Roth, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener |
| Noes | |
| NVR | Bates, Borgeas, Grove, Jones, Melendez, Ochoa Bogh, Wilk |

| Bill Votes | |
|---|---|
| Date | 08/11/22 |
| Result | (PASS) |
| Location | Sen Appropriations |
| Ayes Count | 5 |
| Noes Count | 0 |
| NVR Count | 2 |
| Motion | Do pass as amended |
| Ayes | Bradford, Laird, McGuire, Portantino, Wieckowski |
| Noes | |
| NVR | Bates, Jones |

| Bill Votes | |
|---|---|
| Date | 08/01/22 |
| Result | (PASS) |
| Location | Sen Appropriations |
| Ayes Count | 7 |
| Noes Count | 0 |
| NVR Count | 0 |
| Motion | Placed on suspense file |
| Ayes | Bates, Bradford, Jones, Kamlager, Laird, Portantino, Wieckowski |
| Noes | |
| NVR | |

| Bill Votes | |
|---|---|
| Date | 06/28/22 |
| Result | (PASS) |
| Location | Sen Judiciary |
| Ayes Count | 9 |
| Noes Count | 1 |
| NVR Count | 1 |
| Motion | Do pass as amended, but first amend, and re-refer to the Committee on [Appropriations] |
| Ayes | Caballero, Cortese, Durazo, Hertzberg, McGuire, Stern, Umberg, Wieckowski, Wiener |
| Noes | Jones |
| NVR | Borgeas |

| Bill Votes | |
|---|---|
| **Date** | 05/26/22 |
| **Result** | (PASS) |
| **Location** | Assembly Floor |
| **Ayes Count** | 72 |
| **Noes Count** | 0 |
| **NVR Count** | 6 |
| **Motion** | AB 2273 Wicks Assembly Third Reading |
| **Ayes** | Aguiar-Curry, Arambula, Bauer-Kahan, Bennett, Bigelow, Bloom, Boerner Horvath, Mia Bonta, Bryan, Calderon, Carrillo, Cervantes, Chen, Cooley, Cooper, Cunningham, Megan Dahle, Davies, Flora, Mike Fong, Fong, Friedman, Gabriel, Gallagher, Cristina Garcia, Eduardo Garcia, Gray, Grayson, Haney, Holden, Irwin, Jones-Sawyer, Kalra, Lackey, Lee, Levine, Low, Maienschein, Mathis, Mayes, McCarty, Medina, Mullin, Muratsuchi, Nazarian, Nguyen, Patterson, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Salas, Santiago, Seyarto, Smith, Stone, Ting, Valladares, Villapudua, Voepel, Waldron, Ward, Akilah Weber, Wicks, Wilson, Wood, Rendon |
| **Noes** | |
| **NVR** | Berman, Choi, Daly, Gipson, Kiley, O'Donnell |

| Bill Votes | |
|---|---|
| **Date** | 05/19/22 |
| **Result** | (PASS) |
| **Location** | Asm Appropriations |
| **Ayes Count** | 16 |
| **Noes Count** | 0 |
| **NVR Count** | 0 |
| **Motion** | Do pass. |
| **Ayes** | Bigelow, Bryan, Calderon, Carrillo, Megan Dahle, Davies, Mike Fong, Fong, Gabriel, Eduardo Garcia, Holden, Levine, Quirk, Robert Rivas, Akilah Weber, Wilson |
| **Noes** | |
| **NVR** | |

| Bill Votes | |
|---|---|
| **Date** | 04/19/22 |
| **Result** | (PASS) |
| **Location** | Asm Privacy and Consumer Protection |
| **Ayes Count** | 10 |
| **Noes Count** | 0 |
| **NVR Count** | 1 |
| **Motion** | Do pass as amended and be re-referred to the Committee on [Appropriations] |
| **Ayes** | Bauer-Kahan, Bennett, Berman, Cunningham, Mike Fong, Gabriel, Irwin, Valladares, Wicks, Wilson |
| **Noes** | |
| **NVR** | Kiley |

# ATTACHMENT 3

AMENDED IN SENATE JUNE 30, 2022

AMENDED IN ASSEMBLY APRIL 26, 2022

CALIFORNIA LEGISLATURE—2021–22 REGULAR SESSION

# ASSEMBLY BILL                                    No. 2273

**Introduced by Assembly Members Wicks, Cunningham, and Petrie-Norris**
(Coauthors: Senators Allen and Newman)

February 16, 2022

An act to add Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, relating to consumer privacy.

LEGISLATIVE COUNSEL'S DIGEST

AB 2273, as amended, Wicks. The California Age-Appropriate Design Code Act.

(1) Existing law, the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election, establishes the California Privacy Protection Agency. Existing law vests the agency with full administrative power, authority, and jurisdiction to implement and enforce the California Consumer Privacy Act of 2018, and requires the agency to be governed by a board. Existing law requires businesses to protect consumer privacy and information, make certain disclosures to consumers regarding a consumer's rights under the act in a specified manner, and disclose to consumers that a consumer has the right to request specific pieces of information, including the categories of information those businesses have collected about that consumer.

Existing law, the Parent's Accountability and Child Protection Act, requires a person or business that conducts business in California and

97

**AB 2273** — 2 —

that seeks to sell specified products or services to take reasonable steps to ensure that the purchaser is of legal age at the time of purchase or delivery, including verifying the age of the purchaser. Existing law prohibits a person or business that is required to comply with these provisions from retaining, using, or disclosing any information it receives in an effort to verify age from a purchaser or recipient for any other purpose, except as specified, and subjects a business or person that violates these provisions to a civil penalty.

This bill would enact the California Age-Appropriate Design Code Act, which, commencing July 1, 2024, would require a business that provides an online service, product, or feature likely to be accessed by a child to comply with specified requirements, including configuring all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of privacy protection offered by the business, and providing privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature. The bill would prohibit a business that provides an online service, product, or feature likely to be accessed by a child from taking proscribed action, including using the personal information of a child for any reason other than the reason or reasons for which the personal information was collected.

This bill would require the California Privacy Protection Agency to establish and convene the California Children's Data Protection Taskforce to evaluate best practices for the implementation of these provisions, and to provide support to businesses, as specified. The bill would require the agency's board to appoint the members of the taskforce by April 1, 2023, and would require those members to have certain expertise, including in the areas of privacy and children's rights. The bill would require the taskforce to make prescribed recommendations on best practices, including identifying online services, products, or features likely to be accessed by children. By April 1, 2024, the bill would require the agency, in consultation with the taskforce, to adopt regulations, as necessary.

*This bill would authorize the Attorney General to seek an injunction or civil penalty against any business that violates it provisions. The bill would hold violators liable for a civil penalty of not more than $2,500 per affected child for each negligent violation, or not more than $7,500 per affected child for each intentional violation.*

— 3 —                                    **AB 2273**

(2) The California Privacy Rights Act of 2020 authorizes the Legislature to amend the act to further the purposes and intent of the act by a majority vote of both houses of the Legislature, as specified.

This bill would declare that its provisions further the purposes and intent of the California Privacy Rights Act of 2020.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: no.

*The people of the State of California do enact as follows:*

SECTION 1. (a) The Legislature hereby finds and declares all of the following:

(1) The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives.

(2) As children spend more of their time interacting with the online world, the impact of the design of online products and services on children's well-being has become a focus of significant concern.

(3) There is bipartisan agreement at the international level, in both the United States and in the State of California, that more needs to be done to create a safer online space for children to learn, explore, and play.

(4) Lawmakers around the globe have taken steps to enhance privacy protections for children on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well-being.

(5) Children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access.

(6) In 2019, 81 percent of voters said they wanted to prohibit companies from collecting personal information about children without parental consent, and a 2018 poll of Californian parents and teens found that only 36 percent of teenagers and 32 percent of parents say that social networking internet websites do a good job explaining what they do with users' data.

(7) While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products and services should adopt data protection regimes

appropriate for children of the ages likely to access those products and services.

(8) Products and services that are likely to be accessed by children should offer strong privacy protections by design and by default, including by disabling features that profile children using their previous behavior, browsing history, or assumptions of their similarity to other children, to offer detrimental material.

(9) Ensuring robust privacy protections for children by design is consistent with the intent of the Legislature in passing the California Consumer Privacy Act of 2018, and with the intent of the people of the State of California in passing the California Privacy Rights Act of 2020, which finds and declares that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights.

(b) Therefore, it is the intent of the Legislature to promote privacy protections for children pursuant to the California Age-Appropriate Design Code Act.

SEC. 2.  Title 1.81.46 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:

## TITLE 1.81.46.  THE CALIFORNIA AGE-APPROPRIATE DESIGN CODE ACT

1798.99.28.  This chapter shall be known, and may be cited, as the California Age-Appropriate Design Code Act.

1798.99.29.  The Legislature declares that children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access and makes the following findings:

(a) Companies that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that service, product, or feature.

(b) If a conflict arises between commercial interests and the best interests of children, companies should prioritizes the privacy, safety, and well-being of children over commercial interests.

1798.99.30.  (a) For purposes of this title, the definitions in Section 1798.140 shall apply unless otherwise specified in this title.

(b) For the purposes of this title, the following terms apply:

(1) "Agency" means the California Privacy Protection Agency, as established by the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election.

(2) "Board" means the agency's board, as established in Section 1798.199.10.

(3) "Child" or "children," unless otherwise specified, ~~mean~~ *means* a consumer or consumers who is under 18 years of age.

(4) "Data Protection Impact Assessment" means a systematic survey to assess and mitigate risks to children who are reasonably likely to access the service, product, or feature at issue that arises from the provision of that service, product, or feature in accordance with specifications promulgated by the California Children's Data Protection Taskforce established pursuant to Section 1798.99.32.

(5) "Default" means a preselected option adopted by the business for the online service, product, or feature.

(6) "Likely to be accessed by a child" means it is reasonable to expect, based on the ~~nature of the content, the associated marketing, the online context, or academic or internal research, that the service, product, or feature would be accessed by children.~~ *following factors, that the online service, product, or feature would be accessed by children:*

*(A) The online service, product, or feature is directed to children as defined by the Children's Online Privacy Protection Act (15 U.S.C. Sec. 6501 et seq.).*

*(B) The online service, product, or feature is determined to be routinely accessed by children through academic, market, or internal company research.*

*(C) An online service, product, or feature advertises to children.*

*(D) An online service, product, or feature that is substantially similar or the same as an online service, product, or feature subject to subparagraph (B).*

*(E) An online service, product, or feature that has design elements that are known to be of interest to children, including, but not limited to, games, cartoons, music, and celebrities who appeal to children.*

(7) "Taskforce" means the California Children's Data Protection Taskforce as established by Section 1798.99.32.

**AB 2273** — 6 —

1798.99.31. (a) A business that provides an online service, product, or feature likely to be accessed by a child shall comply with all of the following:

(1) Undertake a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by a child and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by a child. A report of the assessment must be provided to the agency within 12 months of the implementation of this act and reviewed every 24 months or before any new features are offered to the public.

(2) Establish the age of consumers with a reasonable level of certainty appropriate to the risks that arise from the data management practices of the business, or apply the privacy and data protections afforded to children to all consumers.

(3) Configure all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of privacy protection offered by the business.

(4) Provide any privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature.

(5) If the online service, product, or feature allows the child's parent, guardian, or any other consumer to monitor the child's online activity or track their location, provide an obvious signal to the child when they are being monitored or tracked.

(6) Enforce published terms, policies, and community standards established by the business, including, but not limited to, privacy policies and those concerning children.

(7) Provide prominent, accessible, and responsive tools to help children, or where applicable their parent or guardian, exercise their privacy rights and report concerns.

(b) A business that provides an online service, product, or feature likely to be accessed by a child shall not take any of the following actions:

(1) Use the personal information of any child in a way that the business knows or has reason to know the online service, product, or feature more likely than not causes or contributes to a more than de minimis risk of harm to the physical health, mental health, or well-being of a child.

97

(2) Profile a child by default.

(3) Collect, sell, share, or retain any personal information that is not necessary to provide a service, product, or feature with which a child is actively and knowingly ~~engaged.~~ *engaged, or as described in paragraphs (1) to (4), inclusive, of subdivision (a) of Section 1798.145.*

*(4) Use personal information for any reason other than the reason or reasons for which that personal information was collected, where the end user is a child.*

~~(4) If a business does not have actual knowledge of the age of a consumer, it shall not collect, share, sell, or retain any personal information that is not necessary to provide a service, product, or feature with which a consumer is actively and knowingly engaged.~~

~~(5) Use the personal information of a child for any reason other than the reason or reasons for which that personal information was collected. If the business does not have actual knowledge of the age of the consumer, the business shall not use any personal information for any reason other than the reason or reasons for which that personal information was collected.~~

~~(6) Notwithstanding Section 1798.120, share or sell the personal information of any child unless the sharing or selling of that personal information is necessary to provide the online service, product, or feature as permitted by paragraphs (1) to (4), inclusive, of subdivision (a) of Section 1798.145.~~

~~(7)~~

*(5)* Collect, sell, or share any precise geolocation information of children by default unless the collection of that precise geolocation information is necessary *for the business* to provide the service, product, or feature requested and then only for the limited time that the collection of precise geolocation information is necessary to provide the service, product, or feature.

~~(8)~~

*(6)* ~~Collect, sell, or share~~ *Collect* any precise geolocation information *of a child* without providing an obvious sign to the child for the duration of that collection that precise geolocation information is being collected.

~~(9)~~

*(7)* Use dark patterns ~~or other techniques~~ to lead or encourage ~~consumers~~ *children* to provide personal information beyond what is reasonably expected ~~for the service the child is accessing and~~

**AB 2273** — 8 —

necessary to provide that ~~service or product~~ *online service, product, or feature* to forego privacy protections, or to ~~otherwise~~ take any action that the business knows or has reason to know ~~the online service or product~~ more likely than not causes or contributes to a more than de minimis risk of harm to the child's physical health, mental health, or well-being.

~~(10)~~

*(8)* Use any personal information collected or processed to establish age or age range for any other purpose, or retain that personal information longer than necessary to establish age. Age assurance shall be proportionate to the risks and data practice of a service, product, or feature.

(c) This section shall become operative on July 1, 2024.

1798.99.32. (a) The agency shall establish and convene a taskforce, the California Children's Data Protection Taskforce, to evaluate best practices for the implementation of this title, and to provide support to businesses, with an emphasis on small and medium businesses, to comply with this title.

(b) By April 1, 2023, the board shall appoint members of the taskforce. Taskforce members shall consist of Californians with expertise in the areas of privacy, physical health, mental health, and well-being, technology, and children's rights.

(c) The taskforce shall make recommendations on best practices regarding, but not limited to, all of the following:

(1) Identifying online services, products, or features likely to be accessed by children.

(2) Evaluating and prioritizing the best interests of children with respect to their privacy, health, and well-being, and issuing guidance to businesses on how those interests may be furthered by the design, development, and implementation of an online service, product, or feature.

(3) Ensuring that age verification methods used by businesses that provide online services, products, or features likely to be accessed by children are proportionate to the risks that arise from the data management practices of the business, privacy protective, and minimally invasive.

(4) Assessing and mitigating risks to children that arise from the use of an online service, product, or feature, including specific issues businesses must address to perform a Data Protection Impact Assessment.

97

**AB 2273**

(5) Publishing privacy information, policies, and standards in concise, clear language suited for the age of children likely to access that service or product.

(d) By April 1, 2024, the agency, in consultation with the taskforce, shall adopt regulations, as necessary, to effectuate the purposes of this title.

*1798.99.35. (a) Any business that violates this title shall be subject to an injunction and liable for a civil penalty of not more than two thousand five hundred dollars ($2,500) per affected child for each negligent violation or not more than seven thousand five hundred dollars ($7,500) per affected child for each intentional violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General.*

*(b) Nothing in this title shall be interpreted to serve as the basis for a private right of action under this title.*

SEC. 3. The Legislature finds and declares that this act furthers the purposes and intent of the California Privacy Rights Act of 2020.

O

# ATTACHMENT 4

AMENDED IN SENATE AUGUST 11, 2022

AMENDED IN SENATE JUNE 30, 2022

AMENDED IN ASSEMBLY APRIL 26, 2022

CALIFORNIA LEGISLATURE—2021–22 REGULAR SESSION

# ASSEMBLY BILL No. 2273

**Introduced by Assembly Members Wicks, Cunningham, and Petrie-Norris**
(Coauthors: Senators ~~Allen and Newman~~) *Allen, Newman, and Stern)*

February 16, 2022

An act to add Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, relating to consumer privacy.

LEGISLATIVE COUNSEL'S DIGEST

AB 2273, as amended, Wicks. The California Age-Appropriate Design Code Act.

(1) Existing law, the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election, establishes the California Privacy Protection Agency. Existing law vests the agency with full administrative power, authority, and jurisdiction to implement and enforce the California Consumer Privacy Act of ~~2018,~~ *2018* and requires the agency to be governed by a board. Existing law requires businesses to protect consumer privacy and information, make certain disclosures to consumers regarding a consumer's rights under the act in a specified manner, and disclose to consumers that a consumer has the right to request specific pieces of information, including the categories of information those businesses have collected about that consumer.

96

**AB 2273** — 2 —

Existing law, the Parent's Accountability and Child Protection Act, requires a person or business that conducts business in California and that seeks to sell specified products or services to take reasonable steps to ensure that the purchaser is of legal age at the time of purchase or delivery, including verifying the age of the purchaser. Existing law prohibits a person or business that is required to comply with these provisions from retaining, using, or disclosing any information it receives in an effort to verify age from a purchaser or recipient for any other purpose, except as specified, and subjects a business or person that violates these provisions to a civil penalty.

This bill would enact the California Age-Appropriate Design Code Act, which, commencing July 1, 2024, ~~would~~ *would, among other things,* require a business that provides an online service, product, or feature likely to be accessed by ~~a child~~ *children* to comply with specified requirements, including configuring all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of ~~privacy protection offered by the business,~~ *privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children,* and providing privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature. *The bill would require a business, before any new online services, products, or features are offered to the public, to complete a Data Protection Impact Assessment, as defined, for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. The bill would require a business to make a Data Protection Impact Assessment available, within 5 business days, to the Attorney General pursuant to a written request and would exempt a Data Protection Impact Assessment from public disclose, as prescribed.* The bill would prohibit a business that provides an online service, product, or feature likely to be accessed by ~~a child~~ *children* from taking proscribed action, ~~including~~ *including, if the end user is a child,* using ~~the~~ personal information ~~of a child~~ for any reason other than ~~the~~ *a* reason ~~or reasons~~ for which the personal information was ~~collected.~~ *collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.*

96

— 3 —                                             **AB 2273**

This bill would ~~require the California Privacy Protection Agency to establish and convene~~ *create* the California Children's Data Protection ~~Taskforce to evaluate~~ *Working Group to deliver a report to the Legislature regarding* best practices for the implementation of these ~~provisions, and to provide support to businesses,~~ *provisions,* as specified. The bill would require the ~~agency's board to appoint the members of the taskforce by April 1, 2023, and would require those~~ members *of the working group* to have certain expertise, including in the areas of *children's data* privacy and children's rights. The bill would require the ~~taskforce to~~ *working group to take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies and* make prescribed recommendations on best practices, including identifying online services, products, or features likely to be accessed by children. ~~By April 1, 2024, the bill would require the agency, in consultation with the taskforce, to adopt regulations, as necessary.~~

This bill would authorize the Attorney General to seek an injunction or civil penalty against any business that violates it provisions. The bill would hold violators liable for a civil penalty of not more than $2,500 per affected child for each negligent ~~violation,~~ *violation* or not more than $7,500 per affected child for each intentional violation. *The bill would require any penalties, fees, and expenses recovered in an action brought under the act to be deposited in the Consumer Privacy Fund with the intent that they be used to fully offset costs incurred by the Attorney General in connection with the act.*

(2) The California Privacy Rights Act of 2020 authorizes the Legislature to amend the act to further the purposes and intent of the act by a majority vote of both houses of the Legislature, as specified.

This bill would declare that its provisions further the purposes and intent of the California Privacy Rights Act of 2020.

*(3) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.*

*This bill would make legislative findings to that effect.*

Vote:  majority.  Appropriation:  no.  Fiscal committee:  yes. State-mandated local program:  no.

**AB 2273**                    — 4 —

*The people of the State of California do enact as follows:*

SECTION 1.  (a) The Legislature hereby finds and declares all of the following:

(1)  The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives.

(2)  As children spend more of their time interacting with the online world, the impact of the design of online products and services on children's well-being has become a focus of significant concern.

(3)  There is bipartisan agreement at the international level, in both the United States and in the State of California, that more needs to be done to create a safer online space for children to learn, explore, and play.

(4)  Lawmakers around the globe have taken steps to enhance privacy protections for children on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well-being.

(5)  Children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access. *In order to help support the design of online products, services, and features, businesses should take into account the unique needs of different age ranges, including the following developmental stages: 0 to 5 years of age or "preliterate and early literacy"; 6 to 9 years of age or "core primary school years"; 10 to 12 years of age or "transition years"; 13 to 15 years of age or "early teens"; and 16 to 17 years of age or "approaching adulthood".*

(6)  In 2019, 81 percent of voters said they wanted to prohibit companies from collecting personal information about children without parental consent, and a 2018 poll of Californian parents and teens found that only 36 percent of teenagers and 32 percent of parents say that social networking internet websites do a good job explaining what they do with users' data.

(7)  While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products and services should adopt data protection regimes

96

appropriate for children of the ages likely to access those products and services.

(8) ~~Products and services~~ *Online services, products, or features* that are likely to be accessed by children should offer strong privacy protections by design and by default, including by disabling features that profile children using their previous behavior, browsing history, or assumptions of their similarity to other children, to offer detrimental material.

(9) Ensuring robust privacy protections for children by design is consistent with the intent of the Legislature in passing the California Consumer Privacy Act of 2018, and with the intent of the people of the State of California in passing the California Privacy Rights Act of 2020, which finds and declares that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights.

*(10) The California Privacy Protection Agency, created by the California Privacy Rights Act of 2020, has substantial and growing expertise that is integral to the development of privacy policy in California.*

(b) Therefore, it is the intent of the Legislature to promote privacy protections for children pursuant to the California Age-Appropriate Design Code Act.

*(c) It is the intent of the Legislature that the California Age-Appropriate Design Code promote innovation by businesses whose online products, services, or features are likely to be accessed by children by ensuring that those online products, services, or features are designed in a manner that recognizes the distinct needs of children at different age ranges.*

*(d) It is the intent of the Legislature that businesses covered by the California Age-Appropriate Design Code may look to guidance and innovation in response to the Age-Appropriate Design Code established in the United Kingdom when developing online services, products, or features likely to be accessed by children.*

*(e) It is the intent of the Legislature that the California Children's Data Protection Working Group consider the guidance provided by the Information Commissioner's Office in the United Kingdom when developing and reviewing best practices or other recommendations related to the California Age-Appropriate Design Code.*

**AB 2273** — 6 —

*(f) It is the intent of the Legislature that the California Children's Data Protection Working Group and the Department of Justice leverage the substantial and growing expertise of the California Privacy Protection Agency in the implementation of this title.*

SEC. 2. Title 1.81.46 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:

TITLE 1.81.46.  THE CALIFORNIA AGE-APPROPRIATE
DESIGN CODE ACT

1798.99.28.  This ~~chapter~~ *title* shall be known, and may be cited, as the California Age-Appropriate Design Code Act.

1798.99.29.  The Legislature declares that children should be afforded protections not only by online products and services specifically directed at ~~them,~~ *them* but by all online products and services they are likely to access and makes the following findings:

(a) ~~Companies~~ *Businesses* that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that *online* service, product, or feature.

(b) If a conflict arises between commercial interests and the best interests of children, companies should ~~prioritizes~~ *prioritize* the privacy, safety, and well-being of children over commercial interests.

1798.99.30.  (a) For purposes of this title, the definitions in Section 1798.140 shall apply unless otherwise specified in this title.

(b) For the purposes of this ~~title, the following terms apply:~~ *title:*

~~(1) "Agency" means the California Privacy Protection Agency, as established by the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election.~~

~~(2) "Board" means the agency's board, as established in Section 1798.199.10.~~

~~(3)~~

*(1)* "Child" or "children," unless otherwise specified, means a consumer or consumers who is under 18 years of age.

~~(4)~~

*(2)* "Data Protection Impact Assessment" means a systematic survey to assess and mitigate risks *that arise from the data management practices of the business* to children who are reasonably likely to access the *online* service, product, or feature at issue that arises from the provision of that *online* service, product, or ~~feature in accordance with specifications promulgated by the California Children's Data Protection Taskforce established pursuant to Section 1798.99.32.~~ *feature.*

~~(5)~~

*(3)* "Default" means a preselected option adopted by the business for the online service, product, or feature.

~~(6)~~

*(4)* "Likely to be accessed by ~~a child"~~ *children"* means it is reasonable to expect, based on *any of* the following factors, that the online service, product, or feature would be accessed by children:

(A)  The online service, product, or feature is directed to children as defined by the Children's Online Privacy Protection Act (15 U.S.C. Sec. 6501 et seq.).

(B) The online service, product, or feature is ~~determined~~ *determined, based on competent and reliable evidence regarding audience composition,* to be routinely accessed by ~~children through academic, market, or internal company research.~~ *a significant number of children.*

(C) An online service, product, or feature ~~advertises~~ *with advertisements marketed* to children.

(D)  An online service, product, or feature that is substantially similar or the same as an online service, product, or feature subject to subparagraph (B).

(E) An online service, product, or feature that has design elements that are known to be of interest to children, including, but not limited to, games, cartoons, music, and celebrities who appeal to children.

~~(7)  "Taskforce" means the California Children's Data Protection Taskforce as established by Section 1798.99.32.~~

*(F) A significant amount of the audience of the online service, product, or feature is determined, based on internal company research, to be children.*

*(5) "Profiling" means any form of automated processing of personal information that uses personal information to evaluate*

**AB 2273** — 8 —

*certain aspects relating to a natural person, including analyzing or predicting aspects concerning a natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements.*

1798.99.31. (a) A business that provides an online service, product, or feature likely to be accessed by ~~a child~~ *children* shall ~~comply with~~ *take* all of the ~~following:~~ *following actions:*

(1) ~~Undertake~~ *(A) Before any new online services, products, or features are offered to the public, complete* a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by ~~a child~~ *children* and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by ~~a child. A report of the assessment must be provided to the agency within 12 months of the implementation of this act and reviewed every 24 months or before any new features are offered to the public.~~ *children. A business shall biennially review all Data Protection Impact Assessments.*

*(B) The Data Protection Impact Assessment required by this paragraph shall identify the purpose of the online service, product, or feature, how it uses children's personal information, and the risks of material detriment to children that arise from the data management practices of the business. The Data Protection Impact Assessment shall address, to the extent applicable, all of the following:*

*(i) Whether the design of the online product, service, or feature could harm children, including by exposing children to harmful, or potentially harmful, content on the online product, service, or feature.*

*(ii) Whether the design of the online product, service, or feature could lead to children experiencing or being targeted by harmful, or potentially harmful, contacts on the online product, service, or feature.*

*(iii) Whether the design of the online product, service, or feature could permit children to witness, participate in, or be subject to harmful, or potentially harmful, conduct on the online product, service, or feature.*

*(iv) Whether the design of the online product, service, or feature could allow children to be party to or exploited by a harmful, or potentially harmful, contact on the online product, service, or feature.*

— 9 —                    **AB 2273**

*(v)  Whether algorithms used by the online product, service, or feature could harm children.*

*(vi)  Whether targeted advertising systems used by the online product, service, or feature could harm children.*

*(vii)  Whether and how the online product, service, or feature uses system design features to increase, sustain, or extend use of the online product, service, or feature by children, including the automatic playing of media, rewards for time spent, and notifications.*

*(viii)  Whether, how, and for what purpose the online product, service, or feature collects or processes sensitive personal information of children.*

*(2)  Document any risk of material detriment to children that arises from the data management practices of the business identified in the Data Protection Impact Assessment required by paragraph (1) and create a timed plan to mitigate or eliminate the risk before the online service, product, or feature is accessed by children.*

*(3)  Within 48 hours of a written request by the Attorney General, provide to the Attorney General a list of all Data Protection Impact Assessments the business has completed.*

*(4)  (A)  For any Data Protection Impact Assessment completed pursuant to paragraph (1), make the Data Protection Impact Assessment available, within five business days, to the Attorney General pursuant to a written request.*

*(B)  Notwithstanding any other law, a Data Protection Impact Assessment is protected as confidential and shall be exempt from public disclosure, including under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).*

*(C)  To the extent any information contained in a Data Protection Impact Assessment disclosed to the Attorney General includes information subject to attorney-client privilege or work product protection, disclosure pursuant to this paragraph shall not constitute a waiver of that privilege or protection.*

~~(2)  Establish~~

*(5)  Estimate* the age of ~~consumers~~ *child users* with a reasonable level of certainty appropriate to the risks that arise from the data management practices of the ~~business,~~ *business* or apply the privacy and data protections afforded to children to all consumers.

**AB 2273** — 10 —

(3)

*(6)* Configure all default privacy settings offered *provided to children* by the online service, product, or feature to the settings that offer a high level of privacy protection offered by the business. *privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children.*

(4)

*(7)* Provide any privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature.

(5)

*(8)* If the online service, product, or feature allows the child's parent, guardian, or any other consumer to monitor the child's online activity or track their *the child's* location, provide an obvious signal to the child when they are *the child is* being monitored or tracked.

(6)

*(9)* Enforce published terms, policies, and community standards established by the business, including, but not limited to, privacy policies and those concerning children.

(7)

*(10)* Provide prominent, accessible, and responsive tools to help children, or where *if* applicable their parent *parents* or guardian, *guardians,* exercise their privacy rights and report concerns.

(b) A business that provides an online service, product, or feature likely to be accessed by a child *children* shall not take any of the following actions:

(1) Use the personal information of any child in a way that the business knows *knows,* or has reason to know the online service, product, or feature more likely than not causes or contributes to a more than de minimis risk of harm *know, is materially detrimental* to the physical health, mental health, or well-being of a child.

(2) Profile a child by default. *default unless both of the following criteria are met:*

*(A) The business can demonstrate it has appropriate safeguards in place to protect children.*

*(B) Either of the following is true:*

*(i) Profiling is necessary to provide the online service, product, or feature requested and only with respect to the aspects of the*

— 11 —                                        **AB 2273**

*online service, product, or feature with which the child is actively and knowingly engaged.*

*(ii) The business can demonstrate a compelling reason that profiling is in the best interests of children.*

(3) Collect, sell, share, or retain any personal information that is not necessary to provide ~~a~~ *an online* service, product, or feature with which a child is actively and knowingly engaged, or as described in paragraphs (1) to (4), inclusive, of subdivision (a) of Section ~~1798.145.~~ *1798.145, unless the business can demonstrate a compelling reason that the collecting, selling, sharing, or retaining of the personal information is in the best interests of children likely to access the online service, product, or feature.*

(4) ~~Use~~ *If the end user is a child, use* personal information for any reason other than ~~the~~ *a* reason ~~or reasons~~ for which that personal information was collected, ~~where the end user is a child.~~ *unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.*

(5) Collect, sell, or share any precise geolocation information of children by default unless the collection of that precise geolocation information is *strictly* necessary for the business to provide the service, product, or feature requested and then only for the limited time that the collection of precise geolocation information is necessary to provide the service, product, or feature.

(6) Collect any precise geolocation information of a child without providing an obvious sign to the child for the duration of that collection that precise geolocation information is being collected.

(7) Use dark patterns to lead or encourage children to provide personal information beyond what is reasonably expected to provide that online service, product, or feature to forego privacy protections, or to take any action that the business ~~knows~~ *knows,* or has reason to ~~know more likely than not causes or contributes to a more than de minimis risk of harm~~ *know, is materially detrimental* to the child's physical health, mental health, or well-being.

(8) Use any personal information collected ~~or processed to establish~~ *to estimate* age or age range for any other ~~purpose,~~ *purpose* or retain that personal information longer than necessary to ~~establish~~ *estimate* age. Age assurance shall be proportionate to

96

**AB 2273**                    — 12 —

the risks and data practice of a *an online* service, product, or feature.

*(c) A Data Protection Impact Assessment conducted by a business for the purpose of compliance with any other law complies with this section if the Data Protection Impact Assessment meets the requirements of this title.*

(c)

*(d)* This section shall become operative on July 1, 2024.

1798.99.32.    (a) The agency shall establish and convene a taskforce, the California Children's Data Protection Taskforce, *Working Group is hereby created* to evaluate *deliver a report to the Legislature, pursuant to subdivision (e), regarding* best practices for the implementation of this title, and to provide support to businesses, with an emphasis on small and medium businesses, to comply with this title.

(b) By April 1, 2023, the board shall appoint members of the taskforce. Taskforce *Working Group* members shall consist of Californians with expertise in the areas of privacy, physical health, mental health, and well-being, technology, and children's rights. *with expertise in at least two of the following areas:*

*(1) Children's data privacy.*

*(2) Physical health.*

*(3) Mental health and well-being.*

*(4) Computer science.*

*(5) Children's rights.*

*(c) The working group shall select a chair and a vice chair from among its members and shall consist of the following 10 members:*

*(1) Two appointees by the Governor.*

*(2) Two appointees by the President Pro Tempore of the Senate.*

*(3) Two appointees by the Speaker of the Assembly.*

*(4) Two appointees by the Attorney General.*

*(5) Two appointees by the California Privacy Protection Agency.*

(c)

*(d)* The taskforce *working group shall take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies and* shall make recommendations *to the Legislature* on best practices regarding, but not limited to, *at minimum,* all of the following:

(1) Identifying online services, products, or features likely to be accessed by children.

(2) Evaluating and prioritizing the best interests of children with respect to their privacy, *physical* health, *and mental health* and ~~well-being, and issuing guidance to businesses on~~ *well-being and evaluating* how those interests may be furthered by the design, development, and implementation of an online service, product, or feature.

(3) Ensuring that age ~~verification~~ *assurance* methods used by businesses that provide online services, products, or features likely to be accessed by children are proportionate to the risks that arise from the data management practices of the business, privacy protective, and minimally invasive.

(4) Assessing and mitigating risks to children that arise from the use of an online service, product, or ~~feature, including specific issues businesses must address to perform a Data Protection Impact Assessment.~~ *feature.*

(5) Publishing privacy information, policies, and standards in concise, clear language suited for the age of children likely to access ~~that service or product.~~ *an online service, product, or feature.*

~~(d) By April 1, 2024, the agency, in consultation with the taskforce, shall adopt regulations, as necessary, to effectuate the purposes of this title.~~

*(6) How the working group and the Department of Justice may leverage the substantial and growing expertise of the California Privacy Protection Agency in the long-term development of data privacy policies that affect the privacy, rights, and safety of children online.*

*(e) On or before January 1, 2024, and every two years thereafter, the working group shall submit, pursuant to Section 9795 of the Government Code, a report to the Legislature regarding the recommendations described in subdivision (d).*

*(f) The members of the working group shall serve without compensation but shall be reimbursed for all necessary expenses actually incurred in the performance of their duties.*

*(g) This section shall remain in effect until January 1, 2030, and as of that date is repealed.*

*1798.99.33. (a) A business shall complete a Data Protection Impact Assessment on or before July 1, 2024, for any online*

96

**AB 2273** — 14 —

*service, product, or feature likely to be accessed by children offered to the public before July 1, 2024.*

*(b) This section does not apply to an online service, product, or feature that is not offered to the public on or after July 1, 2024.*

1798.99.35. (a) Any business that violates this title shall be subject to an injunction and liable for a civil penalty of not more than two thousand five hundred dollars ($2,500) per affected child for each negligent violation or not more than seven thousand five hundred dollars ($7,500) per affected child for each intentional violation, which shall be assessed and recovered *only* in a civil action brought in the name of the people of the State of California by the Attorney General.

*(b) Any penalties, fees, and expenses recovered in an action brought under this title shall be deposited in the Consumer Privacy Fund, created within the General Fund pursuant to subdivision (a) of Section 1798.160, with the intent that they be used to fully offset costs incurred by the Attorney General in connection with this title.*

*(c) (1) If a business is in substantial compliance with the requirements of paragraphs (1) through (4), inclusive, of subdivision (a) of Section 1798.99.31, the Attorney General shall provide written notice to the business, before initiating an action under this title, identifying the specific provisions of this title that the Attorney General alleges have been or are being violated.*

*(2) If, within 45 days of the notice required by this subdivision, the business actually cures any noticed violation and provides the Attorney General a written statement that the alleged violations have been cured and that such further violations shall not occur, the Attorney General shall not bring a civil action against the business for any violation cured pursuant to this subdivision.*

~~(b)~~

*(d)* Nothing in this title shall be interpreted to serve as the basis for a private right of action under this ~~title.~~ *title or any other law.*

*(e) The Attorney General may solicit broad public participation and adopt regulations to clarify the requirements of this title.*

1798.99.40. *This title does not apply to the information or entities described in subdivision (c) of Section 1798.145.*

SEC. 3. The Legislature finds and declares that this act furthers the purposes and intent of the California Privacy Rights Act of 2020.

— 15 —                              **AB 2273**

*SEC. 4.  The Legislature finds and declares that Section 2 of this act, which adds Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:*

*The limitation is needed to encourage businesses, by protecting their proprietary interests, to mitigate risks to children online.*

O

# ATTACHMENT 5

AMENDED IN SENATE AUGUST 22, 2022

AMENDED IN SENATE AUGUST 11, 2022

AMENDED IN SENATE JUNE 30, 2022

AMENDED IN ASSEMBLY APRIL 26, 2022

CALIFORNIA LEGISLATURE—2021–22 REGULAR SESSION

# ASSEMBLY BILL          No. 2273

### Introduced by Assembly Members Wicks, Cunningham, and Petrie-Norris
(Coauthors: Senators Allen, Newman, and Stern)

February 16, 2022

An act to add Title ~~1.81.46~~ *1.81.47* (commencing with Section 1798.99.28) to Part 4 of Division 3 ~~of~~ *of, and to repeal Section 1798.99.32 of,* the Civil Code, relating to consumer privacy.

LEGISLATIVE COUNSEL'S DIGEST

AB 2273, as amended, Wicks. The California Age-Appropriate Design Code Act.

(1) Existing law, the California Privacy Rights Act of 2020, approved by the voters as Proposition 24 at the November 3, 2020, statewide general election, establishes the California Privacy Protection Agency. Existing law vests the agency with full administrative power, authority, and jurisdiction to implement and enforce the California Consumer Privacy Act of 2018 and requires the agency to be governed by a board. Existing law requires businesses to protect consumer privacy and information, make certain disclosures to consumers regarding a consumer's rights under the act in a specified manner, and disclose to consumers that a consumer has the right to request specific pieces of

95

**AB 2273** — 2 —

information, including the categories of information those businesses have collected about that consumer.

Existing law, the Parent's Accountability and Child Protection Act, requires a person or business that conducts business in California and that seeks to sell specified products or services to take reasonable steps to ensure that the purchaser is of legal age at the time of purchase or delivery, including verifying the age of the purchaser. Existing law prohibits a person or business that is required to comply with these provisions from retaining, using, or disclosing any information it receives in an effort to verify age from a purchaser or recipient for any other purpose, except as specified, and subjects a business or person that violates these provisions to a civil penalty.

This bill would enact the California Age-Appropriate Design Code Act, which, commencing July 1, 2024, would, among other things, require a business that provides an online service, product, or feature likely to be accessed by children to comply with specified requirements, including ~~configuring~~ *a requirement to configure* all default privacy settings offered by the online service, product, or feature to the settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children, and ~~providing~~ *to provide* privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature. The bill would require a business, before any new online services, products, or features are offered to the public, to complete a Data Protection Impact Assessment, as defined, for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. The bill would require a business to make a Data Protection Impact Assessment available, within 5 business days, to the Attorney General pursuant to a written request and would exempt a Data Protection Impact Assessment from public ~~disclose,~~ *disclosure,* as prescribed. The bill would prohibit a business that provides an online service, product, or feature likely to be accessed by children from taking proscribed action, including, if the end user is a child, using personal information for any reason other than a reason for which the personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

95

**AB 2273**

This bill would create the California Children's Data Protection Working Group to deliver a report to the Legislature regarding best practices for the implementation of these provisions, as specified. The bill would require the members of the working group to have certain expertise, including in the areas of children's data privacy and children's rights. The bill would require the working group to take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy ~~policies~~ *policies,* and make prescribed recommendations on best practices, including identifying online services, products, or features likely to be accessed by children.

This bill would authorize the Attorney General to seek an injunction or civil penalty against any business that violates it provisions. The bill would hold violators liable for a civil penalty of not more than $2,500 per affected child for each negligent violation or not more than $7,500 per affected child for each intentional violation. The bill would require any penalties, fees, and expenses recovered in an action brought under the act to be deposited in the Consumer Privacy Fund with the intent that they be used to fully offset costs incurred by the Attorney General in connection with the act.

(2) The California Privacy Rights Act of 2020 authorizes the Legislature to amend the act to further the purposes and intent of the act by a majority vote of both houses of the Legislature, as specified.

This bill would declare that its provisions further the purposes and intent of the California Privacy Rights Act of 2020.

(3) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: no.

*The people of the State of California do enact as follows:*

SECTION 1. (a) The Legislature hereby finds and declares all of the following:

**AB 2273**                    — 4 —

(1) The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives.

(2) As children spend more of their time interacting with the online world, the impact of the design of online products and services on children's well-being has become a focus of significant concern.

(3) There is bipartisan agreement at the international level, in both the United States and in the State of California, that more needs to be done to create a safer online space for children to learn, explore, and play.

(4) Lawmakers around the globe have taken steps to enhance privacy protections for children on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well-being.

(5) Children should be afforded protections not only by online products and services specifically directed at them, but by all online products and services they are likely to access. In order to help support the design of online products, services, and features, businesses should take into account the unique needs of different age ranges, including the following developmental stages: 0 to 5 years of age or "preliterate and early literacy"; 6 to 9 years of age or "core primary school years"; 10 to 12 years of age or "transition years"; 13 to 15 years of age or "early teens"; and 16 to 17 years of age or "approaching adulthood". *adulthood."*

(6) In 2019, 81 percent of voters said they wanted to prohibit companies from collecting personal information about children without parental consent, and a 2018 poll of Californian parents and teens found that only 36 percent of teenagers and 32 percent of parents say that social networking internet websites do a good job explaining what they do with users' data.

(7) While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products and services should adopt data protection regimes appropriate for children of the ages likely to access those products and services.

(8) Online services, products, or features that are likely to be accessed by children should offer strong privacy protections by design and by default, including by disabling features that profile

95

children using their previous behavior, browsing history, or assumptions of their similarity to other children, to offer detrimental material.

(9)  Ensuring robust privacy protections for children by design is consistent with the intent of the Legislature in passing the California Consumer Privacy Act of 2018, and with the intent of the people of the State of California in passing the California Privacy Rights Act of 2020, which finds and declares that children are particularly vulnerable from a negotiating perspective with respect to their privacy rights.

(10)  The California Privacy Protection Agency, created by the California Privacy Rights Act of 2020, has substantial and growing expertise that is integral to the development of privacy policy in California.

(b)  Therefore, it is the intent of the Legislature to promote privacy protections for children pursuant to the California Age-Appropriate Design Code Act.

(c)  It is the intent of the Legislature that the California Age-Appropriate Design Code promote innovation by businesses whose online products, services, or features are likely to be accessed by children by ensuring that those online products, services, or features are designed in a manner that recognizes the distinct needs of children at different age ranges.

(d)  It is the intent of the Legislature that businesses covered by the California Age-Appropriate Design Code may look to guidance and innovation in response to the Age-Appropriate Design Code established in the United Kingdom when developing online services, products, or features likely to be accessed by children.

(e)  It is the intent of the Legislature that the California Children's Data Protection Working Group consider the guidance provided by the Information Commissioner's Office in the United Kingdom when developing and reviewing best practices or other recommendations related to the California Age-Appropriate Design Code.

(f)  It is the intent of the Legislature that the California Children's Data Protection Working Group and the Department of Justice leverage the substantial and growing expertise of the California Privacy Protection Agency in the implementation of this title.

 SEC. 2.  Title 1.81.46 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:

95

**AB 2273** — 6 —

*SEC. 2. Title 1.81.47 (commencing with Section 1798.99.28) is added to Part 4 of Division 3 of the Civil Code, to read:*

TITLE ~~1.81.46.~~ *1.81.47.* THE CALIFORNIA
AGE-APPROPRIATE DESIGN CODE ACT

1798.99.28. This title shall be known, and may be cited, as the California Age-Appropriate Design Code Act.

1798.99.29. The Legislature declares that children should be afforded protections not only by online products and services specifically directed at them but by all online products and services they are likely to access and makes the following findings:

(a) Businesses that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when designing, developing, and providing that online service, product, or feature.

(b) If a conflict arises between commercial interests and the best interests of children, companies should prioritize the privacy, safety, and well-being of children over commercial interests.

1798.99.30. (a) For purposes of this title, the definitions in Section 1798.140 shall apply unless otherwise specified in this title.

(b) For the purposes of this title:

(1) "Child" or "children," unless otherwise specified, means a consumer or consumers who ~~is~~ *are* under 18 years of age.

(2) "Data Protection Impact Assessment" means a systematic survey to assess and mitigate risks that arise from the data management practices of the business to children who are reasonably likely to access the online service, product, or feature at issue that arises from the provision of that online service, product, or feature.

(3) "Default" means a preselected option adopted by the business for the online service, product, or feature.

(4) "Likely to be accessed by children" means it is reasonable to expect, based on ~~any of~~ the following ~~factors,~~ *indicators,* that the online service, product, or feature would be accessed by children:

(A) The online service, product, or feature is directed to children as defined by the Children's Online Privacy Protection Act (15 U.S.C. Sec. 6501 et seq.).

(B)  The online service, product, or feature is determined, based on competent and reliable evidence regarding audience composition, to be routinely accessed by a significant number of children.

(C)  An online service, product, or feature with advertisements marketed to children.

(D)  An online service, product, or feature that is substantially similar or the same as an online service, product, or feature subject to subparagraph (B).

(E)  An online service, product, or feature that has design elements that are known to be of interest to children, including, but not limited to, games, cartoons, music, and celebrities who appeal to children.

(F)  A significant amount of the audience of the online service, product, or feature is determined, based on internal company research, to be children.

*(5)  "Online service, product, or feature" does not mean any of the following:*

*(A)  A broadband internet access service, as defined in Section 3100.*

*(B)  A telecommunications service, as defined in Section 153 of Title 47 of the United States Code.*

*(C)  The delivery or use of a physical product.*

~~(5)~~

*(6)* "Profiling" means any form of automated processing of personal information that uses personal information to evaluate certain aspects relating to a natural person, including analyzing or predicting aspects concerning a natural person's performance at work, economic situation, health, personal preferences, interests, reliability, behavior, location, or movements.

1798.99.31.  (a)  A business that provides an online service, product, or feature likely to be accessed by children shall take all of the following actions:

(1) (A)  Before any new online services, products, or features are offered to the public, complete a Data Protection Impact Assessment for any online service, product, or feature likely to be accessed by children and maintain documentation of this assessment as long as the online service, product, or feature is likely to be accessed by children. A business shall biennially review all Data Protection Impact Assessments.

**AB 2273** — 8 —

(B) The Data Protection Impact Assessment required by this paragraph shall identify the purpose of the online service, product, or feature, how it uses children's personal information, and the risks of material detriment to children that arise from the data management practices of the business. The Data Protection Impact Assessment shall address, to the extent applicable, all of the following:

(i) Whether the design of the online product, service, or feature could harm children, including by exposing children to harmful, or potentially harmful, content on the online product, service, or feature.

(ii) Whether the design of the online product, service, or feature could lead to children experiencing or being targeted by harmful, or potentially harmful, contacts on the online product, service, or feature.

(iii) Whether the design of the online product, service, or feature could permit children to witness, participate in, or be subject to harmful, or potentially harmful, conduct on the online product, service, or feature.

(iv) Whether the design of the online product, service, or feature could allow children to be party to or exploited by a harmful, or potentially harmful, contact on the online product, service, or feature.

(v) Whether algorithms used by the online product, service, or feature could harm children.

(vi) Whether targeted advertising systems used by the online product, service, or feature could harm children.

(vii) Whether and how the online product, service, or feature uses system design features to increase, sustain, or extend use of the online product, service, or feature by children, including the automatic playing of media, rewards for time spent, and notifications.

(viii) Whether, how, and for what purpose the online product, service, or feature collects or processes sensitive personal information of children.

(2) Document any risk of material detriment to children that arises from the data management practices of the business identified in the Data Protection Impact Assessment required by paragraph (1) and create a timed plan to mitigate or eliminate the

**AB 2273**

risk before the online service, product, or feature is accessed by children.

(3) Within ~~48 hours~~ *three business days* of a written request by the Attorney General, provide to the Attorney General a list of all Data Protection Impact Assessments the business has completed.

(4) (A) For any Data Protection Impact Assessment completed pursuant to paragraph (1), make the Data Protection Impact Assessment available, within five business days, to the Attorney General pursuant to a written request.

(B) Notwithstanding any other law, a Data Protection Impact Assessment is protected as confidential and shall be exempt from public disclosure, including under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).

(C) To the extent any information contained in a Data Protection Impact Assessment disclosed to the Attorney General includes information subject to attorney-client privilege or work product protection, disclosure pursuant to this paragraph shall not constitute a waiver of that privilege or protection.

(5) Estimate the age of child users with a reasonable level of certainty appropriate to the risks that arise from the data management practices of the business or apply the privacy and data protections afforded to children to all consumers.

(6) Configure all default privacy settings provided to children by the online service, product, or feature to settings that offer a high level of privacy, unless the business can demonstrate a compelling reason that a different setting is in the best interests of children.

(7) Provide any privacy information, terms of service, policies, and community standards concisely, prominently, and using clear language suited to the age of children likely to access that online service, product, or feature.

(8) If the online service, product, or feature allows the child's parent, guardian, or any other consumer to monitor the child's online activity or track the child's location, provide an obvious signal to the child when the child is being monitored or tracked.

(9) Enforce published terms, policies, and community standards established by the business, including, but not limited to, privacy policies and those concerning children.

**AB 2273**                    — 10 —

(10)  Provide prominent, accessible, and responsive tools to help children, or if applicable their parents or guardians, exercise their privacy rights and report concerns.

(b)  A business that provides an online service, product, or feature likely to be accessed by children shall not take any of the following actions:

(1)  Use the personal information of any child in a way that the business knows, or has reason to know, is materially detrimental to the physical health, mental health, or well-being of a child.

(2)  Profile a child by default unless both of the following criteria are met:

(A)  The business can demonstrate it has appropriate safeguards in place to protect children.

(B)  Either of the following is true:

(i)  Profiling is necessary to provide the online service, product, or feature requested and only with respect to the aspects of the online service, product, or feature with which the child is actively and knowingly engaged.

(ii)  The business can demonstrate a compelling reason that profiling is in the best interests of children.

(3)  Collect, sell, share, or retain any personal information that is not necessary to provide an online service, product, or feature with which a child is actively and knowingly engaged, or as described in paragraphs (1) to (4), inclusive, of subdivision (a) of Section 1798.145, unless the business can demonstrate a compelling reason that the collecting, selling, sharing, or retaining of the personal information is in the best interests of children likely to access the online service, product, or feature.

(4)  If the end user is a child, use personal information for any reason other than a reason for which that personal information was collected, unless the business can demonstrate a compelling reason that use of the personal information is in the best interests of children.

(5)  Collect, sell, or share any precise geolocation information of children by default unless the collection of that precise geolocation information is strictly necessary for the business to provide the service, product, or feature requested and then only for the limited time that the collection of precise geolocation information is necessary to provide the service, product, or feature.

95

**AB 2273**

(6) Collect any precise geolocation information of a child without providing an obvious sign to the child for the duration of that collection that precise geolocation information is being collected.

(7) Use dark patterns to lead or encourage children to provide personal information beyond what is reasonably expected to provide that online service, product, or feature to forego privacy protections, or to take any action that the business knows, or has reason to know, is materially detrimental to the child's physical health, mental health, or well-being.

(8) Use any personal information collected to estimate age or age range for any other purpose or retain that personal information longer than necessary to estimate age. Age assurance shall be proportionate to the risks and data practice of an online service, product, or feature.

(c) *(1)* A Data Protection Impact Assessment conducted by a business for the purpose of compliance with any other law complies with this section if the Data Protection Impact Assessment meets the requirements of this title.

*(2) A single data protection impact assessment may contain multiple similar processing operations that present similar risks only if each relevant online service, product, or feature is addressed.*

(d) This section shall become operative on July 1, 2024.

1798.99.32. (a) The California Children's Data Protection Working Group is hereby created to deliver a report to the Legislature, pursuant to subdivision (e), regarding best practices for the implementation of this title.

(b) Working Group members shall consist of Californians with expertise in at least two of the following areas:

(1) Children's data privacy.

(2) Physical health.

(3) Mental health and well-being.

(4) Computer science.

(5) Children's rights.

(c) The working group shall select a chair and a vice chair from among its members and shall consist of the following 10 members:

(1) Two appointees by the Governor.

(2) Two appointees by the President Pro Tempore of the Senate.

(3) Two appointees by the Speaker of the Assembly.

95

**AB 2273**                         — 12 —

(4) Two appointees by the Attorney General.

(5) Two appointees by the California Privacy Protection Agency.

(d) The working group shall take input from a broad range of stakeholders, including from academia, consumer advocacy groups, and small, medium, and large businesses affected by data privacy policies and shall make recommendations to the Legislature on best practices regarding, at minimum, all of the following:

(1) Identifying online services, products, or features likely to be accessed by children.

(2) Evaluating and prioritizing the best interests of children with respect to their privacy, physical health, and mental health and well-being and evaluating how those interests may be furthered by the design, development, and implementation of an online service, product, or feature.

(3) Ensuring that age assurance methods used by businesses that provide online services, products, or features likely to be accessed by children are proportionate to the risks that arise from the data management practices of the business, privacy protective, and minimally invasive.

(4) Assessing and mitigating risks to children that arise from the use of an online service, product, or feature.

(5) Publishing privacy information, policies, and standards in concise, clear language suited for the age of children likely to access an online service, product, or feature.

(6) How the working group and the Department of Justice may leverage the substantial and growing expertise of the California Privacy Protection Agency in the long-term development of data privacy policies that affect the privacy, rights, and safety of children online.

(e) On or before January 1, 2024, and every two years thereafter, the working group shall submit, pursuant to Section 9795 of the Government Code, a report to the Legislature regarding the recommendations described in subdivision (d).

(f) The members of the working group shall serve without compensation but shall be reimbursed for all necessary expenses actually incurred in the performance of their duties.

(g) This section shall remain in effect until January 1, 2030, and as of that date is repealed.

1798.99.33. (a) A business shall complete a Data Protection Impact Assessment on or before July 1, 2024, for any online

95

— 13 —                               **AB 2273**

service, product, or feature likely to be accessed by children offered to the public before July 1, 2024.

(b)  This section does not apply to an online service, product, or feature that is not offered to the public on or after July 1, 2024.

1798.99.35.  (a)  Any business that violates this title shall be subject to an injunction and liable for a civil penalty of not more than two thousand five hundred dollars ($2,500) per affected child for each negligent violation or not more than seven thousand five hundred dollars ($7,500) per affected child for each intentional violation, which shall be assessed and recovered only in a civil action brought in the name of the people of the State of California by the Attorney General.

(b)  Any penalties, fees, and expenses recovered in an action brought under this title shall be deposited in the Consumer Privacy Fund, created within the General Fund pursuant to subdivision (a) of Section 1798.160, with the intent that they be used to fully offset costs incurred by the Attorney General in connection with this title.

(c)  (1)  If a business is in substantial compliance with the requirements of paragraphs (1) through (4), inclusive, of subdivision (a) of Section 1798.99.31, the Attorney General shall provide written notice to the business, before initiating an action under this title, identifying the specific provisions of this title that the Attorney General alleges have been or are being violated.

(2)  If, within ~~45~~ *90* days of the notice required by this subdivision, the business ~~actually~~ cures any noticed violation and provides the Attorney General a written statement that the alleged violations have been ~~cured and that such further violations shall not occur, the Attorney General shall not bring a civil action against the business~~ *cured, and sufficient measures have been taken to prevent future violations, the business shall not be liable for a civil penalty* for any violation cured pursuant to this subdivision.

(d)  Nothing in this title shall be interpreted to serve as the basis for a private right of action under this title or any other law.

(e)  The Attorney General may solicit broad public participation and adopt regulations to clarify the requirements of this title.

1798.99.40.  This title does not apply to the information or entities described in subdivision (c) of Section 1798.145.

**AB 2273** — 14 —

SEC. 3.  The Legislature finds and declares that this act furthers the purposes and intent of the California Privacy Rights Act of 2020.

SEC. 4.  The Legislature finds and declares that Section 2 of this act, which adds Title 1.81.46 (commencing with Section 1798.99.28) to Part 4 of Division 3 of the Civil Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

The limitation is needed to encourage businesses, by protecting their proprietary interests, to mitigate risks to children online.

O

95