UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


NETCHOICE, LLC D/B/A NETCHOICE,    )   C-22-08861 BLF
                                   )
                   PLAINTIFF,      )   SAN JOSE, CALIFORNIA
                                   )
              VS.                  )   JANUARY 23, 2025
                                   )
ROB BONTA, ATTORNEY GENERAL OF     )   PAGES 1-119
THE STATE OF CALIFORNIA, IN HIS    )
OFFICIAL CAPACITY,                 )
                                   )
              DEFENDANT.           )
_____    )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:        DAVIS WRIGHT TREMAINE LLP
                          BY:  AMBIKA A. KUMAR
                          920 FIFTH AVENUE, SUITE 3300
                          SEATTLE, WASHINGTON  98104

                          BY:  ADAM S. SIEFF
                          865 SOUTH FIGUEROA STREET, 24TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017


APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED)


FOR THE PLAINTIFF:      DAVIS WRIGHT TREMAINE LLP
                        BY:  DAVID M. GOSSETT
                        1301 K STREET NW, SUITE 500 EAST
                        WASHINGTON, D.C.  20005


FOR THE DEFENDANT:      CALIFORNIA DEPARTMENT OF JUSTICE
                        ATTORNEY GENERAL'S OFFICE
                        BY:  KRISTIN A. LISKA
                        455 GOLDEN GATE AVENUE, SUITE 11000
                        SAN FRANCISCO, CALIFORNIA  94102

SAN JOSE, CALIFORNIA                    JANUARY 23, 2025

P R O C E E D I N G S

(COURT CONVENED AT 9:03 A.M.)

THE COURT:  GOOD MORNING, EVERYONE.  WELCOME.  PLEASE BE SEATED.

ALL RIGHT.  LET'S CALL THE CASE AND GET YOUR APPEARANCES.

THE CLERK:  CALLING CASE 22-8861, NETCHOICE LLC VERSUS BONTA.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

MS. KUMAR:  AMBIKA KUMAR FROM DAVIS WRIGHT TREMAINE FOR THE PLAINTIFF.  ALONG WITH ME IS ADAM SIEFF, ALSO FROM DAVIS WRIGHT TREMAINE, AND DAVID GOSSETT FROM THE SAME FIRM.

THE COURT:  GOOD MORNING.  WELCOME.

MS. LISKA:  GOOD MORNING, YOUR HONOR.

KRISTIN LISKA FOR THE ATTORNEY GENERAL FROM THE A.G.'S OFFICE.

THE COURT:  GOOD MORNING.

ALL RIGHT.  WE HAVE A LOT TO TALK ABOUT TODAY.  I'VE ACTUALLY CLEARED THE CALENDAR OF OTHER CASES SO THAT WE WOULDN'T BE RUSHED, AND I WANT TO BE ABLE TO GIVE YOU A SUMMARY, OR MAYBE A LIST OF QUESTIONS ON THE VARIOUS ISSUES. BUT I CERTAINLY WELCOME YOUR ARGUMENT ON ALL OF THE ISSUES THAT HAVE BEEN RAISED.

IT LOOKS TO ME AS THOUGH, IN THE AFTERMATH OF THE NINTH CIRCUIT'S DECISION IN THIS CASE SENDING IT BACK TO ME,

THAT PLAINTIFFS HAVE REGROUPED, FILED AN AMENDED COMPLAINT, AND BASICALLY COME FORWARD WITH A COMPLETELY NEW THEORY FOR THE CASE AND FOR THE PRELIMINARY INJUNCTION.

THAT DOESN'T DIRECTLY MAP ON TO THE NINTH CIRCUIT'S REMAND, ALTHOUGH THAT WAS NOT A MANDATE PER SE.

SO THE COVERAGE DEFINITION CHALLENGE APPEARS TO BE COMPLETELY NEW TO THE CASE.  AND I'M NOT CRITICAL OF THAT, IT'S AN AMENDED COMPLAINT, AND ALL OF THAT IS FAIR GAME.

BUT I DON'T BELIEVE THE NINTH CIRCUIT HAD ANY OPPORTUNITY TO REVIEW THAT THEORY, NOR DID I.

IS THAT CORRECT, MS. KUMAR?

MS. KUMAR:  I THINK WE DID POINT OUT IN THE -- WHEN WE WERE HERE THE LAST TIME, YOUR HONOR, THAT THE COVERAGE DEFINITION WAS CONTENT BASED AND WE HAD A, YOU KNOW, A DIALOGUE ABOUT THAT.

THE COURT:  BUT I DIDN'T RULE ON THAT.

MS. KUMAR:  NO, YOU DIDN'T, YOUR HONOR.

THE COURT:  OKAY.  AND THE NINTH CIRCUIT CERTAINLY DIDN'T.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  THAT'S HELPFUL.

SO I -- I THINK THIS IS AN IMPORTANT ISSUE, I THINK IT MAY BE PERSUASIVE, BUT I HAVE A NUMBER OF QUESTIONS ABOUT IT.

I THINK THE REYES CASE IS THE BEST AUTHORITY OF THE THREE

CASES, INCLUDING FITCH AND YOST.  ONE, I THINK IT'S MORE SIMILAR AND, TWO, IT'S POST-MOODY, SO IT HAD THAT ADVANTAGE.

AND I THINK -- WHAT I'M NOT SURE OF IS WHETHER YOU'VE PROPERLY ANALYZED THE FACIAL CHALLENGE REQUIREMENT OF ARTICULATING EVERY APPLICATION OF THE STATUTE.

YOU SAY THAT THE COVERAGE DEFINITION COVERS EVERY APPLICATION OF THE LAW, AND IN A SENSE, YOU'RE RIGHT BECAUSE IT IS THE GATING PROVISION, WHO'S COVERED AND WHO ISN'T.

BUT MY QUESTION TO YOU IS THAT DO I STILL NEED TO ANALYZE EACH OF THE CHALLENGED SECTIONS FOR THE -- TO UNDERSTAND THE FULL APPLICATION UNDER THIS ISSUE THAT YOU'VE RAISED OF THE COVERAGE DEFINITION?

SO THAT'S MY -- THAT'S MY FIRST QUESTION.

AND IT REALLY THEN GOES TO WHETHER STRICT SCRUTINY WOULD APPLY TO MY EVALUATION OF EVERY SECTION, OR WHETHER I HAVE TO LOOK MORE SPECIFICALLY AT THE CHALLENGED SECTIONS TO DETERMINE WHETHER I'D BE LOOKING AT STRICT SCRUTINY OR INTERMEDIATE SCRUTINY, AND I THINK WE ALL GENERALLY CAN APPRECIATE THAT THAT MAKES OR BREAKS YOUR CASE, THE LEVEL OF SCRUTINY THAT I'M GOING TO APPLY.

MOVING ON, THOUGH, TO YOUR CHALLENGE OF THE INDIVIDUAL PROVISIONS, YOU FIRST RAISE THE ISSUE OF WHETHER YOU CAN EXTRACT A PARTICULAR APPLICATION OF THE STATUTE AND STILL CHALLENGE IT UNDER FACIAL INFIRMITY UNDER JOHN DOE #1 VERSUS REED.

SO IT'S CLEARLY -- YOU CLEARLY BROUGHT UP THE RIGHT CASE AND I'VE LOOKED AT THAT VERY CAREFULLY.

HERE'S MY QUESTION FOR YOU:  I'M NOT SURE THAT YOU HAVEN'T FALLEN INTO THE SAME TRAP THAT THE PLAINTIFFS DID IN JOHN DOE #1, AND THAT IS TO REVERT TO A TRADITIONAL AS-APPLIED CHALLENGE AS THE LAW IS APPLIED TO OUR MEMBERS, TO EACH OF US, AS OPPOSED TO SHOWING THE MORE GENERALIZED HARM.

AND SO THAT'S -- THAT'S MY FIRST CONCERN AT THAT HIGH LEVEL AS TO WHETHER YOU'VE EVEN MADE THIS OUT, AND I THINK MS. LISKA DEALS WITH THAT ISSUE IN HER OPPOSITION, AND ALSO APPROPRIATELY ADDS, WHAT EXACTLY ARE YOU TALKING ABOUT, WHICH I THINK -- AND IN A -- YOU'RE SAYING THAT IT'S, IT'S LIMITED APPLICATIONS, LIKE I RULED BEFORE.  BUT YOU DON'T ACTUALLY TELL ME WHAT YOU MEAN BY THAT.  I THINK THAT'S A BIG PROBLEM HERE.

SO I HAVE CONCERNS AT THAT HIGH LEVEL ON WHETHER YOU'VE PROPERLY BRIEFED IT.

GOING ON, THOUGH, ON THE FIRST ISSUE, POLICY ENFORCEMENT UNDER 31(A)(9), YOU SAY THAT THIS IS LIMITED TO CONTENT POLICIES.  I'M NOT SURE I KNOW WHAT THAT MEANS.

THE STATUTE USES COMMUNITY STANDARDS.  IT'S HARD TO KNOW WHAT THAT MEANS, TOO, BUT I THINK WE ALL HAVE A PRETTY GOOD SENSE.

I ACTUALLY -- I WANT TO BE SURE THAT THIS ISN'T REALLY LIMITED TO SOCIAL MEDIA COMPANIES THAT ARE COVERED BY THE ACT, BECAUSE THEN WE GET AWAY, AGAIN, FROM THE JOHN DOE #1 ANALYSIS.

HOWEVER -- AND I'M GOING TO JUMP AHEAD HERE BECAUSE I'M GOING TO GIVE IT SHORT SHRIFT LATER -- I ACTUALLY THINK THIS IS THE ONLY SECTION WHERE SECTION 230 PREEMPTION MAY APPLY, SO I WANT TO FOCUS ON THAT.

ON YOUR INFORMATION RESTRICTIONS UNDER 31(B)(1)-(4), I DON'T THINK YOU'VE PROPERLY ANALYZED THAT UNDER JOHN DOE #1 TO SHOW ME ALL APPLICATIONS.  I THINK YOU'RE REALLY FOCUSSING ON THE EFFECT ON YOUR MEMBERS, AND I DON'T THINK THAT YOU'VE -- I DON'T THINK YOUR EVIDENCE SUPPORTS IT, AND I DON'T THINK YOUR BRIEFING SUPPORTS IT.

ON DARK PATTERNS, YOU AGAIN SAY THIS IS SPECIFIC APPLICATIONS.  I'M NOT QUITE SURE WHICH ONES THEY ARE.

AND FOR SOME OF THESE ITEMS THAT ARE CONSIDERED DARK PATTERNS, LIKE AUTOPLAY, I DON'T THINK YOU'VE ADDRESSED THE ISSUE OF WHOSE EXPRESSION IS AT ISSUE, AND I DON'T KNOW THAT IN EVERY INSTANCE IT'S YOUR MEMBERS' EXPRESSION THAT'S AT ISSUE, AS OPPOSED TO THE USER'S EXPRESSION.

ON AGE ESTIMATION, THIS GOT COMPLICATED THIS LAST WEEK WITH THE FREE SPEECH COALITION VERSUS PAXTON ARGUMENT.  I KNOW THAT CASE IS QUITE DIFFERENT, BUT I THINK -- I HAVE A FEW CONCERNS.

FIRST OF ALL, IT APPEARS TO ME IN FREE SPEECH COALITION THAT THE TEXAS LAW WAS AN AGE VERIFICATION STATUTE, AND THAT'S VERY DIFFERENT IN ITS APPLICATION THAN WHAT APPEARS -- WHAT IS EXPRESSLY AN AGE ESTIMATION REQUIREMENT HERE.

AND SO TWO THINGS.  I BELIEVE THAT ONE OF THE DISCUSSION POINTS BEFORE THE SUPREME COURT WAS THE LEVEL OF SCRUTINY TO APPLY TO AGE VERIFICATION, AND THE COURT MEMBERS DISCUSSED WHETHER THE LEVEL OF SCRUTINY WOULD CHANGE DEPENDING ON THE BURDEN ON THE USERS AND WHETHER THE BURDEN WAS THE ADULT POPULATION OR THE CHILD POPULATION.

SO A LOT OF THAT IS DIFFERENT, BUT WE HAVE TO PAY ATTENTION TO WHAT THE LEVEL OF SCRUTINY WOULD BE.

HERE, THOUGH, BECAUSE IT'S AGE ESTIMATION, I DON'T THINK YOU'VE SHOWN ME ALL APPLICATIONS OF AGE ESTIMATION, AND I DON'T THINK I CAN DETERMINE WHETHER SPEECH IS INVOLVED IN AGE ESTIMATION.

IT SEEMS TO ME THAT THE DEGREE OF CERTAINTY OF THE ACCURACY OF THE AGE ESTIMATION DEPENDS ON THE DEGREE OF HARM TO THE CHILD, AND THE DEGREE OF HARM TO THE CHILD -- THIS ALL FOLDS BACK ON ITSELF -- DEPENDS ON THE AGE OF A CHILD.  SO WHAT IS HARMFUL TO A FIVE-YEAR-OLD MIGHT BE JUST FINE FOR A SEVENTEEN-YEAR-OLD.  THAT'S A LOT WRAPPED INTO THIS STATUTE.

BUT I DON'T THINK YOU'VE SHOWN ME EVERY APPLICATION.  I DON'T THINK YOU'VE SHOWN -- YOU HAVEN'T DISCUSSED AT ALL -- WHAT I THINK THE ACT WOULD ALLOW WOULD BE USING THE INFORMATION THAT THE COMPANY ALREADY HAS ABOUT AGE OF ITS USERS TO GIVE AGE ESTIMATION, AND -- BECAUSE A LOT OF THIS COULD BE -- LET'S TAKE A CARTOON, BECAUSE THAT'S CALLED OUT IN THE STATUTE AS SOMETHING THAT IS LIKELY TO BE ACCESSED BY CHILDREN.

WELL, IF WE'RE LOOKING AT A ROAD RUNNER AND WILE E. COYOTE CARTOON, WHEN THE SAFE FALLS ON WILE E. COYOTE, ONE COULD CONSIDER THAT VIOLENT.

HOWEVER, THE DEGREE OF HARM TO A FIVE-YEAR-OLD IS PROBABLY SMALL.  I'M NOT SCARRED.  I SAW IT WHEN I WAS FIVE.  AND THE DEGREE OF HARM TO A SEVENTEEN-YEAR-OLD IS NON-EXISTENT.

AND SO I -- IT SEEMS TO ME THAT THERE IS -- THERE IS A GREAT REACH OF THE AGE ESTIMATION THAT ACTUALLY DOESN'T INVOLVE SPEECH.  IT DEALS WITH WHAT'S ALREADY KNOWN TO THE COMPANY. THEY DON'T HAVE TO GET ANY VERIFICATION.  THAT'S NOT EVEN REQUIRED.

SO I DON'T THINK YOU'VE ACTUALLY MET THE NINTH CIRCUIT'S STANDARD ON AGE ESTIMATION, AND I WILL TELL YOU, I COME AT AGE ESTIMATION WITH A LITTLE BIT OF A VISCERAL REACTION TO NOT LIKING IT, BUT THAT DOESN'T MATTER.  IT'S JUST -- YOU KNOW, IT DOES BURDEN PEOPLE.

BUT UNLIKE THE TEXAS CASE, THIS STATUTE IS NOT FOCUSSED ON MATERIAL THAT IS ALREADY ILLEGAL TO PROVIDE TO CHILDREN, WHEREAS THE TEXAS STATUTE, THEY DON'T ACTUALLY CALL IT ILLEGAL, BUT I -- I MEAN, I THINK IN CALIFORNIA IT'S ILLEGAL FOR PORNOGRAPHY TO BE MADE AVAILABLE TO CHILDREN WHERE IT'S LEGAL FOR ADULTS.

SO I THINK THAT'S A BIG DIFFERENCE.

AND THE LAST THING I'LL SAY ABOUT AGE ESTIMATION -- AND I'D LIKE YOUR VIEW ON IT -- SHOULD I SIMPLY DEFER ON THIS UNTIL

THE SUPREME COURT ISSUES ITS DECISION?

I ACTUALLY THINK THAT MIGHT BE THE WISEST THING TO DO AND TO HAVE FURTHER GUIDANCE ON SOMETHING THAT -- AND I'M SURE YOU READ OR LISTENED TO THE ARGUMENT, AS WE DID, AND, YOU KNOW, MY CRYSTAL BALL IS NO BETTER THAN YOURS, BUT I KNOW THAT CERTAIN ISSUES ARE BEFORE THE COURT.

ALL RIGHT.  LET ME GO ON, AND THEN WE'RE GOING TO GET TO YOUR PART, WHICH IS WHERE WE'RE GOING TO SPEND THE REST OF THE MORNING.

I DON'T THINK THIS IS THE TIME TO REALLY EVALUATE VAGUENESS OF THE STATUTE.  I DON'T THINK I HAVE ENOUGH BRIEFNESS ON IT.

YOU RAISE IN PASSING THE AS-APPLIED CHALLENGE, BUT YOU HAVEN'T DEVELOPED THAT AT ALL.  THERE ARE FIVE LINES.  I DON'T THINK YOU'VE DONE THE ANALYSIS TO JUST TELL ME, FOR ALL THE REASONS WE SAID BEFORE, AND SO I DON'T THINK IT'S BRIEFED.

SEVERABILITY.  SO THIS IS ANOTHER ISSUE THAT I THINK IS WORTHY OF SOME DISCUSSION.  I'M NOT SURE I BUY THE FUNCTIONAL SEVERABILITY ARGUMENT, BUT THE VOLITIONAL SEVERABILITY ARGUMENT LIMITED, AS I READ YOUR BRIEF, TO THE ENJOINED DPIA PROVISIONS, WHICH CATCH UP IN THAT INJUNCTION THE NOTICE AND CURE PROVISION.

SO YOU FOCUS ON THE NOTICE AND CURE PROVISION, AND I READ THE LEGISLATIVE HISTORY THAT YOU PROVIDED TO ME.

I AGREE WITH MS. LISKA THAT THE COMMENTS ON THE FLOOR BY

THE AUTHOR ARE INTERESTING, BUT THEY'RE NOT -- THAT ALONE IS NOT ENOUGH TO BE CERTAIN OF THE LEGISLATIVE INTENT.

WHAT I'M FOCUSSING ON, THOUGH, AND I NEED -- I MAY NEED SOME MORE INFORMATION FROM YOU UNLESS I JUST MISSED IT IN THE DOCUMENTS, I THINK YOUR ARGUMENT THAT THE LEGISLATURE TWICE VOTED AND EITHER -- AND DEFEATED, ESSENTIALLY, OR DID NOT PASS THIS LAW WHEN IT DID NOT HAVE THE 90-DAY NOTICE AND CURE PROVISION IS VERY PERSUASIVE LEGISLATIVE HISTORY.

BUT IN READING THE DOCUMENTS YOU DID GIVE ME, WHICH WERE THE ANALYSTS' SUMMARIES, THERE WERE A NUMBER OF AMENDMENTS THAT WERE THEN VOTED ON, AND I COULDN'T -- WHEN THE BILL WENT INTO THE SUSPENSE FILE, I DIDN'T HAVE A COPY OF THE BILL THAT DIDN'T PASS.  I DON'T BELIEVE YOU GAVE THAT TO ME, SO I COULDN'T ACTUALLY HAVE EYES ON THAT IT DID NOT HAVE A NOTICE AND CURE PROVISION, AND I WOULD NEED TO SEE THAT.

THEN -- AND I THINK THAT WAS AUGUST 11.

ON AUGUST 22ND, YOU PROVIDE ME ANOTHER VOTE WHERE IT FAILED WITH A 45-DAY NOTICE PROVISION -- I MAY HAVE THE DATES WRONG ON THIS -- A 45-DAY NOTICE PROVISION THAT ALSO FAILED, AND THEN IT WAS AMENDED AGAIN FOR THE 90-DAY.

I WOULD NEED EACH -- THAT'S THEN THREE ITERATIONS OF THE BILL, I BELIEVE, AND I WOULD LIKE TO SEE EACH OF THOSE.  AND THOSE ARE EASY TO COME BY, BUT I -- I WENT ON WESTLAW, I COULDN'T PICK THEM UP, AND I KNEW YOU WOULD BE MORE THAN GLAD TO PROVIDE THAT TO ME.  SO I NEED THAT.

BUT I AM VERY -- I THINK THAT COULD BE ENOUGH, BUT I WANT TO HEAR MORE FROM MS. LISKA ON THAT.

SECTION 230 GENERALLY, I REALLY THINK THE ONLY PIECE -- THAT I'M INCLINED TO LOOK AT FOR SECTION 230 PREEMPTION IS THE ENFORCEMENT OF THE COMMUNITY STANDARDS.  I THINK THE COMMERCE CLAUSE IS NOT -- I DON'T THINK THAT'S A GOOD CLAIM, AND THE COPPA -- I CAN'T TELL AT THIS POINT THAT THIS ACT WOULD BE INCOMPATIBLE WITH COPPA -- WHICH IS ALL CAPITALS, C-O-P-P-A.

I THINK THAT'S ENOUGH FOR ME.

I THINK I'VE COVERED THE WATERFRONT.  I WANTED TO JUST LET YOU KNOW MY THINKING, WHERE MY QUESTIONS ARE.

I KNOW I'VE GIVEN SHORT SHRIFT, MS. KUMAR, TO SOME OF YOUR ARGUMENTS.  THAT'S AN INDICATION OF HOW I'M LOOKING AT THEM.

YOU'RE HERE TO PERSUADE ME OTHERWISE, AND I WELCOME YOUR ARGUMENT ON ANY OF THE ISSUES, BUT IN PARTICULAR THESE ISSUES THAT I'VE RAISED.

SO AS I SAID, WE REALLY HAVE ALL MORNING.  I'M GLAD TO GIVE YOU A SIGNIFICANT AMOUNT OF TIME TO MAKE YOUR INITIAL PRESENTATIONS.  I'M SURE I'LL INTERRUPT WITH QUESTIONS, BUT I WOULD LIKE TO LET YOU DO THAT.

I'M GOING TO ASK THAT YOU COME FORWARD TO THE PODIUM TO MAKE YOUR ARGUMENT, AND LET'S MAKE SURE THAT MICROPHONE IS AVAILABLE FOR YOU.

MS. KUMAR:  WHICH ONE?

THE COURT:  TIFFANY WILL SUGGEST ONE FOR YOU.

THE CLERK: THIS ONE HERE.

THE COURT: THANK YOU.

MS. KUMAR: THANK YOU, YOUR HONOR, FOR YOUR INSIGHTFUL COMMENTS, AND I WILL TRY TO ADDRESS THEM AS I GO THROUGH MY OPENING.

TIME AND AGAIN, THE STATE HAS CLAIMED THAT AB 2273 IS ABOUT PRIVACY, NOT SPEECH, BUT THE NINTH CIRCUIT DISAGREED. IT HELD THAT THE DPI REGIME, THE CENTERPIECE OF A LAW, REQUIRES BUSINESSES TO IDENTIFY --

THE COURT: COULD YOU SLOW DOWN A LITTLE BIT?

MS. KUMAR: YEAH.

THE NINTH CIRCUIT DID NOT DISTURB THIS COURT'S CONCLUSIONS AS TO THE REST OF THE LAW. INSTEAD, IT DIRECTED THE COURT TO APPLY THE ANALYSIS SET FORTH IN THE MOODY VERSUS NETCHOICE CASE, A DECISION THAT CAME DOWN AFTER THIS COURT'S RULING, BUT BEFORE THE NINTH CIRCUIT'S REVIEW.

APPLYING MOODY, THE LAW CANNOT STAND, AND I WILL TAKE YOU THROUGH THE MOODY ANALYSIS AS WE PRESENTED IT IN OUR BRIEFS.

BUT AS YOU'LL SEE, THE REST OF THE LAW IS JUST AS MUCH ABOUT CENSORSHIP AS THE DPI PROVISIONS, DEMANDING THAT COVERED SERVICES PUBLISH ONLY WHAT'S IN THE, QUOTE, BEST INTERESTS OF CHILDREN OR NOT MATERIALLY DETRIMENTAL TO THEM, JUST A COUPLE TERMS THAT MAKE THE LAW HOPELESSLY VAGUE.

AND I DO WANT TO TALK ABOUT VAGUENESS BECAUSE I DO THINK IT IS A REAL PROBLEM WITH THIS LAW, AND I CAN EXPLAIN WHY.

SHOULD THE COURT AGREE WITH ME, IT NEED NOT REACH THE REMAINING CHALLENGE ATTENTION UNDER COPPA, 230, AND THE DORMANT COMMERCE CLAUSE.

AND TO THE EXTENT THE COURT WANTS TO HEAR ABOUT THOSE ISSUES, HOWEVER, MY COLLEAGUE, DAVID GOSSETT, IS PREPARED TO TALK ABOUT THEM.

THE COURT:  THANK YOU.

MS. KUMAR:  OF COURSE, AS THE COURT ACKNOWLEDGED, WE DON'T NEED TO REACH ANY OF THIS IF YOU RULE THAT THE CURE PERIOD IS NOT SEVERABLE.

WE THINK IT'S -- YOU KNOW, WHICHEVER GROUND YOU RULE ON, THERE IS AMPLE BASIS FOR YOU TO ENJOIN ENFORCEMENT OF THE LAW AS CHALLENGED BY NETCHOICE.

SO I'LL START WITH THE COVERAGE DEFINITION ARGUMENT, AND THERE'S TWO FRAMINGS, AS YOU PICKED UP ON.  ONE IS, DOES THE COVERAGE DEFINITION ITSELF RENDER THE LAW SUBJECT TO STRICT SCRUTINY?  AND TWO IS, ARE THE INDIVIDUAL PROVISIONS, AS NARROWED, CAN THEY BE ENJOINED IF YOU DON'T RULE ON THE COVERAGE DEFINITION ARGUMENT?

SO STARTING WITH THE COVERAGE DEFINITION ARGUMENT, EVERY APPLICATION OF THE PROVISIONS IN 31(A) AND 31(B) HINGE ON THE DEFINITION OF LIKELY TO BE ACCESSED BY A CHILD.

THAT DEFINITION IDENTIFIES BUSINESSES BASED ON THE CONTENT THEY PUBLISH.  BY THEIR DESIGN ELEMENTS THAT ARE KNOWN TO BE OF INTEREST TO CHILDREN, SUCH AS GAMES, CARTOONS, AND MUSIC, DOES

THE AUDIENCE, I.E., THE RECIPIENT OF SPEECH, COMPRISE CHILDREN?

I THINK YOUR HONOR HAS MADE IT THAT FAR AND YOUR QUESTION IS, WELL, WHAT DO I DO NOW?

THE COURT:  UM-HUM.

MS. KUMAR:  THE STATE HAS IDENTIFIED NO APPLICATIONS OF 30(A)(1) -- I MEAN 30(A) OR (A)(1) OR (B) -- SORRY.  I'VE GOT MY NUMBERS WRITTEN DOWN WRONG HERE -- OF THOSE SECTIONS.

THAT DOES NOT IMPLICATE CONTENT.  WE CAN'T THINK OF ANY.

EVERYONE AGREES THAT CHILDREN ARE SPENDING ENORMOUS AMOUNTS OF TIME ONLINE, AND EVERYONE AGREES THAT TIME IS SPENT CONSUMING CONTENT, SOCIAL MEDIA, GAMES, VIDEO SHARING SITES.

PERHAPS CHILDREN ALSO SPEND TIME BUYING THINGS ONLINE, BUT THAT IS EXPRESSLY EXEMPTED FROM THE STATUTE.

THE COURT:  UM-HUM.

MS. KUMAR:  MAYBE CHILDREN -- YOU KNOW, WE WERE, YOU KNOW, SCRATCHING OUR HEADS THINKING, LIKE, WHAT POSSIBLE NON-EXPRESSIVE APPLICATION DOES THIS HAVE?  AND WE COULDN'T REALLY THINK OF ANYTHING.

THE COURT:  SO, YOU KNOW, WITH THE DPIA, IT, IN A SENSE, WAS EASY, BECAUSE THERE WAS THE PRODUCTION OF A REPORT, SO IT WAS FOR SPEECH.

AND SO THIS IS DIFFERENT, AND IT'S AS EASY A CASE AS THE DPIA WAS.  SO THE NINTH CIRCUIT WAS VERY CLEAR -- WELL, AGAIN, IT WAS SORT OF A GATEWAY ISSUE.  EVERY COVERED SERVICE MUST PREPARE THIS REPORT, AND THAT'S SPEECH, AND IT'S COMPELLED

SPEECH.  SO IT GETS STRICT SCRUTINY AND IT'S OUT.

THIS IS NOT COMPELLED SPEECH, BUT IT'S -- YOU'RE REALLY RELYING ON IT BEING CONTENT BASED UNDER THE REED CASE; ISN'T THAT CORRECT?

MS. KUMAR:  CORRECT.  YES, THAT'S RIGHT, WE DO THINK IT, AND WE THINK REYES IS A GOOD CASE FOR US AND IT DOES EXPLAIN THAT ANALYSIS.

THE REALITY IS BY HINGING APPLICATION OF THE LAW ON THIS CONTENT-BASED STANDARD, THE LAW IMPOSES A DISPROPORTIONATE BURDEN ON PUBLISHERS, PERIOD.

AND WHETHER THAT BURDEN IS SOMETHING LIKE, YOU KNOW, ENFORCING CONTENT POLICIES OR WHETHER IT'S SOMETHING LIKE GEOLOCATION, WHAT HAVE YOU, THAT -- BECAUSE THE BURDEN ONLY FALLS ON PUBLISHERS OF CONTENT THAT IS LIKELY TO APPEAL TO CHILDREN --

THE COURT:  ARE ALL COVERED SERVICES PUBLISHERS OF CONTENT?

MS. KUMAR:  I -- YES, BUT I WOULD --

THE COURT:  BECAUSE WE HAVE TO TALK ABOUT EVERY APPLICATION.

MS. KUMAR:  WELL, LET'S GO BACK -- LET'S TALK ABOUT THAT IN THE MOODY CASE, EVERY APPLICATION, RIGHT?

I DON'T -- YOU KNOW, IF THE COURT IS ENVISIONING A PROCESS WHERE IT IDENTIFIES EVERY HYPOTHETICAL POSSIBLE APPLICATION OF THE LAW, I DON'T THINK THAT'S WHAT MOODY REQUIRES, AND MOODY

DID NOT, YOU KNOW, REPRESENT A WHOLESALE CHANGE OR REJECTION --

THE COURT:  SO YOU JUST SAID FOR PUBLISHERS, THERE'S A DISPROPORTIONATE BURDEN.

MS. KUMAR:  RIGHT.

THE COURT:  SO I'M REALLY ASKING IN A MORE GENERAL CATEGORICAL SENSE, ARE THERE SERVICES COVERED BY THE LAW THAT ARE NOT PUBLISHERS?

MS. KUMAR:  WE CAN'T THINK OF VERY MANY.  ONE EXAMPLE WE COULD THINK ABOUT IS, LET'S SAY, UBER OR RIDE SHARING SERVICES.  ARGUABLY -- YOU KNOW, WE DON'T KNOW IF CHILDREN ARE USING UBER.  THAT INFORMATION IS NOT IN THE RECORD.

BUT EVEN IF WE ASSUME THAT CHILDREN ARE USING UBER, WE CAN ALSO LOGICALLY ASSUME THAT THEY SPEND VERY LITTLE TIME ON UBER, THEY'RE ORDERING A RIDE AND THEN THEY'RE GETTING IN A CAR; WHEREAS THE STATE'S DECLARATION AND THE PURPOSE OF THE LAW IS ALL FOCUSSED ON CONTENT, ON STOPPING CHILDREN FROM SEEING HARMFUL CONTENT.

THE COURT:  WELL, YOU DON'T -- I DON'T THINK IT'S FAIR TO FLIP INTO THE PURPOSE OF THE LAW WHEN WE'RE TRYING TO ANALYZE THE LAW ITSELF.  WHEN I GET TO SEVERANCE, I CAN DO THAT.

MS. KUMAR:  OKAY.

THE COURT:  BUT NOT HERE.

MS. KUMAR:  OKAY.

THE COURT:  SO I'M JUST -- SO I AGREE WITH YOU THAT

MOODY DOES NOT DIRECT THE COURTS TO HAVE AN EXHAUSTIVE LIST. THAT'S NOT POSSIBLE.

BUT YOU REALLY FLAG THE ISSUE WHEN YOU SAY -- WHEN YOU IDENTIFY PUBLISHERS.  AND I -- YOU KNOW, I THINK THAT IT MAY BE THAT IN THE GATING ANALYSIS HERE -- LET ME JUST GET THE STATUTE IN FRONT OF ME -- THAT IN DETERMINING WHETHER A COMPANY OR A SERVICE IS COVERED, THAT -- SO IT'S A BUSINESS THAT PROVIDES AN ONLINE SERVICE, SO THAT'S BEYOND PUBLISHERS, SO EVERY ONLINE SERVICE HAS TO LOOK AT THIS STATUTE, SO IT'S A SERVICE, A PRODUCT, OR FEATURE LIKELY TO BE ACCESSED BY CHILDREN.

LET'S TAKE UBER.  UBER -- I DON'T KNOW HOW HIGH THE STANDARD IS FOR LIKELIHOOD, BUT THERE'S SOME LIKELIHOOD -- SHALL TAKE THE FOLLOWING ACTIONS, AND THEN THERE ARE EXEMPTIONS.

SO IF YOU'RE SELLING A PRODUCT, YOU'RE EXEMPT.  IF YOU ARE A MEDICAL -- I THINK MEDICAL IS EXEMPT.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  BUT I DON'T KNOW THAT THESE -- IT'S NOT LIKE REYES THAT WAS LIMITED TO SOCIAL MEDIA.

MS. KUMAR:  I -- SO A COUPLE OF THINGS, YOUR HONOR. YOU KNOW, WE COULD SIT HERE AND THINK, WELL, WHAT COULD IT POSSIBLY BE?

I THINK THAT THAT'S AN INDICATION OF WHAT IT REALLY IS, RIGHT?  THE STATE HASN'T COME BACK AND SAID, WELL, YOUR HONOR, IT'S UBER, IT'S SOME OTHER SERVICE, AND THE REASON -- THERE'S A

REASON FOR THAT. THAT'S BECAUSE THIS LAW IS ALL ABOUT SPEECH, AND RESPECTFULLY, I KNOW YOU SAID WE CAN'T GO BACK TO THE PURPOSE OF LAW, BUT I THINK YOU CAN.

THE COURT: UM-HUM.

MS. KUMAR: AND THE REASON FOR THAT IS BECAUSE COURTS DON'T JUST LOOK AT THE TEXT OF THE STATUTE TO DETERMINE IF IT'S CONTENT BASED AND IMPERMISSIBLE. THEY ALSO LOOK AT THE LAW'S PURPOSE.

THE COURT: OKAY.

MS. KUMAR: AND WE DON'T REALLY -- I MEAN, FROM THE STATE, WE DON'T HAVE -- I MEAN, THE ONLY INFORMATION WE HAVE FROM THE STATE COMES IN THE FORM OF LEGISLATIVE HISTORY AS TO WHAT MIGHT BE COVERED, OR FROM THE DECLARATION OF DR. RADESKY, RIGHT? SO WE DON'T HAVE TO LOOK AT THE LEGISLATIVE HISTORY. YOU CAN LOOK AT DR. RADESKY'S DECLARATION WHICH HAS MORE THAN -- YOU KNOW, THE FIRST DECLARATION -- THE SECOND DECLARATION, THEY WERE MUCH MORE --

THE COURT: SLOW DOWN, PLEASE.

MS. KUMAR: SORRY. THE SECOND DECLARATION -- THE SUPPLEMENTAL RADESKY DECLARATION --

THE COURT: THAT'S NOT SLOWER.

MS. KUMAR: I'M SORRY.

THAT SECOND DECLARATION IS MUCH -- IT'S MUCH MORE CAREFUL, RIGHT? YOU SHOULD GO BACK TO THE FIRST DECLARATION, WHICH IS STILL IN THE RECORD AND STILL THE EVIDENCE THAT IS BEFORE THE

COURT, AND SHE MENTIONS CONTENT MORE THAN 70 TIMES, RIGHT?

AND WE HAVE GONE THROUGH, YOUR HONOR, AND GIVEN YOU CITATIONS TO THE DECLARATIONS --

THE COURT:  YES.

MS. KUMAR:  -- WHERE THAT -- WHERE WHAT SHE'S -- LIKE, SHE DOES NOT MENTION -- SHE DOESN'T MENTION UBER.  SHE DOESN'T MENTION ANYTHING ELSE.

WE STUDIED -- WE CITED A PEW RESEARCH STUDY THAT CHILDREN, WHAT THEY'RE DOING ONLINE, THEY'RE CONSUMING CONTENT BY AND LARGE, AND I DON'T THINK YOUR HONOR HAS TO THINK ABOUT WHAT ARE THE FRINGE APPLICATIONS, THE HANDFUL OF APPLICATIONS THAT MAYBE ARE NON-EXPRESSIVE?

AND I SAY THAT BECAUSE THE STANDARD IS, DO THE, YOU KNOW, IMPERMISSIBLE APPLICATIONS OF THE LAW SUBSTANTIALLY EXCEED ANY PLAINLY LEGITIMATE SWEEP?

SO EVEN IF WE SAY A SMALL FRACTION --

THE COURT:  AND THAT'S FINE, BECAUSE IT IS -- I NEED -- SO I THINK MS. LISKA RAISES THIS IN HER OPPOSITION, TOO.

IT'S NOT HER BURDEN.  IT'S YOURS.  IT'S YOUR BURDEN TO SHOW THE FULL SWEEP OF THE LAW, AND THEN TO IDENTIFY THE IMPERMISSIBLE PORTION, AND TO THEN DETERMINE WHETHER THAT SUBSTANTIALLY OUTWEIGHS THE GENERAL SWEEP OF THE LAW.

SO YOU NEED TO SET IT UP, AND I THINK YOU HAVE.

AND I -- AND, YOU KNOW, IT'S -- YOU HAVE GENERALLY SAID,

AND I THINK YOUR IDENTITY -- IDENTIFICATION OF ALL THOSE PARAGRAPHS IN THE RADESKY DECLARATION MAKE A GOOD POINT.

SO LET'S MOVE ON FROM THAT.

MS. KUMAR:  OKAY.  WELL, THE OTHER THING I WOULD SAY, YOUR HONOR, IS YOU CAN LOOK AT THE STATUTORY TEXT AND THE EXCLUSIONS, YOU KNOW, IT'S NOT JUST --

THE COURT:  YES.

MS. KUMAR:  -- PRODUCTS OR HEALTH CARE, IT'S ALSO TELECOM SERVICE, BROADBAND SERVICE.

I THINK IT REFLECTS A DELIBERATE ISOLATION OF PUBLISHERS, AND I THINK -- AND SO I THINK THAT IT'S NOT -- YOU DON'T HAVE TO -- I MEAN, I DON'T EVEN -- YOU'RE RIGHT, IT IS OUR BURDEN TO SHOW THE APPLICATIONS OF THE STATUTE, AND WE'VE DONE THE BEST THAT WE CAN, AND WE'VE EVEN POSITED FOR THE STATE A NON-EXPRESSIVE APPLICATION.

IT'S NOT THE STATE'S JOB TO PROVE IT, BUT CERTAINLY THE STATE COULD COME FORWARD AND SAY, WELL, HERE ARE THE OTHER MANY APPLICATIONS OF THE LAW THAT HAVE NOTHING TO DO WITH EXPRESSION.

THE STATE HASN'T DONE IT, BECAUSE THERE ARE NONE.

SO TURNING TO THE LEVEL OF SCRUTINY, BECAUSE THE -- BECAUSE ALL THOSE PROVISIONS ARE TRIGGERED BY A CONTENT BASED DEFINITION, OUR ARGUMENT IS THAT THEY'RE ALL SUBJECT TO STRICT SCRUTINY AND THAT THEY CAN'T SURVIVE STRICT SCRUTINY.

DO YOU HAVE TO GO THROUGH EACH PROVISION AND ANALYZE?  I

DON'T KNOW THAT MOODY ANSWERS THAT QUESTION, AND I THINK THAT NO MATTER WHAT YOU DO, THERE -- STRICT SCRUTINY IS NOT SATISFIED.

AND I WILL ALSO SAY, YOUR HONOR, I HEARD YOU SAY THIS CASE, YOU KNOW, RISES AND FALLS WITH THE STANDARD THAT APPLIES.

I DON'T THINK IT DOES.  AND I SAY THAT BECAUSE I DON'T THINK INTERMEDIATE SCRUTINY --

THE COURT:  WELL, I DID RULE LAST TIME THAT EVEN UNDER INTERMEDIATE SCRUTINY --

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  -- THE STATE HAD NOT MET ITS BURDEN.  I CERTAINLY DID.

MS. KUMAR:  YEAH.  AND I THINK YOU COULD MAKE THE SAME RULING HERE.

SO WE TALKED LAST TIME I WAS HERE ABOUT WHAT IS THE STATE'S INTEREST?  THE STATE'S -- I THINK WE'RE CLEAR FROM THE CASES, LIKE BROWN, THAT THE STATE DOESN'T ACTUALLY HAVE AN INTEREST IN LIMITING MINORS FROM SEEING PROTECTED SPEECH.

THE COURT:  IT'S -- YOU KNOW, I STRUGGLE WITH A STATUTE LIKE THIS WHERE I THINK IT'S FAIR TO ASSUME THAT ALL OF THE SPEECH IS LEGAL.  CHILDREN ARE LEGALLY ENTITLED TO SEE THIS SPEECH.

I DON'T THINK THIS STATUTE IS ABOUT PORNOGRAPHY, AND I DON'T THINK THIS STATUTE IS ABOUT -- WELL, IT'S NOT ABOUT PRODUCTS.  SO THERE ARE LOTS OF PRODUCTS KIDS CAN'T BUY, BUT

THIS EXEMPTS THE PURCHASE OF PRODUCTS, SO ALCOHOL, DRUGS, ALL OF THAT.

BUT, YOU KNOW, I COMMENTED IN MY FIRST ORDER -- AND YOU RAISE THE *NEW YORK TIMES* AMICUS BRIEF.  YOU REFERENCE IT IN YOUR PAPERS.

IF A NEWSPAPER IS PUBLISHING AN ARTICLE ABOUT THE HAMAS ISRAELI WAR AND SHOWS PHOTOGRAPHS OF THE DEVASTATION AND THE DEATH TOLL, IT'S REASONABLE TO SAY THAT'S HARMFUL -- LIKELY TO BE HARMFUL TO MINORS.  IT'S LEGAL.  IT'S LEGAL.

AND I GUESS MY -- AND SO I -- I'M REALLY TROUBLED BY THE BREADTH OF THIS STATUTE FOR MATERIAL THAT IS LEGAL FOR CHILDREN TO SEE AT ANY AGE.

MS. KUMAR:  I THINK THAT'S RIGHT.

AND I THINK THAT IS ANOTHER REASON, OR ONE REASON YOUR HONOR MENTIONED THAT THE PAXTON FREE SPEECH COALITION CASE IS -- I DON'T THINK YOU NEED TO WAIT FOR IT.

THE COURT:  YEAH.

MS. KUMAR:  BECAUSE THAT CASE IS ABOUT PORNOGRAPHY WEBSITES.

THE COURT:  RIGHT.

MS. KUMAR:  AND THAT WAS CLEAR FROM THE ARGUMENT WHEN THERE WAS A LOT OF CONVERSATION ABOUT PORNOGRAPHY.

THE COURT:  YES, THERE WAS A LOT.  THERE WAS A LOT. I KNOW THAT.

BUT THE COURT SEEMED INTERESTED -- QUESTIONED WHETHER THEY

SHOULD MAKE A MORE GENERAL RULING THAT APPLIES MORE BROADLY. AND IT'S -- I -- IN FACT, IN MOST CASES THE COURT WOULD MAKE A NARROWER RULING AND NOT A BROADER ONE BECAUSE THEY DON'T HAVE THE FACTS BEFORE THEM.

MS. KUMAR:  RIGHT.  AND I THINK WHAT WAS TELLING ABOUT THAT ARGUMENT WAS THAT THERE WAS NO -- NOBODY SAID THE FIFTH CIRCUIT GOT IT RIGHT.  NOBODY SAID RATIONAL BASIS REVIEW IS THE RIGHT STANDARD.  THEY ALL AGREE THAT STRICT SCRUTINY WAS THE RIGHT STANDARD.

THE COURT:  UM-HUM.

MS. KUMAR:  AND SO WHILE THE COURT WAS MUSING ABOUT AGE VERIFICATION, AGE ESTIMATION, YOU KNOW, IT'S CLEAR ONE THING THEY'RE GOING TO DO IS TELL THE FIFTH CIRCUIT, YOU SHOULD HAVE APPLIED STRICT SCRUTINY.

NOW, IS THERE A DILUTED VERSION OF STRICT SCRUTINY THEY MIGHT -- I DON'T -- IT SEEMS UNLIKELY TO ME.  OF COURSE WE'RE ALL READING TEA LEAVES HERE.  IT SEEMS UNLIKELY TO ME.  THEY'RE GOING TO REMAND AND SAY, YOU APPLIED THE WRONG STANDARD, AND THE RIGHT STANDARD, HOWEVER, IS MET, SO YOU CAN GO.

AND SO, YOU KNOW, I DON'T THINK THAT CASE IS NECESSARILY GOING TO IMPLICATE THE ISSUES IN THIS CASE.

SO AS I WAS SAYING, YOU KNOW, THE CONTENT IS BY AND LARGE PROTECTED.  I THINK WE HAVE A PEW STUDY THAT TALKED ABOUT LESS THAN 1 PERCENT OF --

THE COURT:  YES.

MS. KUMAR:  -- YOU KNOW, CONTENT ON SERVICES CHILDREN USE IS UNPROTECTED.

SO TURNING TO, YOU KNOW, THE -- I WOULD SAY THAT THERE'S NO LEGITIMATE INTEREST AT THE OUTSET, OUT OF THE GATE.  YOU CAN RULE ON THAT BASIS THAT SCRUTINY IS NOT MET.

AND YOU CAN ALSO LOOK AT THE STUDIES THAT DR. RADESKY HAS CITED AND THE DECLARATION OF DR. FERGUSON -- BY THE WAY, I WAS PUZZLED WHY DR. RADESKY DIDN'T ACTUALLY DISCUSS DR. FERGUSON'S DECLARATION AND EXPLAIN WHAT WAS WRONG WITH IT.

THE COURT:  UM-HUM.

MS. KUMAR:  BUT JUST TO GIVE YOU A FEW EXAMPLES, THE STUDIES SHOW CORRELATION, NOT CAUSATION, RIGHT?  SO, FOR EXAMPLE, DEPRESSION MIGHT BE ASSOCIATED WITH INCREASED SOCIAL MEDIA USE, BUT IS THAT BECAUSE DEPRESSION IS COMMON AMONG LONELY KIDS WHO ARE GOING TO BE MORE LIKELY TO GO ON SOCIAL MEDIA TO MAKE CONNECTIONS?

SIMILARLY, THE STUDIES ON SLEEP AND SOCIAL MEDIA USE, WE KNOW THAT KIDS WHO ARE OLDER -- MY 12 YEAR OLD IS STARTING TO DO IT, STARTING TO SLEEP IN AND HER CIRCADIAN RHYTHMS HAVE SHIFTED.  AND THAT'S WHY, WHEN SOUTH KOREA HAD A SHUT DOWN LAW OF, I THINK IT WAS, I DON'T KNOW IF IT WAS GAMING OR DEVICES AFTER A CERTAIN PERIOD OF TIME, THEY ENDED UP GETTING RID OF IT.  WHY?  BECAUSE IT WASN'T LEADING TO MORE SLEEP.  MAYBE IT WASN'T LEADING TO MORE SLEEP BECAUSE KIDS WERE GOING TO BE AWAKE ANYWAYS.

THE COURT:  YEAH.

MS. KUMAR:  SO I THINK -- AND EVEN UNDER INTERMEDIATE SCRUTINY, YOU KNOW, YOU HAVE TO CONSIDER THAT.

THE COURT:  SO I -- IT WAS INTERESTING TO ME THAT THE NINTH CIRCUIT, IN EVALUATING THE DPIA, DETERMINED THAT STRICT SCRUTINY HAD TO BE APPLIED, RECOGNIZING THAT IT WAS CAUTIOUS FOR ME TO APPLY A LOWER STANDARD, BUT MAKING IT CLEAR THAT IT WAS -- THAT WAS INCORRECT.

DO YOU THINK THAT THAT WAS THE NINTH CIRCUIT AS ACTUALLY SAYING THAT STRICT SCRUTINY APPLIES TO EVERYTHING IN THIS STATUTE IF SPEECH AND EXPRESSION ARE IMPLICATED?

MS. KUMAR:  I THINK -- I DON'T THINK THE COURT REACHED THAT CONCLUSION, BUT I THINK IT WOULD REACH THAT CONCLUSION, BECAUSE THE REASON FOR, YOU KNOW, REMANDING TO THIS COURT WAS TO CONSIDER HOW MANY OF THE APPLICATIONS ARE REGULATIONS OF EXPRESSION VERSUS NOT.

IT WAS NOT TO REDETERMINE WHETHER -- YOU KNOW, WHETHER IT'S STRICT OR INTERMEDIATE SCRUTINY.

BUT I UNDERSTAND WHY YOUR HONOR, YOU KNOW, APPLIED THE INTERMEDIATE SCRUTINY STANDARD, AND IT IS A VERY COMMON THING FOR COURTS TO DO.

THE COURT:  AT A PRELIMINARY INJUNCTION, IT'S VERY COMMON.

MS. KUMAR:  YEAH.

THE COURT:  AND, YOU KNOW, SO I MIGHT -- AND I MIGHT

EVEN DO THAT AGAIN.

MS. KUMAR:  AND I WOULDN'T FAULT YOU FOR THAT.

THE COURT:  YEAH.

MS. KUMAR:  YOU KNOW, I THINK IT -- YOU KNOW, I DON'T THINK INTERMEDIATE SCRUTINY HAS BEEN MET HERE, AND THAT'S JUST, ARE THE HARMS REAL?

THERE'S STILL THE REST OF THE SCRUTINY TEST, INTERMEDIATE OR STRICT.

THE COURT:  RIGHT.

MS. KUMAR:  SO, YOU KNOW, ARE THE HARMS ACTUALLY ALLEVIATED?  SO ONE OF THE MAIN HARMS THAT THE STATE HAS IDENTIFIED IS THAT THERE'S TOO MUCH SCREEN TIME, KIDS ARE SPENDING TOO MUCH TIME ON THEIR -- CONSUMING CONTENT.

AND SO, YOU KNOW, NATURALLY THE, THE REACTION OF DR. RADESKY IS, WELL, LET'S DO -- LET'S TAKE AWAY THE THINGS THAT MAKE THEM ENGAGE IN MORE TIME, LIKE NOTIFICATIONS OR WHAT HAVE YOU.

BUT THE REALITY IS, THAT'S A VERY CONCLUSORY -- I MEAN, I THINK IN -- I THINK SHE HAD, LIKE, THREE PARAGRAPHS OF OPINIONS AFTER SETTING FORTH THE FACTS.

BUT THE REALITY IS, I CAN THINK OF LOTS OF EXAMPLES OF WHEN TAKING THESE FEATURES AWAY WOULD ACTUALLY LEAD TO INCREASED SCREEN TIME.  SO, FOR EXAMPLE, A BOOK IS SET TO BE RELEASED ON A SPECIFIED DAY.  A CHILD CAN EITHER RECEIVE A NOTIFICATION WHEN IT'S AVAILABLE, OR THE CHILD COULD, WITHOUT

NOTIFICATIONS, HIT REFRESH ON THE BROWSER UNTIL SHE SEES IT. THAT'S ONE EXAMPLE.

TAKE ANOTHER EXAMPLE. A CHILD IS RESEARCHING THE UKRAINE CONFLICT FOR A SCHOOL ESSAY. ORDINARILY THE CHILD WOULD SEE RECOMMENDATIONS FOR SPECIFIC RELATED CONTENT. WITHOUT THOSE RECOMMENDATIONS, THE CHILD WOULD HAVE TO SPEND MORE TIME ONLINE LOOKING FOR MORE SOURCES.

SO IT'S NOT OBVIOUS TO ME, AND I THINK DR. FERGUSON, YOU KNOW, REENFORCES THIS, THAT IT'S AS SIMPLE AS ONLINE CONTENT HARMS CHILDREN, YOU KNOW, WE ENCOURAGE THEM TO BE ON -- YOU KNOW, NETCHOICE'S MEMBERS ENCOURAGE THEM TO BE ONLINE TOO MUCH, AND WE SHOULD TAKE AWAY THE FEATURES THAT, YOU KNOW, WE THINK, WE SURMISE ARE WHAT ARE LEADING TO THE ALLEGED PROBLEM.

AND EVEN IF YOU GET THROUGH ALL OF THAT, THERE'S A TAILORING PROBLEM, AND THERE DOES HAVE TO BE SOME TAILORING. IT'S NOT INTERMEDIATE SCRUTINY, IT'S NOT RATIONAL BASIS, IT'S NOT A FREE-FOR-ALL. YOU CAN'T DO WHATEVER YOU WANT. THERE HAS TO BE SOME TAILORING.

AND WHAT COULD BE MORE NARROWLY TAILORED?

WELL, THE NINTH CIRCUIT GAVE US SOME EXAMPLES. THE NINTH CIRCUIT SAID YOU CAN INCENTIVIZE COMPANIES TO OFFER VOLUNTARY CONTENT FILTERS OR APPLICATION BLOCKERS, EDUCATE FAMILIES ABOUT THEM, AND RELY ON EXISTING LAW.

IT IS NO ANSWER THAT EXISTING LAW IS NOT ENFORCED, RIGHT? IT SHOULD BE ENFORCED.

NOR IS AN ANSWER TO SAY THAT PARENTS OR TEENS WON'T USE THE TOOLS.  IN FACT, DR. RADESKY, IN HER SUPPLEMENTAL JURISDICTION -- SUPPLEMENTAL DECLARATION ADMITS, WE DON'T KNOW WHETHER THESE MEASURES -- I'M QUOTING.  WE DON'T KNOW WHETHER THESE MEASURES ACTUALLY MITIGATE HARMS.

AND WHY IS THAT?  THAT'S BECAUSE THE GOVERNMENT IS NOT OVERSEEING IT.

THAT CAN'T -- THAT CAN'T POSSIBLY BE THE STANDARD THAT WE FIND ACCEPTABLE, FOR THE GOVERNMENT TO BE LOOKING OVER OUR SHOULDERS AS TO WHAT CONTENT WE'RE SEEING OR NOT SEEING.

THE COURT:  IT'S INTERESTING, WHEN YOU LIST THE THINGS THAT THE NINTH CIRCUIT SUGGESTS COULD BE MORE NARROWLY TAILORED REMEDIES, NOTICE AND CURE WOULD JUMP RIGHT OUT THERE, WOULDN'T IT?

MS. KUMAR:  YES, IT SURE WOULD.

AND ALL OF THESE ALTERNATIVES THAT THE NINTH CIRCUIT POSITED ARE LESS RESTRICTIVE ALTERNATIVES FOR THE REST OF THE LAW, TOO, AND THAT'S WHY I THINK, YOU KNOW, WE -- YOU'RE ENGAGED IN THE RIGHT INQUIRY, WHICH IS, WHAT ARE THE APPLICATIONS?  WHAT ARE THE POSSIBLE NON-EXPRESSIVE APPLICATIONS?

AND I -- IT CAN'T BE THE CASE THAT A PLAINTIFF WHO IS UNABLE TO IDENTIFY NON-EXPRESSIVE APPLICATIONS --

THE COURT:  I GET THAT.

MS. KUMAR:  OKAY.

AND SO IN OUR VIEW, BECAUSE THE STATE HAS FAILED TO SHOW THAT ANY APPLICATION OF 31(A) AND 31(B) SATISFIES STRICT OR EVEN INTERMEDIATE SCRUTINY, ALL APPLICATIONS, OR NEARLY ALL OF THEM, ARE IMPERMISSIBLE.

UNDER MOODY THERE IS NO OR VERY LITTLE PLAINLY LEGITIMATE SWEEP, AND THAT CAN BE THE END OF YOUR INQUIRY ALTOGETHER.

BUT IF THE COURT DISAGREES, THE COURT CAN MOVE ON TO THE NARROW INDIVIDUAL PROVISION CHALLENGES.

FOR THESE CHALLENGES, NETCHOICE HAS ISOLATED THE APPLICATIONS THAT -- THE ONLY APPLICATIONS -- ONLY THE APPLICATIONS THAT ARE ALL IMPERMISSIBLE.  IN OTHER WORDS, UNDER THE MOODY ANALYSIS, THE NUMERATOR, WHAT WE CHALLENGE, AND THE DENOMINATOR, THE RELEVANT SCOPE, ARE THE SAME, SUCH THAT THERE IS NO LEGITIMATE SWEEP.

THE COURT:  SO THIS IS WHERE I THINK YOUR BRIEFING FALLS SHORT, AND LET ME JUST SAY THAT WHEN I READ YOUR BRIEFING, I DO IT THROUGH THE LENS OF HOW I COULD DRAFT AN ENFORCEABLE INJUNCTION, AND YOU DON'T GIVE ME THAT.

AND YOUR PROPOSED ORDER DOESN'T GIVE ME THAT LANGUAGE, EITHER.

MS. KUMAR:  I THINK IT DOES.  BUT EVEN IF IT DOES NOT --

THE COURT:  I THINK -- BECAUSE I THINK YOUR PROPOSED INJUNCTION ASSUMES YOU'RE GOING TO WIN THE COVERAGE DEFINITION, AND YOU DID NOT GIVE ME LANGUAGE --

MS. KUMAR:  OH, I SEE, YEAH.

THE COURT:  -- IF YOU ONLY WIN HERE.  SO THERE'S ONLY SO MUCH YOU CAN DO IN A PROPOSED ORDER.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  BUT I DON'T HAVE IT.

MS. KUMAR:  WELL, I'M HAPPY TO PROVIDE IT.  BUT I WOULD -- IN LIEU OF THAT, I WOULD DIRECT THE COURT TO THE PRAYER FOR RELIEF IN THE AMENDED COMPLAINT.

THE COURT:  AND I DID LOOK AT THAT, AND BECAUSE YOU -- BECAUSE YOU DID DIRECT ME THERE AT THE GET-GO.

LET ME -- BUT I WAS NOT -- LET'S SEE HERE.

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO I THINK THAT YOUR PRAYER FOR RELIEF IS WHAT THE JOHN DOE #1 COURT SAID WAS THE TRADITIONAL AS-APPLIED STANDARD.

SO I'M LOOKING AT PRAYER FOR RELIEF NUMBER 5 ON 31(A)(9).  YOU SAY -- YOU'RE ASKING FOR RELIEF TO THE EXTENT THAT SECTION APPLIES TO COVERED SERVICES, CONTENT POLICIES, AND COMMUNITY STANDARDS.

THAT'S THE ONE THAT I THINK I MIGHT BE ABLE TO ENFORCE.

BUT THEN WE GO ON TO 6, WHICH IS YOUR -- THE INDIVIDUAL PROVISIONS TO THE EXTENT THOSE SECTIONS APPLY TO COVERED SERVICES, USE OF PERSONAL INFORMATION TO PUBLISH CONTENT, OR MAKE INFORMATION AVAILABLE AND VIOLATE THE FIRST AND FOURTEENTH AMENDMENT.

I THINK THAT'S AS APPLIED.  YOU'RE TALKING ABOUT -- I DON'T KNOW HOW -- IF I WERE TO WRITE THAT, THERE'S NOTHING TO ENFORCE.

MS. KUMAR:  I DON'T THINK THAT'S RIGHT.  I MEAN, WE CAN TALK ABOUT HOW DO YOU -- HOW DOES YOUR HONOR CRAFT AN INJUNCTION.

THE COURT:  SO IN JOHN DOE #1, THE INJUNCTION, IF IT HAD BEEN SUCCESSFUL, WOULD HAVE BEEN TO ENJOIN DISCLOSURE UNDER THE PUBLIC RECORDS ACT OF PETITIONS FOR BALLOT -- SIGNATURES OF BALLOT PETITIONS, OR THE WHOLE PETITION PERHAPS.  THAT WAS VERY SPECIFIC.

THIS IS -- I DON'T KNOW WHEN THERE'S GOING TO BE A USE OF PERSONAL INFORMATION TO PUBLISH CONTENT.  IT MIGHT BE, IT MIGHT NOT BE.

I DON'T KNOW WHEN THERE'S GOING TO BE A USE OF PERSONAL INFORMATION TO MAKE INFORMATION AVAILABLE.

THAT'S THE THING.  I THINK IT'S -- WHEN I DO IT, I GET TO DO IT.  BUT I CAN'T IN TERMS OF A COVERED SERVICE.

AND I THINK THIS NECESSARILY GETS DOWN TO THE MANNER IN WHICH EACH OF YOUR MEMBERS ACTUALLY UTILIZES OR IS RESTRICTED BY THE APPLICATION OF THE LAW, AND I THINK THAT IS NOT -- I THINK THAT'S THE DIVISION THE SUPREME COURT MADE IN JOHN DOE #1 IS THAT THIS -- YOUR PRAYERS FOR RELIEF REALLY DISSEMBLE INTO THE AS-APPLIED STANDARD, WHICH YOU HAVE NOT MADE OUT.

I DO THINK ON THE POLICY -- I THINK THERE'S A LOT TO SAY

ABOUT THE CONTENT POLICIES AND COMMUNITY STANDARDS PORTION.

THAT'S THE ONE I'M LOOKING AT.

SO THAT'S A PROBLEM THAT I HAVE IS THAT I -- AND I THINK THE ATTORNEY GENERAL IS CORRECT THAT I DON'T ACTUALLY KNOW WHAT YOU'RE TALKING ABOUT THERE.

MS. KUMAR:  SO LET ME TRY TO PERSUADE YOU OTHERWISE.

THE COURT:  OKAY.  THANK YOU.

MS. KUMAR:  SO, YOU KNOW, I THINK THAT -- YOU KNOW, THE ATTORNEY GENERAL'S POSITION IS YOU'RE TRYING TO SHORT CIRCUIT MOODY, AND THE REALITY IS THESE CHALLENGES TO SPECIFIC PROVISIONS OF LAWS AS APPLIED TO EVERYBODY ARE ROUTINE.

THE COURT:  UM-HUM.

MS. KUMAR:  SO JOHN DOE VERSUS REED IS ONE EXAMPLE. IT DIDN'T GO -- IT DOESN'T -- YOU KNOW, SCRUTINY WAS MET THERE.

BUT ANOTHER EXAMPLE IS BONTA VERSUS AMERICANS FOR PROSPERITY WHERE THERE WAS AN INJUNCTION, AND IT WASN'T JUST AS TO THE PLAINTIFFS BEFORE THEM.

AND MAYBE YOU AND I ARE NOT USING "AS APPLIED" IN THE SAME WAY.  I DO FIND THAT TERM CONFUSING.

THE COURT:  IT -- SO IT HAS BEEN A LITTLE MADDENING WHEN THE COURT TALKS ABOUT A FACIAL CHALLENGE AS APPLIED TO THESE PROVISIONS AND THEY USE THAT SAME TERM.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  VERY DIFFICULT, YES.

MS. KUMAR:  I TOTALLY AGREE WITH YOU.

BUT THE FACT THAT WE'RE TALKING ABOUT THIS MEANS THAT YOU AND I ARE ON THE SAME PAGE.

THE COURT:  YES.

MS. KUMAR:  OKAY, SO THAT YOU CAN CHALLENGE -- SO IN THE, I THINK THE JOHN DOE -- ONE OF THE TWO -- I THINK, YEAH, THE JOHN DOE, THE REED CASE, THAT ONE WAS ABOUT WASHINGTON'S PUBLIC RECORDS ACT, RIGHT?

THE COURT:  YES.

MS. KUMAR:  AND THE PLAINTIFFS, RIGHTFULLY, WERE NOT LIKE, WE WANT YOU TO INVALIDATE THE ENTIRE PUBLIC RECORDS ACT.

THE COURT:  SURE.

MS. KUMAR:  THEY SAID, JUST THIS ONE PART, BUT WE WANT THAT RELIEF NOT JUST APPLIED TO US, BUT TO EVERYBODY ELSE.

THE COURT:  AND THE SUPREME COURT SAID WHEN YOU LOOK AT THE FULL APPLICATION OF THE LAW, TAX PETITIONS, WHO CARES? BUDGET PETITIONS, WHO CARES?

AND THEY SAID, WHAT YOU'RE REALLY SAYING IS PETITIONS ON CONTROVERSIAL SOCIAL ISSUES CAN CAUSE HARM.

AND SO THEY -- THEY JUST -- THEY KNOCKED THEM OUT, EVEN THOUGH THEY ALLOWED FOR THAT TARGETED FACIAL CONSIDERATION. THEY SAID THAT THE PLAINTIFFS THERE HAD NOT MET THEIR BURDEN OF SHOWING THE FULL APPLICATION OF THE LAW AND, IN FACT, IT WAS AS APPLIED TO THEM ON THE PARTICULAR PETITION.

AND THAT'S WHERE I THINK -- I THINK YOU HAVE NOT MADE THAT -- I THINK YOU'VE FALLEN INTO A SIMILAR TRAP, MAYBE NOT

QUITE AS CLEARLY AS IN JOHN DOE #1.

MS. KUMAR:  WELL, LET ME GIVE YOU ANOTHER SUPREME COURT CASE THAT MAYBE -- THAT AT LEAST HELPS US UNDERSTAND THAT -- THE STATE HAS ALSO SAID THESE ARE AMORPHOUS, AND YOU HAVE SUGGESTED ALSO THAT THESE ARE AMORPHOUS.

THE COURT:  YES.

MS. KUMAR:  BUT THE CASE VERSUS BROCKETT VERSUS SPOKANE ARCADE, THAT WAS A WASHINGTON -- AND THAT'S A U.S. SUPREME COURT CASE.  THAT WAS A WASHINGTON STATUTE THAT REGULATED THOSE DEALING OBSCENITY, WHICH INCLUDED LUST AND THE DEFINITION OF PRURIENT.

NOW, THIS CASE WAS AWHILE AGO, SO THE COURT HELD IT WAS INVALID INSOFAR AS THE WORD "LUST" REFERRED TO NORMAL INTEREST IN SEX, REJECTING CLAIMS THAT IT COULD NOT BE DEFINED AND LISTING A SET OF CASES.

SO I WOULD URGE YOUR HONOR TO READ THAT CASE AND LOOK AT THE CASES THAT IT ALSO CITES, AND WE'RE HAPPY TO PROVIDE SUPPLEMENTAL BRIEFING ON THIS IF YOU WOULD LIKE.

BUT THIS IS A ROUTINE THING.  SO IN THE AFP CASE VERSUS BONTA, THE APPLICATION -- THE INJUNCTION WAS A FACIAL INJUNCTION AS APPLIED TO CERTAIN TAX FORMS, AND SO IT WAS FOR EVERYBODY, RIGHT?

THE COURT:  UM-HUM.

MS. KUMAR:  I THINK WHAT I HEAR YOU SAYING IS, WELL, GEE, YOU KNOW -- AND THAT CASE DID HOLD THAT IN EVERY

APPLICATION, RIGHT, THERE WAS A PROBLEM.

WHAT I HEAR YOU SAYING IS MAYBE THAT'S NOT TRUE HERE.

BUT THAT'S THE PURPOSE OF THE NARROW CHALLENGES.  THAT'S WHAT -- SO, FOR EXAMPLE -- LET'S JUST TAKE THE CONTENT POLICY EXAMPLE.

THE TEXT OF THE STATUTE IS VERY BROAD.  IT SAYS ALL POLICIES, PRIVACY POLICIES, CONTENT POLICIES, ALL POLICIES.

AND WE HAVE TAKEN THAT CHALLENGE AND WE HAVE MADE IT NARROWER TO ONLY APPLY TO CONTENT MODERATION POLICIES.

AND TO THE EXTENT YOUR HONOR IS CONCERNED ABOUT, WELL, WHAT DOES THAT MEAN, I THINK WE JUST GO TO MOODY, RIGHT?  MOODY SAYS CONTENT MODERATION POLICIES ARE RULES THAT LIST SUBJECTS OR MESSAGES THAT THE SERVICE PROHIBITS OR DISCOURAGES, AND WHICH LEAD THEM TO REMOVE, DISFAVOR, OR LABEL POSTS BASED ON THEIR CONTENT.  OKAY?

THE COURT:  UM-HUM, YES.  THIS ONE I THINK HAS LEGS FOR -- BUT I THINK UNDER SECTION 230 AS WELL.

MS. KUMAR:  OKAY.

THE COURT:  SO THIS IS THE ONE -- AND THIS IS -- I THINK THIS IS A BIG PART OF YOUR CHALLENGE.  I THINK THIS IS AN IMPORTANT PART OF YOUR CHALLENGE.

AND, YOU KNOW, I THINK IN YOUR REPLY BRIEF, YOU ALSO CITE SOME CASES THAT THESE CONTENT POLICY AND COMMUNITY STANDARDS ARE NOT CONTRACTUAL OBLIGATIONS --

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  -- WHICH I THOUGHT WAS HELPFUL.

MS. KUMAR:  YEAH.  AND TO THE EXTENT THAT THE STATE IS CONCERNED ABOUT ENFORCEABLE PROMISES, THERE IS LAW TO -- THAT ALLOWS THOSE TO BE ENFORCED.

SO LET ME --

THE COURT:  OKAY.  SO LET'S MOVE OFF --

MS. KUMAR:  YES.

THE COURT:  -- OF POLICY ENFORCEMENT.

MS. KUMAR:  YEP.

THE COURT:  BECAUSE, I MEAN, MS. LISKA MAY PERSUADE ME OTHERWISE, BUT I THINK YOU'VE GONE AS FAR AS YOU NEED TO.

LET'S LOOK AT YOUR PARAGRAPH NUMBER 6 REGARDING (1) THROUGH (4), B(1)-(4).  WELL, I GUESS (B)(1), (2), AND (4).

MS. KUMAR:  SORRY.  ONE SECOND.

THE COURT:  THIS IS TO THE EXTENT THE SECTIONS APPLY TO COVERED SERVICES' USE OF PERSONAL INFORMATION TO PUBLISH CONTENT OR MAKE INFORMATION AVAILABLE.

SO I'M NOT SURE I KNOW WHAT THAT MEANS.

THIS IS A -- I GUESS THIS IS A SPECIFIC APPLICATION OF THE LAW.  IT'S A -- BUT IT'S -- BUT THE LAW -- ALL RIGHT.  LET'S --

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO LET'S PICK ONE OF THESE.  THIS IS FOR (1), (2), AND (4).

MS. KUMAR:  UM-HUM.

THE COURT:  SO NUMBER (2), PROFILE A CHILD BY DEFAULT

UNLESS BOTH OF THE FOLLOWING CRITERION ARE MET.

AND SO YOU WANT TO ENJOIN THE USE OF PERSONAL INFORMATION TO PUBLISH CONTENT OR MAKE INFORMATION AVAILABLE.

WELL, PROFILING A CHILD IS USING INFORMATION, ISN'T IT?

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  SO WHY ARE -- WHAT IS IT YOU'RE EXEMPTING FROM THIS CHALLENGE I GUESS IS WHAT I'M REALLY WONDERING? YOU'RE SAYING THIS IS SPECIFIC, TARGETED.  BUT I DON'T --

MS. KUMAR:  GIVE ME ONE -- GIVE ME A MINUTE TO THINK THROUGH THAT QUESTION.

(PAUSE IN PROCEEDINGS.)

MS. KUMAR:  WELL, LET'S -- MAYBE WE SHOULD LOOK AT THE DEFINITION OF PROFILING.

THE COURT:  IS THAT IN SECTION 30?

MS. KUMAR:  I BELIEVE IT IS.

THE COURT:  PROFILING, YES, NUMBER 6.

MS. KUMAR:  OKAY.  PROFILING MEANS ANY FORM OF AUTOMATED PROCESSING OF PERSONAL INFORMATION -- THAT USES PERSONAL INFORMATION TO EVALUATE CERTAIN ASPECTS RELATING TO A NATURAL PERSON.

THE COURT:  SO YOU'RE NOT TRYING TO NARROW IT AT ALL, BECAUSE PROFILING IS USING PERSONAL INFORMATION.

YOU'RE TRYING TO ENJOIN THE USE OF PERSONAL INFORMATION.

MS. KUMAR:  NO, NOT THE USE OF INFORMATION FOR ANY PURPOSE.

THE COURT:  OKAY.

MS. KUMAR:  THE USE OF INFORMATION TO, YOU KNOW, I BELIEVE THE LANGUAGE IS PUBLISH AND ORGANIZE CONTENT.

THE COURT:  I SEE.

MS. KUMAR:  SO IF THERE'S SOME HYPOTHETICAL -- I DON'T EVEN KNOW -- I DON'T KNOW, BECAUSE I WILL TELL YOU, I THINK, AGAIN, THAT VAGUENESS IS A FUNDAMENTAL PROBLEM WITH THIS LAW, OKAY?  WHAT DOES IT MEAN TO -- FOR PROFILING TO BE IN THE BEST INTERESTS OF CHILDREN?

THE COURT:  OKAY.

MS. KUMAR:  OKAY?  SO LET'S JUST, YOU KNOW, WHAT WE DO KNOW IS WE KNOW --

THE COURT:  SO, YOU KNOW, I HAVE NO INTENTION OF TAKING THE FIRMLY EMBEDDED CONCEPT IN CALIFORNIA LAW OF BEST INTERESTS OF A CHILD AND CALL IT VAGUE.  I'M NOT DOING THAT.

I WAS A FAMILY LAW JUDGE FOR TWO YEARS A LONG TIME AGO, AND EVERY DAY I GOT ON THE BENCH I DECIDED THE BEST INTERESTS OF CHILDREN.

MS. KUMAR:  BUT --

THE COURT:  IT WAS NOT UNCONSTITUTIONALLY VAGUE.

MS. KUMAR:  NO, AND I WOULD NOT SAY THAT IT IS, OKAY?

BUT WHAT WE'RE TALKING ABOUT HERE IS WHAT CONTENT IS IN THE BEST INTERESTS OF CHILDREN.

WE'RE NOT TALKING ABOUT DAY-TO-DAY DECISIONS MADE BY FAMILY COURT JUDGES WHOSE JOB IS TO CONSIDER WHAT IS THE BEST

INTERESTS OF CHILDREN.

THIS IS THE STATE DETERMINING WHAT CONTENT AND WHAT PROFILING IS IN THE BEST INTERESTS OF CHILDREN.  SO RESPECTFULLY, I THINK IT'S A VERY, VERY DIFFERENT CONTEXT.

THE COURT:  UM-HUM.

MS. KUMAR:  AND IT MIGHT BE FINE FOR THAT STANDARD TO APPLY IN FAMILY LAW.  THERE'S PROBABLY NO -- I MEAN -- BUT THERE'S NO PROSCRIPTION ON CONSIDERING WHAT'S -- WHETHER A CUSTODY SCHEDULE IS IN THE BEST INTERESTS OF A CHILD.

THE COURT:  SO I'M NOW -- I HAVE PLENTY OF TIME, BUT NOW I'VE DIVERTED YOU SO MUCH, SO NOW I THINK I'M GOING TO LET YOU GET BACK ON TRACK WITH YOUR ARGUMENT --

MS. KUMAR:  OKAY.

THE COURT:  -- BECAUSE I'D LIKE YOU TO BE DONE BY A QUARTER PAST.

MS. KUMAR:  OKAY.  UNDERSTOOD.

THE COURT:  THANK YOU.

MS. KUMAR:  SO JUST TALKING ABOUT THESE INFORMATION RESTRICTIONS, THEY'RE ALL CONDITIONED ON THE USE OF INFORMATION TO PUBLISH CONTENT OR MAKE INFORMATION AVAILABLE.

NOW, IF YOU'RE ASKING ME, ARE THERE -- ARE THERE THINGS THAT WE'RE NOT INCLUDING?  WELL, YOU KNOW, I DON'T KNOW THE ANSWER TO THAT.  AND THE REASON WHY IS I CAN'T THINK, IN GENERAL, OF OTHER APPLICATIONS.

SO I'M NOT SURE, YOU KNOW, I MEAN, THE STATE MAY COME UP

AND SAY, WELL, PROFILING IS BAD WHEN SOMETHING NON-EXPRESSIVE HAPPENS.  I DON'T KNOW.

ALL I KNOW IS I CAN'T THINK OF ANOTHER REASON, ANOTHER, LIKE, APPLICATION OF THIS LAW.  DR. RADESKY, YOU KNOW, WE GAVE YOU A SERIES OF QUOTES FROM HER DECLARATION ABOUT WHAT PROFILING MEANS.

AND TO THE EXTENT THE COURT FEELS LIKE IT CAN'T ENJOIN ENFORCEMENT OF THE PROVISION AS A WHOLE BECAUSE THERE ARE SOME APPLICATIONS THAT ARE NON-EXPRESSIVE, WE HAVE TOLD THE COURT, FINE, TAKE THOSE OUT OF THE EQUATION AND DON'T ENJOIN IT AS TO THE OTHER APPLICATIONS.

THAT WAS WHAT WE WERE TRYING TO DO.

THE COURT:  UM-HUM.

MS. KUMAR:  AND YOUR HONOR MIGHT SAY, WELL, I DON'T KNOW IF THIS LANGUAGE IS PRECISE ENOUGH, AND THAT'S FINE.  WE CAN TALK ABOUT HOW DOES YOUR HONOR CRAFT AN ORDER.

THE COURT:  SURE.

MS. KUMAR:  AND I THINK THAT'S TRUE OF ALL OF THE, YOU KNOW, INFORMATION.  LOOK, I COULD GO THROUGH EVERY (B)(1), (B)(2), (B)(3), (B)(4).  I DON'T WANT TO DO THAT.

THE COURT:  I DON'T THINK WE NEED TO, BECAUSE WE HAVE A LOT OF OTHER THINGS TO TALK ABOUT.

MS. KUMAR:  I THINK THAT'S RIGHT.

AND I WOULD -- YOU KNOW, I THINK FOCUSSING ON THE THRESHOLD ISSUE, FOCUSSING ON A THRESHOLD ISSUE AS TO THE USE

PROVISIONS.

SO TURNING TO AGE ESTIMATION, I THINK I'LL ADDRESS AGE ESTIMATION.

THE COURT:  HOW ABOUT -- ARE YOU GOING TO ADDRESS DARK PATTERNS, OR NOT?

MS. KUMAR:  I CAN.

THE COURT:  IT'S UP TO YOU.

MS. KUMAR:  WELL, I MEAN --

THE COURT:  BECAUSE I WAS CONCERNED THAT FOR SOME OF THE DARK PATTERNS, THAT YOU HADN'T CLEARLY IDENTIFIED WHOSE EXPRESSION WAS AT ISSUE.

MS. KUMAR:  THAT'S RIGHT, YES, YOU DID SAY THAT.

THE COURT:  THAT WAS MY QUESTION.

MS. KUMAR:  WELL, I GUESS I WOULD ASK THE QUESTION -- FIRST OF ALL, I WOULD SAY IT'S THE SERVICE'S EXPRESSION, RIGHT? THESE ARE FEATURES --

THE COURT:  SO I THINK JUDGE DAVILA IN HIS DECISION JUST LAST MONTH -- I DON'T KNOW WHETHER YOU WERE INVOLVED IN THAT ONE.

MS. KUMAR:  NO.

THE COURT:  BUT YOU READ IT, OF COURSE.

MS. KUMAR:  YEP.

THE COURT:  I THINK HE FOUND THE FEATURES LIKE AUTOPLAY WERE -- WHERE IT IS A LOOP CREATED BY THE USER, IF I'VE LIKED PUPPY VIDEOS, SEGMENTS, NOW I'M GOING TO GET TEN

MORE, BUT THAT THE -- ALL IT'S DOING IS PUTTING ME ON AN INFINITE LOOP OF WHAT I'VE ALREADY LIKED.  IT'S MY EXPRESSION, NOT THE SERVICE PROVIDER'S.

MS. KUMAR:  SO I DON'T THINK THAT'S RIGHT.

THE COURT:  OKAY.

MS. KUMAR:  WHETHER JUDGE DAVILA SAID THAT OR NOT.

THE COURT:  I'M NOT -- WE'LL TAKE IT -- I'LL OWN THIS, AND I THINK THAT'S WHAT HE SAID, BUT HE MAY NOT HAVE.

MS. KUMAR:  OKAY.  THAT'S FINE.

I MEAN, LOOK, I DID READ HIS OPINION, AND I DO THINK IT SORT OF BREEDS INTO, FOR EXAMPLE, JUSTICE BARRETT'S CONCURRENCE IN MOODY, WHICH IS NOT THE LAW.

AND SO, YOU KNOW, LET'S JUST TAKE THE AUTOPLAY.  LET'S ANALOGIZE IT TO A NEWSPAPER.  SUPPOSE THE NEWSPAPER PUBLISHES THE SAME ARTICLE REPEATEDLY IN, YOU KNOW, ON SUCCESSIVE DAYS, OR HAS A NOTICE AT THE TOP OF THE PAPER THAT SAYS SOMETHING REPEATEDLY.

YOU KNOW, AND SUPPOSE -- I GUESS MAYBE SUPPOSE IT PUBLISHES THE SAME LETTER TO THE EDITOR MANY TIMES, RIGHT?  THAT'S SOMEONE ELSE'S CONTENT.

BUT WHOSE DECISION IS IT TO PRESENT THAT CONTENT TO AN AUDIENCE?  IT'S THE NEWSPAPER'S DECISION.

SO IT IS THE SERVICE PROVIDER'S DECISION TO, TO SHOW WHATEVER CONTENT IT IS TO A USER.  SO AUTOPLAY IS, YOU KNOW, SURE, LIKE YOU'RE ON ONE EPISODE OF A TV SHOW AND THEN YOU'RE

MOVED TO THE NEXT ONE.  THAT'S BECAUSE THE SERVICE PROVIDER IS EXPRESSING AND ORGANIZING CONTENT IN A CERTAIN WAY THAT IS EXPRESSIVE, AND WE KNOW THAT FROM MOODY, RIGHT, BECAUSE THAT WAS THE STATE'S ARGUMENT IN MOODY WAS ORGANIZING CONTENT AND DOING THAT KIND OF THING IS NOT PROTECTED, AND THE SUPREME COURT EXPRESSLY FOUND THAT THAT'S NOT THE CASE.

AND TO THE EXTENT THAT JUDGE DAVILA, YOU KNOW, SUGGESTED THAT ALGORITHMS THAT REFLECT ONLY USER INPUT ARE NOT PROTECTED EXPRESSION, I THINK THAT'S WRONG, TOO.

IF YOU LOOKED AT THE EGELMAN DECLARATION, HE SAYS ALGORITHMS ALL HAVE A PURPOSE.  NONE OF THEM ARE NEUTRAL.

SO EVEN IF WE TALK ABOUT CHRONOLOGICAL ORDER, RIGHT, THAT IS A DECISION THAT THE NEWEST INFORMATION IS THE INFORMATION THAT A USER SHOULD SEE.  THERE IS NO ALGORITHM -- I MEAN, ALL ALGORITHMS DO IS TRANSMUTE -- TRANSLATE HUMAN JUDGMENT INTO CONTENT, RIGHT, OR EXPRESSIVE CHOICES.

THE COURT:  YEAH, SURE.

MS. KUMAR:  SO RESPECTFULLY, TO THE EXTENT THAT JUDGE DAVILA FOUND OTHERWISE, I DON'T AGREE WITH THAT.

THE COURT:  OKAY.  AND I'LL GO BACK AND READ WHAT HE SAID, AND I WILL -- BECAUSE I MAY HAVE MISREPRESENTED HIM AND I WOULD APOLOGIZE FOR THAT.

LET'S TALK ABOUT AGE ESTIMATION.

MS. KUMAR:  YEAH.  SO I HEARD WHAT YOU SAID.  I DON'T THINK THAT THERE IS -- THAT THERE IS EVIDENCE IN THE RECORD

THAT SUGGESTS THAT AGE ESTIMATION -- WHAT -- THAT AGE ESTIMATION IS ANY LESS ONEROUS THAN AGE VERIFICATION, AND WHAT YOU DO HAVE, AND I WOULD DIRECT YOUR HONOR TO THE DECLARATIONS THAT WE FILED IN THE FIRST INSTANCE -- LET ME JUST -- I HAVE THEM.

THE COURT:  YOU CITED THEM IN YOUR BRIEF NOW.  I AM NOT -- YOU KNOW -- YOU CITED ME BACK TO A NUMBER OF THINGS AS EVIDENCE THAT WERE ALREADY ON THE DOCKET.  BUT IF THEY'RE NOT IN YOUR BRIEF, THEY'RE NOT IN THIS RECORD.  I WANT TO BE CLEAR.

MS. KUMAR:  OKAY.  I -- I WOULD HAVE TO GO BACK AND SEE WHAT -- I'M PRETTY SURE WE CITED ALL OF THESE DECLARATIONS, AND WE HEEDED YOUR HONOR'S ADMONITION OF THAT.

AND SO JUST TO GIVE YOU AN EXAMPLE, THE UNREBUTTED TESTIMONY IN THE RECORD SHOWS THAT SERVICES DON'T KNOW WHO IS A KID AND WHO IS NOT.  IT IS NOT -- I WENT BACK AND LOOKED AT THE TRANSCRIPT FROM THE FIRST HEARING.  IT IS NOT AS IF A SERVICE HAS ALL THE INFORMATION THEY NEED TO KNOW WHETHER SOMEBODY IS 18 OR NOT.

AND THAT'S THE ROIN DECLARATION, WHICH WE DID CITE.

THE COURT:  YES.

MS. KUMAR:  THE CAIRELLA DECLARATION, WHICH IS IMDB.

AND MOREOVER, THE TESTIMONY, UNREBUTTED TESTIMONY IS THAT IT WOULD BE VERY EXPENSIVE TO FIND OUT WHO'S A CHILD AND WHO'S NOT.  I THINK ROIN SAID IT WOULD COST A DOLLAR PER, YOU KNOW, PER ESTIMATION.

THE COURT: IS THAT A CONSIDERATION, THE EXPENSE?

MS. KUMAR: YEAH, I THINK IT IS. I MEAN, I THINK THE -- YOU KNOW, THE -- LOOK, THE DEGREE OF BURDEN FACTORS INTO HOW ONEROUS A STATUTE IS.

THE COURT: I HAVEN'T PICKED UP IN ANY OF THE CASES A COST BURDEN. I PICK UP A PRIVACY BURDEN ON THE USER, THE ADULT USER AND THE CHILD USER HAVING TO GIVE UP THE ANONYMITY OF THE WEB.

I HAVEN'T PICKED UP THE COST. THAT SEEMS TO ME TO BE MORE OF A POLITICAL DETERMINATION WHERE THE SERVICE PROVIDERS CAN LOBBY THE LEGISLATURE BASED ON THAT.

I DON'T THINK THAT'S FOR THIS.

MS. KUMAR: THAT'S FAIR.

THE COURT: I'M NOT SAYING IT'S NOT A BURDEN. I DON'T THINK IT'S RECOGNIZED.

MS. KUMAR: OKAY, YEAH.

WELL, I THINK TO FOCUS ON THE PRIVACY INTEREST IS JUST AS WELL, TOO, BECAUSE --

THE COURT: BUT IT'S NOT THE PRIVACY INTEREST OF THE SERVICE PROVIDER.

SO LAST TIME -- AND IT'S IN MY ORDER AND THE NINTH CIRCUIT ACCEPTED IT -- I -- YOU ARGUED ON BEHALF OF USERS UNDER THE FIRST AMENDMENT SPECIAL STANDARD.

MS. KUMAR: RIGHT.

THE COURT: YOU DIDN'T DO THAT HERE, AND THAT'S FINE.

BUT YOU REALLY ARGUED ABOUT YOUR -- THE EFFECT ON YOUR MEMBERS.

MS. KUMAR:  I THINK WE DID MAKE THAT ARGUMENT, AND I WILL SAY -- AND MAYBE IT'S IN THE DECLARATIONS THAT ARE CITED IN THE BRIEFING AND YOU CAN GO BACK TO THEM.

THE COURT:  BUT IF IT'S -- YOU KNOW, THE RECORD DOESN'T WORK THAT WAY.  YOU DON'T HAVE STEALTH THINGS PLANTED IN DECLARATIONS THAT YOU DIDN'T DRAW OUT TO ME IN YOUR BRIEFING AND THEN SAY I DIDN'T CONSIDER THE RECORD.  IT DOESN'T WORK THAT WAY.

I WILL READ THE PARAGRAPHS THAT YOU CITE.

MS. KUMAR:  THAT'S ALL I'M ASKING YOUR HONOR TO DO.

THE COURT:  THAT'S GREAT, BECAUSE I ACTUALLY WENT THROUGH YOUR BRIEF AND I TAGGED EVERY PART OF THE OLD RECORD THAT YOU CITED SO THAT I COULD BE SURE TO GO BACK AND GET THOSE.

MS. KUMAR:  OKAY.  SO THE UNREBUTTED TESTIMONY, WHICH I BELIEVE WE CITED --

THE COURT:  OKAY.

MS. KUMAR:  I CAN'T TELL YOU RIGHT THIS SECOND WHICH, YOU KNOW, WHICH PARAGRAPHS WERE CITED BECAUSE I DON'T --

THE COURT:  THAT'S FAIR.

MS. KUMAR:  BUT, YOU KNOW, THE UNREBUTTED TESTIMONY IS, ONE, PEOPLE HAVE TO GIVE UP THEIR PRIVACY, AND IF THEY GIVE UP THEIR PRIVACY, THEY'RE LESS LIKELY TO ACCESS THE SPEECH.

SO, TWO, THE AUDIENCE IS DRAMATICALLY LIMITED BY THE REQUIREMENTS OF THE STATUTE.

AND SO, YOU KNOW, THE PARTS THAT WE CITED -- AND I NOW HAVE IT IN FRONT OF ME -- RUMENAP, PARAGRAPHS 7 TO 10, MASNICK, THE SUPPLEMENTAL MASNICK DECLARATION AT 7, AND THE PAOLUCCI SUPPLEMENTAL DECLARATION, AND THE GOLDMAN BRIEF, RIGHT.

THE COURT:  YES.

MS. KUMAR:  I THINK YOU CAN GO BACK TO ALL OF THAT AND YOU CAN SEE IT'S EXTREMELY INTRUSIVE.

AND GOLDMAN TALKS ABOUT AGE ESTIMATION AND AGE VERIFICATION.

THE COURT:  BUT ONE OF THE PROBLEMS WITH HIS ARGUMENT IS THAT IT MAY PROVE TOO MUCH, BECAUSE YOU'RE REALLY SAYING THAT AGE ESTIMATION IS PER SE A VIOLATION OF THE FIRST AMENDMENT.

I DON'T HAVE GUIDANCE FROM THE NINTH CIRCUIT OR SUPREME COURT TO SUPPORT THAT.

MS. KUMAR:  I THINK YOU DO.  AND NOT PER SE A --

THE COURT:  PER SE, I DO NOT.  OTHERWISE THE TEXAS STATUTE WOULDN'T BE BEFORE THE SUPREME COURT.

MS. KUMAR:  WELL, HOLD ON.  HOLD ON.

THE COURT:  OKAY.

MS. KUMAR:  SO AGE VERIFICATION TO, LIKE, I DON'T KNOW, STOP PEOPLE FROM BUYING PRODUCTS LIKE, YOU KNOW, ONE -- THAT MIGHT BE ONE THING.

BUT IF IT'S TO ACCESS SPEECH, THE SUPREME COURT'S -- WE'LL SEE WHAT HAPPENS IN THE PAXTON CASE.

THE COURT:  BUT THE PAXTON CASE IS ABOUT ACCESSING SPEECH.

MS. KUMAR:  RIGHT.  BUT SO IS ASHCROFT VERSUS ACLU, WHICH IS THE 2002 SUPREME COURT CASE ON THIS POINT.

THE COURT:  YES.  BUT, YOU KNOW, AND I THINK JUDGE DAVILA IS THE ONE WHO SAID THOSE CASES ARE OLD NOW.

MS. KUMAR:  IT'S THE LAW OF THE LAND.

THE COURT:  YES, BUT WE HAVE TO LOOK AT -- YES, IT IS.  I MEAN, I'VE -- I DON'T GET TO -- I FOLLOW ALL SUPREME COURT CASES THAT ARE VALID, AND THE NINTH CIRCUIT, YEAH.

BUT YOU'RE SAYING AGE VERIFICATION TO ACCESS MATERIAL'S CONTENT ON THE WEB, NOT PRODUCTS TO PURCHASE --

MS. KUMAR:  YES.

THE COURT:  -- IS PER SE A VIOLATION OF THE FIRST AMENDMENT.

MS. KUMAR:  NO.  I THINK IT GETS YOU INTO STRICT SCRUTINY LAND.  I'M NOT SAYING YOU SHOULD -- I MEAN, YES, AND EVEN IF THAT'S NOT THE ANSWER, THE ANSWER IS TO GO THROUGH THE SCRUTINY ANALYSIS.

AND I REMIND YOU THAT --

THE COURT:  WELL, THAT'S WHERE I STARTED IS THAT IN THE FULL APPLICATION OF THE LAW, I'M NOT SURE EXPRESSION IS IMPLICATED WHEN THE COMPANY, THE COVERED SERVICE COULD SIMPLY

USE THE INFORMATION THEY ALREADY HAVE TO RESTRICT.

MS. KUMAR:  RIGHT.  AND I DON'T THINK THAT -- THEY CAN'T.  I MEAN, THAT'S --

THE COURT:  THAT -- I DON'T THINK I HAVE ENOUGH OF A RECORD ON THE ISSUE OF THEY CAN'T.

MS. KUMAR:  I THINK YOU DO, AND I THINK -- AND, AGAIN, I -- I WOULD POINT YOU TO THE GOLDMAN -- THE GOLDMAN BRIEF AND TO THE -- I MEAN, I DON'T HAVE THE PARAGRAPH NUMBER -- I CAN GET THE PARAGRAPH NUMBERS WHEN I COME BACK UP -- THAT WE CITED THAT SAY WE CAN'T DO THIS, IT'S EXTREMELY INTRUSIVE.

AND ONE OF THE DECLARANTS, PAOLUCCI, SAYS WE MAY JUST SHUT DOWN, RIGHT, AND THIS IS ALL TO ACCESS SPEECH THAT IS CONSTITUTIONALLY PROTECTED WHICH, AGAIN, IS A FUNDAMENTAL DIFFERENCE --

THE COURT:  IS THAT THE TECHDIRT PROVIDER?

MS. KUMAR:  NO.  SHE'S DREAMWIDTH.

THE COURT:  OKAY.

MS. KUMAR:  ASHCROFT VERSUS ACLU, PAXTON VERSUS FREE SPEECH COALITION, THOSE ARE CASES ABOUT ACCESS TO PORNOGRAPHY.

WE'RE TALKING ABOUT ACCESS TO ALL SORTS OF CONTENT, *NEW YORK TIMES* NEWS REPORTS ON, YOU KNOW, CONFLICT; YOU KNOW, BIOGRAPHICAL BOOKS ABOUT -- YOU KNOW, I WAS JUST THINKING, LIKE, VINCENT VAN GOGH, HE HAD A VERY TROUBLED LIFE.  ARE WE NOT -- DO WE NOT WANT CHILDREN TO READ ABOUT WHAT EXACTLY

HAPPENED TO HIM?

THE COURT:  I THINK -- AND I DON'T KNOW THAT IT'S CAPTURED HERE, BUT WHAT TROUBLED ME WITH THE BREADTH OF THE STATUTE IS THAT THERE ARE AN INFINITE NUMBER OF CALCULATIONS THAT WOULD HAVE TO BE MADE.  IT WOULD BE FOR EACH AGE OF THE CHILD AND EACH INDIVIDUAL PIECE OF CONTENT TO BE ACCESSIBLE.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  SO A FIVE YEAR OLD READING THE -- WELL, LET'S CHANGE IT A LITTLE.  A SEVEN YEAR OLD READING THE BOX SCORES IS GOING TO GET A DIFFERENT ESTIMATION THAN THE SEVEN YEAR OLD READING -- THAN THE SEVEN YEAR OLD READING THE FRONT PAGE OF THE *NEW YORK TIMES*.

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  AND AT EVERY AGE AND AT EVERY INDIVIDUAL PIECE OF CONTENT, THE LAW WOULD REQUIRE A DIFFERENT CALCULATION IS THE WAY I READ IT.

IT'S NOT JUST, IF YOU'RE UNDER 18, YOU DON'T GET IT.

AND THAT'S THE BEAUTY OF THE PAXTON CASE.  IT'S AN ALL OR NOTHING, I BELIEVE.

MS. KUMAR:  WELL, ACTUALLY, TO -- YOU KNOW, WE DON'T NEED TO GET INTO THE WEEDS, BUT THE STATUTE IN PAXTON TALKS ABOUT CITES THAT HAVE MORE THAN ONE-THIRD CONTENT HARMFUL TO MINORS.

THE COURT:  THAT'S RIGHT, THEY DO, YES.

MS. KUMAR:  SO THE FOCUS OF THE SUPREME COURT WAS ON

PORNOGRAPHY.

THE COURT:  YES.

MS. KUMAR:  SO THAT'S ANOTHER WRINKLE IN THE LAW THAT YOU DON'T HAVE HERE AND THEY DIDN'T DISCUSS IN THE SUPREME COURT.

BUT EVEN IF YOU'RE NOT INCLINED TO BE BOUND BY -- TO FIND THAT ASHCROFT VERSUS ACLU IS BINDING, AT A MINIMUM, YOU KNOW THIS IS A CONTENT-BASED RESTRICTION.

AND HOW DO YOU KNOW THAT?  BECAUSE IT'S REASONABLE -- TO A REASONABLE CERTAINTY APPROPRIATE TO THE RISKS OF THE DATA MANAGEMENT PRACTICES.

AND THE NINTH CIRCUIT WAS VERY CLEAR ABOUT THIS.  THE NINTH CIRCUIT SAID DATA MANAGEMENT PRACTICES IS DEFINED BY THE NOW ENJOINED DPIA REQUIREMENT IN SECTION 31(A)(2) TO REQUIRE CONSIDERATION OF CONTENT OR PROXIES FOR CONTENT.

SO THE STATE CAN'T GET UP -- CAN'T TELL YOU, YOUR HONOR, THAT DATA MANAGEMENT PRACTICES IS, YOU KNOW, SELF-EVIDENT.  IT IS A PROXY FOR CONTENT.

AND SO THEN YOU HAVE TO GO INTO THE LEVEL OF SCRUTINY. AGAIN, BROWN SAYS THAT THE GOVERNMENT DOESN'T HAVE A LEGITIMATE INTEREST IN SHIELDING KIDS FROM PROTECTED CONTENT.

THE STATE HAS ALSO NOT SHOWN THAT THE AGE VERIFICATION -- AGE ESTIMATION REQUIREMENT WOULD ALLEVIATE ANY HARMS.  YOU DON'T HAVE TO JUST SAY THIS IS PER SE UNCONSTITUTIONAL.  GO THROUGH THE ANALYSIS AND LOOK AT WHAT THE STATE'S TELLING YOU.

53

AGAIN, THERE'S, THERE'S -- YOU KNOW, WE HAVE TESTIMONY IN THE RECORD THAT, YOU KNOW, IT MIGHT BE THAT PEOPLE -- KIDS ARE JUST CUT OFF FROM THE *NEW YORK TIMES* OR WHAT HAVE YOU, OR SERVICES.

THE COURT:  BUT WHEN I READ IT, I'M JUST GETTING THE BOX SCORES.

(LAUGHTER.)

MS. KUMAR:  BUT, AGAIN, THE STATE DOESN'T ADDRESS THE LESS RESTRICTIVE ALTERNATES THE NINTH CIRCUIT POSITED, EDUCATION, TOOLS -- EDUCATION ABOUT THOSE TOOLS AND ENFORCEMENT OF EXISTING LAWS.

AND, BY THE WAY, WE HAVEN'T TALKED ABOUT THIS YET, BUT THEY ALSO DON'T ADDRESS ANY EXISTING PRIVACY LAW, LIKE COPPA, LIKE THE CALIFORNIA PRIVACY REGIME, BOTH OF WHICH CAN -- YOU KNOW, THAT ONE REGULATES DARK PATTERNS ALREADY.

AND SO, YOU KNOW, AGAIN, UNDER THE GARCIA AND PATEL SORT OF LINE OF CASES, YOU ONLY LOOK AT THE NEW APPLICATIONS TO DETERMINE WHETHER THEY'RE CONSTITUTIONAL OR NOT.

THE COURT:  OKAY.  LET'S -- I'M GOING TO MOVE YOU ALONG A LITTLE BIT.

MS. KUMAR:  OKAY.

THE COURT:  YOU'VE GONE AT MY PACE.

LET'S --

MS. KUMAR:  SEVERABILITY.

THE COURT:  SO DO YOU WANT TO -- WE CAN TALK ABOUT

SEVERABILITY.  YOU'VE ALSO GOT VAGUENESS, OVERBREADTH, SECTION 230, COMMERCE CLAUSE, AND COPPA, AND YOU HAVE ABOUT FIVE MINUTES, SO TAKE YOUR PICK.

MS. KUMAR:  I THINK I WILL TALK ABOUT SEVERABILITY.

THE COURT:  OKAY.

MS. KUMAR:  AND I THINK ON 230, I WILL SAY, YOUR HONOR, THAT I AGREE THE CONTENT POLICY ENFORCEMENT PROVISION IS PREEMPTED BY SECTION 230.

I THINK THERE ARE OTHER THINGS THAT ARE ALSO PREEMPTED, BUT AS I SAY, IF YOU'RE GOING TO RULE ON THE FIRST AMENDMENT OR SEVERABILITY AND ENJOY THE LAW ON THAT BASIS, YOU DON'T NEED TO GET THERE.

THE COURT:  OKAY.

MS. KUMAR:  SEVERABILITY, WE CAN PROVIDE YOU -- I HAVE A LINK TO ALL THE VERSIONS OF THE LAW.  YOU KNOW, I UNDERSTAND THAT YOUR HONOR, YOU MAY WANT TO LOOK AT EACH VERSION AND SEE IF WE'VE ACCURATELY DESCRIBED THEM.

THE COURT:  WHAT I COULDN'T TRACK IS WHAT BILL THE LEGISLATURE VOTED ON WHEN THEY PUT IT IN SUSPENSE, AND I COULDN'T TRACK WHAT THE FULL BILL WAS WHEN THEY DEFEATED IT WITH THE 45-DAY CURE PERIOD.

MS. KUMAR:  SURE.

THE COURT:  AND THEN -- SO THERE ARE THREE VERSIONS OF THE BILL I WANT:  THE VERSION THAT GOT VOTED INTO SUSPENSE; THE VERSION THAT GOT DEFEATED WITH A 45-DAY CURE; AND THE

VERSION THAT GOT APPROVED WITH A 90-DAY.

AND THEN I HAVE TO DETERMINE WHETHER I CAN CLEARLY FIND THAT IT WAS THE CURE PROVISION THAT DROVE THE VOTES.

MS. KUMAR:  OKAY.

THE COURT:  THERE WERE OTHER AMENDMENTS, SO I HAVE TO REALLY -- AND THOSE ARE LISTED IN THE ANALYSIS.

MS. KUMAR:  OKAY.

THE COURT:  THEY HIGHLIGHT WHAT THE AMENDMENTS ARE.

MS. KUMAR:  OKAY.  WE CAN PROVIDE THAT TO YOU.

YOU KNOW, I KNOW YOU WEREN'T PERSUADED ON FUNCTIONAL SEVERABILITY, BUT I WILL, YOU KNOW, JUST SAY THAT THE POINT OF THE LAW WAS TO ENCOURAGE COMPLIANCE, THAT'S WHAT THE STATE HAS SAID, AND NOW IT'S JUST A PUNITIVE LAW.

SO I DO THINK YOU CAN FIND THAT, YOU KNOW, IT'S FUNCTIONALLY NOT SEVERABLE, EITHER.

SO -- AND, YOU KNOW, THERE'S NO SEVERABILITY CLAUSE, AND IT'S THE STATE'S BURDEN TO SHOW --

THE COURT:  YEAH.

MS. KUMAR:  -- THAT IT WOULD HAVE ENACTED THIS LAW WITHOUT THE CURE PROVISION, AND I DON'T THINK IT WOULD HAVE.

THE COURT:  OKAY.  WELL, I THINK YOUR ARGUMENT AS TO THE AMENDMENTS IS PRETTY STRONG, AND THAT'S A --

MS. KUMAR:  I DIDN'T GET TO GET TO ALL THE STUFF.

THE COURT:  WELL, YOU DON'T, BUT THAT'S A WELL ESTABLISHED PRINCIPLE OF STATUTORY CONSTRUCTION.

MS. KUMAR:  YEAH.

THE COURT:  OKAY.

MS. KUMAR:  OKAY.  THANK YOU.

THE COURT:  THANK YOU.

MAYBE WE SHOULD TAKE OUR BREAK NOW.

MS. LISKA, I NEED TO TAKE A BREAK AND I HATE TO INTERRUPT YOUR ARGUMENT, SO WOULD YOU MIND IF WE TAKE A TEN MINUTE BREAK BEFORE YOU START?

MS. LISKA:  NOT AT ALL.  I'LL GO GET SOME WATER.

THE COURT:  THERE YOU GO.  THAT'LL HELP EVERYONE. THANK YOU.

THE CLERK:  THIS COURT IS IN RECESS.

(RECESS FROM 10:18 A.M. UNTIL 10:29 A.M.)

THE COURT:  ALL RIGHT.  MS. LISKA, I'M GOING TO LET YOU GET STARTED.  YOU KNOW MY CONCERNS, YOU KNOW THE PLAINTIFF'S ARGUMENT.

MS. LISKA:  THANK YOU, YOUR HONOR.  I WILL TRY TO FOCUS ON THE ISSUES THAT HAVE BEEN DISCUSSED AND THAT YOUR HONOR RAISED.

I'M MAKING SURE YOU CAN HEAR ME.

THE COURT:  THAT'S PERFECT.

MS. LISKA:  IN THE EARLIER ARGUMENT -- WELL, WE APPRECIATE YOUR GENEROSITY OF TIME, SO I DON'T WANT TO BELABOR THINGS MORE THAN NECESSARY.

I WANT TO START WITH MAKING TWO BIG PICTURE POINTS AND

THEN I'LL DRILL FURTHER DOWN.

THE FIRST IS THAT WHEN WE'RE DISCUSSING THE FIRST AMENDMENT, THERE IS ALWAYS A THRESHOLD QUESTION ABOUT WHETHER OR NOT EXPRESSION OR SPEECH IS ACTUALLY BEING IMPACTED OR TARGETED, AND I THINK THAT THIS IS RELEVANT AND SALIENT THROUGHOUT THE ENTIRETY OF THIS MOTION.

I THINK ONE OF THE POINTS WE MAKE, AND THAT YOUR HONOR HAS SORT OF TOUCHED UPON WITH MY FRIEND ON THE OTHER SIDE, IS WHAT EVEN -- WHAT EVEN DOES THIS LAW DO TO THESE COMPANIES?  THEY DON'T REALLY DRILL INTO HOW IS THERE EXPRESSIVE ACTIVITY BEING IMPACTED BY THE REGULATIONS?

AND THE SECOND THING IS, AND THIS IS RELATED, IS THAT I THINK IT'S HELPFUL TO REALLY DRILL DOWN INTO WHAT DOES THIS LAW ACTUALLY DO?

YOU KNOW, YOUR HONOR PUT FORWARD THE EXAMPLE OF, YOU KNOW, AN ARTICLE ABOUT THE HAMAS ISRAELI WAR PUBLISHED IN THE *NEW YORK TIMES*.

SO I THINK IT'S IMPORTANT TO SAY FIRST, THE LAW NOWHERE SAYS THAT YOU CANNOT PUBLISH THAT TYPE OF CONTENT TO A CHILD. IT WOULD NOT SANCTION A COMPANY IF A CHILD WERE TO OPEN UP THEIR BROWSER, GO TO THE *NEW YORK TIMES*, AND ON THE FRONT PAGE OF THE *NEW YORK TIMES* IS AN ARTICLE ON THE HAMAS ISRAELI CONFLICT.

THERE WOULD BE NO PENALTY IMPOSED ON ANY COMPANY SIMPLY BECAUSE A CHILD WENT TO THEIR WEBSITE AND THE FIRST THING THEY

SAW WAS AN ARTICLE ON THE HAMAS ISRAELI WAR.

THE COURT:  BUT THEY CAN'T PUSH IT TO A CHILD.

MS. LISKA:  THEY CANNOT USE THE CHILD'S PERSONAL INFORMATION IN THE THREE DISTINCT WAYS, AND THEY HAVE NOT ARTICULATED HOW, IN THEIR DECLARATIONS, THEY'RE USING PERSONAL INFORMATION TO DELIVER CONTENT THAT MIGHT BE CONSIDERED HARMFUL.

THE COURT:  WELL, LET'S TALK ABOUT AUTOPLAY.  YOU'VE GOT A 12 YEAR OLD DOING A REPORT ON THE MID-EAST CRISIS AND THE ALGORITHMS WOULD PICK UP ON A COUPLE OF INQUIRIES MADE TO WEBSITES ABOUT THAT AND START PUSHING OTHER THINGS.

MS. LISKA:  SO TWO, TWO RESPONSES TO THAT, YOUR HONOR.

FIRST, I THINK IT'S HELPFUL TO LOOK AT WHAT THE SPECIFIC PROVISIONS THAT ARE AT ISSUE HERE ACTUALLY DO.

THE COURT:  OKAY.

MS. LISKA:  IT'S UNCLEAR -- WITH RESPECT TO THE FOUR THAT RELATE TO INFORMATION USAGE, IT'S UNCLEAR HOW THAT SPECIFIC EXAMPLE OF AUTOPLAY INVOLVED PROFILING A CHILD BY DEFAULT.  AND, AGAIN, THAT'S BY DEFAULT.  THEY CAN STILL PROFILE CHILDREN, THEY SIMPLY HAVE TO ALLOW CHILDREN TO OPT IN RATHER THAN DOING SO BY DEFAULT.

IT'S UNCLEAR HOW THEY ARE USING THE INFORMATION PROVIDED IN A WAY THAT IS NOT NECESSARY TO PROVIDE A SERVICE.  FOR INSTANCE, ONE COULD ARGUE -- AND I DON'T WANT TO -- I DON'T

WANT TO, YOU KNOW, SAY DEFINITIVELY HOW THE LAW WOULD BE INTERPRETED IN A VERY FACT-SPECIFIC CONTENT, WHICH IS WHAT WE'RE LACKING HERE, BUT ONE COULD ARGUE THAT USING PERSONAL INFORMATION TO GIVE A USER ACCESS TO A VIDEO IS USING IT IN A WAY THAT IS NECESSARY TO PROVIDE A SERVICE TO THE CHILD.

IT'S NOT CLEAR THAT THEY'RE USING IT FOR A REASON OTHER THAN WHAT IT WAS COLLECTED FOR. THAT'S (B)(4). I JUST TALKED ABOUT (B)(2), (B)(3), AND THAT'S (B)(4). IF THE DATA HAS BEEN COLLECTED FOR PURPOSES OF PROVIDING -- YOU KNOW, YOU GO INTO YOUTUBE, YOUTUBE HAS COLLECTED PERSONAL INFORMATION, THE PURPOSE IT COLLECTED IT FOR WAS TO GIVE A CHILD ACCESS TO A VIDEO, THEN GIVING THE CHILD ACCESS TO THAT VIDEO IS CLEARLY WITHIN THE SCOPE OF (B)(4) BECAUSE THAT'S THE PURPOSE FOR WHICH IT WAS COLLECTED.

SO THE ONLY ONE WHICH WITH THERE MAY BE SOME ARGUMENT IS THAT THERE IS AN ISSUE WITH (B)(1), AND I THINK THAT THIS THEN GOES BACK TO THE FIRST OF MY TWO BIG PICTURE POINTS, WHICH IS HOW HAS EXPRESSIVE CONDUCT, EXPRESSIVE ACTIVITY BEEN IMPACTED?

WE DON'T UNDERSTAND -- THEY SAY WE USE DATA IN ALGORITHMS. ALGORITHMS THAT DO WHAT?

AND I THINK, YOU KNOW, MOODY IS VERY CLEAR -- AND YOU KNOW JUDGE DAVILA MAKES A NOTE OF THIS -- ALL NINE JUSTICES IN MOODY WERE VERY CLEAR THAT THEIR OPINION DID NOT SPEAK TO ALGORITHMS THAT SOLELY RESPOND TO DATA FROM A USER.

AND FOUR OF THOSE JUSTICES, THE BARRETT CONCURRENCE AND

THE ALITO OPINION, WERE PRETTY SKEPTICAL THAT AN ALGORITHMIC SITUATION WHERE YOU HAD ARTIFICIAL INTELLIGENCE, MACHINE LEARNING, WHERE SOMETHING IS DESIGNED AND LET LOOSE AND IS OUT IN THE WORLD OPERATING ON ITS OWN WHERE IT'S MAKING DECISIONS ABOUT WHAT TO SHOW A USER, THAT MAY NOT EVEN BE EXPRESSIVE ALTOGETHER.

IT'S VERY DIFFERENT FROM A NEWSPAPER DECIDING, OH, WHICH ARTICLE DO WE WANT TO RUN?  THAT'S A HUMAN MAKING DECISIONS ABOUT WHAT, YOU KNOW, WHAT SUBJECTS ARE IMPORTANT, WHAT SPEECH SHOULD I SHOW?

THE COURT:  I DON'T THINK THIS STATUTE IS GOING TO CALL UPON ME TO DECIDE WHETHER A.I. IS EXPRESSIVE ACTIVITY.  THAT'S NOT HAPPENING.

(LAUGHTER.)

MS. LISKA:  NO, BUT --

THE COURT:  I'M GOING TO LEAVE THAT FOR PEOPLE WAY SMARTER THAN ME.

MS. LISKA:  YEAH, BUT I DO THINK THAT THAT SPEAKS TO THE BURDEN THAT IS ON PLAINTIFF TO SHOW THAT EXPRESSIVE ACTIVITY HAS BEEN IMPACTED.

AND, YOU KNOW, THAT IS A REAL QUESTION ABOUT, YOU KNOW, TO WHAT EXTENT.

THE COURT:  WHAT A SERVICE CHOOSES TO PUBLISH TO A USER IS EXPRESSIVE ACTIVITY.  THAT IS WELL SETTLED.

MS. LISKA:  I THINK WHAT MOODY SETTLES IS THAT WHERE

HUMANS ARE MAKING VALUE JUDGMENTS ABOUT THE MESSAGES THEY WANT TO PROMOTE, THAT IS EXPRESSIVE.

THE COURT:  I DON'T THINK MOODY IS LIMITED TO A PERSON MAKING -- PUSHING BUTTONS.

I THINK THAT CREATION OF AN ALGORITHM THAT DOES THAT FOR THE SERVICE, WHICH IS MADE UP OF PEOPLE, IS THE IMPLEMENTATION OF THEIR EXPRESSIVE ACTIVITIES.

I DON'T THINK THERE'S ANYTHING IN MOODY THAT SAYS OTHERWISE.

MS. LISKA:  NO, BUT I DO THINK THAT MOODY IS CLEAR IT'S NOT SAYING THAT THAT IS EXPRESSIVE ACTIVITY.

THE COURT:  BECAUSE OTHERWISE YOU JUST CREATED A FULL EMPLOYMENT ACT FOR THE MILLENNIUM OF NOW WE'RE GOING TO HAVE PEOPLE DO THIS AND NOT ALGORITHMS.  IT'S BILLIONS AND BILLIONS OF EXPRESSIONS, OR PUSHES OF CONTENT EVERY DAY.

MS. LISKA:  YOU KNOW, BUT I DO WANT TO TAKE A STEP BACK, THOUGH, AND GO BACK TO THAT AUTOPLAY EXAMPLE --

THE COURT:  UM-HUM.

MS. LISKA:  -- WHICH IS, AGAIN, IT HAS TO BE A USE OF PERSONAL INFORMATION IN A WAY THAT THE BUSINESS KNOWS OR HAS REASON TO KNOW IS MATERIALLY DETRIMENTAL.

AND I DON'T KNOW THAT THEY SAY, FOR INSTANCE -- AND THIS ALSO SPEAKS TO THE SCOPE OF RELIEF.  WE'RE TALKING ABOUT ONE VERY SPECIFIC THING, AUTOPLAY.  THEY HAVEN'T COME INTO THIS COURT AND SAID, WE WANT AN INJUNCTION THAT SAYS THAT WE CAN USE

PERSONAL INFORMATION FOR THE PURPOSE OF HAVING AUTOPLAY ON SOME, NOT ALL -- BECAUSE LET'S BE CLEAR, NOT ALL OF THE MEMBERS INVOLVED HERE USE AUTOPLAY -- SOME OF OUR MEMBERS USE AUTOPLAY AND WE WANT AN INJUNCTION THAT ALLOWS THOSE MEMBERS TO USE AUTOPLAY.

THIS WOULD BE A DIFFERENT CASE IF THAT WAS WHAT WE WERE LITIGATING ABOUT.

THE COURT:  SO YOU'VE JUMPED INTO THE JOHN DOE #1 ANALYSIS, AND OF COURSE THAT'S WHAT THE SUPREME COURT SAID. IT'S NOT HOW IT AFFECTS JUST YOUR MEMBER.  WE HAVE TO GENERALIZE IT.

OTHERWISE WE ARE IN THAT AS-APPLIED FRAMEWORK WHERE I'M NOT GOING.  I DON'T THINK -- I'M NOT GOING TO MAKE AN AS-APPLIED RULING BECAUSE I DON'T THINK IT'S PROPERLY BRIEFED, SO YOU'RE GOOD ON THAT.

BUT THEY ARE -- SO I THINK THEY'RE TRYING TO SAY THAT THESE PARTICULAR FEATURES AS APPLIED TO ALL COVERED SERVICES ARE -- IMPLICATE EXPRESSIVE ACTIVITY.

MS. LISKA:  BUT, AGAIN, THIS IS ONE FEATURE, AND IT'S NOT EVEN CLEAR THAT ALL OF THEIR MEMBERS WHO ARE SUBJECT TO THE ACT WOULD EVEN USE THIS FEATURE.

THE COURT:  I DON'T KNOW -- THAT'S -- AGAIN, YOU'RE GOING BACK INTO THE AS-APPLIED, AND I'M NOT GOING THERE.

MS. LISKA:  I THINK THE REASON I'M SLIGHTLY CONFUSED -- MY --

THE COURT:  NO ONE RAISED A STANDING ISSUE.

MS. LISKA:  MY UNDERSTANDING OF HOW THEY'RE FRAMING THEIR FACIAL CHALLENGE IS THAT IT'S A FACIAL CHALLENGE AS TO A SPECIFIC SET OF APPLICATIONS.

THE COURT:  THAT'S RIGHT.

MS. LISKA:  AND SO MY POINT IS SIMPLY THAT WE HAVE LOOKED AT ONE AND ZEROED IN ON ONE APPLICATION, WHICH IS AUTOPLAY.  AND I THINK THAT THAT --

THE COURT:  I RAISED THAT.

MS. LISKA:  YEAH.

THE COURT:  BUT THE PLAINTIFFS DIDN'T.

MS. LISKA:  NO, NO, BUT I THINK THIS IS REFLECTIVE OF THE GENERAL WAY THAT PLAINTIFFS ARE LITIGATING THIS IS THAT THEY'RE TRYING TO FOCUS IN ON ONE SPECIFIC THING, BUT THEY HAVEN'T LAID THE FOUNDATION THAT THAT EVEN CONSTITUTES A SUBSTANTIAL NUMBER OF THE APPLICATIONS OF THIS LAW.

THE COURT:  OKAY.  THAT'S FAIR.

MS. LISKA:  THAT'S MY POINT.

AND I THINK IF YOU LOOK TO, FOR INSTANCE, THE CLELAND DECLARATION AT PAGE 4, THE LIST OF COMPANIES -- AND I'LL JUMP FROM HERE INTO THE QUESTION ABOUT THE STRICT SCRUTINY AND THE COVERAGE DEFINITION IF THAT'S ALL RIGHT WITH YOUR HONOR -- THIS INCLUDES A LOT OF COMPANIES THAT DO NOT INVOLVE THE USE OF A -- THE USE OR DELIVERY OF A PHYSICAL PRODUCT, WHICH IS WHAT THE --

THE COURT:  SO I'M NOT CONSIDERING PHYSICAL BECAUSE

THAT'S NOT COVERED BY THE STATUTE.

MS. LISKA:  CORRECT.  SO THERE ARE COMPANIES THAT DON'T DO THAT THAT WOULD ARGUABLY STILL POTENTIALLY FALL WITHIN THE SCOPE OF THIS LAW, LIKE LYFT, HOTELS.COM, PAYPAL, TRAVELOCITY, TRIVAGO, STUBHUB, VRBO, AND WAYMO FOR INSTANCE ARE ALL MEMBERS LISTED IN THE CLELAND DECLARATION, ALL OF WHOM ARGUE THAT THEY DO NOT INVOLVE THE USE OF A PHYSICAL PRODUCT, BUT ONE MAY SAY IT'S POSSIBLE THAT A SUBSTANTIAL NUMBER OF CHILDREN USE STUBHUB, FOR INSTANCE, TO BUY TICKETS TO EVENTS.

THE COURT:  SURE.

MS. LISKA:  OR USE LYFT TO OBTAIN A RIDE, OR USE PAYPAL TO ENGAGE IN A FINANCIAL TRANSACTION.

SO ALL OF THOSE COMPANIES COULD POTENTIALLY BE SUBJECT TO THE LAW.  AND, AGAIN, WE DON'T KNOW THE RECORD THAT ANY OF THEM ARE.  WE DON'T KNOW THE RECORD THAT ANY OF THEM COULD -- WOULD BE.  WE DON'T KNOW HOW THEIR BEHAVIOR IS GOING TO BE IMPACTED.

THE COURT:  YOU'RE GOING TO TELL THEM IF THEY'RE COVERED, BECAUSE YOU WROTE THIS LAW.

MS. LISKA:  CORRECT.

BUT TO ME IT'S THE MOODY BURDEN.  THE PLAINTIFFS NEED TO COME IN AND SHOW US THAT A SUBSTANTIAL NUMBER OF THE APPLICATIONS OF THE LAW -- WHICH, AGAIN, COULD VERY WELL BE TO THESE SORTS OF COMPANIES THAT ARE NOT PUBLISHERS, THAT I DON'T KNOW THAT I WOULD CALL LYFT OR PAYPAL A PUBLISHER -- BUT ARE NOT THE SORT OF QUINTESSENTIAL SOCIAL MEDIA LIKE TWITTER, X, OR

YOUTUBE, OR FACEBOOK, THAT COMPANIES THAT A SUBSTANTIAL NUMBER OF CHILDREN STILL MAY BE ACCESSING THAT ARE SUBJECT TO THIS LAW, AND THEY HAVE NOT DEMONSTRATED THAT THOSE COMPANIES' EXPRESSIVE ACTIVITY IS GOING TO BE AT ALL IMPACTED BY THIS STATUTE.

SO THEY CANNOT MAKE THAT THRESHOLD SHOWING THAT THE FIRST AMENDMENT IS TRIGGERED BY A SUBSTANTIAL NUMBER OF APPLICATIONS.

THE COURT:  AND WHAT SECTION ARE YOU MAKING THIS ARGUMENT ABOUT?  THE B(1)-(4)?

MS. LISKA:  SO WE -- I MEAN, WE THINK THEY FAIL ON ALL OF THEM.

THE COURT:  OKAY.  I'M SORRY.

MS. LISKA:  BUT THIS IS SPECIFICALLY (1) THROUGH (4) THAT I'M TALKING ABOUT RIGHT NOW.

THE COURT:  SO IF YOU MAKE GENERAL ARGUMENTS AND I CAN'T DRAW A LINE TO WHAT YOU'RE TRYING TO SAVE, THEN YOU WILL LOSE.  SO IT'S REALLY IMPORTANT.

SO THIS IS -- THIS -- THESE COMMENTS -- AND THESE ARE GOOD COMMENTS -- ARE FOCUSSED ON B(1)-(4)?

MS. LISKA:  CORRECT, THE DATA USE PROVISIONS RIGHT NOW.

THE COURT:  OKAY.

MS. LISKA:  BUT I DO WANT TO SHIFT FROM THERE TO THEIR POINT ABOUT THE APPLICATION OF STRICT SCRUTINY, BECAUSE I DO THINK THAT THIS REALLY CUTS AGAINST THEIR ARGUMENT THAT THE

COVERAGE DEFINITION IS CONTENT BASED.

THE COURT:  ARE YOU -- SO WE'RE SWITCHING TO THE COVERAGE?

MS. LISKA:  YES, I'D LIKE TO TALK ABOUT THE COVERAGE DEFINITION.

THE COURT:  OKAY.  SO THAT IS -- I THINK YOU'VE GOT -- THAT'S A REALLY TOUGH ARGUMENT FOR YOU.

MS. LISKA:  WELL, I THINK THAT IT WOULD BE HELPFUL TO TAKE THE RECENT EN BANC DECISION FROM THE PROJECT VERITAS CASE THAT WE'VE PUT IN FRONT OF THIS COURT.

FIRST, PROJECT VERITAS MAKES CLEAR THAT THERE IS STILL THAT THRESHOLD PROBLEM OF IS EXPRESSIVE ACTIVITY BEING IMPACTED?  AND SINCE THIS IS FACIAL, THEY WOULD NEED TO SHOW THAT A SUBSTANTIAL NUMBER OF APPLICATIONS ACTUALLY IMPACT EXPRESSIVE ACTIVITY, BECAUSE IF EXPRESSIVE ACTIVITY --

THE COURT:  SO WHAT THEY'RE SAYING IS THAT IN ORDER TO DETERMINE IF YOU'RE COVERED, YOU HAVE TO REVIEW CONTENT. THAT'S A VERY STRONG ARGUMENT.

MS. LISKA:  I THINK THAT PROJECT VERITAS CLEARLY PUSHES BACK ON THAT, BECAUSE PROJECT VERITAS IS QUITE CLEAR THAT SIMPLY BECAUSE YOU HAVE TO --

THE COURT:  I'M SORRY.  I THINK YOU GAVE THAT TO ME YESTERDAY.

MS. LISKA:  I THINK SO.

THE COURT:  I HAVEN'T READ IT.

MS. LISKA:  TWO DAYS AGO.

THE COURT:  THERE --

MS. LISKA:  MY APOLOGIES.

THE COURT:  I HAVEN'T READ IT.

MS. LISKA:  MY APOLOGIES, YOUR HONOR.

THE COURT:  SO I DON'T KNOW WHAT YOU'RE TALKING ABOUT.

MS. LISKA:  THEN I WILL BACK UP.

THE COURT:  IS THAT A NINTH CIRCUIT DECISION?

MS. LISKA:  YES.  THERE'S A RECENT NINTH CIRCUIT DECISION, I THINK IT WAS ISSUED ON THE 7TH, BUT WE PUT IT IN WITH THE TIKTOK CASE WHICH CAME OUT ON THE 17TH.

THE COURT:  YES, I DID SEE THAT YOU GAVE ME NEW CASES, BUT --

MS. LISKA:  I UNDERSTAND.  I APOLOGIZE.  THEY WERE IN SO LATE.  THE TIKTOK ONE WE PUT IN THE FIRST BUSINESS DAY WE COULD.

IN PROJECT VERITAS, WHICH IS A NINTH CIRCUIT EN BANC DECISION, THE COURT CONSIDERED THE VALIDITY OF THE STATUTE OUT OF OREGON THAT INVOLVED SURREPTITIOUSLY RECORDING CONVERSATIONS.

AND IN THE ANALYSIS OF THAT LAW, THE COURT HAS A VERY LENGTHY DISCUSSION OF WHAT MAKES A STATUTE CONTENT NEUTRAL.

BUT WHAT IS RELEVANT HERE IS THAT THE FIRST STEP IN THE COURT'S ANALYSIS WAS WHETHER OR NOT THE STATUTE ACTUALLY

IMPLICATED EXPRESSIVE ACTIVITY OR CONDUCT SUBJECT TO THE FIRST AMENDMENT.

SO THE FIRST QUESTION HAS TO BE, IS EXPRESSIVE ACTIVITY REGULATED?

THE NEXT QUESTION IS, IS IT REGULATED IN A CONTENT BASED WAY?

SO UNLESS WE CAN CLEAR THAT FIRST HURDLE OF THE REGULATED ENTITIES, THEIR EXPRESSION IS WHAT'S REGULATED.

I DON'T BELIEVE WE CAN EVEN GET TO THE QUESTION OF, IS THIS CONTENT BASED OR CONTENT NEUTRAL?

AND I THINK THE CASE LAW IS CLEAR, WE CITE TO SOME OF THAT IN OUR BRIEF, BUT I THINK PROJECT VERITAS ALSO MAKES IT CLEAR, HOPEFULLY WHEN YOUR HONOR HAS A CHANCE TO REVIEW IT -- AND, AGAIN, WE APOLOGIZE WE WERE SO LATE IN GETTING THAT TO YOU -- IT SHOWS THAT THAT IS THE FIRST THRESHOLD STEP.

SO I THINK THAT GOES BACK TO THE HEART WHICH RELATES TO, YOU KNOW, ESPECIALLY THE DATA USE PROVISIONS, BUT ALSO AGE ESTIMATION AND TO SOME EXTENT THE DARK PATTERNS, WHETHER OR NOT THOSE --

THE COURT:  ALL RIGHT.  SO LET'S TAKE A LOOK AT SECTION 31(A).  THIS IS THE COVERAGE DEFINITION.  A BUSINESS THAT PROVIDES AN ONLINE SERVICE, PRODUCT, OR FEATURE LIKELY TO BE ACCESSED BY CHILDREN.

SO THEN WE GO TO OUR DEFINITIONS.  HOW DO I KNOW IF SOMETHING IS LIKELY TO BE ACCESSED BY CHILDREN IF I DON'T LOOK

AT THE CONTENT AND DETERMINE WHETHER IT'S ATTRACTIVE?

SO I'M LOOKING AT THE DEFINITION SECTION, 30(B)(4), LIKELY TO BE ACCESSED BY CHILDREN MEANS IT IS REASONABLE TO EXPECT, BASED ON THE FOLLOWING INDICATORS, THAT THE ONLINE SERVICE, PRODUCT, OR FEATURE WOULD BE ACCESSED BY CHILDREN.

MS. LISKA:  YES.

THE COURT:  AND THEN WE GO TO -- AND THEN THERE ARE THE FOLLOWING GUIDELINES.  (E), AN ONLINE SERVICE, PRODUCT, OR FEATURE THAT HAS DESIGN ELEMENTS THAT ARE KNOWN TO BE OF INTEREST TO CHILDREN, INCLUDING GAMES, CARTOONS, MUSIC, AND CELEBRITIES WHO APPEAL TO CHILDREN.

IT'S THE "WHO APPEAL TO CHILDREN."

SO IT'S NOT JUST GAMES.  IT'S GAMES THAT APPEAL TO CHILDREN.  IT'S CARTOONS THAT APPEAL TO CHILDREN.

HOW DO I KNOW IF IT APPEALS TO CHILDREN WITHOUT LOOKING AT THE CONTENT?

MS. LISKA:  SO THE CASES -- SO FIRST -- I GUESS --

THE COURT:  AND YOU CITE CITY OF AUSTIN AS YOUR SUPPORT HERE.

MS. LISKA:  YES.

THE COURT:  I DON'T THINK AUSTIN --

MS. LISKA:  PROJECT VERITAS AS WELL IN THIS INSTANCE.

THE COURT:  AND I APPRECIATE THAT, BUT IT CAME OUT TOO LATE TO BRIEF IT.

MS. LISKA:  NO, I UNDERSTAND.

I -- TWO -- JUST A COUPLE DIFFERENT WAYS I'D LIKE TO COMMENT ON THIS.

THE FIRST IS THAT THIS IS ONE FACTOR AMONG MANY, AND THE OTHER INDICATORS DO NOT INVOLVE LOOKING AT THE CONTENT, THINGS LIKE, BASED UPON EVIDENCE, WHAT IS THE AUDIENCE COMPOSITION? THAT HAS NOTHING TO DO --

THE COURT:  SO AUDIENCE IS -- AUDIENCE IS CONSIDERED A, A CONTENT-BASED INDICATOR, THOUGH.

MS. LISKA:  SO IT SAYS IT'S -- THE QUESTION IS, IS IT A SIGNIFICANT NUMBER OF CHILDREN WHO ROUTINELY ACCESS IT? THAT'S THE SPECIFIC LANGUAGE.

SO THAT'S -- (A) IS, IS IT DIRECTED TO CHILDREN AS DEFINED BY COPPA?  (B) IS, IS IT BASED UPON EVIDENCE REGARDING AUDIENCE COMPOSITION TO BE ROUTINELY ACCESSED BY A SIGNIFICANT NUMBER OF CHILDREN?  THE THIRD IS ADVERTISEMENTS MARKETED TO CHILDREN. THE FOURTH IS SUBSTANTIALLY SIMILAR TO --

THE COURT:  SO ADVERTISEMENTS MARKETED TO CHILDREN IS BASED ON WHAT THE CONTENT OF THE AD IS.

MS. LISKA:  SO, AGAIN, I --

THE COURT:  SO IT'S CONTENT BASED.

MS. LISKA:  THIS IS GOING TO, ARE THE USERS CHILDREN? AND THE REASON THAT WE KNOW THIS IS THAT IF THE USERS ARE CHILDREN, IT DOESN'T MATTER WHAT MESSAGES OR TOPICS THE COMPANY HAS.  IT CAN BE A SERVICE THAT HAS VIDEOS ABOUT POLITICAL COMMENTARY, BUT IS ACCESSED BY CHILDREN.  IT CAN BE A SERVICE

THAT HAS, YOU KNOW, CARTOONS, BUT IS ACCESSED BY CHILDREN.

AND I THINK, YOU KNOW, AGAIN, GOING TO ANOTHER CASE THAT HASN'T NECESSARILY BEEN FULLY, YOU KNOW, ISSUED -- DISCUSSED, WHICH IS THE TIKTOK ONE AS WELL, IT REFERENCES, YOU KNOW, THAT CHANGING THE SPEECH DOESN'T NECESSARILY LIFT A COMPANY FROM HAVING TO COMPLY WITH THIS BURDEN.

IF IT CHANGED THE CONTENT OF THEIR SPEECH, BUT THEY ARE STILL ACCESSED BY CHILDREN, THEY ARE STILL SUBJECT TO THIS LAW.

AND I THINK IT'S ALSO SALIENT -- AND PROJECT VERITAS, AND TO SOME EXTENT A LITTLE BIT THE TIKTOK DECISION AS WELL --

THE COURT:  I NEED YOU TO SLOW DOWN.

MS. LISKA:  MY APOLOGIES.

THE COURT:  YOU HAVE TWO HOURS.  I CAN'T LISTEN THAT FAST.

MS. LISKA:  I APOLOGIZE.  YOU JOIN A LONG LINE OF TEACHERS WHO HAVE TOLD ME IN EVERY BOOK REPORT TO SLOW DOWN.

THE COURT:  SO YOU'RE OLD ENOUGH TO HAVE LEARNED YOUR LESSON.  LET'S DO IT RIGHT NOW.

MS. LISKA:  I'LL TRY.  I'LL DO MY BEST.

THE COURT:  I HAVE NO SYMPATHY FOR SOMEONE WHO'S BEEN TOLD BEFORE.  IT CHANGES NOW.  TALK SLOWLY.

MS. LISKA:  WILL DO.

I THINK THAT THE COURTS HAVE -- THE NINTH CIRCUIT IN TIKTOK, AND THE NINTH CIRCUIT ESPECIALLY IN THE PROJECT VERITAS CASE, IS CLEAR THAT SIMPLY BECAUSE YOU LOOK AT CONTENT DOES NOT

MAKE IT CONTENT BASED.

THE QUESTION IS WHETHER OR NOT THE STATUTE WAS ADOPTED BECAUSE OF THE IDEAS OR VIEWS EXPRESSED, AND THIS STATUTE IS NOT ABOUT IDEAS OR VIEWS OR MESSAGES EXPRESSED.

WE ARE NOT REGULATING THESE COMPANIES BECAUSE OF THE IDEAS OR VIEWS THAT THEY HAVE IN ANY EXPRESSIVE SPEECH OR CONTENT ON THEIR PAGES.

THE COURT:  SO WHY ARE YOU REGULATING IT?

MS. LISKA:  BECAUSE CHILDREN USE THEM AND WE'RE CONCERNED ABOUT THE SAFETY OF CHILDREN.

THE COURT:  SO WHAT'S -- OKAY.  SO THEN -- YOU JUST ANSWERED THE QUESTION THEN.  OF COURSE YOU'RE CONCERNED ABOUT THE IDEAS, BECAUSE THE IDEAS EXPRESSED AFFECT CHILDREN DIFFERENTLY THAN ADULTS.  YOU JUST TOLD ME THAT.

MS. LISKA:  NO.  WE'RE CONCERNED ABOUT THE PRIVACY AND SAFETY OF CHILDREN AND THE WAYS IN WHICH DATA IS BEING USED FOR CHILDREN.

YOU KNOW, I KNOW THERE'S BEEN A LOT OF DISCUSSION ABOUT, YOU KNOW, THE EXTENT TO WHICH SOCIAL -- ONLINE PRODUCTS OR SOCIAL MEDIA HARM CHILDREN.

BUT NONE OF THAT SPEAKS TO THE STATE'S CONCERN ABOUT PRIVACY, THE PRIVACY OF CHILDREN WHOSE DATA IS BEING COLLECTED BY COMPANIES AND USED IN WAYS THAT THEY DON'T NECESSARILY NEED TO USE THAT DATA, OR SOLD TO OTHER ENTITIES.

THIS ISN'T ABOUT SPEECH THE STATE DOESN'T LIKE.  THIS IS

ABOUT DATA COLLECTION.

THE COURT:  I THINK YOU MADE ALL THESE ARGUMENTS LAST TIME, AND I DIDN'T BUY THEM, BUT NEITHER DID THE NINTH CIRCUIT.

MS. LISKA:  MAYBE INSOFAR AS WE'RE TALKING ABOUT THE DPIA PROVISION, BUT I DON'T THINK THE NINTH CIRCUIT DRILLED INTO THE QUESTIONS ABOUT PRIVACY WITH RESPECT TO THE OTHER SUBSTANTIVE PARTS OF THIS STATUTE.

THE COURT:  SO HAVING GUTTED THE DPIA, AT LEAST PRELIMINARILY, WHERE THE IDENTIFICATION OF CONTENT LIKELY TO BE HARMFUL TO CHILDREN, YOU'RE SAYING THAT -- YOU'RE SAYING THERE'S NOTHING HERE ABOUT HARM TO CHILDREN ANYMORE.  THIS STATUTE IS NO LONGER ABOUT THE CONTENT BEING HARMFUL TO CHILDREN.

MS. LISKA:  TO SOME EXTENT -- I MEAN, WE DISPUTE THAT THAT'S EVER WHAT IT WAS ABOUT.  IT MAY BE A PARTIAL MOTIVATION OF SOME PEOPLE.

BUT THAT THIS WAS ABOUT THE, THE HARM TO CHILDREN FROM THEIR PRIVACY BEING INFRINGED.  I MEAN, THAT'S IN THE FINDINGS THEMSELVES.  YOU KNOW, THE FINDINGS AND DECLARATION OF THE STATUTE THEMSELVES, WHICH MENTION THINGS ABOUT PRIVACY PROTECTIONS FOR CHILDREN, YOU KNOW, PROFILING CHILDREN.

I THINK, YOU KNOW, THE CONCERN ABOUT PRIVACY IS ONE THAT IS THROUGHOUT THE LAW IN MANY DIFFERENT, YOU KNOW, AREAS AND ASPECTS, CONCERN ABOUT THE KIND OF INFORMATION PEOPLE COLLECT ON YOU.

I MEAN, I THINK -- YOU KNOW, THE RADESKY DECLARATION NOTES THAT ONE STUDY DETERMINED COMPANIES HAVE UP TO 72 MILLION DATA POINTS ON A CHILD BY AGE 13.

AND I THINK THE STATE IS MOTIVATED IN ITS CONCERNS ABOUT THE PRIVACY FOR CHILDREN FROM THAT KIND OF DATA COLLECTION AND THE WAYS COMPANIES USE IT.

AND IF YOU LOOK AT SPECIFICALLY WHAT THE PROVISIONS AT ISSUE HERE INVOLVE, MANY OF THEM INVOLVE SPECIFICALLY REGULATIONS ON HOW DATA IS BEING USED, NOT DIRECTIONS TO LOOK AT THE CONTENT OF THE, THE -- YOU KNOW, WHATEVER IS ON THE SITE.

THE COURT:  OKAY.  I CERTAINLY DON'T THINK YOU COULD SAY THAT AS TO THE USE OF THE -- TO THE POLICY ENFORCEMENT, BECAUSE POLICY ENFORCEMENT OF COMMUNITY STANDARDS IS COMPLETELY SEPARATE AND IT'S COMPLETELY ABOUT CONTENT AND CONTENT POLICIES.  THAT I THINK YOU WOULD JUST BE WRONG ON.

MS. LISKA:  IF YOU'RE LOOKING AT IT SOLELY AS A YOUTUBE CONTENT MODERATION POLICY, PERHAPS.

BUT THE PROVISION ITSELF IS BROADER AND SPECIFICALLY --

THE COURT:  BUT THE ONLY CHALLENGE --

MS. LISKA:  -- CALLS OUT PRIVACY POLICIES.

THE COURT:  THE ONLY CHALLENGE TO THE POLICY ENFORCEMENT, WHICH IS (A)(9), IS AS IT APPLIES TO CONTENT POLICIES AND COMMUNITY STANDARDS.

MS. LISKA:  AND I THINK IN THAT INSTANCE AS WELL, I

DO THINK THAT SOME OF THE CONCERN AND INTERESTS OF THE STATE IS IN, YOU KNOW, CHILDREN WHO MAKE DECISIONS ABOUT WHERE THEY WANT TO GO BASED UPON THE REPRESENTATIONS OF WHAT THE TERMS OF SERVICE ARE AND MAKING SURE THAT THOSE TERMS OF SERVICE ARE, IN FACT, FIRST.

THE COURT:  GARDEN VARIETY TERMS OF SERVICE AREN'T AT ISSUE.

MS. LISKA:  NO, THEY AREN'T.

BUT TERMS OF SERVICE INCLUDES THINGS LIKE CONTENT COMMUNITY STANDARDS.  THOSE ARE PART OF THE CONTRACTS USERS AGREE TO.

I MEAN, I THINK WE CITE TO TWO EXAMPLES THAT ARE CITED IN OUR BRIEF THAT SPECIFICALLY SAY THINGS LIKE YOUR USE OF THIS PRODUCT IS, YOU KNOW, CONDITIONED UPON YOUR ADHERENCE TO THESE TERMS OF SERVICE AND COMMUNITY STANDARDS.

SO IT'S PART OF THE AGREEMENT MADE TO GAIN ACCESS TO THE PRODUCT.  YOU WILL FOLLOW THE COMMUNITY STANDARDS.

AND SO IT'S -- IT'S ESSENTIALLY A CONTRACTUAL AGREEMENT BETWEEN THE TWO SIDES.  YOUR ABILITY TO USE IT IS CONDITIONED ON ADHERENCE TO THE COMMUNITY STANDARDS, AND THAT'S A REPRESENTATION BY THE COMPANY THAT THEY HAVE ON ITS SITE.

THE COURT:  SO WHEN I LOOK AT -- LET ME MAKE SURE I HAVE THE RIGHT THING HERE -- (B), SECTION (B) OF 31, A COVERED SERVICE MAY NOT USE PERSONAL INFORMATION IN A WAY THAT IS MATERIALLY DETRIMENTAL TO THE PHYSICAL HEALTH, MENTAL HEALTH,

OR WELL-BEING OF A CHILD.

SO USE -- THEY USE PERSONAL INFORMATION TO DETERMINE WHAT TO PUBLISH TO THEIR USERS.

MS. LISKA:  SO I -- THEY -- THERE ARE VAGUE ATTESTATIONS TO THAT EFFECT.

I THINK THERE ARE SEVERAL PROBLEMS WITH THAT.  I'M NOT SURE WHAT DIRECTION YOUR HONOR WOULD LIKE ME TO HEAD WITH THAT, THOUGH.

THE COURT:  WELL, I JUST THINK THIS IS ABOUT CURTAILING CONTENT THAT COVERED SERVICES CAN PROVIDE ONLINE.

MS. LISKA:  I DON'T BELIEVE THAT THAT IS WHAT THAT PROVISION IS ABOUT.

THE COURT:  OKAY.

MS. LISKA:  I MEAN, WE REFERENCE THINGS, FOR INSTANCE, LIKE USING PERSONAL INFORMATION IN A WAY THAT RECOMMENDS THAT USERS CONNECT WITH OTHER USERS WHO MAY BE OUT TO EXPLOIT THEM.  THAT'S A CONCERN THAT IS DEFINITELY RAISED.

YOU KNOW, THE CONCERNS WITH RESPECT TO -- I KNOW YOUR HONOR REFERENCES CONTENT THAT IS ILLEGAL, BUT THAT IS A CONCERN, TOO --

THE COURT:  SO --

MS. LISKA:  -- THAT CHILDREN WILL BE SHOWN ILLEGAL CONTENT.

THE COURT:  SO WHEN I APPLY EITHER STRICT SCRUTINY OR INTERMEDIATE, THE REASONS THAT THE STATE HAS FOR ENACTING THIS

ARE VALID AND I -- I'VE SAID, AND NO ONE HAS REALLY CONTESTED, THAT THE STATE HAS A COMPELLING INTEREST IN PROTECTING CHILDREN.

BUT THE -- SO TO THE EXTENT YOU MIGHT LOSE, YOU'RE NOT GOING TO LOSE ON THAT.

IT'S THE NARROW TAILORING BASED UPON THE EVIDENCE THAT YOU HAVE TO ACTUALLY CORRECT A BEHAVIOR OR PROBLEM WITH THESE METHODS.

SO NO ONE NEEDS TO BE CONVINCED OF THE -- OF THAT.

SO LET'S -- I'M -- I DON'T THINK -- SO, I MEAN, HAVE YOU TOLD ME EVERYTHING YOU WANT TO TELL ME ABOUT THE COVERAGE DEFINITION AND WHY THAT IS NOT CONTENT BASED?

MS. LISKA:  I BELIEVE SO.  I THINK --

THE COURT:  OKAY.

MS. LISKA:  I'LL -- JUST TO SUM UP TO MAKE SURE I DID.

THE COURT:  SURE.

MS. LISKA:  THE THRESHOLD QUESTION THEY STILL NEED TO ADDRESS WITH RESPECT TO EACH PROVISION IS WHETHER OR NOT IT'S REGULATING EXPRESSIVE ACTIVITY.

THE COURT:  SO YOU MIGHT SAY -- AND THIS WAS THE QUESTION I ASKED.

MS. LISKA:  YES.

THE COURT:  YOU WOULD SAY THAT EVEN IF I FIND THAT THE COVERAGE DEFINITION IMPLICATES SPEECH AND EXPRESSION, I

STILL THEN HAVE TO ANALYZE EACH OF THE CHALLENGED SECTIONS?

MS. LISKA:  CORRECT.  AND I THINK THAT --

THE COURT:  AND TELL ME -- SO I ASKED THE QUESTION, SO I WAS -- I THOUGHT THAT MIGHT -- NOW TELL ME THE BASIS FOR THAT.  WHY DO I?

MS. LISKA:  SO TWO BASES FOR THAT.  FIRST, BECAUSE THE THRESHOLD QUESTION OF EXPRESSIVE ACTIVITY BEING REGULATED STILL MUST BE ANSWERED BEFORE SCRUTINY IS APPLIED.

THE COURT:  BUT IN EVERY INSTANCE, THE GATING PROVISION OF WHO'S COVERED AND WHO ISN'T IMPLICATES SPEECH.

THE PLAINTIFFS SAY THAT MEANS THE ENTIRE STATUTE AS A WHOLE REGULATES SPEECH AND HAS -- AND THEN I HAVE TO GO TO STRICT SCRUTINY.  THAT'S THEIR ARGUMENT.

MS. LISKA:  YES.

THE COURT:  AND SO I'M LOOKING FOR YOUR ARGUMENT AS TO EVEN IF I FIND THE GATING PROVISION -- THE COVERAGE DEFINITION IS WHAT THEY CALL IT -- IMPLICATES SPEECH, I STILL HAVE TO DETERMINE SECTION BY SECTION.

MS. LISKA:  YES.

THE COURT:  TELL ME THE AUTHORITY FOR THAT.

MS. LISKA:  SO TWO.  FIRST, I'LL SET ASIDE THAT FIRST PART ABOUT THE EXPRESSION, WHICH I THINK THAT'S A CLEAR THRESHOLD ISSUE, THAT THERE HAS TO BE AN IMPACT ON THEIR EXPRESSION, NOT SIMPLY SPEECH IS INVOLVED, BUT THEIR EXPRESSIVE ACTIVITY MUST BE REGULATED ITSELF.  THAT'S THE FIRST ONE.

THE SECOND ONE IS THAT IN ORDER FOR THE COURT TO ACTUALLY DO THE ANALYSIS OF THINGS LIKE SCRUTINY, IT'S GOING TO NEED TO LOOK AT EACH PROVISION, BECAUSE FOR EACH PROVISION, THERE ARE DIFFERENT ARGUMENTS THAT COULD BE MADE ABOUT TAILORING.

YOU KNOW, LOOKING, FOR INSTANCE, AT THE ANALOGY -- I KNOW THE ALTERNATIVES FROM THE NINTH CIRCUIT HAVE COME UP.  ONE OF THOSE WAS, YOU KNOW, ENCOURAGING CONTENT FILTERS.

WELL, YOU COULD ARGUE THAT THAT RELATES TO THE USE OF DATA IN A WAY THAT IS KNOWN TO BE HARMFUL, BUT THAT HAS NOTHING TO DO WITH PROFILING A CHILD BY DEFAULT, WITH USING INFORMATION FOR A REASON IT WASN'T COLLECTED FOR, WITH AGE ESTIMATION.

SO I THINK IN ORDER TO REALLY UNDERSTAND, IS THIS PROPERLY TAILORED TO THE INTEREST, YOU'RE GOING TO HAVE TO LOOK AT EACH SPECIFIC PROVISION.

THE COURT:  I'M WITH YOU ON THAT.  THAT'S A DIFFERENT ARGUMENT, AND I DON'T THINK I ADDRESSED THAT WITH MS. KUMAR.

SO YOU AGREE THAT IF I FIND, LIKE THE COURT IN REYES DID, THAT THE COVERAGE DEFINITION, SERVICE LIKELY TO BE ACCESSED BY CHILDREN, DEPENDS ON THE CONTENT PUBLISHED BY A BUSINESS, THEN THEY'VE -- WE HAVE A FACIAL CHALLENGE THAT, IN ALL ITS APPLICATIONS, APPLIES TO SPEECH, THEN I APPLY THE PROPER LEVEL OF SCRUTINY, AND YOU'RE SAYING I HAVE TO LOOK AT EACH SECTION TO DETERMINE IF THE STATE HAS SHOWN IT'S NARROWLY TAILORED.

I DON'T DISAGREE WITH YOU ON THAT.

MS. LISKA:  YES.

THE COURT:  OKAY.

MS. LISKA:  THAT'S WHAT WE WOULD SAY.

THE COURT:  THANK YOU.  THAT IS VERY CLEAR AND I -- THAT HELPS ME A LOT.

MS. LISKA:  CAN I DO --

THE COURT:  BEG YOUR PARDON.

MS. LISKA:  JUST ONE MORE THING ON THE COVERAGE ISSUE --

THE COURT:  OF COURSE.

MS. LISKA:  -- IS I JUST -- THE WAY THAT I UNDERSTAND THE CASE LAW, AND I THINK THAT IT'S CLEAR, IS THAT SIMPLY HAVING TO LOOK AT CONTENT IS NOT ENOUGH TO MAKE IT CONTENT BASED.

THE COURT:  AND THAT'S CITY OF AUSTIN?

MS. LISKA:  CITY OF AUSTIN, FOR INSTANCE, PROJECT VERITAS, PORTER, THE CAR HONKING CASE AS WELL, THE HORN HONKING CASE.

THE COURT:  YEAH.

MS. LISKA:  THEY -- SOLICITATION IS A CLASSIC EXAMPLE.  A STATE CAN PERMISSIBLY REGULATE SOLICITATION. THAT'S NOT A CONTENT-BASED RESTRICTION.

BUT WE HAVE TO LOOK AT WHAT THE SPEECH IS TO DETERMINE IF IT'S SOLICITATION.

SO I THINK THE WAY THAT IT'S BEST TO FRAME THE CONTENT-BASED RESTRICTIONS AFTER CITY OF AUSTIN IS, WAS IT

ENACTED BECAUSE OF A DISAGREEMENT WITH THE MESSAGE OR IDEAS EXPRESSED?

AND I THINK THAT THIS COVERAGE DEFINITION IS NOT REFLECTING A DISAGREEMENT WITH THE IDEAS EXPRESSED.

IT'S NOT DEFINING BUSINESSES A CERTAIN WAY BECAUSE THE STATE DOESN'T LIKE SPEECH FOR CHILDREN.  IT'S DEFINING IT BASED UPON FEATURES THAT HAVE NOTHING -- THAT ARE CONTENT AGNOSTIC IN THE SENSE THAT IF A SERVICE HAS LOTS OF CHILDREN THAT USE IT, IT'S REGULATED REGARDLESS OF WHAT KIND OF CONTENT IS ON THE SERVICE.

THE STATE DOES NOT CARE IF IT'S YOUTUBE VIDEOS OR TICKETS TO A TAYLOR SWIFT CONCERT OR TICKETS TO WWE FIGHTS OR HOCKEY GAMES.  IF A LOT OF CHILDREN USE IT, IT'S UNDER THE DEFINITION OF A REGULATED ENTITY HERE, IRRESPECTIVE OF CONTENT, AND THAT IS, I WOULD SAY, PRETTY CLEARLY CONTENT NEUTRAL IN THE COVERAGE DEFINITION.

THE COURT:  SO YOU'RE SAYING THAT ONCE IT'S A GATHERING PLACE FOR CHILDREN, IT'S THAT -- IT'S THE INFORMATION GATHERED ABOUT THE AUDIENCE THAT YOU'RE REGULATING?

MS. LISKA:  THAT'S -- YES, THAT'S HOW WE VIEW THIS LAW.

THE COURT:  ALL RIGHT.  SO EVEN IF -- AND WE'RE NOT GOING INTO THE ILLEGAL PORNOGRAPHY REALM BECAUSE THAT'S NOT WHAT THIS STATUTE IS ABOUT.

EVEN IF EVERYONE WOULD AGREE THAT CHILDREN SHOULD NOT SEE

CERTAIN CONTENT, SHOULD NOT, THAT'S A PARENTAL ISSUE, THAT --

AND I'M TRYING TO THINK OF AN EXAMPLE.  I MEAN, THERE ARE SO

MANY.

BUT, I MEAN, YOU KNOW, THE HORRORS AND DEVASTATION OF THE

WILDFIRES IN PALISADES IS -- COULD BE TERRIFYING TO CHILDREN

FEARING THAT THEIR OWN HOUSES WOULD BURN DOWN, AND I'M SURE

MANY DID.

BUT IT'S -- YOU WOULD SAY, LET THE INFORMATION FLOW TO

THOSE KIDS, BUT YOU JUST CAN'T -- YOU'VE GOT TO TURN OFF ALL OF

YOUR, YOUR SCRAPING MECHANISMS THAT TAKE THEIR PERSONAL

INFORMATION.

MS. LISKA:  CORRECT, THAT'S WHAT WE WOULD SAY, THAT

THIS IS NOT ABOUT BLOCKING CHILDREN FROM SEEING SOMETHING.

THAT'S -- THIS IS A WAY IN WHICH IT'S VERY DIFFERENT FROM

LAWS LIKE THOSE IN MOODY, OR EVEN THE FREE SPEECH COALITION.

THE STATUTE DOES NOT SAY THAT IF A CHILD SEES THIS CONTENT,

YOU'RE PENALIZED.

AND, AGAIN, I THINK, TOO, YOU KNOW, IT -- I DO WANT TO

EMPHASIZE, LOOKING AT EACH OF THESE PROVISIONS INDIVIDUALLY, A

LOT OF THIS DISCUSSION ABOUT USING INFORMATION TO SHOW A CHILD,

YOU KNOW, A NEWS STORY ABOUT WILDFIRES IS ONLY (B)(1), AND IF

THE COURT DOES BELIEVE THAT THAT'S A PROBLEM, THAT'S A PROBLEM

AS TO (B)(1).

THE COURT:  SO DID WE -- DID THE NINTH CIRCUIT, IN

AGREEING WITH MY ORDER ON ENJOINING THE DPIA, TAKE OUT OF THIS

LAW EVERY REFERENCE TO LIKELY TO HARM CHILDREN?

MS. LISKA:  I DON'T BELIEVE SO.

THE COURT:  SO THAT'S -- THAT'S WHERE WE GET BACK TO, BECAUSE THERE'S -- AT ONE LEVEL THERE'S THINGS THAT APPEAL TO CHILDREN, SO WE KNOW WE'VE GOT A LOT OF CHILDREN AT A LOCATION, AND THEN THERE'S THE EVALUATION, WHICH IS EXPRESSIVE, OF WHAT IS HARMFUL.

AND I'M TRYING TO -- I READ THIS SO MANY TIMES, BUT I'M NOT FINDING ANY EXAMPLE OF WHERE HARM TO CHILDREN IS -- THERE ARE SECTIONS ON BEST INTERESTS OF CHILDREN.

MS. LISKA:  I BELIEVE THAT THE ONE YOU'RE THINKING OF IS (B)(1), WHICH IS THE USE THE PERSONAL INFORMATION OF ANY CHILD IN A WAY THAT THE BUSINESS KNOWS OR HAS REASON TO KNOW IS MATERIALLY DETRIMENTAL TO THE PHYSICAL HEALTH, MENTAL HEALTH, OR WELL-BEING OF A CHILD.

THAT IS, I THINK, THE ONLY PLACE WHERE THAT LANGUAGE IS.

THERE IS THE, THE COMPELLING REASON AND BEST INTEREST EXCEPTIONS IN OTHER PLACES.

BUT THE REST OF THEM DO NOT REFERENCE THAT LANGUAGE ABOUT KNOWING OR HAVE REASON TO KNOW IS MATERIALLY DETRIMENTAL TO THE WELL-BEING OF A CHILD.

THE COURT:  SO THAT ONE GOES DIRECTLY, IN MY VIEW, TO THE EXPRESSIVE ACTIVITY OF THE PUBLISHER IN USING INFORMATION ABOUT A CHILD USER IN ORDER TO COLLATE OR COLLECT INFORMATION TO SEND TO THE CHILD.

MS. LISKA:  SO I THINK THAT IS SOMETHING THAT, THAT -- WE WOULD ARGUE THEY HAVE NOT ESTABLISHED IN THE RECORD THEY'VE DONE THAT, BUT I'LL SET THAT ASIDE.

AND TO THE EXTENT THAT YOU BELIEVE THAT THEY HAVE SHOWN IN THE RECORD FACTUALLY THAT OCCURS, I DO THINK THAT THERE ARE STILL ISSUES WHEN DOING A FACIAL CHALLENGE UNDER MOODY, WHICH IS, WHAT TYPE OF CONTENT ARE WE TALKING ABOUT?  ARE WE TALKING ABOUT STUBHUB DECIDING WHAT TICKETS TO SAY A CHILD SHOULD PURCHASE?  ARE WE TALKING ABOUT LYFT, YOU KNOW, USING PERSONAL INFORMATION TO GIVE YOU, YOU KNOW, A CHOICE OF WHAT DRIVER TO SELECT?  ARE WE TALKING ABOUT YOUTUBE USING PERSONAL INFORMATION TO RECOMMEND A VIDEO?

I THINK THAT THEY HAVE NOT -- I MEAN, THERE ARE WAYS THEY COULD HAVE COME IN HERE AND TRIED TO MAKE A CHALLENGE THAT FOCUSSED ON SOMETHING LIKE, LOOK, WHEN WE USE INFORMATION FOR THIS SPECIFIC THING BY THIS SPECIFIC COMPANY, IT'S EXPRESSIVE.

BUT THEY HAVE NOT DONE THAT HERE, ESPECIALLY GIVEN THAT WHAT THEY COULD SAY, A USE OF INFORMATION FOR CONTENT IS TO DETERMINE WHAT ADS TO PLACE ON A WEBSITE, WHICH IS CLEARLY COMMERCIAL SPEECH, WHICH IS A COMPLETELY DIFFERENT STANDARD.

AND I THINK BECAUSE IT'S SO INTERWOVEN, ARE WE TALKING ABOUT WHAT CONTENT SHOULD BE SHOWN BECAUSE WE'RE DOING THE KIND OF CONTENT MODERATION IN MOODY WHERE WE'RE SAYING WE DON'T WANT TO HOST CERTAIN SPEECH?  ARE WE TALKING ABOUT CONTENT MODERATION DECISIONS THAT ARE DONE BY, YOU KNOW, WE JUST WANT

TO MAXIMIZE YOUR VIEWING, OR THE INFINITE USER BASED LOOP LIKE JUDGE DAVILA?  ARE WE TALKING ABOUT CONTENT THAT'S COMMERCIAL?

WITHOUT FURTHER UNDERSTANDING THE RANGE OF WAYS THAT THEY'RE USING PERSONAL INFORMATION TO DELIVER CONTENT, I DON'T THINK WE CAN GET -- THAT THEY HAVE SHOWN THAT A SUBSTANTIAL NUMBER OF THESE APPLICATIONS ARE EXPRESSIVE, TRIGGER WHAT LEVEL OF SCRUTINY, AND WHETHER AN -- YOU KNOW, I UNDERSTAND IT'S OUR BURDEN TO SHOW SCRUTINY IS MET.

BUT IF WE DON'T EVEN KNOW WHAT KIND OF SPEECH WE'RE TALKING ABOUT BECAUSE THEY HAVEN'T TOLD US WHAT SPEECH IS AFFECTED, WE CAN'T MEET THAT BURDEN TO SAY, WELL, OKAY, WE'RE TALKING ABOUT ADVERTISEMENTS, ESPECIALLY BECAUSE, YOU KNOW, AT THE END OF THE DAY, THIS IS ABOUT CONCERNS ABOUT EXPRESSION, AND THERE ARE A LOT OF WAYS THAT BUSINESSES CAN STILL BE EXPRESSIVE WITHOUT USING PERSONAL INFORMATION.

WE TALK ABOUT --

THE COURT:  BUT THAT'S NOT THE POINT.  IT'S NOT THAT THEY HAVE OTHER AVENUES HERE.  IT'S WHAT -- THIS IS THE -- THIS IS THE AVENUE THAT THE LAW SHUTS DOWN.  THAT'S WHAT I'M LOOKING AT.

MS. LISKA:  BUT THE OTHER AVENUES IS RELEVANT FOR TAILORING ANALYSES UNDER THE LEVEL OF SCRUTINY.

THE COURT:  OKAY, SURE.  SO THE WAY I READ THE NINTH CIRCUIT DECISION WAS THAT THE NINTH CIRCUIT SENT THIS BACK FOR ME TO DO THE FACIAL ANALYSIS OF DETERMINING IF, IN

EVERY APPLICATION, WHETHER AT LEAST A SUBSTANTIAL MAJORITY OF THE APPLICATIONS IMPLICATE PROTECTED SPEECH.

THE NINTH CIRCUIT DID NOT OVERRULE ANY OF MY DETERMINATIONS UNDER INTERMEDIATE SCRUTINY.  THEY JUST SAID IT WAS A HIGHER STANDARD.

BUT CLEARLY IF YOU DON'T MEET THE LOW ONE, YOU CAN'T MEET THE HIGH ONE.

THEY DIDN'T ADDRESS MY ANALYSIS ON MANY OF THE SECTIONS BECAUSE THEY SAID I DIDN'T PERFORM THE PROPER THRESHOLD ANALYSIS, WHICH I NEED TO DO NOW.

THE CASE IS IN A DIFFERENT POSTURE NOW.  I'M CONSIDERING DIFFERENT, DIFFERENT CLAIMS BY THE PLAINTIFFS.

BUT I THINK -- I UNDERSTAND YOUR ARGUMENTS ON THE TAILORING, AND ONCE I'M AT THAT PLACE, I THINK -- I MEAN, I DON'T KNOW THAT I'LL CHANGE MY MIND ON IT, BUT I UNDERSTAND WHAT YOU'RE SAYING.

MS. LISKA:  YES.  AND I DO JUST WANT TO SAY, YOU KNOW, I THINK THAT -- I THINK THAT PART OF HAVING TO CONSIDER THE FULL RANGE OF APPLICATIONS IS THAT DIFFERENT APPLICATIONS MAY HAVE DIFFERENT STANDARDS THAT ARE ATTACHED TO THEM.

YOU KNOW, THE WAY THAT I VIEW THE MOODY STANDARD IS THAT YOU HAVE TO LOOK AT, OKAY, THE LAW DOES -- YOU KNOW, WE HAVE A SPECTRUM OF THINGS THE LAW DOES, LIKE A RAINBOW.  THERE ARE DIFFERENT COLORS BECAUSE THERE'S DIFFERENT APPLICATIONS.

AND THE QUESTION IS, HOW MANY OF THOSE COLORS ARE AN

APPLICATION THAT IS UNCONSTITUTIONAL?

BUT IF SOME OF THEM ARE RED AND SOME OF THEM ARE GREEN, RED MAY HAVE ONE STANDARD AND GREEN MAY HAVE ANOTHER.

THE COURT:  WELL, THE WAY I UNDERSTAND IT IS A LITTLE DIFFERENT.  THERE ARE TWO BUCKETS.  ONE IS A BUCKET OF APPLICATIONS THAT IMPLICATE THE FIRST AMENDMENT, AND THOSE THAT DON'T.  AND THEN IF THEY DON'T, THEN I'M JUST DONE.

AND THEY MAY BE INVALID FOR SOME OTHER REASON I'M NOT CONSIDERING, BUT THIS CASE IS NOT ABOUT THE ONES THAT AREN'T IN THE BUCKET OF EXPRESSIVE ACTIVITY.

MS. LISKA:  WELL, TWO RESPONSES.  ONE IS --

THE COURT:  AND THAT -- BUT, I MEAN, ONLY TO THE EXTENT THAT I'VE GOT A UNIVERSE OF APPLICATIONS, THE FULL RANGE OF APPLICATIONS, AND THEN I'M GOING TO LOOK AT THE -- WHAT MAY BE A SMALLER BUCKET OF THOSE THAT IMPLICATE SPEECH.

AND IN THE DPIA, THE NINTH CIRCUIT SAID THEY WERE THE SAME.  IN ALL APPLICATIONS, SPEECH IS IMPLICATED.  THAT WAS PRODUCTION OF A REPORT.  SO THAT WAS -- AS I SAY, THAT WAS MORE OBVIOUS THAN WHAT WE'RE DEALING WITH NOW.

BUT IF I ACCEPT YOUR EXAMPLES OF STUBHUB AND LYFT AND PAYPAL AND SOME OF THESE OTHERS, THEN IT'S -- WHAT I -- WHAT -- I HAVE NO EVIDENCE FROM YOU AS TO HOW MANY OF THE USERS ON THOSE SITES ARE EVEN CHILDREN.

AND SO, YES, I DON'T KNOW THAT THEY EVEN MEET THE THRESHOLD LIKELY TO BE -- AS ACCESSED BY CHILDREN.  I DON'T

KNOW WHAT "LIKELY" MEANS.

THERE IT -- CERTAINLY IN SOME INSTANCES A KID IS GOING TO CALL A CAB, BUT NOT, NOT REALLY BECAUSE CHILDREN UNDER 18 DON'T NECESSARILY HAVE THE MEANS TO PAY FOR LYFT BECAUSE IT'S ON A CREDIT CARD.  AND SO, I MEAN, IT'S JUST A VERY SMALL GROUP.

STUBHUB, I MEAN, YOU'RE TALKING ABOUT OLDER TEENAGERS, MOST DEFINITELY.  THE 12 TO 18 YEAR OLD SET IS PROBABLY ALL OVER STUBHUB.

MS. LISKA:  I THINK, THOUGH, THAT WHAT MOODY SAYS IS THAT WAS PART OF THE PROBLEM THERE --

THE COURT:  UM-HUM.

MS. LISKA:  -- IS THAT NETCHOICE HAS A LOT OF MEMBERS, AND THEY'RE SAYING THEIR MEMBERS ARE AFFECTED BY THE STATUTE.

BUT THEY'RE NOT ELABORATING HOW, AND WE'RE DEFAULTING TO LOOKING AT, YOU KNOW, THE QUINTESSENTIAL SOCIAL MEDIA EXAMPLE WITHOUT CONSIDERING THE FULL RANGE.

AND JUST RESPONDING TO YOUR POINT ABOUT THE BUCKET, I AGREE COMPLETELY THAT THE QUESTION IS, WHAT'S IN THE BUCKET THAT REGULATES EXPRESSIVE ACTIVITY?

BUT THE BUCKET CAN HAVE DIFFERENT KINDS OF STONES IN IT. SOME OF THE THINGS IN THE BUCKET MIGHT BE COMMERCIAL SPEECH.

THE COURT:  OKAY.

MS. LISKA:  SOME OF THE THINGS MIGHT NOT BE.

THE COURT:  THAT'S FAIR.

MS. LISKA:  AND I DO THINK THAT'S SALIENT --

THE COURT:  YEAH.

MS. LISKA:  -- BECAUSE TO DO THE TAILORING ANALYSIS --

THE COURT:  OKAY.

MS. LISKA:  -- WE NEED TO KNOW, IS THIS IMPACTING A COMPANY'S COMMERCIAL SPEECH, OR IS THIS IMPACTING OTHER SPEECH?

BECAUSE, YOU KNOW, THE EXAMPLE OF THINGS LIKE CONTEXTUAL ADVERTISING ARE VERY RELEVANT TO IF WHAT'S BEING IMPACTED IS THE COMMERCIAL SPEECH OF A COMPANY AND NOT OTHER EXPRESSIVE ACTIVITY, AND I DON'T THINK WE KNOW TO WHAT EXTENT, BECAUSE WHEN THEY SAY WE USE INFORMATION TO DELIVER CONTENT, WHAT IS THAT CONTENT?  IS IT ADVERTISEMENTS?  IS IT RECOMMENDED TICKETS TO BUY?  OR IS IT, YOU KNOW, WE DON'T WANT TO HOST, YOU KNOW, VIDEOS THAT ARE ANTI NAZI OR THAT ARE ANTI DONALD TRUMP.

THE COURT:  SO THAT'S WHERE REYES IN A SENSE WAS EASIER BECAUSE IT WAS GEARED TO SOCIAL MEDIA.

MS. LISKA:  IT WAS, AND I THINK THAT THOSE CASES ARE ALSO EASIER BECAUSE THEY'RE VERY CLEARLY SAYING, IF YOU SHOW CHILDREN CERTAIN CONTENT, YOU'RE IN TROUBLE.

AND THIS CASE -- THIS LAW DOES NOT EVER SAY, IF YOU SHOW CHILDREN CERTAIN CONTENT, YOU'RE IN TROUBLE, BECAUSE A CHILD CAN COME IN AND LOOK FOR WHAT THEY WANT AND THAT'S COMPLETELY FINE.

THE COURT:  YOU KNOW, AND WE TALKED ABOUT THIS LAST

TIME.  IT'S ALWAYS INTERESTING, WHEN I READ THE LEGISLATIVE HISTORY AND READ WHAT THE LEGISLATORS SAY, AND THEY'RE SAYING, WE TOOK THIS FROM THE UNITED KINGDOM, ISN'T THIS DANDY?  THIS IS JUST A GREAT THING.

AND IT MIGHT BE FROM A POLICY STANDPOINT.  THAT'S NOT MY DOMAIN.

BUT THEY DON'T HAVE THE FIRST AMENDMENT.  AND SO THE FILTER HERE IS COMPLETELY LACKING, AND NOTHING THAT'S BEEN POINTED OUT TO ME HAS -- TO SHOW THE LEGISLATURE CARED ONE WHIT ABOUT WHETHER THIS WOULD PASS FIRST AMENDMENT MUSTER.

BUT, YOU KNOW, IT'S -- IT WAS NOT DESIGNED TO PASS SUCCESSFULLY THROUGH THE FILTER OF THE FIRST AMENDMENT, AND NOW YOU'RE TRYING TO REVERSE ENGINEER IT, AND THAT'S HARD.

MS. LISKA:  I THINK, THOUGH, THAT THAT SPEAKS, YOUR HONOR, TO THE FACT THAT THE LEGISLATURE WASN'T VIEWING THIS AS A CENSORSHIP LAW, THAT THEY WEREN'T COMING INTO THIS WITH THE IDEA OF --

THE COURT:  WELL, SPEECH ISN'T THE ONLY CENSORSHIP.

MS. LISKA:  NO, I UNDERSTAND.

BUT I THINK THEY WEREN'T COMING INTO THIS WITH THE IDEA THAT THEY'RE TRYING TO RESTRICT OR REGULATE WHAT COMPANIES SAY AND DO IN A SPEECH SENSE.

THE COURT:  WELL, THE DPIA CERTAINLY WAS.

MS. LISKA:  WELL, WE CAN SET ASIDE THE DPIA -- AND, YOU KNOW, LOOK, IF I COULD GET IN THERE AND HELP THE

LEGISLATURE DRAFT LAWS, MY JOB WOULD BE SO MUCH EASIER.

THE COURT: I GET IT. I GET IT COMPLETELY.

MS. LISKA: BUT I THINK IF WE SET ASIDE THE DPIA, I THINK A LOT OF THE DISCUSSION SHOWS THAT THEY'RE CONCERNED ABOUT CHILDREN'S PRIVACY AND SAFETY.

THE COURT: UM-HUM.

MS. LISKA: THIS ISN'T ABOUT WANTING TO REGULATE THE SPEECH.

AND, LOOK, I DON'T WANT TO MINIMIZE THE IMPORTANCE OF THE FIRST AMENDMENT, AND I DON'T WANT TO SAY THAT, YOU KNOW, WE AREN'T CONCERNED ABOUT LAWS THAT ARE CLEAR ATTEMPTS AT CENSORSHIP.

WE JUST THINK THAT THIS LAW IS NOT ONE OF THOSE.

THE COURT: OKAY. SO THAT'S AN INTERESTING THING. CERTAINLY CHILDREN'S PRIVACY AND SAFETY IS WRITTEN INTO THE LAW IN MANY PLACES, AND THERE MAY BE AN EFFORT NOT TO REGULATE THE EXPRESSIVE ACTIVITY OF CHILDREN.

BUT IT MAY HAVE HAD THE CONSEQUENCE OF REGULATING THE EXPRESSIVE ACTIVITY OF THE COVERED SERVICES, AND THAT'S WHAT WE'RE FOCUSSING ON.

MS. LISKA: YES, OF COURSE.

THE COURT: OKAY. SO LET'S MOVE -- SO DID YOU WANT TO SAY ANYTHING ABOUT -- SO I WANT TO GIVE YOU THE CHANCE TO TALK ABOUT THE POLICY CONSIDERATIONS AS TO CONTENT MODERATION AND COMMUNITY STANDARDS, IF YOU WISH. YOU BRIEFED IT, BUT IF

YOU'D LIKE TO SAY SOMETHING ELSE.

AND THEN -- AND DARK PATTERNS AND AGE ESTIMATION, AND THEN I WANT TO MOVE TO THE OTHER ISSUES.

MS. LISKA:  YES.  I MEAN, I'LL JUST BRIEFLY SAY I THINK OUR POSITION ON THE DARK PATTERNS IS THAT IT'S ENFORCING A CONTRACTUAL AGREEMENT.  YOU KNOW --

THE COURT:  I'M SORRY, THE DARK PATTERNS AREN'T CONTRACTUAL.

MS. LISKA:  NOT THE --

THE COURT:  THE POLICY.

MS. LISKA:  THE POLICY.  I'M STARING AT THE WRONG PART.

THE COURT:  THAT'S OKAY.

MS. LISKA:  THE POLICY PROVISION.

I HAVE THEM NEXT TO EACH OTHER.  THAT'S MY BAD HANDWRITING THERE.

THE COURT:  THAT'S OKAY.

MS. LISKA:  THE POLICY PROVISIONS ARE ENFORCING A CONTRACTUAL AGREEMENT.

I DON'T THINK WE MADE ARGUMENTS WITH RESPECT TO TAILORING OR SCRUTINY, SO I GUESS --

THE COURT:  SO IN THE REPLY BRIEF, MS. KUMAR CITES TO CASES THAT SAY THINGS LIKE COMMUNITY STANDARDS ARE ACTUALLY NOT CONTRACTUAL.

MS. LISKA:  I WOULD DISAGREE BASED UPON WHAT RECORD

EVIDENCE WE HAVE HERE.  I THINK WE CITE TO TWO EXAMPLES FROM, I THINK IT'S THE KUMAR DECLARATION, EXHIBITS 5 AND 6, WHICH ARE TERMS OF SERVICE IN THE RECORD FROM THE FIRST, THE FIRST MOTION, WHICH CLEARLY SAY USE OF THIS PRODUCT -- I DON'T HAVE THE SPECIFIC LANGUAGE RIGHT HERE, BUT THEY SAY THINGS ALONG THE LINES OF YOUR USE AND ACCESS TO OUR SERVICE IS CONDITIONED ON YOUR AGREEMENT TO ABIDE BY OUR COMMUNITY STANDARDS.

THAT SOUNDS PRETTY TERMS OF SERVICE TO ME.

THE COURT:  OKAY.  HOWEVER, YOU HAVE TO TAKE IT TO THE NEXT STEP, WHAT DOES ENFORCEMENT OF THAT MEAN?  THAT THEN THE COMPANY HAS TO LOOK AT THE CONTENT THE USER HAS PUT ONLINE AND DETERMINE WHETHER IT OFFENDS THE COMMUNITY STANDARDS, AND THEN DETERMINE WHETHER TO TAKE TO DOWN.

ISN'T THAT -- THAT'S PUBLISHING DECISIONS.  THAT'S WHERE I THINK THIS IS REALLY RIGHT IN THE SWEET SPOT OF SECTION 230.

MS. LISKA:  SO I THINK THAT WHAT COHEN WOULD SAY, THOUGH, IS THAT WHERE PRIVATE PARTIES HAVE MADE AGREEMENTS BY -- BETWEEN THEMSELVES THAT INVOLVE LIMITATIONS ON SPEECH, THE STATE ENFORCING A PRIVATE AGREEMENT THAT LIMITS SPEECH IS NOT RUNNING AFOUL OF THE FIRST AMENDMENT.

THE COURT:  OKAY.

MS. LISKA:  SO THAT'S -- THAT WOULD BE OUR ARGUMENT. OF COURSE THE COURT IS FREE TO TAKE THAT AS IT WILL.

THE COURT:  OKAY.

MS. LISKA:  WITH RESPECT TO 230, I JUST WANT TO POINT

TO, I THINK WE CITE CASES LIKE BARNES AND CALISE -- THAT'S C-A-L-I-S-E -- THAT SAY THAT SIMILARLY WHERE THERE IS AN AGREEMENT TO AGREE -- WHERE A COMPANY SAYS THAT WE WILL NOT HAVE CERTAIN CONTENT AND MAKES THAT PROMISE TO ITS USERS, ENFORCING THAT PROMISE, NOT, YOU KNOW, INDEPENDENTLY OBLIGATING CERTAIN TYPES OF MODERATION, BUT ENFORCING WHAT THE COMPANY HAS ITSELF PROMISED USERS TO DO, THAT DOES NOT RUN AFOUL OF SECTION 230.

THE COURT: OKAY.

MS. LISKA: SO THAT'S HOW WE VIEW WHAT THIS PROVISION DOES.

THE COURT: OKAY. AND THEN ANY COMMENTS ON DARK PATTERNS? I -- I'M NOT -- I DON'T THINK I'M READY TO ENJOIN DARK PATTERNS, BUT PART OF THAT IS I'M NOT SURE I HAVE ENOUGH IN THE RECORD. IT'S A TERRIBLE WORD BECAUSE IT'S NOT ALL EVIL.

MS. LISKA: I KNOW, BUT IT'S --

THE COURT: BUT IT'S THE -- IT'S THE RIGHT -- IT'S THE TERM OF ART. I GET THAT.

MS. LISKA: IT'S THE TERM OF ART. I THINK ONE OF THE AMICUS BRIEFS CITES THAT IT'S BEEN AROUND SINCE 2010.

THE COURT: YES.

MS. LISKA: THE FTC USES IT.

THE COURT: YEAH.

MS. LISKA: AND LIKE I SAID, IF I COULD WRITE THE STATUTES MYSELF -- I DON'T KNOW THAT I HAVE MUCH MORE TO SAY ON

THAT ONE.

THE COURT:  OKAY.  THAT'S FINE.

HOW ABOUT AGE ESTIMATION?

MS. LISKA:  YES, JUST TO TOUCH VERY BRIEFLY ON THAT.

I WAS ORGANIZED, AND NOW I'M NOT.

I THINK, AS HAS BEEN NOTED, TWO QUICK POINTS.  THE FIRST IS IT DOESN'T HAVE TO BE INTRUSIVE, LIKE AN AGE VERIFICATION.  THERE'S NOTHING THAT INDICATES THAT SIMPLY ATTESTATION WOULD NOT BE SUFFICIENT, ESPECIALLY IF A COMPANY SAYS THAT THEY'RE NOT COLLECTING DATA OR USING IT FOR ANY, YOU KNOW, PURPOSES.

THE COURT:  SO I'M A USER AND I HAVE TO CLICK A BOX, "I AM OVER 18."

MS. LISKA:  CORRECT.  THAT CAN BE SUFFICIENT IF THE RISKS FROM HOW THEY'RE COLLECTING AND USING DATA ARE MINIMAL.

SO IF THE COMPANY IS --

THE COURT:  SO UNDER THE STATUTE -- THAT TAKES CARE OF ALL THE ADULTS.

IT DOESN'T TAKE CARE OF HOW THE STATUTE REGULATES CHILDREN.  SO THEN CHILDREN HAVE TO ACTUALLY SAY HOW OLD THEY ARE.

MS. LISKA:  NO.  IT -- AN ESTIMATE COULD BE AN AGE RANGE.  THERE'S NOTHING IN THE STATUTE THAT SAYS YOU COULDN'T ESTIMATE --

THE COURT:  SO 0 TO 18 IS NOT GOING TO CUT IT HERE.

MS. LISKA:  NO, BUT IT'S AN ESTIMATE OF AN AGE, AND

YOU KNOW AN ATTESTATION WHERE THEY SAY, HOW OLD ARE YOU?  OR THEY COULD ASK, ARE YOU UNDER 13?  OR A QUESTION LIKE, DO YOU FALL IN THE 0 TO 5?  5 TO 10?  10 TO 15?  15 TO 18?

THERE'S NO INDICATION THAT AN ATTESTATION LIKE THAT WOULDN'T WORK.

THE COURT:  OKAY.

MS. LISKA:  I DO BELIEVE THAT THERE'S ALSO INDICATIONS IN THE RECORD, AND COMMON SENSE WOULD SAY, THAT SOME COMPANIES ARE GOING TO BE POSITIONED TO USE THE DATA THEY HAVE COLLECTED.  I MEAN, IF THEY'VE GOT 72 MILLION DATA POINTS ON A CHILD, THEY CAN PROBABLY ESTIMATE THAT CHILD'S AGE.

SO IF THEY ALREADY HAVE THE CHILD'S BIRTH DATE BECAUSE THEY COLLECT IT FOR OTHER PURPOSE, LIKE FOR COMPLIANCE WITH COPPA, THEN THEY HAVE THE INFORMATION THEY NEED TO ESTIMATE AGE.

THIS IS -- AND THE SECOND THING ON THIS POINT IS I DO THINK IT'S IMPORTANT TO LOOK AT THE "OR" IN THE SITUATION, THAT WHEN THE STATE IS SAYING --

THE COURT:  THAT'S THE -- THAT IS THE REALLY BAD PART OF THIS STATUTE, THE "OR" PART.

MS. LISKA:  THE --

THE COURT:  OR DUMB IT DOWN FOR EVERYBODY.  WHAT A TREMENDOUS BURDEN ON EVERYBODY.

I MEAN, NOT ONLY DO PEOPLE OVER 18 HAVE A TREMENDOUS BURDEN ON THEIR RIGHTS, 17 YEAR OLDS, 16 YEAR OLDS, 15,

DEPENDING ON THE CONTENT, IT AFFECTS ALL OF THEM.

MS. LISKA:  IT SAYS -- WHAT THE STATUTE SAYS IS -- THE EXAMPLE YOUR HONOR GAVE EARLIER, THE WAY YOU FRAMED IT EARLIER, EITHER ESTIMATE THEIR AGE, OR DON'T SCAPE THEIR DATA AND USE IT FOR OTHER PURPOSES FOR ALL USERS.  THAT'S THE "OR."

THERE'S NO BLOCKING OF CONTENT.  THERE'S NO -- IT'S NOT LIKE IN FREE SPEECH WHERE YOU EITHER HAD TO VERIFY YOUR AGE OR WE HAD TO PUT UP A WALL THAT SAID YOU CANNOT ACCESS THIS, AN AFFIRMATIVE WALL MUST BE BUILT.

THE STATUTE DOES NOT REQUIRE ANY WALLS BE BUILT.

THE COURT:  OKAY.

MS. LISKA:  IT JUST SAYS, IF YOU CANNOT ESTIMATE THEIR AGE -- WHICH, AGAIN, CAN BE AN ATTESTATION, THEY CAN USE YOUR EXISTING INFORMATION, THERE ARE OTHER EVIDENCE IN THE RECORD THAT THIS MAY NOT BE ENTIRELY BURDENSOME, IT'S A SLIDING SCALE -- OR DON'T SCRAPE DATA AND USE IT ON OTHER PEOPLE FOR -- YOU KNOW, IT'S THE DATA AND PRIVACY, SO IT WOULD BE THE DEFAULT PRIVACY SETTINGS.

THE COURT:  OKAY.

MS. LISKA:  DON'T SCRAPE THE DATA.

I THINK, TOO, THE ONLY WAY THAT YOU CAN SAY TO A COMPANY, REGULATE HOW YOU TREAT CHILDREN, IS TO REQUIRE THEM TO FIGURE OUT WHO IS A CHILD.

AND SO THERE IS NO OTHER WAY EXCEPT FOR THE STATE TO TAKE THE FAR LESS TAILORED RULE OF, OKAY, DO THIS FOR EVERYONE.

SO IT'S -- IF WE CAN'T SAY ESTIMATE AGE, OR APPLY THE SAME REGULATION FRAMEWORK TO BOTH, IT'S -- THE WHOLE LAW IS A PROBLEM.

AND ESPECIALLY HERE WHERE THEY HAVE NOT CHALLENGED LARGE SWATHS OF THIS.  YOU KNOW, I THINK CLEARLY REQUIRING AGE TAILORING, OR AGE ESTIMATION IN ORDER TO ENFORCE PARTS OF THE STATUTE THAT ARE NOT CHALLENGED HERE IS SUFFICIENTLY, YOU KNOW, TAILORED.

THE COURT:  OKAY.  SO I THINK THE NEXT THING WE NEED TO DO IS TO TALK ABOUT SEVERABILITY.

MS. LISKA:  YES.  I'M HAPPY TO -- I DIDN'T KNOW IF YOU HAD A SPECIFIC QUESTION OR IF YOU'D LIKE ME TO GET STARTED.

THE COURT:  WELL, I THINK YOU'RE CORRECT THAT JUST READING THE STATEMENTS OF THE AUTHOR OR OTHER LEGISLATORS IN FAVOR OF THE BILL IS NOT ENOUGH FOR VOLITIONAL SEVERABILITY.

BUT WHAT I HAVE IS EVIDENCE THAT THIS LEGISLATION FAILED TWICE WHEN IT DID NOT HAVE A 90-DAY NOTICE AND CURE, AND NOW WITH THE NINTH CIRCUIT'S APPROVED INJUNCTION, WE DO NOT HAVE A 90-DAY NOTICE AND CURE.

SO THAT IS PROPER LEGISLATIVE HISTORY ARGUMENT ON -- TO SHOW THAT THE LEGISLATURE WOULD NOT AND, IN FACT, DID NOT PASS THE LAW WITHOUT THE 90-DAY NOTICE AND CURE.

SO I WANT TO HEAR YOUR ARGUMENT ON THAT.

MS. LISKA:  SURE.  I THINK WHAT MATOSANTOS -- THAT'S M-A-T-O-S-A-N-T-O-S -- SAYS IS THAT THE QUESTION -- OBVIOUSLY

THE LEGISLATURE PREFERS WHAT IT DID TO ANYTHING SEVERED.

THE COURT:  SURE.

MS. LISKA:  THAT SEEMS PRETTY APPARENT.

THE COURT:  YEAH.

MS. LISKA:  THE QUESTION IS, WOULD THEY HAVE PREFERRED IT TO DO NOTHING?

THE COURT:  UM-HUM.

MS. LISKA:  AND I THINK IT'S NOT SO MUCH WHAT HORSES WERE TRADED TO MAKE THIS HAPPEN.

IT'S AS IF SOMEONE HAD STOOD IN THE ROOM AND SAID, HEY, LEGISLATURE, IF YOU PUT THIS NOTICE AND CURE PROVISION IN DPIA IN, THE WHOLE STATUTE, IT'S GOING TO BE UNCONSTITUTIONAL.  YOU GET NOTHING.

WOULD THE LEGISLATURE HAVE SAID, OH, OKAY, WELL, WE DON'T WANT ANY OF IT THEN.

OR WOULD THE LEGISLATURE HAVE SAID, OKAY, WELL, IF WE CAN'T HAVE THAT, WE WANT EVERYTHING THAT WE CAN GET.

THE COURT:  SO I DON'T THINK THAT'S THE RIGHT QUESTION TO ASK.

I THINK THE RIGHT QUESTION TO ASK IS, IS THIS -- DID THE LEGISLATURE DETERMINE THAT THIS WAS GOOD PUBLIC POLICY IF IT HAD A 90-DAY NOTICE AND CURE, BUT BAD PUBLIC POLICY IF IT DID NOT?

MS. LISKA:  SO I THINK THE -- I THINK WE'RE SAYING THE SAME SORT OF THING.

THE COURT:  NO, BECAUSE YOU SAID, IF THEY WERE TOLD IT'S NOT GOING TO PASS FIRST AMENDMENT MUSTER, WHAT WOULD THEY HAVE DONE?  I THINK THAT'S THE WRONG QUESTION.

MS. LISKA:  I THINK THE WAY MATOSANTOS FRAMES IT IS, WOULD THEY PREFER WHAT THEY COULD GET TO NOTHING?

THE COURT:  YES.

MS. LISKA:  AND THAT'S WHAT I'M SAYING.

THE COURT:  OKAY.  SO THAT -- I AGREE WITH YOU.

AND SO THEN WE LOOK THROUGH THE RECORD TO DETERMINE IF THERE'S -- AND IT'S A HIGH STANDARD.  IF WE CAN DETERMINE THAT THERE'S ANY INDICIA THAT THEY ACTUALLY PREFERRED NOTHING WITHOUT THE NOTICE AND CURE, AND THE PLAINTIFFS HAVE GIVEN ME TWO DEFEATING VOTES.

MS. LISKA:  WHICH I THINK YOUR HONOR HAS POINTED OUT, YOU KNOW, IS IT CLEAR THAT THEY WERE BECAUSE OF THE LACK OF A NOTICE AND CURE?

THE COURT:  SO THAT'S -- YOU DIDN'T GIVE ME ANY ARGUMENT ON THAT.  I DON'T KNOW HOW MUCH WAS IN THEIR REPLY. SO I WANT TO GIVE YOU -- YOU ARE VASTLY FAMILIAR WITH THE LEGISLATIVE HISTORY ARGUMENTS.

MS. LISKA:  I THINK THAT THE BEST PLACE TO START, THOUGH, IS NOT THE HISTORY.  IT'S THE TEXT OF THE LAW.

SO, FOR INSTANCE, LOOKING AT THE FINDINGS AND DECLARATION, THE CONCERNS ABOUT THE PRIVACY PROTECTIONS OF CHILDREN, YOU KNOW, THE NEED TO HAVE -- THAT CHILDREN BE AFFORDED PRIVACY AND

PROVISION ONLINE, STRONG PRIVACY PROTECTIONS.

I THINK THAT THOSE FINDINGS INDICATE A GENUINE DEEP LEGISLATIVE DESIRE TO PROTECT THE PRIVACY OF CHILDREN, AND I THINK THAT THAT IS A BETTER INDICIA OF THEIR CONCERN AND WHAT THEY WOULD HAVE CHOSEN TO DO, WHICH IS TO PROTECT CHILDREN, TO THE AMOUNT POSSIBLE, UNDER THE CONSTITUTION.

AND I THINK A LOT OF THE CASES ARE CLEAR, YOU KNOW, IT'S HARD TO DELVE INTO THE MIND OF WHAT THE LEGISLATURES WERE THINKING.  THERE ARE A LOT OF PEOPLE --

THE COURT:  SO UNFORTUNATELY FOR YOU, THE LEGISLATURE DIDN'T LIMIT ITS FINDINGS TO PRIVACY AND SAFETY.  IT WENT ON TO SAY WELL-BEING.

MS. LISKA:  WELL, AND I THINK --

THE COURT:  WHICH IS GOOD.  I MEAN, I'M ALL FOR THE WELL-BEING OF CHILDREN.

MS. LISKA:  AND WELL-BEING DOESN'T ALWAYS JUST MEAN BECAUSE OF CONTENT.  WELL-BEING CAN ALSO MEAN THINGS LIKE THE EXPLOITATION OF THE CHILDREN.

THE COURT:  BUT IF YOU LOOK AT FINDING A, IT TALKS ABOUT PRODUCTS OR FEATURES THAT ARE LIKELY TO BE -- TO -- THAT CHILDREN ARE LIKELY TO ACCESS SHOULD CONSIDER THE BEST INTERESTS OF CHILDREN WHEN DESIGNING, DEVELOPING, AND PROVIDING THAT ONLINE SERVICE, PRODUCT, OR FEATURE WHEN PROVIDING CONTENT.

MS. LISKA:  SO I THINK -- WELL, I DISPUTE THAT ALL

SERVICE PROJECTS AND FEATURES ARE CONTENT.

BUT I THINK IF YOU LOOK TO THE ENACTING BILL ITSELF, THE LEGISLATIVE FINDINGS IN THE BILL --

THE COURT:  AREN'T I LOOKING AT THAT?

MS. LISKA:  SO SECTION (A)(1), THE UNITED NATIONS CONVENTION ON THE RIGHTS OF THE CHILD, THAT PART --

THE COURT:  I'M NOT SURE WHERE YOU'RE -- I PRINTED IT OFF.  I HAVE A 1798.99.29.

MS. LISKA:  I'M LOOKING AT AB 2273 ITSELF, THE LEGISLATIVE FINDINGS WHICH WE CITE TO IN OUR BRIEF.

THE COURT:  DID YOU GIVE ME THAT?

MS. LISKA:  I DON'T KNOW IF WE GAVE YOU A COPY OF IT.

THE COURT:  THAT WOULD HAVE BEEN NICE, DON'T YOU THINK?

MS. LISKA:  IT'S IN THE RECORD, SO I FIGURED IT'S THE STATUTE THAT WAS PASSED.  WE CITED TO IT PROPERLY IN OUR BRIEF.

THE COURT:  DID -- YOU'LL SEND ME A COPY OF IT.

MS. LISKA:  WE CAN SEND YOU A COPY OF IT.

THE COURT:  OKAY.

MS. LISKA:  I'LL MAKE A NOTE OF THAT.  I'M HAPPY TO HAND YOU MY COPY IF YOU WOULD LIKE IT.

THE COURT:  NO.  THANK YOU.

I'VE ASKED MS. KUMAR TO SUPPLEMENT WITH PRIOR VERSIONS OF THE BILL, AND YOU CAN DO THAT.

MS. LISKA:  WE'LL SEND THE ONE THAT WAS PASSED, YEAH.

THERE ARE SEVERAL REFERENCES IN -- THEY'RE NOT CODIFIED. IT'S THE UNCODIFIED FINDINGS, BUT I THINK THOSE ARE STILL SALIENT BECAUSE THAT'S THE LANGUAGE THAT WAS PASSED.  IT REFERENCED REPEATEDLY PRIVACY PROTECTIONS SPECIFICALLY.

THE COURT:  OKAY.

MS. LISKA:  SO I DO THINK THAT THAT IS --

THE COURT:  SO I SHOULD IGNORE THIS THAT THEY PUBLISHED?  THEY DIDN'T MEAN IT?

MS. LISKA:  NO.  I MEAN, I THINK THAT NEEDS TO BE CONSIDERED --

THE COURT:  OKAY.

MS. LISKA:  -- WITH THE OTHER FINDINGS THAT THE LEGISLATURE PUT IN THE BILL IT ENACTED, WHICH REFERENCE PRIVACY PROTECTIONS IN MULTIPLE PLACES.

THE COURT:  OH, I DON'T -- I DON'T DOUBT THAT THAT WAS FRONT OF MIND.

BUT SO WAS THE WELL-BEING OF CHILDREN.

MS. LISKA:  CORRECT.

THE COURT:  SO WERE THE BEST INTERESTS OF CHILDREN --

MS. LISKA:  YES.

THE COURT:  -- WHEN PROVIDING THE ONLINE SERVICE.

"WHEN PROVIDING," THAT'S THE CENSORSHIP PART.

MS. LISKA:  NO, BUT THAT'S --

THE COURT:  THAT'S NOT THE COLLECTING OF INFORMATION.

MS. LISKA:  I MEAN, IT -- AT THE RISK OF BELABORING

THE POINT, I THINK THAT OUR CONCERN THERE ARE THINGS THAT HAVE NOTHING TO DO WITH THE CONTENT, WHICH ARE DESIGN FEATURES THAT MAYBE KEEP CHILDREN ONLINE TOO LONG, ADVERTISEMENTS, SELLING, YOU KNOW, THIRD PARTY ADS THAT ARE PLACED.  I THINK THOSE ARE THINGS THAT THEY WERE THINKING WITH WELL-BEING AND PROVISION OF SERVICES.

AND, YOU KNOW, I -- I UNDERSTAND THAT IT'S EASY TO THINK ABOUT SOCIAL MEDIA AND HOW THIS LAW AFFECTS THEM.

BUT THIS IS A BIG STATUTE THAT AFFECTS A LOT OF OTHER COMPANIES --

THE COURT:  YES, IT DOES.

MS. LISKA:  -- THAT DO NOT PROVIDE THESE SORT OF, YOU KNOW, EXPRESSIVE TYPES OF PRODUCTS AND SERVICES, AND THEY ARE STILL REGULATED, AND THAT IS ALSO IMPORTANT TO CONSIDER IN THIS FACIAL CHALLENGE.

THE COURT:  OKAY.

MS. LISKA:  AND IF YOU HAVE NO FURTHER QUESTIONS?

THE COURT:  I THINK YOU'VE COVERED EVERYTHING, AND I APPRECIATE IT.  IT'S A TREMENDOUS AMOUNT OF WORK.

THANK YOU.

MS. LISKA:  IT IS.

THANK YOU, YOUR HONOR, FOR THE TIME.  I APPRECIATE THAT.

THE COURT:  ALL RIGHT.  MS. KUMAR, IT'S YOUR MOTION, YOU GET THE LAST WORD.

MS. KUMAR:  THANK YOU.

THE COURT:  WHOOPS, UNPLUG.  OH, WATER.  GOOD CATCH.

MS. KUMAR:  I DON'T WANT TO SPILL THE WATER.

I'M JUST GOING TO GIVE YOU CITE THAT THE STATE WAS LOOKING FOR.

THE COURT:  OH, THAT'S NICE.

MS. KUMAR:  OKAY, YOUR HONOR.

WELL, FIRST OF ALL, IF YOU HAVE MORE QUESTIONS FOR ME, I WANT TO HEAR THEM BECAUSE THAT'S OBVIOUSLY --

THE COURT:  NO, NO.  I WANT YOU TO -- I THINK AT THIS POINT --

MS. KUMAR:  OKAY.

THE COURT:  I THINK I EXHAUSTED MY LIST OF QUESTIONS THE FIRST TIME THROUGH.

MS. KUMAR:  OKAY.

THE COURT:  AND I WOULD LIKE TO HEAR YOUR REBUTTAL TO THE STATE'S ARGUMENT.

MS. KUMAR:  OKAY, YOUR HONOR.

SO I'LL, AGAIN, GO IN THE SAME ORDER.  I'M GOING TO START WITH THE COVERAGE DEFINITION.

THE COURT:  UM-HUM.

MS. KUMAR:  I THINK ONE OF THE MORE IMPORTANT THINGS IS THAT THE COURT HAS NOT EVEN TRIED -- I MEAN, NOT THE COURT -- THE STATE HAS NOT EVEN TRIED TO SATISFY INTERMEDIATE OR STRICT SCRUTINY.  I BELIEVE MS. LISKA SAID SOMETHING LIKE THERE HASN'T -- WE HAVEN'T DONE THAT, AND THAT'S -- THIS IS

THE -- THAT WAS THE TIME, THE BRIEFING WAS THE TIME FOR THE STATE TO SAY, EVEN IF THE INTERMEDIATE SCRUTINY APPLIES OR STRICT SCRUTINY APPLIES, THIS IS WHY IT IS SATISFIED, AND THEY HAVEN'T DONE IT.  THAT'S THEIR BURDEN.  IT'S NOT OUR BURDEN.

AND FOR THE REASONS YOUR HONOR SUGGESTED, WE THINK THAT THAT BURDEN IS NOT MET.

THE COURT:  UM-HUM.

MS. KUMAR:  ON WHETHER IT IS CONTENT BASED, I THINK, YOU KNOW, ONE WAY TO THINK ABOUT THIS IS, HOW DO YOU VOID THE APPLICATION OF THE STATUTE?  YOU HAVE TO CHANGE THE CONTENT THAT YOU'RE PUBLISHING, RIGHT?  YOU HAVE TO CHANGE -- SO, FOR EXAMPLE, YOU KNOW, CAN A SERVICE PUT TAYLOR SWIFT ON THEIR WEBSITE IF SHE WOULD ATTRACT TEENS?  RIGHT?  WOULD THAT MAKE THEM SUBJECT TO THE LAW?

AND I THINK THAT'S, YOU KNOW, YOU HAVE TO -- AT THE OUTSET, THE COVERAGE DEFINITION REQUIRES CENSORING CONTENT UPFRONT TO GET OUT OF THE STATUTE'S RESTRICTIONS.

THE COURT:  UM-HUM.

MS. KUMAR:  MS. LISKA SAID SOMETHING ABOUT THE PROJECT VERITAS CASE AND AUSTIN AND PORTER IN AN EFFORT TO SUGGEST THIS IS NOT CONTENT BASED.

I THINK WE EXPLAINED IN OUR BRIEFING WHY AUSTIN AND PORTER ARE NOT ABOUT THE CONTENT BASIS.  AUSTIN IS ABOUT THE LOCATION OF A SIGN.  PORTER IS ABOUT THE TRAFFIC CIRCUMSTANCES.

PROJECT VERITAS, SIMILARLY, RECORDING SPEECH OF A FELONY

REGULATED -- REGULATES WHEN SPEECH CAN HAPPEN, NOT ITS SUBJECT MATTER.

RECORDING LAW ENFORCEMENT IS ALSO NOT A TOPIC OF SPEECH. IT IS -- YOU KNOW, IT'S NOT A -- IT'S NOT A SUBJECT MATTER.

BUT THE COVERAGE DEFINITION IN AB 2273 MAKES OVERT CONTENT-BASED DISTINCTIONS THAT DO SINGLE OUT -- THAT DO SINGLE OUT PARTICULAR TOPICS AND SUBJECT MATTER, AND NOT JUST WHEN SPEECH IS RECORDED OR WHETHER IT IS RECORDED SECRETLY OR NOT, BECAUSE THAT WAS ONE OF THE EXCEPTIONS IN THE PROJECT VERITAS STATUTE.

I THINK THE BOTTOM LINE IS UNDER MOODY, EVERY APPLICATION BURDEN IS IMPERMISSIBLE.  SO THE NUMERATORS, THE DENOMINATOR ARE THE SAME, AND THE COURT SHOULD APPLY STRICT SCRUTINY OR, AT A MINIMUM, INTERMEDIATE SCRUTINY.

TURNING TO THE RESTRICTIONS UNDER B(1)-(4), SO WE WEREN'T ASKING THE COURT TO ENJOIN THE NON-EXPRESSIVE USES.  SO THE EXAMPLES THAT MS. LISKA WAS GIVING YOU OF STUBHUB OR WHAT HAVE YOU, LET ME SAY A COUPLE THINGS.

ONE IS I THINK BUYING A TICKET ON STUBHUB IS PROBABLY EXEMPT UNDER THE NO PHYSICAL PRODUCT EXEMPTION.

THE COURT:  YES.

MS. KUMAR:  SECOND OF ALL, I WOULD NOT BE SURPRISED IF STUBHUB IS SUGGESTING SHOWS TO PEOPLE BASED ON WHAT THEY HAVE PURCHASED TICKETS FOR BEFORE.  SO, AGAIN, THAT CONTENT, IS A RECOMMENDATION FOR A HEAVY METAL SHOW, LIKE, A PROBLEM?  IS

IT HARMFUL TO CHILDREN?  HOW OLD IS THE CHILD?  YOU KNOW, THAT KIND OF THING.

WE ARE ALSO NOT ASKING THE COURT -- YOU KNOW, THERE WAS A DISCUSSION OF COLLECTING AND GATHERING INFORMATION.  WE WERE VERY CAREFUL IN TAILORING OUR CHALLENGE, OUR NARROW CHALLENGES TO NOT TARGET THE COLLECTING OF DATA.

SO IF -- YOU KNOW, WE'RE HAPPY TO PROVIDE -- I UNDERSTAND THAT THE PROPOSED ORDER DID NOT GO THROUGH THIS INDIVIDUAL PROVISION CHALLENGE AND WHAT IT WOULD LOOK LIKE.  WE'RE HAPPY TO PROVIDE THAT TO THE COURT.

BUT ONE OF THE THINGS THAT THAT WILL DO IS IT WILL NOT ASK THE COURT TO ENJOIN THE PORTION OF THE LAW RELATING TO COLLECTION OF DATA.

I THINK, YOU KNOW, MS. LISKA GOT UP THERE AND SAID WE'RE NOT REQUIRING THE *NEW YORK TIMES* TO STOP PUBLISHING AN ARTICLE ABOUT THE HAMAS ISRAEL CONFLICT, JUST, YOU KNOW -- BUT THAT BEGS THE QUESTION, WHAT IS IT?  IT'S RECOMMENDING IT.  IT'S -- AGAIN, IF SOMEONE IS DOING RESEARCH ON A PROJECT AND THAT IS A RECOMMENDED PIECE OF CONTENT, THE STATE IS SAYING YOU CAN'T DO THAT.

AND MORE GENERALLY, WHAT WE'RE TALKING ABOUT HERE IS THE PERSONALIZATION OF CONTENT.  WHAT THE STATE IS SAYING IS YOU CAN'T PERSONALIZE CONTENT FOR CHILDREN, AND THAT GOES BACK TO THE AGE VERIFICATION, AGE ESTIMATION STANDARD AND ALL THAT KIND OF STUFF TO KNOW WHO IS A CHILD.

BUT THAT'S WHAT WE'RE TALKING ABOUT HERE.

AND, YOU KNOW, SO I THINK YOUR HONOR, YOU KNOW, GOING BACK TO OUR INITIAL COLLOQUY ABOUT --

THE COURT:  SO LET ME JUST BACK UP.

MS. KUMAR:  YEP.

THE COURT:  YOU SAID THAT YOU'RE NOT TARGETING THE COLLECTION OF DATA ON CHILDREN.

MS. KUMAR:  CORRECT.

THE COURT:  SO THAT'S AS IT APPLIES TO B(1)-(4)?

MS. KUMAR:  LET ME -- SORRY, LET ME JUST PULL UP THE LAW REAL QUICK, BECAUSE I CAN -- OR DID I BRING IT UP?

OKAY.  I DID BRING IT UP.  GIVE ME ONE SECOND.

SO JUST AS AN EXAMPLE, I THINK THE ONLY ONE THAT TALKS ABOUT COLLECTION IS (B)(3), AND IT SAYS COLLECT, SELL, SHARE, OR RETAIN ANY PERSONAL INFORMATION THAT IS NOT NECESSARY TO PROVIDE AN ONLINE PRODUCT.

THE COURT:  SO YOU SEPARATED (3) FROM SOME PART OF YOUR ARGUMENT, BUT THEN YOU BROUGHT IT BACK IN UNDER ANOTHER PART OF THE ARGUMENT.

MS. KUMAR:  UM --

THE COURT:  ARE YOU -- WHERE -- ARE YOU NOW SAYING THAT (B)(3) IS NOT SOMETHING YOU'RE SEEKING TO ENJOIN?

MS. KUMAR:  WE ARE SEEKING TO ENJOIN IT, JUST NOT THE COLLECTION ASPECT -- I MEAN, I THINK IT'S COLLECTION AND SALE, BUT I HAVE TO GO BACK TO OUR AMENDED COMPLAINT.

THE COURT:  BUT THE SHARING -- WHAT PART ARE YOU TRYING TO ENJOIN?

MS. KUMAR:  HOLD ON ONE MINUTE.  LET ME JUST LOOK AT THE PRAYER FOR RELIEF.

(PAUSE IN PROCEEDINGS.)

THE COURT:  SO THIS HAS TO DO WITH INFORMATION IN WHICH A CHILD IS ACTIVELY AND KNOWINGLY ENGAGED.

MS. KUMAR:  SO THE PRAYER FOR RELIEF SEEKS AN INJUNCTION TO THE EXTENT THE SECTION APPLIES TO COVERED SERVICES' RETENTION, SALE, AND SHARING.

SO COLLECTION IS NOT SOMETHING THAT WE WANT THE COURT TO ENJOIN.

AGAIN, WHEN WE WENT THROUGH -- WE WERE VERY CAREFUL WHEN WE WENT THROUGH, AND I -- YOU KNOW, I KNOW YOUR HONOR IS SUGGESTING THAT REALLY WHAT WE'RE TALKING ABOUT IS MEMBERS, AND I'LL EXPLAIN WHY I DON'T THINK THAT'S THE CASE.

BUT I WOULD URGE YOU TO EITHER HAVE US SUBMIT A PROPOSED ORDER --

THE COURT:  ARE YOU TRYING TO ENJOIN SELL?

MS. KUMAR:  YES.

THE COURT:  REALLY?  OKAY.

ARE YOU TRYING TO ENJOIN SHARE AND RETAIN?

MS. KUMAR:  YES.

THE COURT:  JUST COLLECT?

MS. KUMAR:  THAT'S RIGHT.

THE COURT:  SO THEY CAN --

MS. KUMAR:  AND TO BE -- I'M SORRY, LET ME JUST --

THE COURT:  SO HOW DO YOU GET TO THE REST?  IF YOU DON'T COLLECT IT, WHAT DO YOU HAVE TO SELL, SHARE, OR RETAIN?

MS. KUMAR:  WELL, THE STATE ALLOWS COLLECTION OF INFORMATION NEEDED TO PROVIDE THE SERVICE, RIGHT, SO WE WILL HAVE THAT INFORMATION.

THE STATE DOESN'T WANT US TO USE THAT INFORMATION TO TAILOR CONTENT.

THE COURT:  I'M SORRY.  I DON'T KNOW WHAT YOU'RE TALKING ABOUT.

MS. KUMAR:  OKAY.  SO --

THE COURT:  YOU WANT THE LAW TO PROHIBIT THE COLLECTION OF DATA THAT IS NOT NEEDED.

MS. KUMAR:  I DON'T WANT THAT.  I'M SAYING THAT WE'RE NOT ASKING THE COURT TO ENJOIN THAT PART.

THE COURT:  WELL, THEN, YOU -- THEN YOU'RE WANTING THAT TO BE ENFORCED AGAINST YOUR MEMBERS.

MS. KUMAR:  AGAIN, YOU KNOW, WE HAVE -- I MEAN, LOOK, IT -- IN MY VIEW, THE ENTIRE STATUTE SHOULD BE THROWN OUT, RIGHT?

THE COURT:  I'M JUST TRYING TO -- IF I DON'T AGREE WITH THAT, I'M TRYING TO UNDERSTAND --

MS. KUMAR:  NO, I UNDERSTAND.

THE COURT:  AND THAT'S WHY YOU'RE GOING TO LOSE ON

(1) THROUGH (4), BECAUSE I DON'T KNOW WHAT YOU'RE ASKING.

AND THEN IF YOU TELL ME IN A NEW DOCUMENT, IT'S NOT GOING TO MAP ON TO YOUR BRIEFING.

MS. KUMAR:  WELL, RESPECTFULLY, YOUR HONOR, THE BRIEFING IS, IS -- SETS OUT --

THE COURT:  OKAY.

MS. KUMAR:  -- YOU KNOW, WHAT IT IS.  I'M HAPPY TO GO THROUGH THE REPLY BRIEF --

THE COURT:  NO.  I'LL READ IT.

MS. KUMAR:  OKAY.

THE COURT:  I'VE READ IT TWICE.  I DIDN'T GET IT. AND IF I DON'T GET IT, YOU DON'T WIN.

BUT THAT'S -- I'LL READ IT A THIRD TIME.  I'M MORE THAN GLAD TO.

MS. KUMAR:  I WOULD ALSO DIRECT THE COURT TO THE AMENDED COMPLAINT, WHICH IS --

THE COURT:  I KNOW, AND I'VE GOT THAT.

MS. KUMAR:  AND IT DOES NOT -- AND IF YOU LOOK AT -- I DON'T WANT TO POINT YOU IN, BUT IF YOU LOOK AT PARAGRAPH 7 --

THE COURT:  OF THE PRAYER?

MS. KUMAR:  OF THE PRAYER, IT SAYS, TO THE EXTENT THAT SECTION APPLIES TO COVERED SERVICES' RETENTION, SALE, AND SHARING OF PERSONAL INFORMATION TO PUBLISH CONTENT OR MAKE INFORMATION AVAILABLE.

THE COURT:  OKAY.  THANK YOU.

AND JUST TO SORT OF ZOOM OUT ON THIS, RIGHT, I THINK ONE OF TWO THINGS IS TRUE GIVEN THE WAY YOUR HONOR IS THINKING ABOUT THIS.

ONE IS THE INDIVIDUAL PROVISIONS, WE'VE ONLY CHALLENGED THEM AS TO OUR MEMBERS' CONDUCT.  THAT'S KIND OF WHAT YOU SUGGESTED TO ME.

THE COURT:  YEAH.

MS. KUMAR:  IF THAT'S THE CASE, YOU CAN ENJOIN IT ON AN AS-APPLIED BASIS.

THE COURT:  THAT'S RIGHT.

MS. KUMAR:  SO THIS IDEA THAT WE DIDN'T BRIEF THE AS-APPLIED, I WANT TO BE SURE THAT --

THE COURT:  OKAY, SURE.  SO MS. LISKA ACKNOWLEDGED THAT ON YOUR COVERAGE DEFINITION ARGUMENT, THAT IF I FIND THAT THE -- EVERY APPLICATION IMPLICATES CONTENT, SHE'S ONLY ARGUING THAT THE SECTION-BY-SECTION ANALYSIS RELATE TO THE STANDARD OF REVIEW, STRICT SCRUTINY OR INTERMEDIATE SCRUTINY.

YOU DON'T DISAGREE WITH THAT, TO YOU?

MS. KUMAR:  THAT'S RIGHT.

IF YOU'RE ASKING WHETHER I THINK YOU HAVE TO GO THROUGH THE PROVISIONS AND APPLY THE LEVEL OF SCRUTINY, I THINK, YES, THAT'S WHAT I THINK YOU HAVE TO DO.

THE COURT:  THAT'S GREAT.  OKAY.  I'M GLAD WE HAVE THAT UNDERSTANDING.

LET'S NOT TALK ABOUT THE (1) THROUGH (4).

SO ANYTHING ELSE YOU WANT TO COMMENT ON ON THE DARK PATTERNS?

MS. KUMAR:  YES, I DO, YOUR HONOR --

THE COURT:  OKAY.

MS. KUMAR:  -- BECAUSE I DIDN'T REALLY GO THROUGH IT THE FIRST TIME, BUT I'LL TRY TO BE BRIEF.

THE COURT:  OKAY.

MS. KUMAR:  YOU KNOW, AGAIN, I WOULD DIRECT THE COURT TO, YOU KNOW, THE RELIEF THAT IS BEING SOUGHT, WHICH IS TO ENJOIN THAT TO THE EXTENT IT APPLIES TO COVERED SERVICES' USE OF RECOMMENDATION ALGORITHMS, CONTINUOUS SCROLL, AUTOPLAY, AND OTHER FEATURES THAT ORGANIZE CONTENT.

THE COURT:  OKAY.

MS. KUMAR:  THOSE FIRST FEW THINGS ARE VERY SPECIFIC AS TO WHAT WE WANT THE INJUNCTION ON.

THE COURT:  YES, IT IS.

MS. KUMAR:  AND I THINK THAT IS CERTAINLY A WORKABLE THING.

THE COURT:  YES.

MS. KUMAR:  AND, YOU KNOW, THE OTHER THING I WOULD SAY IS ON THE SCRUTINY PART, WE HAVEN'T EVEN ADDRESSED THE FACT THAT CALIFORNIA ALREADY REGULATES DARK PATTERNS, RIGHT?  AND THAT'S ON PAGE 18 OF ECF 101 OF OUR BRIEF, WHICH IDENTIFIES, THOUGH, PROHIBITS USING DECEPTIVE PRACTICES, DARK PATTERNS, TO OBTAIN A WAIVER OF PRIVACY PROTECTIONS, REQUIRES -- AND THERE

ARE A BUNCH OF OTHER CITATIONS.

THE COURT:  YEAH.

MS. KUMAR:  SO WHAT DOES THIS LAW ADD?

IT'S AGAIN ABOUT THE PUBLICATION OF CONTENT.  AGAIN, WE'RE NOT ASKING YOU TO ENJOIN ALL APPLICATIONS OF THIS PROVISION, JUST THE APPLICATIONS THAT CONCERN SPEECH, AND THAT'S TRUE FOR ALL OF THE USE RESTRICTIONS.  WE'VE IDENTIFIED THE APPLICATIONS THAT ARE IMPERMISSIBLE.

THE COURT:  OKAY.

MS. KUMAR:  OKAY.

THE COURT:  UM-HUM.

MS. KUMAR:  ON VAGUENESS, I KNOW YOU'RE NOT INCLINED TO ADDRESS IT, BUT I WOULD BE REMISS IF I DIDN'T SAY, YOU JUST NOW SAID, I DON'T KNOW WHAT LIKELY MEANS.

AND THE REALITY IS, THAT'S TRUE THROUGHOUT THE LAW.  WHAT IS MATERIAL AND DETRIMENTAL?

AND, YOU KNOW, I KNOW THAT BEST INTEREST IS A STANDARD IN FAMILY LAW, BUT THERE'S A SET OF CIRCUMSTANCES, DISCRETE -- IT'S ABOUT ONE CHILD, NOT ABOUT A BUNCH OF CHILDREN -- AND IT'S ABOUT, YOU KNOW, A SPECIFIC CIRCUMSTANCE AND A MEANING OF THE LAW -- JUST BECAUSE THAT TERM IS USED IN A DIFFERENT PART OF LAW DOESN'T MEAN THAT IT'S NOT VAGUE IN THIS ONE.

THE COURT:  OKAY.

MS. KUMAR:  AND THEN ON SEVERABILITY, JUST TO BE CLEAR, THE STANDARD IS THAT THE COURT HAS TO BE ABLE TO SAY,

WITH CERTAINTY, THAT THE LEGISLATURE WOULD HAVE PASSED THE ACT WITHOUT THE PROVISION.

IF THERE'S ANY DOUBT, IT'S NOT SEVERABLE.  AND I THINK --

THE COURT:  OH, I FLIPPED IT.  OKAY.

MS. KUMAR:  YEAH.  I THINK AT A MINIMUM, THERE WAS DOUBT.  AND, YOU KNOW, THAT'S ANOTHER WAY FOR THE COURT TO REACH THE RESULT.

THE COURT:  SO I'M EXPECTING -- AND I APPRECIATE ALL OF YOU GIVING ME THE COPIES OF THE BILLS -- THAT I WILL SEE A VERSION OF THE BILL THAT WAS DEFEATED --

MS. KUMAR:  YES.

THE COURT:  -- IN TWO INSTANCES.  ONE DOESN'T HAVE A CURE -- A CURE PROVISION, ONE HAS A 45-DAY CURE PROVISION.  THEY BOTH FAILED.  AND THEN ONE HAS A 90-DAY AND IT PASSED.

MS. KUMAR:  I'M NOT GOING TO -- I'M NOT GOING TO ATTEST TO THIS BECAUSE I -- BUT THERE WERE THREE VERSIONS THAT WE'RE TALKING ABOUT.  I DON'T KNOW --

THE COURT:  OKAY.  AND TWO FAILED?

MS. KUMAR:  TWO -- WHEN YOU SAY TWO FAILED, LIKE, ONE WAS PUT IN THE SUSPENSE FILE.  DOES THAT MAKE IT A FAILURE?  IN OUR VIEW, YES.

THE COURT:  I THINK THAT'S A FAILURE.

MS. KUMAR:  YES.  OKAY.

SO ALL I'M SAYING IS THERE MAY NOT HAVE BEEN A VOTE.  IT MAY HAVE NOT ADVANCED.  IT MAY HAVE BEEN PUT IN THE SUSPENSE

FILE.

THE COURT: OKAY. BECAUSE I DON'T REMEMBER HOW A BILL GOES TO A SUSPENSE FILE. MAYBE IT FAILED FOR LACK OF A SECOND. MAYBE THE CHAIRMAN SAID, I'M NOT BRINGING IT UP FOR A VOTE. THERE ARE LOTS OF REASONS.

MS. KUMAR: YES, I THINK IT MIGHT BE THE LATTER. I'VE READ ABOUT THE SUSPENSE FILE. I'M NOT WELL VERSED IN IT.

BUT I DON'T WANT TO TELL YOU THAT THERE WERE TWO VOTES WHEN I DON'T KNOW THAT THERE WERE TWO VOTES.

THE COURT: OKAY. AND SO I'LL BE PRECISE IN CHARACTERIZING WHAT HAPPENED.

MS. KUMAR: OKAY. SO IT LOOKS LIKE THE COMMITTEE VOTED FOR IT TO BE PUT IN THE SUSPENSE FILE.

THE COURT: THEY DID VOTE, OKAY.

MS. KUMAR: YEAH, BUT IT'S NOT A VOTE ON THE ENTIRE -- LIKE I SAID, IT JUST --

THE COURT: SO IT DOESN'T GO TO THE LEGISLATURE UNLESS IT GETS OUT OF COMMITTEE.

MS. KUMAR: RIGHT.

THE COURT: SO EVEN THE COMMITTEE WASN'T DOING THAT.

MS. KUMAR: THAT'S RIGHT. THAT'S RIGHT.

AND WE DO HAVE ALL VERSIONS OF THE LAW --

THE COURT: THAT ARE AVAILABLE, YEAH.

MS. KUMAR: -- THAT WE CAN SHARE WITH YOU.

THERE WAS ONE MORE THING, AND I'M TRYING TO REMEMBER IF

I -- OH, GOING BACK TO JOHN DOE, I MEAN THE REED CASE THAT WE TALKED ABOUT, I DID GO BACK AND READ IT.

THE COURT: AND YOU'RE TALKING ABOUT JOHN DOE VERSUS REED, NOT THE REED --

MS. KUMAR: YES, NOT REED VERSUS TOWN OF GILBERT, RIGHT.

I WENT BACK AND READ IT DURING MY BREAK TO SORT OF GET AN UNDERSTANDING FOR WHAT THE COURT IS THINKING, AND ALL I WOULD SAY THERE IS THAT YOU'RE RIGHT THAT, LIKE, THE PLAINTIFF IN THAT CASE DIDN'T SHOW THAT -- ALTHOUGH THEY SPECIFICALLY -- ON THEIR VERY HARM.

BUT THE NARROWED CHALLENGES FOCUSSED ON THE HARM TO SPEECH. THEY DON'T ASK FOR AN INJUNCTION OF THE WHOLE PROVISION, SO YOU DON'T NEED TO LOOK AT ALL THE APPLICATIONS. WE'VE ISOLATED THE IMPERMISSIBLE APPLICATIONS FOR YOU.

THE COURT: OKAY. ALL RIGHT. THANK YOU.

ALL RIGHT. THIS HAS BEEN ENORMOUSLY HELPFUL. I WANT TO THANK ALL OF YOU FOR THE TREMENDOUS WORK THAT YOU'VE PUT IN ON THIS.

ALTHOUGH I'M NOT MAKING PROMISES, I DID UNDERSTAND THAT THE PARTIES HAVE AGREED THAT THE STATE WOULD HOLD OFF IMPLEMENTATION UNTIL SOME PARTICULAR DATE.

CAN YOU REMIND ME WHAT THAT IS?

MS. LISKA: MARCH 6TH, YOUR HONOR, I BELIEVE.

THE COURT: OKAY. SO I'LL KEEP THAT IN MIND.

MS. LISKA:  OF COURSE.

THE COURT:  AND WE MOVED THIS UP TO THIS DATE SO THAT I WOULD HAVE A REASONABLE SHOT AT IT.  AND, AGAIN, I JUST WANT YOU TO KNOW, IT'S MY HOPE, BUT IT'S NOT MY PROMISE.

SO IT WILL GIVE YOU THE OPPORTUNITY, IF YOU DON'T HEAR FROM ME, TO DECIDE WHETHER YOU'RE GOING TO GIVE SOME EXTENSION, BECAUSE I'M NOT GOING TO BE ABLE TO HAVE THAT CONVERSATION WITH YOU ABOUT HOW MUCH LONGER DO I NEED.

BUT WE -- I'VE KNOWN THAT ALL ALONG, SO WE'VE PUT A LOT OF WORK IN IT UP FRONT.

MS. LISKA:  AND WE APPRECIATE YOU TAKING THAT INTO ACCOUNT.  LIKE I SAID, I THINK ON OUR STATUS CONFERENCE, WE DIDN'T SET THAT TO TRY TO FORCE TO YOU MAKE ANY DECISIONS, BUT TO TRY AND FACILITATE THE CASE MOVING ALONG SMOOTHLY.

THE COURT:  YES, AND YOU DID.

IT WAS -- I HAD ORIGINALLY PLANNED TO SET THIS IN LATE FEBRUARY, SO THAT'S WHY I ADVANCED IT TO THIS DATE SO THAT I HAVE A SHOT AT GETTING SOMETHING OUT TO YOU.

ALL RIGHT.  WELL, I THINK WE ARE DONE HERE, AND THANK YOU ALL.

THE CLERK:  COURT IS ADJOURNED.

(THE PROCEEDINGS WERE CONCLUDED AT 11:46 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  FEBRUARY 5, 2025